**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MICHAEL W. STOVALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-400C** |
| | ) | **Judge Allegra** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests that the Court dismiss Mr. Stovall's amended complaint upon the grounds that the Court lacks jurisdiction to consider the amended complaint, and the amended complaint fails to state a claim upon which relief may be granted. In support of our motion, we rely upon the amended complaint ("Compl."), and the following brief.

## STATEMENT OF THE CASE

### I. Nature of the Case

This action was transferred to the Court by order of the United States District Court for the District of Columbia. See Stovall v. Veneman, No. 04-319 (RMC), (D.D.C. January 24, 2005).[1] Mr. Stovall originally filed suit in the district court where he asserted claims under the Equal Credit Opportunity Act ("ECOA"), the Constitution, the Alabama Constitution, and for breach of contract. The district court held that Mr. Stovall's claims pursuant to the ECOA were time-barred and his Constitutional claims were precluded by the doctrine of sovereign immunity.

---

[1] Copies of the district court's order and memorandum decision are contained in defendant's appendix ("DA"), which is attached to this motion. The Court may consider the evidence set forth in defendant's appendix when determining if it lacks jurisdiction to entertain Mr. Stovall's complaint because it contains relevant evidence concerning jurisdictional facts. Reynolds v. Army and Air Force Exchange Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

Finally, the district court determined it did not have jurisdiction to entertain Mr. Stovall's breach of contract claim pursuant to the Tucker Act because Mr. Stovall was seeking damages in excess of $10,000.00. Stovall v. Veneman, No. 04-319 (RMC), slip op. at 8, (D.D.C. January 24, 2005). Accordingly, the district court transferred Mr. Stovall's breach of contract claim to this Court. DA pp. 1, 10.

In his amended complaint, Mr. Stovall asserts that he had a contractual relationship with the United States, and that the United States is liable for breach. Plaintiff's Amended Complaint ("Compl.") ¶¶ at 21-26. The alleged contractual relationship is based upon a "resolution agreement" that Mr. Stovall entered into with the United States Department of Agriculture ("USDA") in 1998, to settle all claims for relief contained in Mr. Stovall's January 4, 1996 discrimination complaint. See Compl. Exhibit B. Mr. Stovall contends this Court possesses jurisdiction to entertain his complaint pursuant to the Tucker Act, 28 U.S.C. § 1492, and the Contracts Disputes Act, 42 U.S.C. §§ 601 et seq. Compl. at ¶ 1.

## II. Statement of Facts[2]

Beginning in 1993, Mr. Stovall alleges that he attempted to apply for farm loans from the Lawrence County, Alabama Farm Service Agency ("FSA") office, but he initially was unable to obtain an application. Compl. at ¶ 5. In 1994, Mr. Stovall submitted applications for a farm ownership loan and a farm operating loan. Compl. at ¶ 12, p. 2.[3] Both applications were initially

---

[2] For purposes of this motion, the defendant accepts as true the facts alleged in the complaint. However, the defendant reserves the right to contest the alleged facts in subsequent proceedings.

[3] Mr. Stovall's complaint contains two paragraphs numbered 12, one on page 2, and another on page 7.

denied but, after an administrative appeal, the application for an operating loan was approved. Id. The funds obtained in these loans were disbursed in March 1995. Id. On January 4, 1996, plaintiff filed an administrative complaint with USDA alleging discrimination on the basis of race in regard to his loan applications. Id. at ¶ 14. The Office of Civil Rights ("OCR") at USDA issued a Program Complaint Final Decision on plaintiff's administrative complaint. In the decision, OCR found discrimination on the basis of race by FSA against plaintiff in the denial of a farm ownership loan in 1994 and the denial of a farm operating loan in 1995. OCR did not find discrimination in the denial of a farm ownership loan in 1995. Compl. at ¶ 8.

In about January 1998, Mr. Stovall and OCR reached a Resolution Agreement to settle plaintiff's administrative complaint. Compl. at ¶ 10. Under the Resolution Agreement, Mr. Stovall received $145,000 in compensatory damages; discharge of all of his debt to FSA; reasonable attorney's fees and costs; priority consideration on certain future applications for FSA inventory property and FSA farm loans; and other programmatic relief. See Compl. Exhibit B, Resolution Agreement at ¶¶ 2-3. Mr. Stovall agreed in the Resolution Agreement that he was waiving any and all rights he had arising from his administrative complaint against both USDA and USDA employees. Id. at ¶¶ 4-6.

