**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MICHAEL STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-400C |
| | ) | Judge Allegra |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF MICHAEL STOVALL**

"My name is Michael Stovall. I am over 18 years of age, and I have direct and personal knowledge of the facts stated herein. I make this Declaration under the penalty of perjury.

"All the facts stated in my First Amended Complaint are true and correct.

"I now know what my damages are, and I state them in detail below. The damages I have suffered as a result of the USDA's continued discrimination and breach of the Resolution Agreement were foreseeable and consequential as a result of the breach.

"Around late 1996 or early 1997, the USDA Office of Civil Rights issued a Final Agency Decision in the my case finding that I had been discriminated against by the USDA in violation of statutory law and USDA regulations.

Settlement in my case was accomplished on February 27, 1998. The contract was negotiated by my attorney, Mr. James W. Myart, Jr. and Mr. Lloyd Wright, Office of Civil Rights Director and Judge Henry Ramsey, Consultant to the Secretary. The Resolution Agreement was signed by all parties on February 27, 1998. The Resolution Agreement is found at Compl., Exhibit B, same being incorporated herein as if fully set forth verbatim.

"The Resolution Agreement, by intent and by its four corners, provided equitable and injunctive relief to me at Paragraph 2(a)(b)(c)(d)(e)(f)(g)(h). These paragraphs were put in the agreement to insure that I would have the funds to build two poultry houses and to conduct my farming/ranching operation. I below state the specific sections of the Resolution Agreement that were breached and the specific damages I sustained after each breached provision.

"The Agreement states:

**2. To provide Mr. Stovall with programmatic relief as follows:**

**b. FSA will give Mr. Stovall priority consideration on any application for inventory property located in Madison, Jackson, Limestone, Lauderdale, Colbert, Franklin, Lawrence, Morgan, Marshall and DeKalb Counties located in Alabama and all Tennessee counties bordering Alabama. FSA will give Mr. Stovall the best purchase price available under law for such inventory property. FSA will provide notice of such property's existence to Mr. Stovall within 30 days of execution of this agreement. For the next five years, but only until such time as Mr. Stovall acquires a piece of inventory property, FSA will provide notice in writing to Mr. Stovall at Michael Stovall, 105 Cramer Road, New Market, Alabama 35671, within 30 calendar days of newly acquired inventory property.**

"I did not receive notice of inventory property until about December 1999, and I only got that notice because I constantly called the Washington and Tennessee offices complaining that the local offices were ignoring this provision. I never got priority consideration on any of my requests or applications for inventory property located in Madison, Jackson, Limestone, Lauderdale, Colbert, Franklin, Lawrence, Morgan, Marshall and DeKalb Counties located in Alabama and Tennessee. This caused me to loose any production in the years 1998, 1999, and 2000 up to this day.

**c. Mr. Stovall will be given priority consideration on one farm ownership loan at his election. Such election must be made within the next five years. Mr. Stovall will be given priority consideration by FSA on any direct farm operating loan he applies for in the next five years to the extent that this is consistent with the relevant statutes governing the loan program; however, no priority consideration will be provided to Mr. Stovall on any application for a farm operating or ownership loan five years after the date this agreement has been signed by all parties. The terms "priority consideration" means that an application will be given first priority as to processing and as to the availability of funds available for the type of loan at issue.**

"I never got priority consideration on one farm ownership as contracted. In fact, my loans were approved March 6, 1998 but not funded until November 5, 1998, eight months later. This type of delay is what caused me to file a discrimination complaint in the first place. So, USDA did not change its discrimination ways. They breached the contract.

**d. Any application for a farm operating loan submitted by Mr. Stovall within five years after this settlement agreement has been signed by all parties (not just those applications in which priority consideration is provided) will be viewed in a light most favorable to Mr. Stovall, and the amount and terms of the loan will be the most favorable under the law so long as this is consistent with statute as stated above. In making**

**any determination on a loan application, FSA will not take into account the sum paid under paragraph 1 of this agreement. Mr. Stovall will need to reestablish eligibility and repayment ability for any loan that will be approved.**

"I have suffered financial ruin, injury to my business reputation, injury to my credit reputation and have lost the opportunity to a contract with Con-Agra, chicken plant, in Lawrence County, Al. The contract was to produce six poultry runs per year times two houses times seven years. Because the houses were not complete and producing, I lost the contract.

"I was forced to reduce my cattle heard from sixty-seven to fifteen head, representing a nearly 80% loss in production.

