**IN THE UNITED COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MICHAEL W. STOVALL** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 05-400C** |
| | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA** | ) | |

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiff MICHAEL W. STOVALL, Individually, complains of THE UNITED STATES OF AMERICA, by and through its agent, Mike Johanns, the Secretary of Agriculture (AGRI), and alleges as follows:

**I.**
**<u>JURISDICTION AND VENUE</u>**

1. Jurisdiction and venue lies in the Court of Federal claims pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2).

**II.**
**<u>PARTIES</u>**

2. Plaintiff MICHAEL W. STOVALL ("STOVALL") is a resident of Town Creek, Morgan County, Alabama.

3. Defendant THE UNITED STATES OF AMERICA is the sovereign served with process by the Clerk of this Court by delivery of the Complaint to the United States Attorney General.

## III.

## INTRODUCTION

4 The instant action was transferred to the RCFC by order of the United States District Court for the District of Columbia. See *Stovall v. Veneman*, No. 04-319 (RMC), (D.D.C. January 24, 2005). PLAINTIFF brought suit against the Secretary of Agriculture and several USDA employees asserting violations of his rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment, made applicable to DEFENDANT through the Fifth Amendment, the Equal Credit and Opportunity Act ("ECOA"), § 15 U.S.C. 1691e, violations of 42 U.S.C. § 1981, pendent state claims, Alabama Constitutional tort and breach of contract. The District Court dismissed all constitutional and statutory claims and transferred, citing applicability of the Tucker Act. 28 U.S.C § 1346(a)(2), the breach of contract claims to this Court.

## III. FACTUAL BACKGROUND

### A. HISTORY OF STOVALL MATTER PRIOR TO CONTRACT BREACH

6. Beginning in 1993, PLAINTIFF attempted to apply for farm loans from the Lawrence County, Alabama from the Lawrence County, Alabama Farm Service Agency ("FSA") office, but he initially was unable to obtain an application. In 1994, PLAINTIFF submitted applications for a farm ownership loan and a farm operating loan. Both applications were initially denied but, after an administrative appeal, the application for an operating loan was approved. The funds obtained in these loans were disbursed in March 1995. On January 4, 1996, PLAINTIFF filed an administrative complaint with USDA alleging discrimination on the basis of race in regard to his loan applications. The USDA Office of Civil Rights ("OCR") issued a Program Complaint Final Agency

Decision on PLAINTIFF'S administrative complaint. In the decision, OCR found discrimination on the basis of race by FSA against PLAINTIFF in the denial of a farm ownership loan in 1994 and the denial of a farm operating loan in 1995.

10. Settlement, via a Resolution Agreement, (hereinafter, sometimes referred to as "Contract") was accomplished on February 27, 1998. The Contract was negotiated by attorney, Mr. James W. Myart, Jr. and Mr. Lloyd Wright, Office of Civil Rights Director, and Judge Henry Ramsey, Consultant to the Secretary. The Contract was signed by all parties on February 27, 1998. The Resolution Agreement is attached hereto marked, Attachment 1; same being incorporated herein as if fully set forth verbatim. Under the Contract, PLAINTIFF received $145,000 in compensatory damages; discharge of all of his debt to FSA; reasonable attorney's fees and costs; priority consideration on certain future applications for FSA inventory property and FSA farms loans; and other programmatic relief intended to place PLAINTIFF in the economic position he would have been but for the discrimination and to re-establish his previously profitable farming operation.

## B. <u>FACTS AND ALLEGATIONS IN CONTRACT BREACH</u>

7. In 1998, after several attempts, PLAINTIFF, pursuant to the Contract, purchased farm land from the FSA's inventory property. PLAINTIFF'S March 1998 applications for farm ownership and operating loans were approved in March of 1998, and he received the funds in November 1998. This was a direct violation since the loan application was delayed, a fundamental point in the original administrative complaint filed. In applying for these loans, PLAINTIFF sought the assistance of several USDA employees, to include Carolyn Cooksie and Sam Snyder in the FSA national office. Mr. Snyder visited

plaintiff in Alabama to assist him with his application. In April 1999, PLAINTIFF sought additional funds to build two chicken houses, and he consulted with Ms. Cooksie on this matter.

