**No. 05-400C**
**( Judge Allegra)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**MICHAEL W. STOVALL,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE UNITED STATES MOTION TO DISMISS**

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**DEBORAH A. BYNUM**
**Assistant Director**

**DOUGLAS K. MICKLE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 "L" Street, N.W.**
**Attn: Classification Unit, 8th Floor**
**Washington, D.C. 20530**
**Tele: (202) 353-7961**
**Fax: (202) 353-7988**

**Attorneys For Defendant**

**OF COUNSEL:**

**RON WALKOW**
**Office of the General Counsel**
**United States Department of Agriculture**
**Washington, D.C.**

**August 23, 2005**

**TABLE OF CONTENTS**

**PAGE(S)**

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE UNITED STATES MOTION TO DISMISS ..... 1

ARGUMENT ..... 4

I. Mr. Stovall's Complaint Must Be Dismissed As Mr. Stovall Concedes His Claims Pursuant To The Contract Disputes Act Fail ..... 4

II. Neither The Equal Credit Opportunity Act Or The Resolution Agreement Provide A Basis For Tucker Act Jurisdiction ..... 4

A. The Resolution Agreement Is Non-Proprietary And It Does Not Provide For Monetary Damages ..... 5

B. The Equal Credit Opportunity Act Does Not Provide For Presently Due Money Damages ..... 11

C. Mr. Stovall's ECOA Claims Should Be Made In Federal District Court And Are Barred By The Statute Of Limitations ..... 14

III. No Waiver Of Sovereign Immunity Exits For The Tort, Consequential, And Equitable Damages Or The Injunctive Relief Mr. Stovall Now Seeks, And These Claims Should Be Dismissed ..... 15

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Anderson v. United States,
59 Fed. Cl. 451 (2004) .......... 16

Austin v. United States,
206 Ct. Cl. 719, 1975 WL 22844 (Ct. Cl.) .......... 13

Bancoult v. McNamara,
227 F. Supp. 2d 144 (D.D.C. 2002) .......... 15

Berdick v. United States,
222 Ct. Cl. 94, 612 F.2d 533 (1979) .......... 16

Bohac v. Dept. of Agriculture,
239 F.3d 1334 (Fed. Cir. 2001) .......... 16

Bowen v. Massachusetts,
487 U.S. 879 (1988) .......... 16

Car Carriers, Inc. v. Ford Motor Co.,
745 F.2d 1101 (7th Cir. 1984) .......... 2

Carney v. United States,
199 Ct. Cl. 160, 462 F.2d 1142 (1972) .......... 17

Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet v. United States,
27 Fed. Cl. 173 (1992) .......... 7

Contrares v. United States,
64 Fed. Cl. 583 (2004) .......... 12

Crest A Apartments, Ltd. II v. United States,
52 Fed. Cl. 607 (2002) .......... 2

Day v. Dep't of Consumer & Regulatory Affairs,
191 F. Supp. 2d 154 (D.D.C. 2002) .......... 15

Doe v. United States,
372 F.3d 1308 (Fed. Cir.2004) .......... 16

Eastport S.S. Corp. v. United States,
178 Ct. Cl. 599, 372 F.2d 1002 (1967) .......... 6

First Hartford Corp. Pension Plan & Trust v. United States,
194 F.3d 1279 (Fed. Cir.1999) .......... 16

Glidden Co. v. Zdanok,
370 U.S. 530 (1962) .......... 16

Griswold v. United States,
61 Fed. Cl. 458 (2004) .......... 9, 10

Hercules, Inc. v. United States,
516 U.S. 417 (1996) .......... 13

HHO Inc. v. United States,
7 Cl. Ct. 703 (1985) .......... 15

Hicks v. United States,
23 Cl. Ct. 647 (1991) .......... 8, 9, 14, 15

Kanemoto v. Reno,
41 F.3d 641 (Fed. Cir. 1994) .......... 16

Kania v. United States,
227 Ct. Cl. 458, 650 F.2d 264, cert. denied, 454 U.S. 895 (1981) .......... 6, 7, 8, 9

