For opinion see 389 F.3d 1296, 2004 WL 344411

**Briefs and Other Related Documents**

United States Court of Appeals,
District of Columbia Circuit.
Yvonne BROWN, Appellant,
v.
UNITED STATES OF AMERICA, et al., Appellees.
**No. 03-5245.**
July 21, 2004.

Appeal from the United States District Court for the District of Columbia

Oral Argument Scheduled November 18, 2004

Brief for Appellees

Kenneth L. Wainstein, United States Attorney.

Michael J. Ryan, Alan Burch, Assistant United States Attorneys.

***ii** TABLE OF CONTENTS

STATEMENT OF JURISDICTION ... 1

COUNTER-STATEMENT OF THE CASE ... 1

SUMMARY OF ARGUMENT ... 5

ARGUMENT ... 6

I. Standard of Review ... 6

II. The District Court Lacked Subject-Matter Jurisdiction Because Tucker Act Provides for Exclusive Jurisdiction in the Court of Federal Claims ... 6

A. Appellant's Breach of Contract Claim ... 6

B. Appellant's Title VII Claim ... 13

III. Appellant's Claims Based on Breach of the Settlement Agreement and Discrimination Were Properly Dismissed as Time-Barred ... 18

CONCLUSION ... 21

***iii** TABLE OF AUTHORITIES [FN*]

*Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974)* ... 14

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN*]*Board of Trustees of Hotel & Restaurant Employees' Local 25 v. Madison Hotel, 97 F.3d 1479 (D.C. Cir. 1996)* ... 7,9

*Bowden v. United States, 106 F.3d 433 (D.C. Cir. 1997)* ... 7,15,16

*Ciralsky v. CIA, 355 F.3d 661 (D.C. Cir. 2004)* ... 20

*Ellzey v. United States,* 324 F.3d 321 (7th Cir. 2003) ... 19

*Foretich v. American Broadcasting Co., Inc., 198 F.3d 270 (D.C. Cir. 1999)* ... 12

*Gilvin v. Fire, 259 F.3d 749 (D.C. Cir. 2001)* ... 6

[FN*]*Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994)* ... 7,9,17,20

*Maegdlin v. International Association Machinists & Aerospace Workers, 309 F.3d 1051 (8th Cir. 2002)* ... 19

*Massie v. United States, 166 F.3d 1184 (Fed. Cir. 1999)* ... 12

*Moore v. City of Harriman, 272 F.3d 769 (6th Cir. 2001)* ... 19

*Mutual of Omaha Insurance Co. v. National Association of Government Employees, Inc., 145 F.3d 389 (D.C. Cir. 1998)* ... 12

*Nation Magazine v. U.S. Customs Service, 71 F.3d 885 (D.C. Cir. 1995)* ... 6

*Oil, Chemical & Atomic Workers Intern. Union, AFL-CIO v. Department of Energy, 288 F.3d 452 (D.C. Cir. 2002)* ... 11

*Pigford v. Veneman, 292 F.3d 918 (D.C. Cir. 2002)* ... 11

***iv** *Pilon v. University of Minnesota, 710 F.2d 466 (8th Cir. 1983)* ... 14

[FN*]*Saksenasingh v. Secr'y of Education, 126 F.3d 347 (D.C. Cir. 1997)* ... 7,15

[FN*]*Shaffer v. Veneman, 325 F.3d 370 (D.C. Cir. 2003)* ... 5,9,10,20

*United States v. Allegheny-Ludlum, 517 F.2d 826 (5th Cir. 1975)* ... 14

[FN*]*United States v. Hicks, 283 F.3d 380 (D.C. Cir. 2002)* ... 19

*Waters v. Rumsfeld, 320 F.3d 265 (D.C. Cir. 2003)* ... 5,6

STATUTES

28 U.S.C. § 1291 ... 1

28 U.S.C. § 1346(a)(2) ... 6

FN* Cases chiefly relied upon are marked with asterisks.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***vi** RELEVANT STATUTES

The relevant statutory provisions in this case appear in the Tucker Act, 28 U.S.C. § 1491(a)(1), and the so-called Little Tucker Act, 28 U.S.C. § 1346(a)(2), which are reprinted below:

28 U.S.C. § 1491(a)(1) provides:

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

28 U.S.C. § 1346(a)(2) provides:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

...

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

***vii** ISSUES PRESENTED

In the opinion of Appellees, the following issues are presented:

1. Whether the District Court had subject-matter jurisdiction to hear a claim for enforcement of a settlement agreement which resolved an administrative complaint of employment discrimination.

