[ORAL ARGUMENT SCHEDULED FOR JANUARY 23, 2002]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 02-5009

LLOYD SHAFFER,

Plaintiff-Appellant,

v.

ANN M. VENEMAN,
Secretary, United States Department of Agriculture,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLEE

## STATEMENT OF JURISDICTION

The plaintiff filed suit in the United States District Court for the District of Columbia, asserting that the district court had jurisdiction under 28 U.S.C. § 1331, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1367. See Joint Appendix ("JA") 4. On July 17, 2001, the district court dismissed without prejudice three of plaintiff's four claims for lack of jurisdiction. JA 52-61. On

November 9, 2001, the district court dismissed with prejudice the remaining count and entered an order stating that the order of July 17, 2001 was a final and appealable judgment. JA 62. Plaintiff filed a timely notice of appeal on January 4, 2002. Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the district court properly dismissed for lack of subject matter jurisdiction plaintiff's suit against the United States Department of Agriculture for an alleged breach of a settlement agreement.

## STATUTES

A. The "Little Tucker Act," 28 U.S.C. § 1346(a), provides in pertinent part:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

* * *

> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

B. The Tucker Act, 28 U.S.C. § 1491(a), provides in relevant part:

> (a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages

> in cases not sounding in tort.
>
> * * *
>
> (2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.
>
> * * *

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition Below

Plaintiff-appellant Lloyd Shaffer ("Shaffer" or "plaintiff") filed a four-count complaint in the District Court for the District of Columbia, alleging that the United States Department of Agriculture ("USDA") breached a settlement agreement that the parties had individually concluded out of court. The USDA moved to dismiss Counts I, II, and IV for lack of subject matter jurisdiction. On July 17, 2001, the district court granted the government's motion. The court, after granting Shaffer's motion to dismiss Count III, entered an order on November 9, 2001, dismissing the suit.

### B. Statement of the Facts

1. Pigford Class Action

Shaffer is an African-American who lives and farms in Mississippi. JA 5. Over the course of almost thirty years, Shaffer has applied for and received assistance from

the USDA's Farm Service Agency in the form of operating loans. JA 5. In February of 1997, he filed an administrative claim with the USDA's Office of Civil Rights, alleging racial discrimination and other unfair treatment in the administration of his loan applications between 1992 and 1997. JA 5. Also in 1997, a class action, Pigford v. Glickman, Civil Action No. 97-1978 (PLF), was filed in the District Court for the District of Columbia, alleging racial discrimination by the USDA in violation of the ECOA and the APA. JA 6. Plaintiff joined the Pigford suit as a class member. JA 6. However, in January of 1999, Shaffer independently concluded an out-of-court settlement with the USDA, in which he agreed to opt out of the class action. JA 43-45. Prior to the settlement, Shaffer never filed an individual suit in the district court alleging violations of the ECOA and the APA by the USDA.

The remaining members of the Pigford class action concluded their suit in April of 1999 with the district court's approval of a consent decree. JA 14-42. The consent decree provided that, after court approval of the decree, the court would enter final judgment, pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), dismissing all claims in the litigation. JA 37-38, 40. The consent decree also included procedures for court enforcement. JA 35, 40. The court's order approving the consent decree, however, did not in any way reserve jurisdiction to enforce other settlement agreements. JA 14-42, 41 (noting that any agreement not contained within the consent decree shall not "be recognized or enforced").

2. Shaffer's Settlement Agreement

Shaffer's settlement agreement provided that the Secretary would pay him "$430,000, of which amount $80,000 shall be applied to income taxes the Shaffers shall incur as a result of this Agreement"; cancel all debts owed to the Farm Service Agency; pay Shaffer's enumerated creditors to retire certain private debts; pay his reasonable attorney's fees and costs; and "[t]o the extent legally permissible," provide Shaffer with priority financial and technical assistance, and priority consideration for acquisition of inventory land. JA 43-44. In return, Shaffer agreed to opt out of the Pigford suit, to release the Secretary of all claims for alleged discrimination or misconduct in the administration of farm programs, and to waive his right to challenge any decision regarding his previously filed administrative complaint with the USDA. JA 44-45.