In 1998, after several attempts, Mr. Stovall purchased farm land from the FSA's inventory property. Compl. at ¶¶ 10, 11. Mr. Stovall's March 1998 applications for farm ownership and operating loans were approved in March of 1998, and he received the funds in November 1998. Compl. at ¶ 12, p. 7. In applying for these loans, Mr. Stovall sought the assistance of several USDA employees, to include Carolyn Cooksie and Sam Snyder in the FSA national office. Compl. at ¶ 13. Mr. Snyder visited plaintiff in Alabama to assist him with his

application. Id.

In April 1999, Mr. Stovall sought additional funds to build two chicken houses, and he consulted with Ms. Cooksie on this matter. Compl. at ¶ 14. In December 1999, additional funds were added to plaintiff's loans so that he could build the chicken houses. However, in a meeting with the contractor and USDA employee, Richard Knouff of the local FSA office, it was discovered that construction of the chicken houses would take additional funds. Compl. at ¶¶ 14, 15. Mr. Stovall asked Mr. Knouff if the FSA could lend him additional money, and Mr. Knouff informed Mr. Stovall that he was at his loan limit. Compl. at ¶ 14. Mr. Stovall claims that Mr. Knouff told Mr. Stovall's contractor to terminate construction, though the contractor returned in three weeks. Compl. at ¶ 15.

Due to several difficulties, Mr. Stovall contacted Mr. Snyder about his concerns. Compl. at ¶ 16. At some point, Mr. Snyder worked with Mr. Stovall on a Farm and Home Plan in which Mr. Snyder included the funds awarded Mr. Stovall in attorney's fees and costs as income in the plan (which, according to Mr. Stovall "was improper as those funds were paid to Stovall's attorney pursuant to the 1998 Resolution Agreement."). Id. According to Mr. Stovall, the Farm and Home Plan was not able to demonstrate adequate cash flow. Id. In October 2001, Mr. Knouff sent Mr. Stovall a notice stating that FSA could not consider additional loans or loan restructuring due to the non-feasibility of the Farm and Home Plan and because Mr. Stovall had reached the maximum loan amounts. Id.

In his complaint, Mr. Stovall asserts a general allegation that USDA employees, Cooksie, Snyder, Faust, and Knouff collectively orchestrated a ploy to ensure that Mr. Stovall could not farm and would be out of business. Compl. at ¶ 16. Mr. Stovall contends that he was denied

credit in violation of his rights to due process and equal protection under the law as guaranteed by the Fourteenth Amendment." Compl. at ¶ 18. Mr. Stovall further alleges that unless this Court intercedes, he will continue to "suffer injuries and damages" to include, "but not limited to, injury to his business, his credit reputation as well as standing in the local community." Compl. at ¶ 19. Mr. Stovall did not quantify his damages in his complaint, but contends his pecuniary and non-pecuniary damages are "almost incalculable." Id.

## ARGUMENT

### I. The Court Lacks Jurisdiction To Entertain Mr. Stovall's Contract Claims, Because Those Claims Are Premised Upon Purported Contracts Entered Into By The United States In Its Sovereign Capacity

The Court of Federal Claims is a court of limited jurisdiction. See Overall Roofing & Construction, Inc. v. United States, 929 F.2d 687 (Fed. Cir. 1991); Globex Corp. v. U.S., 54 Fed. Cl. 343, 347 (2002); Shellman v. United States, 9 Cl.Ct. 452, 455 (1986). This Court's jurisdiction to adjudicate a claim depends upon, and is delineated by, the extent to which the United States has waived its sovereign immunity. See United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). The United States' waiver of sovereign immunity must be unequivocally expressed, and cannot be implied. See Kania v. United States, 650 F.2d 264, 269 (Ct. Cl. 1981), citing, United States v. Testan, 424 U.S. at 399. Thus, any grant of jurisdiction to this Court must be strictly construed. See United States Department of Energy v. Ohio, 503 U.S. 607, 615 (1992); McMahon v. United States, 342 U.S. 25, 27 (1951). As the Court has stated, "[a]mbiguities regarding the existence of subject matter jurisdiction must be 'resolved against the assumption of jurisdiction.'" Globex, 54 Fed. Cl. at 347, (quoting Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1373 (Fed. Cir.

1994)). Moreover, "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988).