"The loans for the poultry houses were approved March 6, 1998 but not funded until November 5, 1998, eight months later. The contractor, dozer man quit and did not return until May, 1999. This was all because of the USDA's discrimination and violation of the settlement agreement.

"Further, the local USDA office violated this provision by using all the proceeds of my settlement agreement, including the amount paid my attorney, to hold up the processing of my loan.

**e. In conjunction with any application for a farm ownership or operating loan, the national office of FSA will provide or obtain reasonable technical assistance for Mr. Stovall in submitting such application, including the preparation of a farm and home plan.**

"Mr. Sam Snyder and Ms. Carolyn Cooksie, national officials, together falsified the farm and home plan by putting in $35,000 of the attorneys fees thereby insuring that I had no operating capital. This was not the type of technical assistance I was supposed to have gotten. This destroyed my ability to operate.

**f. Final approval or disapproval of any application for a USDA loan will be completed under the auspices of the national office FSA. In addition, the national office of FSA will monitor all assistance provided to Mr. Stovall for the next five years.**

"Same as above.

**g. The Office of Civil Rights will monitor FSA's compliance with the programmatic remedies set forth in this section.**

"In spite of my constant phone calls to OCR and complaints about FSA's non-performance and breach of the equitable and injunctive relief provisions, OCR never did

anything, including monitoring the FSA's compliance with the programmatic remedies listed in all the provisions. This allowed FSA to continue to breach, year after year, the five year period designed to insure a profitable farming operation. The OCR's refusal to abide by this paragraph was, itself, a breach of the agreement, thus contributing to my losses, including economic consequential damages and loss of very valuable producer contracts.

**h. USDA will notify the appropriate credit bureau (as provided by Mr. Stovall) that Mr. Stovall no longer has any indebtedness to USDA.**

"The USDA delayed its notification of my non-indebtedness to the appropriate credit bureaus for months after the agreement was signed. I, therefore, was unable to get credit from any bank for the period I needed it to successfully farm by operation. The USDA is clearly aware that the timing of funding is critical if a farmer is to have a successful annual crop or production season. I also lost a lucrative contract with Con Agra Poultry Farms valued at approximately $640,000 because of my credit situation and the non-removal of the negative comment on my credit report.

"These injunctive and equitable relief provisions were intended to place me in the economic position I would have been but for the discrimination and to re-establish my previously profitable farming operation. These injunctive and equitable relief provisions provided me an economic benefit, which if breached, would cause me to suffer actual and consequential damages.

"The USDA breached it' contract in completely violating and/or delaying the processing of all these provisions causing my farming operation to fail and for me to suffer approximately $4,500,000 economic damages, which were foreseeable.

"I have reviewed the foregoing Declaration and declare under penalty of perjury that it is true and correct to the best of my personal knowledge.

/s/________________________________ July 22, 2005
Michael Stovall Date

anything, including monitoring the FSA's compliance with the programmatic remedies listed in all the provisions. This allowed FSA to continue to breach, year after year, the five year period designed to insure a profitable farming operation. The OCR's refusal to abide by this paragraph was, itself, a breach of the agreement, thus contributing to my losses, including economic consequential damages and loss of very valuable producer contracts.

**h. USDA will notify the appropriate credit bureau (as provided by Mr. Stovall) that Mr. Stovall no longer has any indebtedness to USDA.**

"The USDA delayed its notification of my non-indebtedness to the appropriate credit bureaus for months after the agreement was signed. I, therefore, was unable to get credit from any bank for the period I needed it to successfully farm by operation. The USDA is clearly aware that the timing of funding is critical if a farmer is to have a successful annual crop or production season. I also lost a lucrative contract with Con Agra Poultry Farms valued at approximately $640,000 because of my credit situation and the non-removal of the negative comment on my credit report.

"These injunctive and equitable relief provisions were intended to place me in the economic position I would have been but for the discrimination and to re-establish my previously profitable farming operation. These injunctive and equitable relief provisions provided me an economic benefit, which if breached, would cause me to suffer actual and consequential damages.

"The USDA breached it' contract in completely violating and/or delaying the processing of all these provisions causing my farming operation to fail and for me to suffer approximately $4,500,000 economic damages, which were foreseeable.

"I have reviewed the foregoing Declaration and declare under penalty of perjury that it is true and correct to the best of my personal knowledge.

/s/ Michael Stovall
Michael Stovall

July 22, 2005
Date