8. In December 1999, additional funds were added to plaintiff's loans so that he could build the chicken houses. However, in a meeting with the contractor and USDA employee, Richard Knouff of the local FSA office, it was discovered that construction of the chicken houses would take additional funds. PLAINTIFF asked Mr. Knouff if the FSA could lend him additional money, and Mr. Knouff informed PLAINTIFF that he was at his loan limit. PLAINTIFF claims that Mr. Knouff told Mr. PLAINTIFF'S contractor to terminate construction, though the contractor returned in three weeks. Due to several difficulties and his view that the USDA was continuing to discriminate against him, PLAINTIFF contacted Mr. Snyder. Mr. Snyder, when working on Mr. PLAINTIFF'S Farm and Home Plan, included, above the objection of PLAINTIFF, the funds awarded PLAINTIFF in attorney's fees and costs as income in the plan. This act "was improper as those funds were paid to PLAINTIFF'S attorney pursuant to the 1998 Resolution Agreement." PLAINTIFF received the compensatory damages delineated in the Contract, but the PLAINTIFF was denied, to his financial benefit, all injunctive relief stated in the contract.

9. Despite PLAINTIFF'S desperate efforts to enforce the complete contract, the DEFENDANT breached the contract by failing to implement the Resolution Agreement, ¶2(b)(d)(e)(f)(g)(h)

10. The Resolution Agreement, by intent and by its four corners, provided equitable and injunctive relief to PLAINTIFF at Paragraph 2(b)(d)(e)(f)(g)(h). These paragraphs

were put in the agreement to insure that PLAINTIFF would have the funds to build two poultry houses and to conduct his farming/ranching operation. Stated below are the specific sections of the Contract that were breached and the specific damages PLAINTIFF sustained after each breached provision.

a. “The Contract, in relevant parts, states:

**2. To provide Mr. Stovall with programmatic relief as follows:**

**b. FSA will give Mr. Stovall priority consideration on any application for inventory property located in Madison, Jackson, Limestone, Lauderdale, Colbert, Franklin, Lawrence, Morgan, Marshall and DeKalb Counties located in Alabama and all Tennessee counties bordering Alabama. FSA will give Mr. Stovall the best purchase price available under law for such inventory property. FSA will provide notice of such property’s existence to Mr. Stovall within 30 days of execution of this agreement. For the next five years, but only until such time as Mr. Stovall acquires a piece of inventory property, FSA will provide notice in writing to Mr. Stovall at Michael Stovall, 105 Cramer Road, New Market, Alabama 35671, within 30 calendar days of newly acquired inventory property.**

11. Plaintiff did not receive notice of inventory property until about December 1999, and only got that notice because Plaintiff constantly called the Washington and Tennessee offices complaining that the local offices were ignoring this provision. Plaintiff never got priority consideration on any of his requests or applications for inventory property located in Madison, Jackson, Limestone, Lauderdale, Colbert, Franklin, Lawrence, Morgan, Marshall and DeKalb Counties located in Alabama and Tennessee. This caused Plaintiff to lose any production in the years 1998, 1999, and 2000 up to this day.

**c. Mr. Stovall will be given priority consideration on one farm ownership loan at his election. Such election must be made within the next five years. Mr. Stovall will be given priority consideration by FSA on any direct farm operating loan he applies for in the next five years to the**

**extent that this is consistent with the relevant statutes governing the loan program; however, no priority consideration will be provided to Mr. Stovall on any application for a farm operating or ownership loan five years after the date this agreement has been signed by all parties. The terms "priority consideration" means that an application will be given first priority as to processing and as to the availability of funds available for the type of loan at issue.**

12. Plaintiff never got priority consideration on one farm ownership as contracted. In fact, Plaintiff's loans were approved March 6, 1998 but not funded until November 5, 1998, eight months later. This type of delay is what caused Plaintiff to file a discrimination complaint in the first place. USDA did not change its discrimination ways. They breached the Contract.