Lawmaster v. Ward,
125 F.3d 1341 (10th Cir. 1997) .......... 2

Lion Raisins, Inc. v. United States,
51 Fed. Cl. 238 (2001) .......... 16

Lucas v. United States,
25 Cl. Ct. 298 (1992) .......... 11

Malnak v. United States,
223 Ct. Cl. 783, 784-85 (1980) .......... 16

Martinez v. United States,
33 F.3d 1295 (Fed. Cir. 2003) .......... 13

Moore v. United States,
48 Fed. Cl. 394 (2000) .......... 6, 9, 10, 11

Newell Cos., Inc. v. Kenney Mfg. Co.,
864 F.2d 757 (Fed. Cir. 1988) .......... 6

Quinault Allottee Ass'n v. United States,
197 Ct. Cl. 134, 453 F.2d 1272 (1972) .......... 16

Sanders v. United States,
252 F.3d 1329 (Fed. Cir. 2001) .......... 3, 6, 7, 8

Shearin v. United States,
992 F.2d 1195 (Fed. Cir. 1993) .......... 15

Smithson v. United States,
847 F.2d 791 (Fed. Cir.1988) .......... 15

Somali Dev. Bank v. United States,
205 Ct. Cl. 741, 508 F.2d 817 (1974) .......... 15

United States v. Testan,
424 U.S. 392 (1976) .......... 5, 12

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) .......... 6

United Pacific Insurance v. Roche,
380 F.3d 1352 (Fed. Cir. 2004) .......... 9

United States v. King,
395 U.S. 1 (1969) .......... 5, 10

United States v. Mitchell,
445 U.S. 535 (1980) .......... 12

United States v. Mitchell,
463 U.S. 206 (1983) .......... 5

United States v. Navajo Nation,
537 U.S. 488 (2003) .......... 11

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003) .......... 12

United States v. Sherwood,
312 U.S. 584 (1941) .......... 9

## STATUTES

15 U.S.C. § 1691 .................................................................................................................. 3

15 U.S.C. §§ 1691a - 1691e ........................................................................................... 2

15 U.S.C. § 1691e(f) ..................................................................................................... 3, 14

28 U.S.C. § 1491 .................................................................................................................. 4, 14

31 U.S.C. § 1341 .................................................................................................................. 13

41 U.S.C. § 601 et seq ................................................................................................. 1, 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MICHAEL W. STOVALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-400C** |
| | ) | **Judge Allegra** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**RESPONSE TO THE UNITED STATES MOTION TO DISMISS**

In our opening motion, defendant, the United States, established that the Court should dismiss Mr. Stovall's amended complaint upon the grounds that the Court lacks jurisdiction to consider the amended complaint, and the amended complaint fails to state a claim upon which relief may be granted. Defendant explained that because the United States has only waived its sovereign immunity for contract claims to those contracts executed by the United States in its proprietary capacity and where monetary breach consequences were specifically set forth in the contract, Mr. Stovall's claim that the United States breached the Resolution Agreement to Mr. Stovall's administrative complaint was not within the Court's jurisdiction.

Defendant further explained that even assuming that Mr. Stovall's breach of contract claim is based upon a contract the United States entered into in its proprietary capacity, his claims for relief pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 et seq., should be dismissed because his claims as alleged, do not involve a contract claim cognizable pursuant to the CDA. We demonstrated that, because the Resolution Agreement did not involve the procurement of property, goods, or services, Mr. Stovall's claim failed. We further explained that, because Mr. Stovall's complaint does not allege that he requested a contracting officer's

final decision, he failed to satisfy the prerequisites of a disputes claim, and therefore, the Court lacks jurisdiction to entertain Mr. Stovall's claim.

In his response, Mr. Stovall admits that his claims fail pursuant to the Contract Disputes Act. Pl. Resp.[1] p. 1. Instead, Mr. Stovall uses his response in an impermissible attempt to amend his complaint to now assert that the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 and 1691a - 1691e, provides the requisite money-mandating statute for this Court to possess jurisdiction.[2] Pl. Resp. p. 8-9. Mr. Stovall then baldly asserts that the Government was acting in its proprietary capacity when it agreed to the Resolution Agreement, without ever explaining what goods or services were the basis of his bargain with the United States to make the transaction proprietary in nature.

Given Mr. Stovall's admission that he has not met the jurisdictional prerequisites for this Court to entertain his breach of contract claim pursuant to the CDA, Mr. Stovall's first amended complaint must be dismissed. Morever, even if the Court treated Mr. Stovall's response as a second amendment of his complaint, Mr. Stovall's claims still fail for a number of reasons. Initially, Mr. Stovall's alleged breach claim still involves a non-proprietary agreement between him and the Government where specific monetary liability was not contemplated by the agreement. Accordingly, this Court still lacks jurisdiction to entertain his complaint. See

---

[1] "Pl. Resp." refers to Mr. Stovall's response and brief in opposition to defendant's motion to dismiss; "Compl." refers to Mr. Stovall's first amended complaint; "DA" refers to defendant's appendix.