2. Whether a claim for enforcement of a settlement agreement, which resolved an administrative claim of employment discrimination, is time-barred where plaintiff filed her original complaint within ninety days of the right to sue letter but failed to mention the settlement agreement or allege breach thereof until her amended complaint, which was not filed until fifteen months after issuance of the right to sue letter.

***1** STATEMENT OF JURISDICTION

Appellant asserted jurisdiction in the District Court under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16, and 42 U.S.C. § 1981. This Court has jurisdiction under 28 U.S.C. § 1291.

COUNTER-STATEMENT OF THE CASE

Appellant, Yvonne S. Brown, an employee in the Food Safety and Inspection Service

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the United States Department of Agriculture, brought this action against the United States of America and Ann Veneman, in her official capacity as Secretary of Agriculture. In her amended ***2** complaint, Appellant asserted claims based upon: (1) Title VII of the Civil Rights Act of 1964; (2) breach of contract; and (3) 42 U.S.C. § 1981. Appellant's first claim stemmed from employment discrimination allegedly occurring between 1994 and 1998 and her second and third claim stemmed from the Appellee's alleged breach of the written Settlement Agreement executed by the parties to resolve her discrimination claims.

Factual Background

The underlying discrimination allegations consist of (1) a non-selection on the basis of race and sex for a position posted in late 1993, and (2) retaliatory work assignments and other unspecified denial of "employment opportunities." *See* First Amd. Compl. at 3-4. The Amended complaint does not specify the date of the non-selection, when Appellant learned of it, or when Appellant filed her administrative complaint with the USDA's EEO office. The Amended complaint does not specify what stage Appellant's EEO claim had reached as of May 11, 1998, when the parties executed the Settlement Agreement at issue in this appeal.

Under the Settlement Agreement Appellant agreed to withdraw her 1994 EEO charge and waive all complaints or actions "for any matters involving her employment with the Agency, prior to the signing of this agreement." The Agency agreed to provide a mentor to Appellant, to assist her in formulating a written Career Development Plan ("CDP"), and to provide a detail to a GS-14 position for a period not to exceed 120 days. Each party agreed to "[c]ooperate and communicate in good faith to implement and to abide by the terms of this agreement."

In addition, the Settlement Agreement specified Appellant's rights in the event that the Agency breached the Settlement Agreement:

[The parties agree t]hat if the terms of this agreement are not carried out, through ***3** no fault of the Complainant, the Complainant may request enforcement of the terms of the agreement, *or* that the complaint be reinstated at the point at which it was closed by this agreement. This request must be filed within 30 days of the alleged failure to implement this agreement with the Director, Complaint Compliance Division, Office of Civil Rights, USDA .... Thereafter, the processing of the alleged breach claim shall be in accordance with 29 C.F.R. Part 1614.

App. Ex. A at 3 (emphasis in original). The record does not indicate whether the Agency ever issued a final agency decision regarding Appellant's EEO complaint, and if so when, nor does the record specify "the point at which [her complaint] was closed" by the May 11, 1998, execution of the Settlement Agreement.

In April 2000, Appellant submitted a letter to USDA claiming that the Agency had breached the Settlement Agreement. The USDA's Director of the Office of Civil Rights reviewed the charge of noncompliance charge and concluded that the Agency was in substantial compliance:

It is clear that a formal CDP has not been completed. However, it is not because of the lack of effort by the Agency. Ms. Brown began to delay immediately after her return from leave, and developed a pattern of canceled meetings and lack of initiative to move forward. She identified four particular courses she wanted. The Agency determined the content and provided the same content in other local courses. Ms. Brown refused to accept this action, or provide other options. In fact, the Agency acted to ensure her enrollment by obtaining an extension of the application period, and prepared documents for her. She did not complete them nor discuss any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

concerns with the Agency .... [W]e find that Ms. Brown has not met her obligation to work in good faith with the Agency on this term.

The Agency's EEO office thus denied Appellant's charge that the Agency had breached the Settlement Agreement, in a decision issued September 14, 2000.

Appellant then appealed to the Equal Employment Opportunity Commission ("EEOC"). On November 14, 2001, the EEOC's Office of Federal Operations ("OFO") issued a decision ***4** concluding that the Agency had not breached the terms of the Settlement Agreement. The EEOC informed Appellant that she had ninety days to seek review of its decision in federal district court.