Thereafter, Shaffer alleged that the USDA was failing to comply with the settlement agreement. Despite the fact that Shaffer was no longer a class member and his settlement with the USDA was concluded independently of the court, on March 10, 2000, he filed a motion in the Pigford class action to enforce his private settlement agreement with the USDA. The district court, determining that plaintiff was no longer a class member over which the court had continuing or ancillary jurisdiction, denied Shaffer's motion without prejudice on April 24, 2000. JA 46-51. Shaffer did not appeal.

3. Shaffer's Suit in District Court

On July 24, 2000, Shaffer filed a four-count complaint in the district court against the Secretary, alleging that the USDA had breached the settlement agreement, causing him "substantial financial damages." JA 4-11. He asserted that, inter alia, the USDA refused to pay him the $80,000 promised for income taxes, to extend him further financial credit, or to grant him access to lists of inventory land. JA 6-7. The first count requested a declaratory judgment and equitable relief in regard to appellant's eligibility for farm operating loans under the settlement agreement. Count II sought damages, as well as fees and costs, resulting from the USDA's alleged breach. Count III presented a claim for damages for alleged violations of the ECOA, and Count IV sought relief for violations of the APA. JA 4-11.

The USDA moved to dismiss Counts I, II, and IV for lack of subject matter jurisdiction. On July 17, 2001, the district court granted the USDA's motion to dismiss the three counts. JA 52-61. In its opinion, the district court recognized that because settlement agreements are contracts, "the Tucker Act, which jurisdictionally confines claims regarding government contracts in excess of $10,000 to the Court of Federal Claims . . . strips this Court of jurisdiction as such." JA 59-60. In addition, the court rejected plaintiff's reliance on the APA for jurisdiction, explaining that the APA does not apply to suits seeking money damages and "is not applicable to declaratory and injunctive relief when another statute prohibits such relief from being

sought in a particular court, as in the instant case." JA 60. Moreover, the court stated that even if it did possess jurisdiction, dismissal was appropriate because Shaffer "failed to establish standing to sue under the APA because he has not identified an independent statutory basis for relief, and has only based alleged authority on the Settlement Agreement over which the Court does not have jurisdiction." JA 60.

On November 9, 2001, the district court, on plaintiff's motion, dismissed Count III with prejudice and ordered that, as a consequence, the order of July 17, 2001 was a final judgment. JA 62. Shaffer filed a timely notice of appeal, challenging the dismissal of Counts I and II only.

## SUMMARY OF THE ARGUMENT

The district court properly dismissed for lack of jurisdiction Shaffer's suit for breach of a settlement agreement because jurisdiction over such actions is vested exclusively in the Court of Federal Claims.

The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims over contract claims against the government in excess of $10,000. Because a settlement agreement is a type of contract, Shaffer's suit against the USDA, alleging breach of a settlement agreement causing damages in excess of $10,000, falls within the exclusive jurisdiction of the Court of Federal Claims.

Although there is a limited exception to the Tucker Act's grant of exclusive jurisdiction, allowing a district court to exercise jurisdiction over consent decrees and

settlement agreements where the court has retained jurisdiction, this exception is not applicable in the instant case. The Supreme Court, in Kokkonen v. Guardian Life Insurance Company of America, 511 U.S. 375 (1994), held that ancillary jurisdiction does not extend so far as to automatically provide a district court with jurisdiction over a breach of settlement action merely because the dispute out of which the settlement arose was properly before the district court. The Court ruled that unless the parties or the court provide for retention of the district court's jurisdiction, either by including a retention of jurisdiction clause within the court's dismissal order or by incorporating the settlement agreement into the order, there must be an independent basis for the settlement enforcement suit to be heard in federal district court.

As the Pigford court has already determined, Shaffer, by opting out of the class action, was not a party to the consent decree over which that court had continuing jurisdiction. In addition, the district court did not issue any order retaining jurisdiction over Shaffer's private, out-of-court settlement agreement with the USDA.

Therefore, given the Tucker Act's exclusive grant of jurisdiction to the Court of Federal Claims, Shaffer can litigate his action in the district court only if he can provide an independent basis for that court's jurisdiction. Shaffer is unable to establish any such independent basis. Although he claims that the ECOA and the APA provide jurisdiction, the district court correctly held that this is not an action to enforce his rights under the ECOA or the APA. Rather, Shaffer's action is one for

breach of contract. Moreover, the ECOA and the APA do not waive sovereign immunity for contract actions, thereby precluding jurisdiction in the district court on the basis of these statutes.