Although the Tucker Act constitutes an affirmative waiver of sovereign immunity, it is solely jurisdictional in nature, and does not create any substantive right of enforcement against the United States for monetary damages. See United States v. Mitchell, 463 U.S. 206, 212 (1983). Pursuant to the Tucker Act, 28 U.S.C. § 1941(a)(1), the Court has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, . . . ." The Tucker Act is not a limitless waiver of sovereign immunity for claims based in contract, however. Rather, it is well-settled that the waiver of sovereign immunity for contract claims is limited to contracts executed by the United States in its proprietary capacity. See Kania v. United States, 650 F.2d 264, 269 (Ct. Cl.), cert. denied, 454 U.S. 895 (1981); Horowitz v. United States, 267 U.S. 458, 461 (1925); Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001); Silva v. United States, 51 Fed. Cl. 374, 377 (2002); Moore v. United States, 48 Fed. Cl. 394, 397 (2000); Sadeghi v. United States, 46 Fed. Cl. 660 (2000); Doe v. United States, 37 Fed. Cl. 74, 77 (1996); Drakes v. United States, 28 Fed. Cl. 190 (1993); Commonwealth of Kentucky, Natural Res. and Envtl. Protection Cabinet v. United States, 27 Fed. Cl. 173, 179 (1992); Grundy v. United States, 2 Cl. Ct. 596, 598 (1983). As the Court of Claims has explained,

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds. The Congress undoubtedly had in mind as the principal class of contract case in which it

> consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

Kania v. United States, 650 F.2d at 268. Accordingly, the Court may exercise jurisdiction over Mr. Stovall's contract claims only if those claims assert the existence of a contract executed by the United States in its proprietary capacity, and for which there is a private sector analogue. This he has not done, and his complaint should be dismissed.

## II. The Resolution Agreement Between Mr. Stovall And The Department Of Agriculture Is Not A Procurement Within The Scope Of The Contracts Disputes Act

Even assuming that Mr. Stovall's breach of contract claim is based upon a contract the United States entered into in its proprietary capacity, his claims for relief pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq., should be dismissed because his claims as alleged, do not involve a contract claim cognizable under the Contract Disputes Act. Specifically, 41 U.S.C. § 602(a) limits the applicability of the Contract Disputes Act to contracts falling into the following categories:

> (1) the procurement of property, other than real property in being;
>
> (2) the procurement of services;
>
> (3) the procurement of construction, alteration, repair or maintenance of real property; or,
>
> (4) the disposal of personal property.

41 U.S.C. § 602(a). The resolution agreement is the contract Mr. Stovall alleges was breached by the Government, and it does not fall into any of these categories. Indeed, if anything, Mr. Stovall alleges the Government breached the resolution agreement for failing to provide services

set forth in the agreement, rather than failing to procure them as the Contract Disputes Act envisions.

However, assuming that this action is within the limitation of section 602(a), Mr. Stovall must still establish that he has complied with the direct access jurisdictional requirements of section 605 of the CDA. In order to bring a direct access action to this Court under the Contract Disputes Act, the law requires that Mr. Stovall first: (1) present a written and properly certified claim to the Government contracting officer, and (2) obtain a final decision by that contracting officer on such claim. Thoen v. United States, 765 F.2d 1110, 1116 (Fed. Cir. 1985); T.J.D. Services, Inc. v. United States, 6 Cl. Ct. 257, 260 (1984). Mr. Stovall has done neither.

Specifically, 41 U.S.C. § 605(c)(1) requires that:

> For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1).

This Court has consistently interpreted this provision of the Contract Disputes Act as requiring the furnishing of such a certificate, by the contractor, in order for this Court to acquire direct access jurisdiction over a contract claim exceeding $100,000. T.J.D. Services, Inc. v. United States, 6 Cl.Ct. at 260; Scan-Tech Security v. United States, 46 Fed. Cl. 326, 334 (2000); J.E. Salvage Co. v. United States, 37 Fed. Cl. 256, 263 (1997). Although Mr. Stovall does not assert a monetary claim for a specific amount of damages, it is reasonable to assume that his claim would exceed the $100,000.00 threshold because Mr. Stovall's complaint states that he

"has suffered almost incalculable pecuniary and non-pecuniary damages." Compl. ¶ 19.

Nowhere in Mr. Stovall's complaint does he identify a "claim" to satisfy this statutory prerequisite for this Court to entertain his claim pursuant to the Contract Disputes Act. Furthermore, Mr. Stovall's complaint does not allege that he requested a contracting officer's final decision. Therefore, the Court lacks jurisdiction to entertain Mr. Stovall's claim. Accordingly, the Court should dismiss the complaint.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the amended complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:
Ron Walkow
Office of the General Counsel
United States Department of Agriculture
Washington, D.C.

June 16, 2005

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 16, 2005, a copy of the foregoing "**DEFENDANT'S MOTION TO DISMISS**" with its accompanying appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas K. Mickle
Douglas K. Mickle