**d. Any application for a farm operating loan submitted by Mr. Stovall within five years after this settlement agreement has been signed by all parties (not just those applications in which priority consideration is provided) will be viewed in a light most favorable to Mr. Stovall, and the amount and terms of the loan will be the most favorable under the law so long as this is consistent with statute as stated above. In making any determination on a loan application, FSA will not take into account the sum paid under paragraph 1 of this agreement. Mr. Stovall will need to reestablish eligibility and repayment ability for any loan that will be approved.**

13. Plaintiff has suffered financial ruin, injury to his business reputation, injury to his credit reputation and has lost the opportunity to a contract with Con-Agra, a chicken plant, in Lawrence County, Al. The contract was to produce six poultry runs per year times two houses times seven years. Because the houses were not complete and producing, Plaintiff lost the contract.

14. Plaintiff was forced to reduce his cattle herd from sixty-seven to fifteen head, representing a nearly 80% loss in production.

15. The loans for the poultry houses were approved March 6, 1998 but not funded

until November 5, 1998, eight months later. The contractor and the dozer man quit and did not return until May, 1999. This was all because of the USDA's discrimination and violation of the settlement agreement.

16. Further, the local USDA office violated this provision by using all the proceeds of my settlement agreement, including the amount paid my attorney, to hold up the processing of my loan.

**e. In conjunction with any application for a farm ownership or operating loan, the national office of FSA will provide or obtain reasonable technical assistance for Mr. Stovall in submitting such application, including the preparation of a farm and home plan.**

17. Mr. Sam Snyder and Ms. Carolyn Cooksie, national officials, together falsified the farm and home plan by including the amount of $35,000 of the attorney's fees, thereby insuring that Plaintiff had no operating capital. This was not the type of technical assistance Plaintiff was entitled to receive. This destroyed Plaintiff's ability to operate.

**f. Final approval or disapproval of any application for a USDA loan will be completed under the auspices of the national office FSA. In addition, the national office of FSA will monitor all assistance provided to Mr. Stovall for the next five years.**

See preceding paragraph regarding damages.

**g. The Office of Civil Rights will monitor FSA's compliance with the programmatic remedies set forth in this section.**

18. In spite of Plaintiff's constant phone calls to OCR and complaints about FSA's non-performance and breach of the equitable and injunctive relief provisions, OCR never did anything, including monitoring the FSA's compliance with the programmatic remedies listed in all the provisions. This allowed FSA to continue to breach, year after year, the five-year period designed to insure a profitable farming operation. The OCR's refusal to abide by this paragraph was, in itself, a breach of the agreement, thus

contributing to my losses, including economic consequential damages and loss of very valuable producer contracts.

**h. USDA will notify the appropriate credit bureau (as provided by Mr. Stovall) that Mr. Stovall no longer has any indebtedness to USDA.**

19. The USDA delayed its notification of Plaintiff's non-indebtedness to the appropriate credit bureaus for months after the agreement was signed. Plaintiff, therefore, was unable to get credit from any bank for the period Plaintiff needed it to successfully farm by operation. The USDA is clearly aware that the timing of funding is critical if a farmer is to have a successful annual crop or production season. Plaintiff also lost a lucrative contract with Con Agra Poultry Farms valued at approximately $640,000 because of his credit situation and the non-removal of the negative comment on Plaintiff's credit report.

20. These injunctive and equitable relief provisions were intended to place Plaintiff in the economic position he would have been but for the discrimination and to re-establish his previously profitable farming operation. These injunctive and equitable relief provisions provided Plaintiff an economic benefit, which if breached, would cause Plaintiff to suffer actual and consequential damages.

21. The USDA breached its contract in completely violating and/or delaying the processing of all these provisions causing Plaintiff's farming operation to fail and for Plaintiff to suffer approximately $4,500,000 economic damages, which were foreseeable.