[2] See Lawmaster v. Ward, 125 F.3d 1341, 1345 n.2 (10th Cir. 1997) (refusing to consider claim not raised in complaint); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); Crest A Apartments, Ltd. II v. United States, 52 Fed. Cl. 607, 613 (2002) (refusing to consider claim asserted in summary judgment motion but not in complaint).

Sanders v. United States, 252 F.3d 1329, 1335-36 (Fed. Cir. 2001). Furthermore, even if the Court were to find that the Resolution Agreement was a contract within the jurisdictional boundaries of the Tucker Act, the plain language of the Resolution Agreement requires that any disputes between Mr. Stovall and the United States regarding the implementation of the agreement must be addressed by the agency, and not this Court.

Additionally, the requisite money-statute or regulation cited by Mr. Stovall in his response, the ECOA, does not mandate the payment of money. It simply prohibits discriminatory conduct on the basis of race by a creditor against an applicant in credit transactions. 15 U.S.C. § 1691(a). Furthermore, even assuming that the ECOA is a money-mandating statute and claims based upon that statute can be entertained in this Court, the ECOA's statute of limitation requires that an action under ECOA must be filed not more than "two years from the date of occurrence of the violation[.]" 15 U.S.C. § 1691e(f). Mr. Stovall's allegations of error upon the part of the United States pre-date 2001. Thus, Mr. Stovall's claims are barred by the statute of limitations. Finally, we will show that Mr. Stovall's claims are outside the Court's jurisdictional boundaries because if they are valid, they primarily sound in tort, not contract. Accordingly, Mr. Stovall's complaint, as plead or as amended by his response, must be dismissed because it falls outside the Court's jurisdiction.

# ARGUMENT

## I. Mr. Stovall's Complaint Must Be Dismissed As Mr. Stovall Concedes His Claims Pursuant To The Contract Disputes Act Fail

Mr. Stovall's amended complaint contends that this Court possesses jurisdiction to entertain his complaint pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Contracts Disputes Act ("CDA"), 41 U.S.C. §§ 601 et seq. Compl. at ¶ 1. In our motion to dismiss, we demonstrated that because Mr. Stovall failed to meet the jurisdictional prerequisites of the CDA, his complaint must be dismissed. In his response, Mr. Stovall admits that the United States' contentions upon this point are correct, and his claims pursuant to the CDA "should be dismissed." Pl. Resp. p. 1. Accordingly, the Court should dismiss Mr. Stovall's breach of contract claims pursuant to the CDA.

## II. Neither The Equal Credit Opportunity Act Or The Resolution Agreement Provide A Basis For Tucker Act Jurisdiction

In his response, Mr. Stovall now alleges that the Resolution Agreement he entered into with the Department of Agriculture's Office of Civil Rights to settle a civil rights matter and the Equal Credit Opportunity Act provide a separate right to money damages against the United States so that this Court can entertain his claims. Pl. Resp. pp. 7-9. Mr. Stovall is mistaken. The Resolution Agreement is not a contract that is proprietary in nature, nor does it provide for monetary damages if breached. Furthermore, even if Mr. Stovall is successful in convincing the Court that the Resolution Agreement is a contract for Tucker Act jurisdictional purposes, the plain language of the Resolution Agreement mandates that Mr. Stovall bring his complaint to the agency, and not the Court, to resolve any dispute he has with the manner the agreement was fulfilled.

Moreover, the Equal Credit Opportunity Act does not provide a separate right to money damages against the United States for this Court to entertain his claims. At best, the ECOA provides a framework to resolve credit disputes. The ECOA does not mandate the payment of money. At best, it provides the Secretary of Agriculture with discretionary authority to pay money to settle discrimination claims. Moreover, even if the ECOA was deemed by the Court as being a money-mandating statute, claims made pursuant to the ECOA are limited to the district courts and are subject to the two year statute of limitations set forth at section 1691e(f) of Title 15. Accordingly, because Mr. Stovall has only identified events that occurred before 2001 as the bases for his claims, his complaint must be dismissed if the ECOA is his asserted substantive right to money damages.