Procedural History

On February 15, 2002, the last day in the ninety days from the EEOC ruling, Appellant did file a lawsuit in District Court, but her original complaint failed to include a breach of contract claim. The original complaint did not include any mention of the existence of the Settlement Agreement or any actions suggesting breach thereof. Instead, her original complaint in District Court simply alleged the underlying discrimination and retaliation allegations related to her 1994 EEO charge.

In August 2002, the government moved to dismiss Appellant's original complaint. The government argued that Appellant's discrimination and retaliation claims were precluded by the May 1998 Settlement Agreement, which was binding on Appellant and barred her from proceeding with her action.

Appellant then sought and obtained leave to amend her complaint. In her Amended complaint, filed in February 2003 (a year after she filed her original complaint), Appellant for the first time made the Settlement Agreement part of her case by alleging its existence and breach by the Agency. The amended complaint alleged separate causes of action based on breach of contract and 42 U.S.C. § 1981. In addition, the amended complaint also alleged a cause of action based directly on the underlying Title VII claims, though it did not allege when Appellant brought her claims to the Agency's EEO office, nor whether the Agency ever issued a final agency decision regarding her discrimination claims.

***5** The government moved to dismiss the amended complaint and by Memorandum Opinion and Order dated July 9, 2003, the Honorable Rosemary M. Collyer granted the motion, accepting the government's arguments. This appeal followed.

In this Court, Appellees moved for summary affirmance on all claims. The Court granted the motion in part and denied in part by order dated February 20, 2004. The Court affirmed dismissal of Appellant's claim based on section 1981. The Court denied summary affirmance regarding Appellant's claims based on Title VII and breach of the Settlement Agreement, and requested that the parties address in their briefs the issue of the District Court's jurisdiction in light of *Shaffer v. Veneman,* 325 F.3d 370 (D.C. Cir. 2003), and *Waters v. Rumsfeld,* 320 F.3d 265, 270 (D.C. Cir. 2003), both of which bear on the issue of whether the District Court may exercise jurisdiction over claims for breach of a settlement agreement in light of the Tucker Act.

SUMMARY OF ARGUMENT

The parties agree that the District Court lacked jurisdiction over the breach of contract claim, and the relevant case law uniformly supports that conclusion. As for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Appellant's Title VII claim, it cannot be brought as independent cause of action, consistent with the Settlement Agreement, because to permit Appellant to revive her underlying discrimination claim unilaterally--that is, without first having to prove breach in court--would render the Settlement Agreement illusory. Therefore, her Title VII claim must begin as an action based on the Settlement Agreement and again the District Court lacked jurisdiction for such a claim.

Alternatively, even if the District Court did have jurisdiction, Appellant's claims are untimely because she did not file the amended complaint until fifteen months after the EEOC decision that found that the Agency did not breach the Settlement Agreement. Appellant's ***6** argument that her discrimination claim was filed in a timely manner because it was filed ninety days after the EEOC rejected her allegations of breach, where the EEOC decision said nothing about her underlying discrimination claims, simply makes no sense and is not consistent with her rights under the Settlement Agreement.

ARGUMENT

I. Standard of Review

This Court reviews the District Court's dismissal *de novo. See* *Gilvin v. Fire*, 259 F.3d 749 (D.C. Cir. 2001); *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 889 (D.C. Cir. 1995).

II. The District Court Lacked Subject-Matter Jurisdiction Because Tucker Act Provides for Exclusive Jurisdiction in the Court of Federal Claims.

A. Appellant's Breach of Contract Claim.

The jurisdictional provisions of the Tucker Act are straight-forward and clear--for contract claims involving more than $10,000, the Court of Federal Claims has exclusive jurisdiction, and for contract claims under $10,000, the District Court and the Court of Federal Claims have concurrent jurisdiction. *See* 28 U.S.C. § 1346(a)(2) (District Court jurisdiction, so called "Little Tucker Act") and § 1491(a)(1) (Court of Federal Claims, "Tucker Act"). The preliminary jurisdictional issues, therefore, are whether this action constitutes an action for breach of contract, and if so whether the action involves more than $10,000.

There is no dispute that this action involves more than $10,000, since the operative complaint seeks damages in excess of $350,000. *See* First Amd. Compl. at 8. *See also* Appellant Brief at 8-10 (admitting exclusive Tucker Act jurisdiction). *Accord* ***7***Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003) (exclusive Court of Claims jurisdiction for statutory, noncontractual claim for over $10,000 under Fair Labor Standards Act).