As a result, because Shaffer cannot provide any independent basis for federal jurisdiction and the district court has not retained jurisdiction over his private settlement agreement, Shaffer's claim may be heard only in the Court of Federal Claims. Therefore, this Court should affirm the district court's dismissal of the suit for lack of jurisdiction.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for lack of subject matter jurisdiction. See Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth., 283 F.3d 339, 341 (D.C. Cir. 2002). In so doing, the court accepts the complaint's factual allegations as true. See Sloan v. U.S. Dep't of Hous. & Urban Dev., 236 F.3d 756, 759 (D.C. Cir. 2001).

# ARGUMENT

## I. THE DISTRICT COURT PROPERLY DISMISSED SHAFFER'S SUIT FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE TUCKER ACT VESTS EXCLUSIVE JURISDICTION OVER CONTRACT ACTIONS AGAINST THE GOVERNMENT IN THE COURT OF FEDERAL CLAIMS.

Shaffer's suit against the USDA alleges that the government has breached their private settlement agreement and seeks damages, in addition to other relief, well in excess of $10,000. As a result, Shaffer's claim for breach of contract falls squarely within the Tucker Act so that his suit may only be heard by the Court of Federal Claims.

### A. The Court of Federal Claims has exclusive jurisdiction over suits for breach of settlement agreements seeking amounts in excess of $10,000.

It is a well-settled principle of constitutional law that federal courts are courts of limited jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). They may exercise only as much jurisdiction as is granted to them under the Constitution and by Congress. See id. The plaintiff bears the burden of establishing the federal jurisdiction upon which his suit relies. See id. When a plaintiff sues the federal government, jurisdiction is also dependent upon a waiver of sovereign immunity. See FDIC v. Meyer, 510 U.S. 471, 475 (1994) (holding that scope of sovereign immunity limits court's jurisdiction); United States v. Mitchell,

463 U.S. 206, 212 (1983) (the United States' consent to be sued is a prerequisite for jurisdiction); First Va. Bank v. Randolph, 110 F.3d 75, 77 (D.C. Cir. 1997) (same).

The Tucker Act grants the United States Court of Federal Claims exclusive jurisdiction over "any claim against the United States founded," inter alia, "upon any express or implied contract with the United States," where the claim exceeds $10,000 in amount. 28 U.S.C. §§ 1491(a)(1), 1346(a)(2). Appeals from the Court of Federal Claims are heard exclusively by the Federal Circuit.[1] See 28 U.S.C. § 1295(a)(3). Congress intended, by granting original jurisdiction over contract claims against the government to the Court of Federal Claims and appellate jurisdiction to the Federal Circuit, to confine cases where government funds are at stake to one judicial body with particular expertise. See United States v. Hohri, 482 U.S. 64, 71 (1987) ("A motivating concern of Congress in creating the Federal Circuit was the 'special need for nationwide uniformity' in certain areas of the law."); Kidwell v. Dep't of the Army, 56 F.3d 279, 284 (D.C. Cir. 1995) (finding that a "primary purpose" of the Tucker Act is "to ensure that a central judicial body adjudicates most claims against the United

---

[1] If the amount sought does not exceed $10,000, the "Little Tucker Act," 28 U.S.C. § 1346(a), grants the district court concurrent jurisdiction with the Court of Federal Claims. 28 U.S.C. § 1346(a)(2). If a district court's jurisdiction is based on or in part on the Little Tucker Act, however, appeals may be heard only in the Federal Circuit. See 28 U.S.C. §1295(a)(2). When we refer to contract claims in the remainder of the brief, we are referring to claims exceeding $10,000 in amount, unless specified otherwise.

States Treasury"); Ingersoll-Rand Co. v. United States, 780 F.2d 74, 78 (D.C. Cir. 1985) (noting "congressional intent to provide a single, uniquely qualified forum for the resolution of contractual disputes").