22. Plaintiff STOVALL was qualified for credit, attempted to and did apply for credit and FSA assistance. Plaintiff STOVALL was denied credit and/or adequate credit while white farmers received ample credit for farm purchases, equipment, operating and emergency and disaster loans. Defendant violated and continues to violate Plaintiff's

rights to due process and equal protection under the law as guaranteed by the Fourteenth Amendment.

23. Plaintiff suffered and continues to suffer injuries and damages as a result of Defendant's illegal actions, including, but not limited to, injury to his business, his credit reputation as well as his standing in the local farm community. Plaintiff has suffered almost incalculable pecuniary and non-pecuniary damages, and will in all probability, continue to suffer damages in the future unless and until this Court intercedes.

24. Plaintiff was and is entitled to the benefits of his bargain. But for the Defendant's continued illegal conduct on the basis of the Plaintiff's race and his intention to exercise punishment on the Plaintiff, Plaintiff would have not suffered the losses complained of.

25. Plaintiff is entitled to recover his reasonable attorneys' fees, including paralegals' fees, and expenses associated with the litigation of his claims. Plaintiff is entitled to recover a sum from Defendants to compensate Plaintiff for a reasonable fee for his attorneys' fees, including paralegals' fees, in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

## V.
## CAUSE OF ACTION

### BREACH OF CONTRACT

26. Plaintiff restates and re-alleges paragraphs 1-25, above, as if fully stated herein and would further show the Court as follows:

27. The Defendant breached the 1998 Resolution Agreement with Plaintiff in, but not limited to, the following ways, each of which proximately caused Plaintiff's damages, as described above and as follows:

a. Their handling of Plaintiff's loan applications submitted subsequent to the January 1998 Resolution Agreement;

b. Their denial of Plaintiff's loan application submitted subsequent to the January 1998 Resolution Agreement; and

c. Their failure to remove the FSA debt, released in the 1998 Resolution Agreement, from Plaintiff's credit report until December 2001.

d. Failure to monitor contract execution; and

e. all matters stated in paragraphs 1-25 above

28. All conditions precedent, if any, to Plaintiff's right to recovery under his contract with the OCR have been satisfied.

29. Plaintiff's extended money and non-pecuniary damages were consequential and foreseeable by the Defendant; and Plaintiff alleges that such actions were in furtherance of the Defendant's discrimination and reprisal against Plaintiff.

30. Plaintiff's loss of his farm was foreseeable by the Defendant and Plaintiff alleges that such actions were in furtherance of the Defendant's race-based discrimination and reprisal against Plaintiff.

31. PLAINTIFF'S foreseeable economic losses and consequential damages resulting from DEFENDANT'S contract breach exceed $4,000, 000. Plaintiff seeks recovery of all foreseeable and consequential damages as a result of the Defendant's intentional breach of contract.

32. Plaintiff is entitled to recover his attorneys' fees from Defendant to compensate Plaintiff for a reasonable fee for his attorneys' fees, including paralegals' fees, in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

**PRAYER**

WHEREFORE, Plaintiff MICHAEL W. STOVALL requests that Defendant UNITED STATES OF AMERICA be required to appear and answer herein, and that the Court:

Grant Plaintiff MICHAEL W. STOVALL judgment against Defendant for:

(1) Breach of Contract damages and all foreseeable and consequential damages, in excess of $4,000,000, flowing there from; including, but not limited to, damages resulting from the contracted injunctive relief not provided pursuant to the Resolution Agreement;

(2) All injunctive and equitable relief provided under the Resolution Agreement;

(3) Reasonable attorney's fees and expenses;

(4) Costs of suit; and

(5) such other and further relief as are just and equitable.

Respectfully submitted,

James W. Myart, Jr. P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4815

By:______________________________
James W. Myart, Jr.
Federal Bar No. TX 0021

ATTORNEYS FOR PLAINTIFF