### A. The Resolution Agreement Is Non-Proprietary And It Does Not Provide For Monetary Damages

In our opening motion, we demonstrated that although the Tucker Act constitutes an affirmative waiver of sovereign immunity, it is solely jurisdictional in nature, and does not create any substantive right of enforcement against the United States for monetary damages. See United States v. Mitchell, 463 U.S. 206, 212 (1983). The Supreme Court has explained that the claim presented must be for "actual, presently due money damages from the United States." United States v. King, 395 U.S. 1, 3 (1969). It is not simply enough, however, for Mr. Stovall to present a claim for money. To determine whether Mr. Stovall's breach of contract claim falls within this Court's jurisdiction, the Court must consider whether Mr. Stovall has established that a "substantive right enforceable against the United States for money damages" exists. United States v. Testan, 424 U.S. 392, 398 (1976). The alleged substantive right must be of the type that "can be fairly interpreted as mandating compensation by the Federal Government for the

damage sustained." Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002, 1009 (1967). Moreover, the waiver of sovereign immunity for contract claims is limited to contracts executed by the United States in its proprietary capacity and where money damages are expressly set forth in the agreement. See Kania v. United States, 227 Ct. Cl. 458, 464-65, 650 F.2d 264, 269, cert. denied, 454 U.S. 895 (1981); Sanders v. United States, 252 F.3d 1329, 1336 (Fed. Cir. 2001).

As we noted in our opening motion, the Court of Claims has explained,

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

Kania v. United States, 227 Ct. Cl. at 464, 650 F.2d at 268. Accordingly, the Court may exercise jurisdiction over Mr. Stovall's contract claims only if those claims assert the existence of a contract executed by the United States in its proprietary capacity. Mr. Stovall has never even attempted to show how a settlement agreement of a civil rights claim is proprietary in nature, nor could he.[3]

---

[3] This Court has determined that the jurisdictional analysis behind Kania has been limited by recent decisions of the Federal Circuit. See Moore v. United States, 48 Fed. Cl. 394, 398-99 (2000)(finding jurisdiction pursuant to the analysis in Trauma Serv. Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997), but then finding the complaint failed to state a claim because the agreement lacked a damages provision.) In reaching this conclusion, the Court did not address the well-settled jurisprudence of the Federal Circuit that when an apparent conflict exists between the Federal Circuit's decisions, the earlier decision controls. See Newell Cos., Inc. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1988) (in case of conflict, earlier decided case governs). Nevertheless, any question regarding the validity of Kania's reasoning was laid

Mr. Stovall also is wrong when he asserts that the Kania line of cases do not apply in his case because his Resolution Agreement is civil in nature and Kania and its progeny are strictly limited to criminal plea bargain agreements. Pl. Resp. p. 11. While we agree that most of the cases that rely upon Kania arise in a setting involving some degree of criminal activity, the Kania line of cases have not been specifically limited, as Mr. Stovall contends, to "criminal cases involving alleged breach of criminal plea bargain agreements." See Pl. Resp. p. 11. On the contrary, the Kania line of cases arise in situations, as here, where the Government enters into agreements with individuals in its Sovereign capacity, and where money-damages are not contemplated by the parties as a result of a breach. See Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet v. United States, 27 Fed. Cl. 173, 179-180 (1992)(applying Kania's reasoning in determining an agreement to repair and maintain locks was not made in the Government's proprietary capacity which is to engage in the sale of lands, goods, or services).

Indeed, Kania notes that agreements made in a criminal setting that contain a clause that would award the non-beaching party monetary damages could possibly come before the Court.[4] The Federal Circuit's recent decision in Sanders supports the Government's position that non-proprietary contracts that do not explicitly indicate the Government's intent to obligate funds are outside the Court's jurisdiction. Sanders v. United States, 252 F.3d at 1335.

---

to rest with the Federal Circuit's decision in Sanders. Sanders v. United States, 252 F.3d 1329 (Fed. Cir. 2001).

[4] As the Kania panel noted, liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness would be subject to the Tucker Act if the AUSA had authority to make an agreement obligating the United States to pay money, and if that agreement "spell[ed] out how in such a case the liability of the United States is to be determined." Kania v. United States, 227 Ct. Cl. at 46, 650 F.2d at 268 (emphasis added).