Nor is there any dispute that the Settlement Agreement reached by the parties at the administrative level constitutes a contract within the meaning of the Tucker Act. Appellant concedes as much in her brief. *See* Appellant Brief at 8- 10. Moreover, this Court routinely and uniformly treats both administrative settlements and settlements of lawsuits as contracts. *See, e.g.*, *Saksenasingh v. Secr'y of Education*, 126 F.3d 347, 348-49 (D.C. Cir. 1997) (administrative settlement); *Bowden v. United States*, 106 F.3d 433, 436 (D.C. Cir. 1997) (administrative settlement); *Bd. Trustees of Hotel & Restaurant Employees' Local 25 v. Madison Hotel*, 97 F.3d 1479 (D.C. Cir. 1996) (settlement of lawsuit).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For the more precise issue of whether the Tucker Act requires that jurisdiction be vested solely with the Court of Federal Claims for such contract actions, the analysis properly begins with the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994). That case involved a contract dispute between an insurance company and one of its agents who sued the company in state court for breach of the parties' agency agreement. After the company removed the case to federal district court (on the basis of diversity jurisdiction), the parties settled and the district court noted the settlement in its order dismissing the case with prejudice. The company subsequently filed a motion to enforce the settlement, which the court granted. The Ninth Circuit affirmed. *See id.* at 376-77.

The Supreme Court reversed on jurisdictional grounds. The Court rejected the lower courts' invocation of "inherent power" to entertain such a motion to enforce, *id.* at 377, and noted instead that "Federal courts are courts of limited jurisdiction." *Id.*

***8** It must be emphasized that what respondent seeks in this case is enforcement of the settlement agreement, and not merely reopening of the dismissed suit by reason of breach of the agreement that was the basis for dismissal. ... Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.

*Id.* at 378. The Court noted that the parties did not provide for continuing district court jurisdiction over the settlement by including an appropriate provision in the dismissal order, though they could have done so:

If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. ... [W]e think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract [,] if the parties agree.

*Id.* at 381-82 (emphasis in original).

The *Kokkonen* Court further analyzed whether the doctrine of ancillary jurisdiction applied, summarizing the doctrine as reaching two broad categories of cases: (1) those where claims for which the court has jurisdiction are "in varying respects and degrees, factually interdependent" with other claims for which the court has jurisdiction; and (2) where jurisdiction will "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]" *Id.* at 379-80.

The Court then rejected both possible bases for ancillary jurisdiction. First, the Court quickly disposed of the "factually interdependent" theory: "As to the first, the facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other[.]" *Id.* at 380.

The Court rejected the second basis for ancillary jurisdiction (effectuate decrees) because ***9** the terms of the parties' settlement were not

made part of the order of dismissal--either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here. The judge's mere awareness and approval of the terms of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

settlement agreement do not suffice to make them part of his order.
*Id.* at 381.

In this case, Appellant's claims parallel those rejected in *Kokkonen* in all relevant aspects. There is no ancillary jurisdiction under the "factually interdependent" prong because the breach claims involve post-1998 conduct, viewed through the lens of contract law, whereas the underlying discrimination claims involve 1993-98 conduct, viewed through the lens of Title VII. It bears noting how summarily *Kokkonen* rejected this theory of ancillary jurisdiction: "The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit[.]" 511 U.S. at 381. *Accord* *Shaffer,* 325 F.3d at 373 (rejecting the inter-related prong in a single sentence).

Similarly, there can be no ancillary jurisdiction under the second prong--effectuate decrees--because the Settlement Agreement was not made part of a District Court order for the simple reason that the parties executed the Settlement Agreement in 1998, years before Appellant sued in District Court. There was no court order or decree to be "effectuated."

This Court has had several occasions to apply *Kokkonen*, first in *Board of Trustees of Hotel & Restaurant Employees' Local 25 v. Madison Hotel,* 97 F.3d 1479 (D.C. Cir. 1996). The parties in *Madison Hotel* settled their lawsuit under the Employee Retirement Income Security Act ("ERISA") and their settlement agreement was referenced in the district court's dismissal ***10** order. The plaintiffs later sued the Hotel for failing to make certain payments required in the settlement and the district court dismissed for lack of jurisdiction. *Id.* at 1480.

The Court framed its analysis around *Kokkonen* but reversed. The Court did not reach the issue of ancillary jurisdiction, finding "that the district court had independent federal subject matter jurisdiction over the second suit." *Id.* at 1483. The Court found that because the terms of the settlement sounded so deeply in ERISA-based concepts, enforcement of the settlement necessarily required interpretation of a federal statute:

Any enforcement of the settlement agreement between the Funds and the Hotel indisputably requires an application of federal ERISA law, over which the federal courts exercise exclusive and preemptive jurisdiction.