The district court correctly held that the present case raises a contract claim for over $10,000, which must be heard in the Court of Federal Claims. "'[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.'" Massie v. United States, 166 F.3d 1184, 1188 (Fed. Cir. 1999) (quoting Trauma Serv. Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997)). Courts have consistently held that settlement agreements are contracts, and as such, fall within the Court of Federal Claims' exclusive Tucker Act jurisdiction (if the claims are in excess of $10,000). See, e.g., United States v. ITT Cont'l Banking Co., 420 U.S. 223, 238 (1975) (stating that settlement agreements are "to be construed for enforcement purposes basically as a contract"); Kasarsky v. Merit Sys. Prot. Bd., 296 F.3d 1331, 1336 (Fed. Cir. 2002) (asserting that a settlement agreement is a contract); Presidential Gardens Assocs. v. United States, 175 F.3d 132, 141-42 (2d Cir. 1999) (finding that suit over settlement agreement should be resolved in Court of Federal Claims); Massie, 166

F.3d at 1189 (affirming Claims Court's assertion of jurisdiction over settlement agreement arising out of claim under Military Claims Act); Village of Kaktovik v. Watt, 689 F.2d 222, 232 n.76 (D.C. Cir. 1982) ("We see no justification for a different interpretation of the Tucker Act for contracts which settle money claims against the United States."). Thus, a suit for breach of a settlement agreement, such as is asserted here, constitutes, within the meaning of the Tucker Act, a claim "founded" upon a contract. See Village of Kaktovik, 689 F.2d at 231 n.76 (noting that if the plaintiffs' settlement agreement had not been mutually rescinded so that their claim to enforce the agreement could be heard on its merits, only the Court of Federal Claims would have had jurisdiction under the Tucker Act).

**B. There is a limited exception to the Tucker Act when a district court retains jurisdiction over a settlement agreement through a court order.**

Although the Tucker Act vests exclusive jurisdiction over contract claims in the Court of Federal Claims, a district court may, nevertheless, exercise jurisdiction over a settlement agreement in two limited circumstances. Cf. Kidwell, 56 F.3d at 283 (noting that jurisdiction of Tucker Act is "exclusive" to extent statute grants jurisdiction only to one court). First, when a district court settles a case by a consent decree, the district court may retain jurisdiction to enforce the settlement. A consent decree, because it is not only a contractual settlement agreement between the parties,

but also an order of the court, see Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 378 (1992); Pigford v. Veneman, 292 F.3d 918, 923 (D.C. Cir. 2002), warrants different treatment from an ordinary contract. A federal district court possesses "inherent power" to enforce its orders. See, e.g., Pigford, 292 F.3d at 924 (court has jurisdiction to enforce consent decree insofar as terms of decree and court order provide); Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (court has inherent power to enforce its orders through civil contempt). Thus, when a plaintiff sues in district court alleging a breach of a consent decree entered by that court, the district court has inherent or ancillary jurisdiction to hear the case and enforce its own orders. See Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 282, 286 (D.C. Cir. 1993) (holding that trial court retains jurisdiction to enforce its consent decrees).

Second, a district court may issue an order that conditions dismissal of the case on compliance with the parties' private settlement agreement. See Kokkonen, 511 U.S. at 381. The district court could accomplish this by including a provision in the order that retains jurisdiction over the settlement agreement or by incorporating the settlement terms into the order. See id. at 381. Under either method, when a breach of the settlement occurs, the district court may invoke its inherent or ancillary jurisdiction to enforce its orders. See id. The district court's approval of a private

settlement agreement, though, by itself, is not sufficient to support jurisdiction in that court over a future claim for breach of contract. See Kokkonen, 511 U.S. 375, 381 (1994) ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.").

**C. When parties execute a private settlement contract and the district court dismisses the suit without explicitly retaining jurisdiction over the settlement agreement, the district court lacks jurisdiction over a subsequent suit for breach of the settlement unless there is an independent basis for federal jurisdiction.**

The court below correctly held that a district court lacks jurisdiction to hear a claim for breach of a private settlement agreement when the district court has dismissed the settled suit without conditioning the dismissal on compliance with the settlement agreement. Although the courts have disputed in the past how far ancillary or inherent jurisdiction extends, the Supreme Court, in Kokkonen v. Guardian Life Insurance Company of America, 511 U.S. 375 (1994), announced some clear limits on federal jurisdiction.

In Kokkonen, various state-law claims were pending before the district court on the basis of diversity jurisdiction, when the parties concluded a private settlement agreement and stipulated to an order dismissing the complaint. See id. at 376-77. The dismissal order did not mention the settlement agreement. See id. at 377. Thereafter, a dispute arose between the parties in regard to the settlement agreement. See id. at

377. The defendant insurance company filed a motion in the district court to enforce the agreement, which the plaintiff opposed, arguing that the district court lacked jurisdiction. See id. The district court, citing its "inherent power," granted the defendant's motion, and the Ninth Circuit affirmed. See id. The Supreme Court, however, reversed.