Mr. Stovall contends that because the Resolution Agreement was reached in a non-criminal setting, his agreement was not made by the United States acting as the Sovereign. Mr. Stovall apparently delineates sovereign agreements as ones made strictly in the criminal arena, while civil agreements are all proprietary in nature. See Pl. Resp. p. 11. Mr. Stovall's distinction should be rejected because the Government's activities as the Sovereign are not so limited. Indeed, the Resolution Agreement at issue here is much more similar to the Sovereign agreements in the Kania line of cases than the more commonly seen proprietary agreements in which the United States enters the public marketplace.

Here, the Resolution Agreement is one of the many tools the Office of Civil Rights within the Department of Agriculture has at its disposal to implement the public goals of the farm loan program and ensure loan applications comply with civil rights' laws. The Resolution Agreement was not made pursuant to procurement laws or regulations. The Resolution Agreement is not an agreement "where the Sovereign has stepped off the throne" and engages in commerce. It is simply an agreement used by the Office of Civil Rights to ensure Mr. Stovall's future loan applications will be handled appropriately pursuant to the program.

Moreover, the Resolution Agreement was not agreed upon with any intent that this Court should become involved in overseeing how the Department of Agriculture polices the farm loan program if irregularities occur during the administration of an individual's loan application.[5]

---

[5] This is another reason why the Court should refrain from entertaining Mr. Stovall's breach agreement because the judicial function of policing farm loan arrangements in general has been assigned to the Federal district courts. Hicks v. United States, 23 Cl. Ct. 647, 653 (1991). Thus, similar to the Kania court's reasoning that challenges to agreements made in the criminal arena should be made in the "courts in which are or will be pending the criminal prosecutions to which the agreements relate," agreements made pursuant to the ECOA should be made in the district court because that is where those cases are or will be pending.

Indeed, by doing so, the Court would effectively be endorsing an employee of an executive agency establishing jurisdiction in this Court where Congress has not specifically done so because ECOA claims by statute are limited to the Federal district courts. Hicks v. United States, 23 Cl. Ct. at 653. The Federal Circuit has made clear that parties cannot unilaterally or by agreement create jurisdiction where it does not exist pursuant to statute. See, United Pacific Insurance v. Roche, 380 F.3d 1352, 1356-7 (Fed. Cir. 2004).

Notwithstanding the fact that the Government did not enter into this agreement in a proprietary capacity, Mr. Stovall's complaint also fails to state a claim because even assuming the Resolution Agreement is a contract for Tucker Act purposes, the silence of the Resolution Agreement to obligate monetary damages if a breach occurs is fatal to Mr. Stovall's claims. See United States v. Sherwood, 312 U.S. 584, 588 (1941) ("it has been uniformly held, upon a review of the statutes creating the [United States Court of Federal Claims] and defining its authority, that its jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States." (citations omitted); see also Moore v. United States, 48 Fed. Cl. at 400 (dismissing complaint because agreement did not obligate the Government to pay presently due damages); Griswold v. United States, 61 Fed. Cl. 458, 462 (2004). Mr. Stovall asserts he is entitled to damages for the alleged breach of contract in the amount of $4,500,000.00. Stovall Decl. p. 4. There is no support in his Resolution Agreement that mandates the payment of monetary damages for a breach of the agreement, let alone monetary damages in the amount of $4,500,000.00.[6] Similarly, although Mr. Stovall filed a declaration

[6] Mr. Stovall asserts in his response that the Resolution Agreement includes a "specific monetary amount." Pl. Resp. p. 12. However, he fails to identify a single paragraph in the agreement that sets forth specific monetary liability provisions if the agreement is breached.

with his response from Mr. Lloyd Wright who states that it is his opinion that "Mr. Stovall had a civil contract with the Government that was expressly authorized by statute and regulations . . ." and that if breached, would entitle Mr. Stovall to "actual and consequential damages," nowhere does Mr. Wright identify a provision in the Resolution Agreement where the Government would be obligated to pay Mr. Stovall monetary damages if the agreement was breached.