*Id. See also id.* at 1484 (distinguishing the holding in *Kokkonen* on that basis). For example, the settlement agreement gave plaintiffs "rights to remedies enumerated and defined in the ERISA law itself[.]" *Id.* at 1485. Thus, *Madison Hotel* provides for district court jurisdiction where the terms of the settlement agreement reflect or incorporate federal statutory terms to such an extent that judicial interpretation of the settlement agreement necessarily constitutes interpretation of substantive federal law.

This Court applied this same standard in *Shaffer v. Veneman,* 325 F.3d 370 (D.C. Cir. 2003), but came to the opposition conclusion because the settlement agreement in that case did not rely on statutory terms. In *Shaffer*, the parties were involved in multiple cases under the Equal Credit Opportunity Act ("ECOA") (part of the *Pigford* cases). Their settlement agreement required the USDA to forgive plaintiff's debt, provide financial aid and technical assistance, and pay a sum of money to plaintiff. The agreement was not made part of the district court's dismissal order. Plaintiff sued for enforcement and the district court dismissed for lack of ***11** jurisdiction. *Id.* at 371- 72.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Court affirmed. The Court analyzed its prior holding in *Madison Hotel* at some length, explaining that it did not establish a rule that settlement of any federal statutory claim brings the settlement agreement under the district court's jurisdiction for an enforcement action:

We do not read Madison Hotel so broadly. In that case we held that the district court had subject matter jurisdiction over a settlement agreement that resolved claims arising under the ERISA statute because "enforcement of the settlement agreement ... will almost inevitably require construction and application of specific ERISA provisions which define the scope of the employer's contribution obligations and the Funds' legal entitlements on default." [citing *Madison Hotel* at 1485.]

...

Unlike the settlement agreement in Madison Hotel, which "referred to and reserved the Funds' right to pursue their rights to remedies enumerated and defined in the ERISA law itself," 97 F.3d at 1485, the Agreement here does not incorporate any part of either the ECOA or the APA; it merely settles the ECOA and the APA claims in return for certain specified consideration. Indeed, Shaffer is unable to point to a single provision of either the ECOA or the APA that a court would have to interpret in order to resolve this case. Shaffer's claims involve only straightforward contract issues, such as whether the Government failed to pay him monies due and whether the denial of Shaffer's Year 2000 loan violated the Agreement.

*Id.* at 372-73. Thus *Shaffer* sets exactly the same standard as *Madison Hotel*--both look to whether judicial interpretation of the settlement agreement necessarily constitutes interpretation of substantive federal law.

The other decisions of this Court that cite *Kokkonen* are fully consistent on the jurisdictional issue, to the more limited extent that they reach it. *See, e.g., Pigford v. Veneman, 292 F.3d 918, 923-26 (D.C. Cir. 2002)* (rejecting "inherent" judicial authority theory, citing *Kokkonen*); *Oil. Chemical & Atomic Workers Intern. Union, AFL-CIO v. Dep't of Energy, 288 F.3d 452, 460 (D.C. Cir. 2002)* (citing *Kokkonen* for lack of jurisdiction over private settlement ***12** agreements not incorporated into court orders); *Foretich v. American Broadcasting Co., Inc., 198 F.3d 270, 273-74 (D.C. Cir. 1999)* (finding jurisdiction under *Kokkonen* because issue of fees under FOIA was sufficiently intertwined with costs under settlement agreement); *Mutual of Omaha Ins. Co. v. National Ass'n of Government Employees, Inc., 145 F.3d 389 (D.C. Cir. 1998)* (remanding for determination of jurisdiction in light of *Kokkonen*).

In the case at bar, *Shaffer*, *Waters,* and *Madison Hotel* compel the finding that the District Court lacked jurisdiction. There is no independent basis for jurisdiction under *Shaffer* because the Settlement Agreement merely requires the agency to provide a mentor, to assist in completing a Career Development Plan, and to detail Appellant to a certain kind of GS-14 position for at least 120 days. Nothing in the Settlement required the District Court to engage in the sort of interpretation of substantive federal law like that necessary in *Madison Hotel* and its settlement's ERISA provisions.

It seems prudent at this point to inquire whether the Federal Circuit has a similar view of the jurisdictional issue, and that court's decision in *Massie v. United States, 166 F.3d 1184 (Fed. Cir. 1999)*, confirms that it does. That case involved settlement of an administrative claim under the Military Claims Act for injuries to a newborn baby at a naval hospital. The child's mother sued in the Court of Federal Claims to enforce the agreement, claiming that the government breached by not paying

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the money promised. *Id.* at 1186-87.