The Court explained that enforcement of the settlement agreement did not fall within the district court's inherent power to enforce its orders because enforcement of the settlement agreement was "more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." Id. at 378. In response to defendant's assertion of ancillary jurisdiction, the Court stated that "[n]o case of ours asserts, nor do we think the concept of limited federal jurisdiction permits us to assert, ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court." Id. at 380. The Court noted that "[t]he facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business." Id. at 381.

Accordingly, under Kokkonen, unless the parties or the court provide for retention of the district court's jurisdiction, either by including a retention of

jurisdiction clause within the court's dismissal order or by incorporating the settlement agreement into the order, there must be an independent basis for the settlement enforcement suit to be heard in federal district court. See id. at 381-82; see also Pigford v. Veneman, 292 F.3d 918, 924 (D.C. Cir. 2002) (stating that Kokkonen "teaches that district courts enjoy no free-ranging 'ancillary' jurisdiction to enforce consent decrees, but instead are constrained by the terms of the decree and the related order"); Mutual of Omaha Ins. Co. v. Nat'l Ass'n of Gov't Employees, Inc., 145 F.3d 389, 394 (D.C. Cir. 1998) (holding that Kokkonen "at least implies that district courts cannot enforce settlement agreements without some basis for jurisdiction of the underlying suit").

### D. Shaffer's suit for breach of the settlement agreement may only be heard in the Court of Federal Claims.

The limited exception to the Tucker Act's grant of exclusive jurisdiction does not apply in these circumstances. Shaffer's suit against the USDA alleges that the government has breached their private settlement agreement and seeks damages, in addition to other relief, in excess of $10,000. Shaffer's settlement agreement was not part of the Pigford consent decree. Rather, before the parties and the court arrived at the consent decree, Shaffer independently concluded his settlement agreement with the USDA, by which he agreed to opt out of the Pigford suit (and, therefore, any subsequent consent decree).

The only arguably relevant court order issued by the district court was the consent decree in Pigford. In the consent decree, the district court retained jurisdiction over the parties' compliance with the terms of the class action settlement, but explicitly rejected any intention to retain jurisdiction over private settlements that might have arisen out of similar claims to those at issue in the class action.[2] Shaffer opted out of the Pigford suit prior to the conclusion of the consent decree, however, so that he is not a party to the class action settlement. Shaffer's non-inclusion in the consent decree has already been determined by the Pigford court. Shaffer filed a motion in that court, seeking enforcement of his private settlement agreement with the USDA. The Pigford court, ruling that Shaffer was not a class member over which the court had jurisdiction, dismissed the motion. Shaffer did not appeal the Pigford court's determination that he was not a class member included in the consent decree.

Thus, under Kokkonen, Shaffer may not bring his breach of settlement claim in the district court unless he can establish an independent basis for the court's jurisdiction, including a waiver of sovereign immunity. See 511 U.S. at 381-82; FDIC v. Meyer, 510 U.S. at 475. As the district court correctly held, because Shaffer's

---

[2]Whether the district court, if it wanted to, could have legally retained jurisdiction in the consent decree over a separate private settlement agreement of a party that had opted out, is a dubious question, but one which the court need not address. See Kokkonen, 511 U.S. at 380.

action is one for breach of contract, over which state courts usually have jurisdiction, see Kokkonen, 511 U.S. at 382, no independent basis for federal jurisdiction in the district court exists.

## II. SHAFFER'S ARGUMENTS IN SUPPORT OF DISTRICT COURT JURISDICTION ARE WITHOUT MERIT.

### A. Settlement agreements are contracts under the Tucker Act and any challenges to a settlement agreement's validity may only be raised before the Court of Federal Claims.

Shaffer concedes that settlement agreements "are governed by principles of contract law," but seems to argue that his suit to enforce the settlement agreement does not qualify as a contract action within the meaning of the Tucker Act. See Brief for Appellant ("Br.") at 9. Plaintiff seems to imply that the settlement lacks consideration, and is therefore not a valid contract.[3] See Br. at 13.