The only monetary claim Mr. Stovall could possibly bring in this Court would be a claim for non-payment of the $145,000.00 the agency agreed to pay Mr. Stovall in consequential damages to settle his civil rights claim. See Resolution Agreement ¶ 1. However, Mr. Stovall admits that he received this money in November 1998. Compl. ¶ 12; Pl. Resp. p. 4. Thus, Mr. Stovall is not presently due any monetary damages pursuant to the Resolution Agreement. See Griswold v. United States, 61 Fed. Cl. at 465 (finding that plaintiff's claim for breach of a settlement agreement was outside the Court's jurisdiction because plaintiff was not claiming he did not receive the money the agreement promised him); Moore v. United States, 48 Fed. Cl. at 400. Accordingly, Mr. Stovall's claim must be dismissed because he is currently not due money. United States v. King, 395 U.S. at 3.

Finally, even assuming the Resolution Agreement was an enforceable contract within this Court's jurisdiction, the plain language of the Resolution Agreement mandates that if Mr. Stovall believed the Department of Agriculture was not complying with the terms of the agreement, the remedy was for Mr. Stovall to present these claims to the agency in an administrative fashion. The Resolution Agreement's plain terms state that:

> That this matter is resolved through this settlement agreement. If the terms of this agreement are not carried out (other than a result of actions by Mr. Stovall), Mr. Stovall may request specific performance of the terms or reinstatement of his complaints by writing to the Director, Civil Rights, USDA, Room326-W,

> Washington, D.C., 20250. This request should be filed as soon as practical but no later than 60 days of the date Mr. Stovall knows or reasonably should have known of the alleged failure to implement the agreement.

Resolution Agreement p. 4, ¶ 8.

Mr. Stovall has not shown that he requested resolution or demanded specific performance. Thus, this fact also mandates dismissal of his claims. Lucas v. United States, 25 Cl. Ct. 298, 308 (1992)(citations omitted); see also Moore v. United States, 48 Fed. Cl. 394, 399-400 (2000) (dismissing complaint because the terms of the contract must be adhered to and in this case, barred recovery).

**B. The Equal Credit Opportunity Act Does Not Provide For Presently Due Money Damages**

Mr. Stovall's response also asserts for the first time that the ECOA is the separate money mandating statute that satisfies the jurisdictional prerequisites of this court. Pl. Resp. p. 8-10. Nowhere in the ECOA is there a provision that mandates the payment of money for breach damages. While we agree that the ECOA allows the Department of Agriculture to pay money to settle administrative disputes involving credit disputes, the ECOA does not mandate that the Department of Agriculture pay any money. The Department's determination to pay this money is purely discretionary. The fact that the Department of Agriculture has no duty to act in paying money pursuant to the ECOA, the statute can not be money-mandating. Absent any imposed duty to act, section 1201 is not money-mandating because there are no "duties" to breach.

The Court of Federal Claims does not have jurisdiction to entertain suits seeking money damages for not acting in a certain way. Compare United States v. Navajo Nation, 537 U.S. 488, 511 (2003) (concluding there was no Tucker Act jurisdiction over claim because "there [wa]s no textual basis for concluding that the Secretary's approval function includes a duty . . . to ensure a

higher rate of return for the Tribe concerned" with respect to mining royalty contracts); and United States v. Mitchell, 445 U.S. 535, 542 (1980) (court did not have jurisdiction over claims because the statute at issue "created only a limited trust relationship between the United States and the allottee that does not impose any duty upon the Government to manage timber resources"), with United States v. White Mountain Apache Tribe, 537 U.S. 465, 474 (2003) (concluding there was jurisdiction over a claim where the act in question "permits a fair inference that the Government is subject to duties . . . and [is] liable in damages for breach"). See also Contrares v. United States, 64 Fed. Cl. 583, 588-592 (2004)(holding discretionary language in the Federal Law Enforcement Pay Act was not money-mandating) .

The Supreme Court's decision in United States v. Testan, 424 U.S. 392 (1976), best illustrates that if there is no right to money, the Court lacks jurisdiction to entertain the complaint. In Testan, two Department of Defense trial attorneys classified as GS-13 sought to have their agency reclassify their positions as GS-14; they also sought backpay. The Court held that neither the Classification Act nor the Back Pay Act create a substantive right to backpay for the period they purportedly should have been classified as GS-14. The Court stated that "[t]here is no claim here that either respondent has been denied the benefit of a position to which he was appointed. The claim, instead, is that each has been denied the benefit of a position to which he should have been, but was not, appointed. The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." Id. at 402 (emphasis added; citations omitted).