The Federal Circuit squarely addressed the jurisdictional issue under the Tucker Act. *Id.* at 1187-89. The court found that the Tucker Act applies to administrative settlements generally and that, even though Congress "strip[ped] the Court of Federal Claims of jurisdiction" over the underlying administrative claim pursuant to the MCA, "the MCA does not address the breach of ***13** agreements to pay MCA claims." *Id.* at 1188. In contrast to the underlying MCA claim,

[a]n agreement to pay an MCA claim presumptively satisfies the Tucker Act because "any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government."

*Id.* Therefore, the case law uniformly indicates that the District Court below lacked jurisdiction to hear Appellant's breach of contract claim. Appellant agrees also.

B. Appellant's Title VII Claim.

Appellant cannot evade the jurisdictional defect by trying to revive her underlying discrimination claim directly, as if unhinged from the Settlement Agreement. *See* Appellant Brief at 11-12. The fatal problem with this theory is that Appellant must first plead and then prove that the agency breached the Settlement Agreement before that same contract would permit her to revive her underlying discrimination claim: "if the terms of this agreement are not carried out, through no fault of the Complainant, the Complainant may request ... that the complaint be reinstated[.]" *See* Settlement Agrt. at 3. The Settlement Agreement further specifies that her "request" to revive her discrimination claim must go through 29 C.F.R. Part 1614, which provides for complaint to the Agency's EEO office, with an optional appeal to the EEOC. Appellant brought a claim of breach of the Settlement Agreement to these offices, and both *rejected* her claim of breach. Although it is conceivable that Appellant might argue that the Settlement permitted her to revive her underlying discrimination claim if either of those offices had found breach by the Agency, she cannot credibly maintain that the Settlement Agreement permits her to revive her discrimination claim in the absence of any finding of breach.

***14** Such a reading would also render the administrative process under Part 1614 a mere formality. After all, in April 2000, Appellant brought a claim of *breach* to the Agency's EEO office and the EEOC--not her underlying claim of discrimination. The decision by the EEOC in November 2001 did not discuss the underlying discrimination claim. Instead, it concerned (and rejected) only Appellant's claim that the Agency breached the Settlement Agreement. For Appellant to claim that her underlying discrimination claim is timely because she filed it ninety days (exactly) after the November 2001 EEOC decision makes no sense because that decision did not address the discrimination claim. Appellant brought her discrimination claim to the District Court having exhausted administrative remedies for a different claim-- breach of the Settlement Agreement. [FN1]

FN1. In addition, the Settlement Agreement permits Appellant only to "reinstate[ the discrimination complaint] *at the point at which it was closed* by this agreement." *See* Settlement Agrt. at 3 (emphasis added). The amended complaint does not allege what point the complaint had reached in the administrative process at the time the parties signed the Settlement

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Agreement.

To permit that would be to permit her to revive her discrimination claim unilaterally, which would render the Settlement Agreement a merely illusory contract from the Agency's perspective. *Cf.* *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52 (1974) ("[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement[.]"); *Pilon v. University of Minnesota,* 710 F.2d 466, 468 (8th Cir. 1983) (upholding release of discrimination claims); *United States v. Allegheny-Ludlum,* 517 F.2d 826, 858-59 (5th Cir. 1975) (same). *See also* 29 C.F.R. § 1614.504(a) ("Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the [EEO] process shall be binding on both parties.").

***15** Appellees respectfully suggest that this Court's decision in *Saksenasingh v. Secr'y of Education,* 126 F.3d 347 (D.C. Cir. 1997), confirms that Appellant should be required to prove breach of the Settlement Agreement before she may revive her discrimination claim. The Court in *Saksenasingh* reversed dismissal of an action to enforce an administrative settlement of a discrimination claim. The settlement provided that if the agency breached the agreement, "the complaint may be reinstated, upon the written request of the Complainant, at the point processing ceased." *Id.* at 349. The Court rejected the agency's argument that this language in the settlement gave the agency the sole and controlling authority to determine whether the agency had breached the agreement and so to permit the complaint to be reinstated. The Court reasoned that such a reading would have rendered the reinstatement provision illusory from the complainant's perspective: "On this reading, the agreement conferred no right of reinstatement whatsoever on Saksenasingh." *Id.*

To avoid the result of an illusory contract, the Court in *Saksenasingh* held that in an action based on a settlement agreement, the threshold issue to be resolved by the fact-finder is whether the Agreement was in fact breached. The Court emphasized that the judicial fact-finder is to make the initial determination of breach, not one of the parties to the agreement:

> Where a party raises a settlement agreement as a defense, the District Court must factually determine the issues surrounding the agreement. *See* *Bowden v. U.S.,* 106 F.3d 433, 439 (D.C. Cir. 1997) (District Court resolves factual issues regarding Title VII settlement agreement). Faced with Saksenasingh's assertion of her original discrimination complaint and the Department's defense that the settlement Agreement barred the suit, the judge or jury in the District Court, depending upon the circumstances, should have determined, as a threshold matter, whether in fact the Department had breached the settlement agreement. No deference was owed to the Department on this question. It was for the judge or jury to decide whether the agreement had been breached. Because this threshold issue was not decided, we must reverse and remand the case for further ***16** proceedings.

126 F.3d at 350. This reasoning applies equally well to both sides of a settlement--neither side should have unilateral authority to declare a breach and implement the remedies set forth in the agreement. (Indeed, in *Saksenasingh*, *plaintiff* arguably could have had unilateral authority to revive her claim under the literal language of the parties' agreement in the absence of the threshold requirement to prove breach in court.) Therefore, the first step should be for a court of competent jurisdiction to determine whether a breach in fact occurred.

The Court's decision in *Saksenasingh* did not address subject matter jurisdiction

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and so did not analyze *Kokkonen* or *Madison Hotel*, the jurisdictional decisions discussed above that pre-dated it. [FN2] The rule from *Saksenasingh* should nonetheless command respect because its reasoning makes sense for settlement agreements generally, regardless of whether the provisions of the agreements sound in federal statutory terms and concepts. Fundamentally, the rule from *Saksenasingh* prevents parties to settlements from having the unilateral power to declare breach. The rule should be modified, of course, to the extent that it purports to require "the District Court," 126 F.3d at 350, to make the determination of breach, in light of the conclusion that the Court of Federal Claims will have exclusive jurisdiction (for claims over $10,000). *Cf.* Plf. Opp. Mot. Dismiss [original complaint] at 6 (arguing that *Saksenasingh* requires the District Court first to determine whether the Settlement was breached).

FN2. The *Saksenasingh* decision cites only *Bowden* in the relevant portion of its analysis, but *Bowden* similarly involves a Title VII settlement agreement with no provisions requiring statutory interpretation and similarly does not discuss the jurisdictional issue under the Tucker Act. *See* *Bowden,* 106 F.3d at 437-41.

Moreover, *Saksenasingh* is fully consistent with the jurisdictional decisions cited herein ***17** in that they all reinforce the need to protect the ability of parties to bargain to the result of no district court jurisdiction over a settlement if they so desire. *See, e.g.,* *Kokkonen,* 511 U.S. at 381 ("If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so.) (emphasis in original); *pigford,* 292 F.3d at 925 ("To hold now that the district court, through either some "ancillary" authority to enforce the decree absent a violation or some "inherent" authority to interpret it, may permit extensions of Track B deadlines would not only deny the Department the benefit of its bargain, but would also discourage settlements. Who would sign a consent decree if district courts had flee-ranging interpretive or enforcement authority untethered from the decree's negotiated terms?"). Even where the dispute had already moved into federal court before being settled, the courts expressly carve out room for parties to bargain for an agreement that leaves no district court jurisdiction over their agreement. Indeed, the presumptive baseline from *Kokkonen* and *Shaffer* is that there is no continuing jurisdiction unless the parties provide for it. Where, as here, the dispute was settled before it ever reached federal court and there was thus no underlying federal court order to be effectuated, this presumption should be irrebuttable.

It does not matter whether Appellant sought to avail herself of the Settlement Agreement's option to "request enforcement" of the Settlement Agreement or the option to "request ... that the complaint be reinstated[.]" Either way, she had to plead and prove breach for her claim to proceed. The Settlement Agreement conferred no stand-alone right for Appellant to revive her claim at will, and the District Court lacked jurisdiction to hear the threshold claim of breach of contract.

***18** III. Appellant's Claims Based on Breach of the Settlement Agreement and Discrimination Were Properly Dismissed as Time-Barred.