The settlement agreement, however, has all the requisite contractual attributes, including consideration. The plaintiff has already received $430,000 under the settlement agreement, which constitutes consideration. As this Court has recognized, in a settlement agreement "[e]ach party agrees to extinguish those legal rights it

---

[3]Whether Shaffer is really asserting that the settlement agreement is not a valid contract for lack of consideration is unclear, given the language contained in his brief to this Court. See, e.g., Br. at 14 ("The consideration offered by Mr. Shaffer in exchange for the USDA's promises in their settlement agreement consisted of his relinquishment of his right to litigate his federal statutory claims.").

sought to enforce through litigation in exchange for those rights secured by the contract." Village of Kaktovik v. Watt, 689 F.2d 222, 230 (D.C. Cir. 1982).

Moreover, once the court has determined that there is a settlement agreement or contract sought to be enforced against the United States, jurisdiction lies in the Court of Federal Claims. That court then has jurisdiction to determine whether the settlement agreement is a valid binding contract under general principles of contract law. See Presidential Gardens, 175 F.3d at 141-42 (stating that Court of Federal Claims had jurisdiction under Tucker Act, but "[w]hether this Settlement Agreement qualifies as a valid contract remains to be established"). Thus, whether the settlement agreement at issue here is a binding contract is not a jurisdictional prerequisite, but rather a question on the merits, which should be resolved by the Court of Federal Claims.

In addition, Shaffer challenges the characterization of the settlement agreement as a contract action, arguing that the Tucker Act is only intended to apply to a limited class of contracts in which the government is acting like a private commercial actor. See Br. at 15 (citing Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981)). The language of the Tucker Act, itself, which contains no such limits to its coverage of contract actions, rebuts Shaffer's contention. Though "Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued" those

cases where the government "engages in purchase and sale of goods, lands, and services," Kania, 650 F.2d at 268 (emphasis added), the Tucker Act does not exclude other types of contracts. Such exclusion would undermine Congress' intent to have the Court of Federal Claims preside over most claims seeking funds from the federal government. See Kidwell v. Dep't of the Army, 56 F.3d 279, 284 (D.C. Cir. 1995). Even if Shaffer's contention had some merit, the government, by reaching a settlement with the plaintiff, is acting no differently here than a private entity.

**B. The district court does not automatically have jurisdiction over a settlement agreement merely because it settles a federal statutory claim.**

Shaffer attempts to discount the importance of Kokkonen by citing to an Eleventh Circuit case, Reed v. United States, 891 F.2d 878 (11th Cir. 1990), aff'g 717 F. Supp. 1511 (S.D. Fla. 1988), that pre-dates Kokkonen. Shaffer claims that Reed permits a district court to exercise jurisdiction over any settlement contract that extinguishes federal statutory claims. See Br. at 11. Because Shaffer's agreement settled claims that he allegedly could have asserted under the ECOA and the APA, Shaffer asserts that the district court has jurisdiction under the principle announced in Reed. See Br. at 11-14. Shaffer's understanding of Reed cannot be squared with the principles announced in Kokkonen.

In any event, however, Shaffer misinterprets Reed. In Reed, the district court

retained jurisdiction because the underlying suit had never been dismissed. Parents, on behalf of their minor child, brought suit against the United States in federal district court, alleging medical malpractice in the child's birth. See 891 F.2d at 878-79. Federal jurisdiction was pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. See Reed, 891 F.2d at 879. Prior to trial, the parties reached a settlement. See id. Before the case was dismissed, the child died, and the government allegedly refused to comply with the terms of the settlement. See id. Plaintiffs filed a motion in the district court to enforce the settlement agreement. See 717 F. Supp. at 1514.

The district court held, and the Eleventh Circuit affirmed, that the district court had jurisdiction to enforce the settlement agreement under the FTCA, and that the Tucker Act was therefore inapplicable. See 717 F. Supp. at 1514; 891 F.2d at 880. The reason that the district court had jurisdiction to enforce the settlement agreement under the FTCA, however, was not because the federal jurisdiction applicable to the underlying malpractice suit automatically applied to the settlement agreement, as Shaffer avers. Rather, the medical malpractice suit under the FTCA, as it had not yet been dismissed, was still pending before the district court. As a result, the district court retained jurisdiction under the FTCA to resolve issues and motions relating to the pending suit. See 717 F. Supp. at 1514.