Implicit in this conclusion is the principle that there is no right to payment when the Government does not have the duty to make particular decisions on personnel matters. Because there was no duty to appoint the lawyers to GS-14 positions, there was no obligation to backpay

for GS-14 work, and no Tucker Act jurisdiction. Similarly, because there is no duty to pay money to settle civil rights claims, there is no obligation to pay damages. Likewise, there is no Tucker Act jurisdiction. At best, the ECOA is a money-authorizing statute, not money-mandating. See Martinez v. United States, 33 F.3d 1295, 1314 (Fed. Cir. 2003) (en banc) (section 1552 provides for a money remedy, but is not money-mandating.); Austin v. United States, 206 Ct. Cl. 719, 1975 WL 22844 (Ct. Cl.) (enlistment statute is discretionary, therefore, not money mandating).

Finally, while we agree with Mr. Wright that he was authorized to make discretionary payments to resolve civil rights' complaints, we do not agree with the legal conclusions contained within his declaration. Furthermore, Mr. Wright's opinion is not the official position of the Department of Agriculture, and his disagreements with the agency's position in these matters is well documented in Mr. Stovall's complaint. Compl. ¶ 10. Moreover, as noted earlier, because the Resolution Agreement is silent as to any potential monetary damages as a breach remedy, any alleged breach could lead to a potential claim with limitless damages, and no one at the Department of Agriculture, to include Mr. Wright, could agree to such an agreement with such an open-ended damages provisions because that would violate the Anti–Deficiency Act. 31 U.S.C. § 1341. See Hercules, Inc. v. United States, 516 U.S. 417, 426-27 (1996)("[A] a contracting officer would not agree to the open-ended indemnification [provision because [t]he Anti-Deficiency Act bars a federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation.") Accordingly, even in the best light, Mr. Wright's declaration should be read to mean that, if monetary damages were to be awarded if the agreement was breached, these damages must have been specifically set forth in the agreement.

**C. Mr. Stovall's ECOA Claims Should Be Made In Federal District Court And Are Barred By The Statute Of Limitations**

There are two other reasons for the Court to consider dismissing Mr. Stovall's ECOA based claims. The first reason is that claims based upon violations of the ECOA should be brought in district court, and not the Court of Federal Claims. This was the conclusion reached by the Court in Hicks v. United States, 23 Cl. Ct. at 653 (1991).

The second reason is that, even assuming that the ECOA is money-mandating and authorizes claims to be pursued in the Court of Federal Claims, Mr. Stovall's ECOA based claims still fail because they are outside the ECOA's 2 year statute of limitations. The ECOA's statute of limitations requires that an action pursuant to the ECOA must be filed not more than "two years from the date of occurrence of the violation[.]" 15 U.S.C. § 1691e(f). A fair reading of Mr. Stovall's complaint and subsequent declaration leaves no doubt that the alleged discrimination in connection with the Resolution Agreement occurred more than two years before Mr. Stovall filed this action. See Compl. ¶ 10 (alleged harassment caused Mr. Stovall not to purchase land in Tennessee); ¶ 16 and Stovall Decl. p. 3 (alleged intentional interference in processing loan application in 1998 and 1999); Stovall Decl. p. 2 (alleged failure to notify Mr. Stovall of inventory property in 1999); Stovall Decl. p. 2 (alleged delay in funding of eight months in 1998). Mr. Stovall filed his first amended complaint on April 21, 2005, thus because all of the alleged acts that form the basis for Mr. Stovall's complaint occurred long before April 21, 2003, his claims should be dismissed. See Day v. Dep't of Consumer & Regulatory Affairs, 191 F. Supp. 2d 154, 159 (D.D.C. 2002); Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002).

**III. No Waiver Of Sovereign Immunity Exists For The Tort, Consequential, And Equitable Damages Or The Injunctive Relief Mr. Stovall Now Seeks, And These Claims Should Be Dismissed**

At bottom, because Mr. Stovall could not get the monetary damages he was seeking in district court, he is now trying to bootstrap what are tort claims into a breach of contract lawsuit. However, this Court lacks jurisdiction to consider Mr. Stovall's claims sounding in tort. The Tucker Act specifically states that the Court only has jurisdiction to hear disputes "not sounding in tort." 28 U.S.C. § 1491(a)(1); Shearin v. United States, 992 F.2d 1195, 1197 (Fed. Cir. 1993).