Prior to bringing a civil action to enforce a settlement of a Title VII claim, a plaintiff must first seek relief through the agency's EEO administrative process. *See generally* 29 C.F.R. § 1614.504. Thereafter, a plaintiff may file a civil action in federal district court within 90 days of receipt of the right-to-sue letter from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

either the agency's EEO office or the EEOC if the claimant appeals first to the EEOC. *See* 29 C.F.R. § 1614.405(b) and 1614.407(a) (final agency action) and (c) (EEOC appeal). This scheme was set forth in the Settlement itself: any claim for a breach "shall be [processed] in accordance with 29 C.F.R. Part 1614." *See* Settlement Agreement at 3. Those regulations provide that the decision of the EEOC's OFO is final unless the complainant timely seeks reconsideration or judicial review. See 29 C.F.R. § 1614.405(b)). The regulations also provide that the complainant must seek judicial review within ninety days of receiving the EEOC's final decision. *See* 29 C.F.R. § 1614.407.

Appellant did not raise her claim of breach of the Settlement until fifteen months after receipt of the right-to-sue letter from the OFO. As the District Court correctly found, this was well past the 90-day limitations period and grounds for dismissal of the claim for enforcement of the Settlement. *See* Mem. Op. at 7-8. Appellant makes no argument for equitable tolling of the limitations period.

Appellant's only argument that her enforcement claim was filed in a timely manner is that her enforcement claim "relates back" to the claim in her original complaint, which sought to revive her underlying discrimination claim. *See* Appellant Brief at 10-11. Under Rule 15(c)(2), an amended pleading relates back to the original if "the claim or defense asserted in the amended ***19** pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

Appellant's enforcement claim does not fit within the language of Rule 15(c)(2) because the relevant "conduct, transaction, or occurrence" is the post-Settlement actions allegedly constituting breach. Appellant's original complaint neither set forth nor attempted to set forth any factual allegations relating to breach of the Settlement; indeed, her original complaint completely omitted the fact that the Settlement existed. *See* Compl. *passim.*

This Court, like the various circuit courts, reads Rule 15(c)(2) to focus more on the factual allegations than on the legal theories in the amended pleading but this focus most frequently occurs within the context of applying a statute of limitations to a new claim, and the courts are reluctant to permit stale claims to resurface through Rule 15(c). *See, e.g., United States v. Hicks.* 283 F.3d 380, 388 (D.C. Cir. 2002) ("Accordingly, while amendments that expand, upon or clarify facts previously alleged will typically relate back, those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously"); *accord Ellzey v. United States,* 324 F.3d 321,326 (7th Cir. 2003) ("facts rather than legal arguments define the 'claim"'); *Maegdlin v. Int'l Ass'n Machinists & Aerospace Workers.* 309 F.3d 1051, 1052-53 (8th Cir. 2002) ("rationale behind Rule 15(c)(2) is that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide,"' quoting *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149-50 n.3 (1984)); *Moore v. City of Harriman,* 272 F.3d 769, 774 (6th Cir. 2001) (permitting amendment to add Bivens claim by prisoner claim where he had already sued defendant in official capacity and the factual allegations were essentially the same as in the ***20** original complaint.); *cf. Kokkonen,* 511 U.S. at 381 (holding, for purpose of ancillary jurisdiction, that the "facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit[.]"); *Shaffer.* 325 F.3d at 373 (same). The amended complaint's claims based on the Settlement Agreement--both its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

breach of contract claim and its discrimination claim--do not relate back to the original complaint because the original complaint omitted all mention of the Settlement Agreement and any allegation of its breach.

Appellant selectively quotes from *Ciralsky v. CIA,* 355 F.3d 661 (D.C. Cir. 2004), and argues that the Court there "held that when a complaint is timely filed, 'subsequent amendments [sic] are also regarded as timely filed."' *See* Appellant Brief at 10 (quoting 355 F.3d at 672). The *Ciralsky* opinion does not establish such a broad rule, as is made clear by its citation, immediately following the language quoted by Appellant, which clarifies that Rule 15(c) provides for relating back only "under specified circumstances," *see* 355 F.3d at 661, namely those in the Rule and explained above.

In sum, Appellant convened her discrimination claims into contract claims by executing the Settlement Agreement. The District Court lacked subject matter jurisdiction to hear those claims, but even if it had jurisdiction, Appellant's time to enforce those claims expired in the several months during which she hid from the District Court the existence of the Settlement Agreement.

***21** CONCLUSION

WHEREFORE, Appellees respectfully submit that the judgment of the District Court should be affirmed.

Yvonne BROWN, Appellant, v. UNITED STATES OF AMERICA, et al., Appellees.
2004 WL 1656658

**Briefs and Other Related Documents (Back to top)**

- 2004 WL 1400004 (Appellate Brief) Brief of Appellant (Jun. 21, 2004)
- 03-5245 (Docket) (Sep. 11, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.