This understanding of the Reed case is supported by both the district court's and the Eleventh Circuit's reliance on Kent v. Baker, 815 F.2d 1395 (11th Cir. 1987) (per curiam), as support for their holding. Kent held "that a district court has jurisdiction to enforce a settlement when . . . a party claims a breach of the settlement agreement before the court has dismissed the action." 815 F.2d at 1396 (emphasis added). Thus, the court's holdings, in both Kent and Reed, that the district court had jurisdiction, was limited to circumstances where the court had not yet dismissed the underlying suit from which the settlement agreement arose. See Kent, 815 F.2d at 1398, 1400; Reed, 891 F.2d at 880, 881 (indicating that suit was pending at the time of the plaintiff's motion to enforce the settlement because the court still had "to approve the settlement and enter judgment").

Here, when Shaffer opted out of the Pigford class action, he no longer had any pending action against the United States. Thus, Reed and Kent are inapplicable to the case at hand.

To the extent that there was any doubt that Shaffer was no longer part of the Pigford case when he opted out pursuant to the settlement agreement, those doubts were put to rest by the Pigford court. That court denied Shaffer's motion to enforce the settlement, determining that it had no jurisdiction over Shaffer because he was no longer part of the class action. Shaffer never appealed this ruling. Thus, once he

opted out, all of Shaffer's legal rights flowed from the settlement agreement. Those legal rights may be enforced only in the Court of Federal Claims.

**C. The ECOA and the APA do not waive sovereign immunity in the district court for contract claims against the United States.**

Alternatively, Shaffer argues that even if Kokkonen is controlling in the present case, he is not confined to the Court of Federal Claims so long as an independent basis for district court jurisdiction, including a waiver of sovereign immunity, exists. He asserts that the ECOA and the APA provide the requisite independent jurisdictional basis. See Br. at 14-15. However, Shaffer has failed to establish that the ECOA or the APA waive sovereign immunity in the district court for contract claims against the government.

The suit pending before this Court is not one to enforce plaintiff's right to non-discriminatory treatment under the ECOA, since he waived the right to raise these claims under the settlement agreement and has not appealed the district court's dismissal of his ECOA-based claim (Count III). Rather, Shaffer is suing solely for breach of the settlement agreement. Shaffer cannot try to cloak his contract-based claim as an ECOA action to avoid jurisdiction in the Court of Federal Claims. Moreover, because the ECOA does not waive sovereign immunity in district court for

contract actions,[4] Shaffer cannot rely on the ECOA as an independent basis for jurisdiction.

To the extent appellant invokes the APA as grounds for jurisdiction, his claim also fails due to sovereign immunity. The APA waives sovereign immunity for suits against federal agencies. See 5 U.S.C. § 702. However, there are three exclusions to this waiver: (1) claims for money damages; (2) claims for which an adequate remedy is available elsewhere; and (3) claims seeking relief that is expressly or impliedly forbidden by another statute. See 5 U.S.C. §§ 702, 704; Transohio Sav. Bank v. Dir., Office of Thrift Supervision, 967 F.2d 598, 607 (D.C. Cir. 1992). This Court has already decided that the Tucker Act forbids contract actions under the APA. See Transohio, 967 F.2d at 609 (interpreting the Tucker Act as "the exclusive remedy for contract claims against the government, at least vis a vis the APA"); see also Presidential Gardens, 175 F.3d at 143. "As a result, [this Court has] declared that § 702 of the APA does not waive sovereign immunity for contract actions against the

[4]The ECOA provides that "any creditor" shall be liable for damages caused by failure to comply with its provisions, which prohibit discrimination in credit transactions. See 15 U.S.C. §§ 1691(a)(1), 1691e(a). Although this may constitute a waiver of sovereign immunity for actions alleging credit discrimination, see Moore v. USDA, 55 F.3d 991, 993-94 (5th Cir. 1995), it does not waive sovereign immunity for breach of contract actions. Cf. FDIC v. Meyer, 510 U.S. 471, 480 (1994) (recognizing that waivers of sovereign immunity are to be narrowly construed).

government." Transohio, 967 F.2d at 609.[5]

In addition, even if the district court did possess jurisdiction, the district court properly held that dismissal was appropriate because Shaffer "failed to establish standing to sue under the APA because he has not identified an independent statutory basis for relief, and has only based alleged authority on the Settlement Agreement over which the Court does not have jurisdiction." JA 60.