In his amended complaint and declaration, Mr. Stovall alleges several tort claims that this Court should not entertain. Mr. Stovall alleges his loans were not processed in a timely manner and this caused him "injury to my business reputation, injury to my credit reputation" and a lost business opportunity. Stovall Decl. p. 2. However claims predicated on intentional and wrongful regulatory action in the consideration, approval, or servicing of an farm loan or application is beyond the jurisdiction of the Court. In Somali Dev. Bank v. United States, 205 Ct. Cl. 741, 508 F.2d 817, 821 (1974), the Court of Claims held it lacked jurisdiction over claims against the United States for negligent misrepresentation, wrongful inducement, or careless performance of a government duty. Similarly, in Smithson v. United States, 847 F.2d 791, 795 (Fed. Cir.1988), cert. denied, 488 U.S. 1004 (1989), the Federal Circuit held that undue delay in making a loan is vindicable only in a tort action. In accordance with Somali and Smithson, the Court lacks jurisdiction over claims for damages based upon fraud, misrepresentation, false pretenses, and abuse of authority. Such claims sound in tort and are redressable, if at all, in district court.[7]

---

[7] Other cases with similar holdings are Hicks v. United States, 23 Cl. Ct. 647, 652 (1991)("A claim predicated on intentional and wrongful regulatory action in the consideration,

Additionally, Mr. Stovall is not entitled to any injunctive or declaratory relief. Compl. Prayer for relief. The law is well-settled that this court "does not have general equitable powers." Doe v. United States, 372 F.3d 1308, 1313-1314 (Fed. Cir.2004) (stating that, in determining whether a claim falls within the scope of the Tucker Act or the Little Tucker Act, "[w]hat matters is whether the request for relief is, on its face or in substance, a request for money damages as opposed to equitable relief"); see Anderson v. United States, 59 Fed. Cl. 451, 456 (2004) (stating that the court "lacks general authority to grant relief, monetary or otherwise, on purely equitable grounds" (citing Bowen v. Massachusetts, 487 U.S. 879, 893-94 (1988) and Glidden Co. v. Zdanok, 370 U.S. 530, 557 (1962))); see also First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1294 (Fed. Cir.1999) (stating that the Court of Federal Claims " 'cannot grant nonmonetary equitable relief such as an injunction, a declaratory judgment or specific performance'" (quoting Quinault Allottee Ass'n v. United States, 197 Ct. Cl. 134, 453 F.2d 1272, 1274 n. 1 (1972))); Lion Raisins, Inc. v. United States, 51 Fed. Cl. 238, 244 (2001) (stating that the Court of Federal Claims " 'may exercise equitable powers as an incident to our general jurisdiction, for example, reforming a contract and enforcing it as reformed in an action at law. But our general jurisdiction under the Tucker Act does not include an action for

---

approval, or servicing of a farm loan or application is beyond the jurisdiction of the Claims Court."); HHO Inc. v. United States, 7 Cl. Ct. 703, 708 (1985)(No jurisdiction over tort claims sounding in defamation and tortious interference.); Malnak v. United States, 223 Ct. Cl. 783, 784-85 (1980) (holding that, with respect to a claim for injury to a business reputation and the hindering of gainful employment, and allegation of "blackballing" sounds in tort and s outside the jurisdiction of this court); Bohac v. Dept. of Agriculture, 239 F.3d 1334, 1340 (Fed. Cir. 2001) (no jurisdiction for mental distress or emotional trauma)(citations omitted); and, Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533, 536 (1979) (No jurisdiction for defamation, intentional infliction of emotional distress, tortious interference with business relationship, or conspiracy since these claims sound in tort).

'specific equitable relief.'. . . .' " (quoting Carney v. United States, 199 Ct. Cl. 160, 462 F.2d 1142, 1145 (1972))). Furthermore, given its Article I status, this Court is without jurisdiction to grant injunctive relief, except in connection with pre-award bid-protests. Kanemoto v. Reno, 41 F.3d 641, 645 (Fed. Cir. 1994). Accordingly, this court lacks jurisdiction to grant the equitable or injunctive Mr. Stovall's complaint seeks.

## **CONCLUSION**

For these reasons, and those set forth in our motion to dismiss, we respectfully request that the Court dismiss the amended complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

OF COUNSEL:
Ron Walkow
Office of the General Counsel
United States Department of Agriculture
Washington, D.C.

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988

August 23, 2005

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 23, 2005, a copy of the foregoing "**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE UNITED STATES MOTION TO DISMISS**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas K. Mickle
Douglas K. Mickle