Therefore, because there is no independent waiver of sovereign immunity for contract actions under the ECOA or the APA, jurisdiction in the district court is precluded and Shaffer's claim may only be heard in the Court of Federal Claims.

---

[5]The other two exceptions to waiver are also applicable. First, while Shaffer seeks declaratory relief and other equitable relief, he also requests money damages. Thus, the APA does not waive sovereign immunity for Shaffer's contract claim for damages. See 5 U.S.C. § 702 (waiving immunity for "relief other than money damages"). Second, plaintiff has an adequate remedy available in the Court of Federal Claims. Although he is limited to a claim for money damages under the Tucker Act, money damages are presumed to make a plaintiff whole in a breach of contract action. See Restatement (2d) of Contracts § 359 (1981) (providing that specific performance and injunctive relief are not permitted where damages are adequate).

### D. Shaffer is limited by the Tucker Act to money damages inasmuch as the district court lacks subject matter jurisdiction.

Shaffer asserts that jurisdiction cannot be confined to the Court of Federal Claims because that court does not have the authority to grant the relief he seeks. See Br. at 15. As the Court of Federal Claims is authorized to grant only monetary relief, see Transohio, 967 F.2d at 608 (Tucker Act waives sovereign immunity only for claims seeking damages), plaintiff contends that the Court of Federal Claims cannot render an adequate remedy and, therefore, jurisdiction should lie in the district court. See Br. at 15.

Shaffer's argument, however, relies on his assumption that both the Court of Federal Claims, through the Tucker Act, and the district court, based on federal question jurisdiction arising from the ECOA and the APA, are vested with subject matter jurisdiction. As discussed above, however, the district court lacks jurisdiction. Thus, Shaffer is limited to whatever remedies the Court of Federal Claims is authorized to provide. See Transohio, 967 F.2d at 608 (limiting relief in Court of Federal Claims to money damages).

Moreover, money damages are presumed to be an adequate remedy in a contract action, see Restatement (2d) of Contracts § 359 (1981) (providing that specific performance and injunctive relief are not permitted where damages are

adequate), and Shaffer has not offered any evidence to rebut this presumption. The presumption that money damages are usually adequate is supported by the language of the Tucker Act, itself. The Tucker Act, "[t]o provide an entire remedy," provides for equitable relief in a few narrow circumstances. See 28 U.S.C. § 1491(a)(2) ("the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records"). These narrow exceptions for equitable relief demonstrate that Congress believed money damages would "provide an entire remedy" in most contract actions. To the extent Shaffer argues damages are an insufficient remedy, this argument should be addressed to Congress, rather than to the courts.

**CONCLUSION**

The district court properly held that, under the Tucker Act, jurisdiction to enforce the settlement agreement was vested only in the Court of Federal Claims. Because Shaffer has failed to establish subject matter jurisdiction in the district court, this Court should affirm the district court's dismissal of his complaint.

Respectfully submitted,

DAVID W. OGDEN
Acting Assistant Attorney General

WILMA A. LEWIS
United States Attorney

ROBERT M. LOEB
(202) 514-4332

CATHERINE Y. HANCOCK
(202) 514-3469
Attorneys, Appellate Staff
Civil Division, Room 9126
Department of Justice
Washington, D.C. 20530-0001

November 2002

**CERTIFICATE OF COMPLIANCE**

Counsel for appellee hereby certifies that the foregoing Brief for the Appellee satisfies the requirements of Federal Rule of Appellate Procedure 32(a)(7)(A) and District of Columbia Circuit Rule 32(a). The brief was prepared in Times New Roman proportional font and the computer word count for the brief is 6,532 (which is less than the 14,000 word limit).

____________________________
CATHERINE Y. HANCOCK
Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2002, I dispatched the original and fourteen (14) copies of the foregoing Brief for the Appellee to the Clerk of this Court by hand delivery. On the same date, I served two copies of the brief on the following counsel by hand delivery:

Mona Lyons
Peter F. Butcher
Clifford, Lyons & Garde
1620 L Street, N.W., Suite 625
Washington, D.C. 20036

__________________________
CATHERINE Y. HANCOCK
Attorney