**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL W. STOVALL,<br><br>Plaintiff,<br><br>v.<br><br>ANN M. VENEMAN,<br>Secretary of Agriculture,<br>RICHARD KNOUFF,<br>KENNETH FAUST,<br>CAROLYN COOKSIE and<br>SAM SNYDER,<br><br>Defendants. | Civil Action No: 04-0319 (RMC)<br>**ECF** |

**MOTION TO DISMISS**

Defendants, through undersigned counsel, respectfully move to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (5) and (6), because this Court lacks subject matter jurisdiction and jurisdiction over the personally served defendants, because venue and service are improper, and because plaintiff has failed to state a claim upon which relief can be granted.

A memorandum of points and authorities and a proposed Order accompany this motion.

Respectfully submitted,

_/s/______________________________
KENNETH L. WAINSTEIN
DC Bar No. 451058
United States Attorney

_/s/______________________________
R. CRAIG LAWRENCE
DC Bar No. 171538
Assistant United States Attorney

_/s/________________________________
WILLIAM R. COWDEN
DC Bar No. 426301
Assistant United States Attorney
Judiciary Center Bldg.
Civil Division
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0258

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHAEL W. STOVALL,

Plaintiff,

v.

ANN M. VENEMAN,
Secretary of Agriculture,
RICHARD KNOUFF,
KENNETH FAUST,
CAROLYN COOKSIE and
SAM SNYDER,

Defendants.

Civil Action No: 04-0319 (RMC)
**ECF**

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS**

## Introduction

Michael W. Stovall, an African-American farmer residing in Alabama, brings this action alleging discrimination on the basis of his race against the Farm Service Agency ("FSA"), an agency of the United States Department of Agriculture ("USDA"), and Richard Knouff, Kendall Faust[1], Carolyn Cooksie, and Clarence J. "Sam" Snyder III, all FSA employees named in their individual capacities. While not entirely clear from the Complaint, it appears that plaintiff is alleging discrimination in the period from 1998 through 2001. Plaintiff may also be alleging breach of a 1998 settlement agreement with USDA, which resolved a 1996 administrative discrimination complaint plaintiff filed against FSA. Plaintiff asserts claims under the Equal Credit Opportunity Act ("ECOA"); the Constitution; Title VI of the Civil Rights Act of 1964

[1]The complaint incorrectly refers to this individual as Kenneth Faust.

("Title VI"); 42 U.S.C. § 1981; the Alabama constitution; and state tort law.

As explained below, plaintiff's Complaint fails to state a claim upon which relief may be granted or the Court lacks subject matter jurisdiction over the claims. Accordingly, this action should be dismissed pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12 (b)(6). In addition, this Court lacks personal jurisdiction over individual defendants Knouff, Faust, Cooksie and Snyder and thus, claims asserted in this Court against them also must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Finally, proper service is lacking with respect to several defendants, subjecting claims against them to dismissal under Rule 12(b)(5) and dismissal for improper venue under Rule 12(b)(3) also is warranted.

**Factual Allegations**

While the Complaint was filed with the assistance of counsel, the Complaint is somewhat vague and unclear as to the events about which it complains. However, the following are what appear to be the key relevant factual allegations that can be accepted as true for purposes of this motion to dismiss.

Plaintiff is an African-American farmer residing in Town Creek Alabama. Compl. ¶¶ 3, 5. Beginning in 1993, plaintiff attempted to apply for farm loans from the Lawrence County, Alabama FSA office, but he claims that he initially was unable to obtain an application. *Id.* at ¶ 13. In 1994, plaintiff submitted applications for a farm ownership loan and a farm operating loan. *Id.* at ¶ 14. Both applications were initially denied but, after an administrative appeal, the application for an operating loan was approved. *Id.* The funds on such loans were disbursed in March 1995. *Id.* On January 4, 1996, plaintiff filed an administrative complaint with USDA alleging discrimination on the basis of race in regard to his loan applications. Exhibit A to

Compl. At some point[2], the Office of Civil Rights ("OCR") at USDA issued a Program Complaint Final Decision on plaintiff's administrative complaint. In the decision, OCR found discrimination on the basis of race by FSA against plaintiff in the denial of a farm ownership loan in 1994 and the denial of a farm operating loan in 1995. OCR did not find discrimination in the denial of a farm ownership loan in 1995. Compl. at ¶ 15 and Exhibit A to Compl.

On February 27, 1998, plaintiff and OCR signed a Resolution Agreement settling plaintiff's administrative complaint. Compl. at ¶ 16 and Exhibit B to Compl. Under the Resolution Agreement, plaintiff received $145,000 in compensatory damages; discharge of all of his debt to FSA; reasonable attorney's fees and costs; priority consideration on certain future applications for FSA inventory property and FSA farm loans; and other programmatic relief. Resolution Agreement at ¶¶ 2-3, Exhibit B to Compl. Plaintiff agreed in the Resolution Agreement that he was waiving any and all rights he had arising from his administrative complaint against both USDA and USDA employees. *Id.* at ¶¶ 4-6.

In 1998, after several attempts, plaintiff purchased farm land from FSA inventory property. Compl. at ¶ 16. Plaintiff's March 1998 applications for a farm ownership loan, presumably to purchase the inventory property, and a farm operating loan were approved in March of 1998, and he received the funds in November 1998. *Id.* at ¶ 17. In applying for these loans, plaintiff sought the assistance of defendants Carolyn Cooksie and Sam Snyder in the FSA national office. *Id.* Mr. Snyder visited plaintiff in Alabama to assist him with his application.

---

[2]Plaintiff incorrectly states that the final decision on his administrative complaint was issued on January 31, 1996. Compl. at ¶ 15. However, according to the decision itself, two pages of which are attached as Exhibit A to the complaint, plaintiff filed his complaint on that date. The date of the final decision itself is not clear since the entire decision is not provided in the attachment.

*Id.*

In April 1999, plaintiff sought additional funds to build two chicken houses, and he consulted with Ms. Cooksie on this matter. *Id.* In December 1999, additional funds were added to plaintiff's loans so that he could build the chicken houses. However, in a meeting with the contractor and defendant Richard Knouff of the local FSA office, it was discovered that construction of the chicken houses would take additional funds. Plaintiff inquired of Mr. Knouff whether FSA could lend him additional money, and Mr. Knouff informed plaintiff that plaintiff was at his loan limit. *Id.* Plaintiff claims that Mr. Knouff told his contractor to terminate construction, though the contractor returned in three weeks. *Id.* Because of several difficulties, plaintiff contacted Mr. Snyder about his concerns. At some point, Mr. Snyder worked with plaintiff on a Farm and Home Plan in which Mr. Snyder included the funds awarded plaintiff in attorney's fees and costs as income in the plan. According to plaintiff, the Farm and Home Plan was not able to demonstrate adequate cash flow. *Id.* In October 2001, Mr. Knouff sent plaintiff a notice stating that FSA could not consider additional loans or loan restructuring due to the non-feasibility of the Farm and Home Plan and the because plaintiff had reached the maximum loan amounts. *Id.*

Plaintiff makes a general allegation that defendants Cooksie, Snyder, Faust, and Knouff collectively orchestrated a ploy to ensure that plaintiff could not farm and would be out of business. *Id.* at ¶ 26. Plaintiff also alleges that he continued to file administrative discrimination complaints with OCR. *Id.* at ¶ 17.

**<u>Legal Standard</u>**

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C. Cir. 1996). A court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Maljack Prods. v. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C. Cir. 1995). A court does not, however, have to accept as true the plaintiff's legal conclusions. *Taylor v. F.D.I.C.*, 132 F.3d 753, 762 (D.C. Cir. 1997). A court also can reject unsupported assertions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. *Miree v. DeKalb County*, 433 U.S. 25, 27 (1977).

Fed. R. Civ. P. 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. In contrast to a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), when a party moves to dismiss a complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court may consider the motion based on the complaint standing alone or, where necessary, on the complaint "supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). This standard follows from the "well established practice – adopted by the Supreme Court [many] years ago . . . – of allowing the District Court to make findings when a factual dispute regarding jurisdiction does arise." *Id*. at 198 n.6 (*citing Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Rasul v. Bush*, 215 F. Supp.2d 55, 61 (D.D.C. 2002). In considering a motion to dismiss for lack of subject-matter

jurisdiction, a court accepts as true all of the factual allegations contained in the complaint. *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)). But a court is not required to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Because subject matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a court resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(1) must give the complaint's factual allegations closer scrutiny than required for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp.2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.D.C. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. Of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## **Argument**

### I. Plaintiff's ECOA Claims Must be Dismissed Because They are Time Barred.

Plaintiff's ECOA claims must be dismissed because the claims do not fall within ECOA's two-year statute of limitations. ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). "Creditor" is defined to include "any person who regularly extends, renews, or continues credit," 15 U.S.C. § 1691a(e), and "person" encompasses any "government or governmental subdivision

or agency." *Id*. § 1691a(f). ECOA provides that any creditor who fails to comply with its requirements "shall be liable to the aggrieved applicant for any actual damages sustained by such applicant." *Id*. § 1691e(a).

Defendants acknowledge that a claim asserting discrimination in the denial of an FSA farm loan is cognizable under ECOA, and that a claimant may recover money damages for such a claim. However, under subsection (f), no private district court action may be brought later than two years after the occurrence of an alleged ECOA violation. *See id.* § 1691e(f); *Mays v. Buckeye Rural Elec. Coop., Inc.*, 277 F.3d 873, 879-80 (6th Cir. 2002) (2-year statute of limitations runs from the date of the alleged discriminatory violation of the ECOA). *See also Pigford v. Glickman*, 206 F.3d 1212, 1214 (D.C. Cir. 2000) (noting the 2-year statute of limitations in the ECOA giving rise to special limited waiver enacted by Congress).

The Complaint is far from clear as to the events that are the subject of plaintiff's ECOA claims. Plaintiff appears to be complaining about a number of events that occurred after the 1998 February 27, 1998 settlement agreement.[3] While the Complaint is not clear, the latest specific date that plaintiff mentions in the Complaint is October 2001 on which date he alleges defendant Knouff informed plaintiff that he could not receive additional loans or loan restructuring. Compl. at ¶ 17. Most important, plaintiff has not identified any specific events that occurred within the two-year period proceeding the commencement of this action. Accordingly, any

---

[3]In any event, plaintiff could not proceed as to any event that occurred prior to the Resolution Agreement since, as noted above, he waived any and all claims against USDA and its employees that occurred prior to the date of the agreement. *See Autera v. Robinson*, 419 F.2d 1197, 1201 n.17 (D.C. Cir. 1969). The enforceability of settlement agreements is governed by the same principles governing the enforcement of any other contract. *See Sfaffer v. Veneman,* 325 F.3d 370, 372 (D.C. Cir. 2003); *Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C. Cir. 1982); *Sirmans v. Caldera*, 138 F. Supp.2d 14, 19 (D.D.C. 2001).

ECOA claims that plaintiff is making about post-February 27, 1998 events are time-barred under ECOA, and should be dismissed both against the government and (to the extent any are asserted) the individual defendants too.

**II. Plaintiff Has Not Stated a Claim as to His Non-ECOA Causes of Action.**

*A. Plaintiff's Constitutional Claim Against the United States is Barred by Sovereign Immunity*

Plaintiff alleges a violation of the Due process Clause and Equal Protection guarantee of the United States Constitution.[4] Constitution-based claims for money damages against the federal agencies are actually claims against the United States. *See Clark v. Library of Congress*, 750 F.2d 89, 103-104 (D.C. Cir. 1984); *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1316 (D.C. Cir. 1984).

It is well established that the United States can be sued only to the extent that it consents to suit. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotation marks and brackets omitted); *Clark v. Library of Congress*, 750 F.2d at 103 ("Sovereign immunity, however, does bar suits for money damages against officials in their capacity absent a specific waiver by the government.") (emphasis deleted); *Broadnax v. United*

[4]Plaintiff asserts this cause of action under the Fourteenth Amendment, which does not apply to the federal government. *See* U.S. Const. amend XIV, § 1 ("No State shall … deny to any person within its jurisdiction the equal protection of the laws.") (emphasis added). However, the Due Process Clause of the Fifth Amendment expressly guarantees that the federal government will provide due process to its citizens. And the Supreme Court also locates an equal protection guarantee in the Due Process Clause of the Fifth Amendment that applies to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497 (1954). Therefore, plaintiff's error is insignificant.

*States Army*, 710 F.2d 865, 866-67 (D.C. Cir. 1983). Thus, in suits seeking money damages, the United States enjoys sovereign immunity to the extent that its immunity has not been waived by Congress in unequivocal terms. *United States v. Testan*, 424 U.S. 392 (1976); *United States v. King*, 395 U.S. 1 (1968); *United States v. Sherwood*, 312 U.S. 584 (1941); *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991).

The United States, however, has not waived sovereign immunity for constitutional torts. *FDIC v. Meyer*, 510 U.S. 471 (1994); *Kline v. Republic of El Salvador*, 603 F. Supp. at 1317; *see also Laswell v. Brown*, 683 F.2d 261 (8th Cir. 1982); *Birnbaum v. United States*, 588 F.2d 319, 327-28 (2nd Cir. 1978). Because the United States has not waived sovereign immunity for constitutional tort claims, such claims must be dismissed. *See Ward v. Kennard*, 133 F. Supp.2d 54, 59 (D.D.C.) ("[T]he D.C. Circuit recognized the well-established rule that sovereign immunity bars suits for money damages against officials in their official capacity, absent a specific waiver by the government."); *Garcia v. United States*, 538 F. Supp. 814 (D.C. Tex. 1982).[5] Consequently, such claims must be dismissed.

*B. Title VI Does Not Apply to the Federal Government*

Plaintiff also alleges that defendants' actions violated Title VI, which mandates that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (emphasis added). The term "program or activity" is then defined as any part of a "State or … local government,"

[5]The constitutional claims as against defendants in their individual capacities are discussed below.

42 U.S.C. § 2000d-4a(1)(A), colleges, universities, or other institutes of higher education, *id*. § 2000d-4a(2)(A), local education agencies, *id*. § 2000d-4a(2)(B), or corporations and other business entities, *id*. § 2000d-4a(3). Nowhere does the definition of "program or activity" provide that the federal government, its agencies, or its officials are included in the term's meaning. Accordingly, Title VI cannot support a claim by plaintiff; Title VI's domain does not extend to the federal government.

This understanding of Title VI is well-established. *See Wise v. Glickman*, 257 F. Supp.2d 123, 131–32 (D.D.C. 2003) ("This comprehensive definition does not include the operations of the federal government and its agencies, and, indeed, the case law recognizes that a plaintiff may not bring suit under Title VI for programs maintained directly by federal agencies."); *Fagan v. Small Business Administration*, 783 F. Supp. 1455, 1465 n.10 (D.D.C. 1992) ("Additionally, the Court notes that Ms. Fagan has no claim under 42 U.S.C. § 2000d because that section does not apply to direct benefit programs, but only to non federal entities that receive federal funding and provide that funding to the ultimate beneficiary."); *Marsaw v. Trailblazer Health Enterprises*, LLC, 192 F. Supp.2d 737, 750 (S.D. Tex. 2002) ("Title VI does not apply to programs administered directly by a federal agency.").[6] In a similar case against USDA the court noted that:

> The terms "program or activity" and "program" are statutorily defined to mean departments or instrumentalities of state or local governments, colleges and

---

[6]Indeed, even before the definition of "program or activity" was added to the statute in 1998 to make clear that the federal government was not covered by Title VI, the courts had held that Title VI did not apply to the federal government. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 38 (2d Cir. 1983) ("[T]he conclusion we draw from the case law interpreting Title VI is that the statute was meant to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary.").

> certain public systems of education, certain corporations and other private organizations, and other entities established by two or more of the above entities.… Significantly, the statutory definitions of "program or activity" and "program" do not include federal agencies. Thus, Title VI does not apply to programs conducted directly by federal agencies.

*Williams v. Glickman*, 936 F. Supp. 1, 5 (D.D.C. 1996). The Court then dismissed the plaintiff's argument that it should stretch the statute, indicating that "[t]he Court does not have the authority to redraft an unambiguous statute and ignore established case authority." *Id.* at 6. Accordingly, it is clear that Title VI does not apply to the federal government, nor is there basis for bringing such a claim against the individual defendants. Plaintiff cannot properly maintain a position to the contrary in this case.[7]

*C. 42 U.S.C. § 1981 Does Not Apply to the Federal Government*

Plaintiff also asserts a violation of 42 U.S.C. § 1981, which mandates, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full an equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Section 1981 contains a significant caveat, however: "The rights protected by this section are protected against impairment by <u>nongovernmental</u> discrimination and impairment <u>under color of State law</u>." 42 U.S.C. § 1981(c) (emphasis added). Thus, by its explicit language, § 1981 does not apply to the federal government. *See, e.g., Davis-Warren Auctioneers v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000) ("The language of § 1981(c) could hardly be more clear.…

---

[7]Additionally, any Title VI claim would be barred by sovereign immunity for the same reasons discussed previously in this memorandum.

The defendant in this case is clearly governmental and, just as clearly, did not act under color of state law. Therefore, § 1981, by its terms, does not apply to this defendant.") (emphasis deleted); *Davis v. Department of Justice*, 204 F.3d 723, 725 (7th Cir. 2000) ("Thus, by its language, § 1981 does not apply to actions taken under color of federal law."); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998) ("Accordingly, the language of § 1981 is clear: Section 1981 provides a cause of action for individuals subjected to discrimination under color of state law, but does not provide a cause of action for discrimination under color of federal law."); *Brown v. United States*, 271 F. Supp.2d 225, 229 (D.D.C. 2003) ("This clear statutory language bars Ms. Brown's § 1981 claim against the United States and USDA, since § 1981(c) does not address [alleged] impairment by the federal government.") (internal quotation marks omitted); *Marsaw v. Trailblazer Health Enterprises, LLC*, 192 F. Supp.2d at 750 ("The plain language of § 1981(c) prohibits discriminatory actions conducted under color of state law only, and the Court is unaware of any authority for extending § 1981(c) to discriminatory actions conducted under color of federal law."); *Carlton v. Ryan*, 916 F. Supp. 832, 838 (N.D. Il. 1996) (similar). In a similar case against USDA, the Court held that § 1981 does not apply to the federal government:

> The Court agrees that the plain language of §1981(c) bars the plaintiffs' claim of federal discrimination.… [Section] 1981(c) does not address impairment by the federal government. There is no indication that the statute's designation of impairment by private entities and impairment "under color of State law" is meant to be merely suggestive of illustrative; §1981(c) does not use language such as "including" or "for example" which would compel such an open-ended reading of the statute.

*Williams v. Glickman*, 936 F. Supp. at 3.

In this action, plaintiff has sued the federal government based on the conduct of a federal loan program. Section 1981 does not support a cause of action for this allegation. Accordingly,

this claim must be dismissed both as to the government and the individual defendants.[8]

**III. Any Claim for Breach of the 1998 Resolution Agreement Would Have to be Brought Before the Court of Federal Claims.**

It is not entirely clear whether the plaintiff is formally bringing a claim for breach of the 1998 Resolution Agreement. The Complaint's enumerated "Causes of Action" do not include a count for breach of contract. Compl. at ¶¶ 34-44. At the same time, the plaintiff does make allegations of breach of the Resolution Agreement elsewhere in the Complaint. *See, e.g., id.* at ¶ 29. In any event, the plaintiff cannot proceed in this Court on a breach of contract claim. The Tucker Act waives the sovereign immunity of the United States for contract claims, but rests exclusive jurisdiction over those claims in the United States Court of Claims. *See* 28 U.S.C. §1491(a)(1). *See also United States v. Mitchell*, 463 U.S. 206, 215 (1983); *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003).[9] A settlement agreement is a contract, and a lawsuit based on a settlement agreement is a contract claim. *See Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003) ("[U]nder the Tucker Act … a settlement agreement is considered a contract."); *Presidential Gardens Associates v. United States*, 175 F.3d 132, 141 (2d Cir. 1999) (similar). As a result, any cause of action alleging a breach of the 1998 Resolution Agreement between plaintiff and USDA can be brought only in the Court of Claims.

---

[8]Additionally, even if § 1981 could support a claim against the federal government, sovereign immunity would bar such a claim, for the reasons discussed previously in this memorandum.

[9]The Little Tucker Act creates jurisdiction in federal district court for contract claims against the United States for less than $10,000. *See* 28 U.S.C. § 1346(a)(2). Here, however, plaintiff's claim seeks damages far in excess of the Little Tucker Act's cap. Plaintiff seeks twenty million dollars in damages. *See* Compl. at page 16.

## IV. The Court Lacks Jurisdiction To Entertain Plaintiff's *Bivens* Claim Against The Individual Defendants.

As set forth above, sovereign immunity bars plaintiff from proceeding against the government defendant on his constitutional claim. However, the Complaint can be read liberally as also attempting to assert a so-called *Bivens* claim against defendants Cooksie, Snyder, Knouff, and Faust; that is, a private right of action for money damages against an individually named federal official who allegedly violates clearly established constitutional or statutory rights. *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

### *A. At the Outset, Plaintiff's Constitutional Tort Claims Against Defendants Personally Would Be Untimely*

The applicable statute of limitations for a *Bivens* action is the state statute of limitations for tort actions which, in Alabama is two years from the date of occurrence, *see Macelvain v. United States,* 2002 U.S. Dist. LEXIS 23053 at n.25 (M.D. Ala. 2002) and Ala. Code 6-2-38, and which in the District of Columbia is three years from the date of occurrence, *see Banks v. Chesapeake & Potomac Tel. Co.,* 802 F.2d 1416 (D.C. Cir. 1986) and D.C. Code Ann. 12-301. Because plaintiff has not complained of any misconduct within two years of the filing of this action, plaintiff's constitutional claim against defendants Cooksie, Snyder, Knouff, and Faust individually arising in Alabama must be dismissed. Any of plaintiff's constitutional claims against these defendants that arose in the District of Columbia also would be time-barred under the District's three year limitations period. The only date specifically noted in the Complaint that occurred within three years of the date of filing this action is Mr. Knouff's notification to the plaintiff in October 2001 that FSA could not consider him for additional loans or loan restructuring. Compl. at ¶ 17. However, this action arose in Alabama, not the District of

Columbia. Thus, the two-year limitations period would appear to apply to this event. In sum, any *Bivens* action against the four individually named defendants would be barred under the applicable statute of limitations.[10]

*B. Plaintiff's Allegations, Even If Timely, Would Provide No Legal Basis For A Bivens Claim*

Moreover, implying the existence of a *Bivens* remedy would not be appropriate on the facts here. The courts have recognized that special factors counseling against the creation of an alternative *Bivens*-type remedy must be recognized where a comprehensive statutory scheme has been established and exists to provide relief in a given area. *See Bush v. Lucas*, 462 U.S. 367 (1983) (comprehensive procedural and substantive provisions of the Civil Service Reform Act ("CSRA") constitute "special factors" counseling hesitation against a *Bivens* remedy). Of importance here is the statutory scheme Congress created in ECOA – the very type of comprehensive scheme that has led the Supreme Court to decline to create a *Bivens* remedy in similar cases.

In *Bush*, the Supreme Court observed that the CSRA is "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." *Bush*, 462 U.S. at 388. Thus, that Court held that the comprehensive procedural and substantive provisions of the CSRA constitute "special factors" counseling hesitation against a *Bivens*

---

[10]To the extent *Bivens* allegations could be implied against Secretary Veneman, a *Bivens* claim against her necessarily fails here too. In addition to the reasons discussed in the text, the Secretary has not been personally served with such a claim. A personal claim would be subject to dismissal under Fed. R. Civ. P. 12(b)(5), even if jurisdiction and venue were appropriate (which is not at all apparent given the Complaint's lack of specificity). Here, at best, the claim wouldbe based on a respondeat superior theory, which the D.C. Circuit has soundly rejected. *E.g., Tarpley v. Green*, 684 F.2d 1 (D.C. Cir. 1982).

remedy. Based on *Bush* and its progeny, this Court in *Mittleman v. U.S. Treasury*, held that the Privacy Act, 5 U.S.C. § 552a, is the controlling statute for seeking access to or correction of records or damages resulting from unlawful disclosures and therefore precludes a plaintiff from seeking to have a court imply a *Bivens* action based on similar allegations. *See Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 454 (D.D.C. 1991). The Court observed that:

> Like the CSRA, the Privacy Act provides a comprehensive scheme for addressing plaintiff's concerns about the inaccuracy of the records and about disclosure of them to third parties. In establishing the Privacy Act, Congress has undertaken to balance the individual interests of the subjects with the interest in protecting certain records and assuring an efficient government. Therefore, pursuant to the Bush mandate that courts should refrain from implying a Bivens remedy when "special factors" counseling hesitation, such as Congressionally-provided remedies for constitutional violations, are present, the Court concludes that plaintiff's constitutional claims regarding her records and any disclosures by defendants about those records are barred. *See Bush,* 462 U.S. at 378, 103 S.Ct. at 2411.

*Mittleman*, 773 F. Supp. at 454. *Accord, Chung v. Dept. of Justice*, 333 F.3d 273 (D.C. Cir. 2003).

It is not necessary that the statutory remedial scheme be capable of affording a plaintiff all of the relief he may seek in a civil action. The controlling factor is that Congress has created a comprehensive scheme. *Spagnola v. Mathis*, 859 F.2d 223, 228-30 (D.C. Cir. 1988); *see Bush*, 462 U.S. at 388-90.

In this case, plaintiff's claims for recovery from the federal defendants under *Bivens* are precluded by the existence of the ECOA statute. Accordingly, any "implicit" *Bivens* claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) & (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

*C. This Court Lacks Personal Jurisdiction Over the Individually-Sued Defendants*

This Court lacks jurisdiction over three of the defendants who are sued in their individual capacities.[11] A district court does not have nationwide jurisdiction over defendants who live outside the forum state just because the defendants are federal government employees. *Stafford v. Briggs*, 444 U.S. 527 (1980). When federal officials are sued in their individual capacities, the statutes that operate to confer personal jurisdiction and venue in cases where the federal government itself is the defendant do not apply. *See Reuber v. United States*, 750 F.2d 1039, 1049 (D.C. Cir. 1984). Instead, the plaintiff must satisfy the requirements applicable to individuals generally when he or she names a federal employee personally as a defendant. *Id*.

Consistent with "minimum contacts" analysis, absent actual residency status, *in personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia and the District of Columbia's long arm statute, D.C. Code § 13-423 (2000). *See Reuber*, 750 F.2d at 1049 (long arm statute provides only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia.). *Accord Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). Consequently, plaintiff must rely on the District of Columbia's long-arm statute as the basis for obtaining personal jurisdiction over any individuals sued as such. *See Reuber*, 750 F.2d at 1049.

The relevant portion of that statute provides that personal jurisdiction may be exercised with respect to claims arising from a person's business transaction, contracts for services or

[11]Defendant Carolyn Cooksie, who is the Deputy Administrator for Farm Loan Programs of FSA, works in the USDA headquarters in the District of Columbia.

tortious injuries *in the District of Columbia*.[12] With respect to defendants Knouff and Faust, plaintiff does not allege that they have ever resided or even worked in the District of Columbia at any time relevant to this case. The discrimination about which plaintiff appears to complain presumably occurred, if at all, in Alabama, where defendants Knouff and Faust work and appear to live. *See* Affidavits of Service. Thus, even if plaintiff's allegations are assumed to be true, it is apparent that any wrongful acts or tortious injuries occurred, if at all, in Alabama, not in the District of Columbia. As to defendant Sam Snyder, while this individual worked in the USDA headquarters in the District of Columbia part of the time relevant to the events in question, he currently does not work in that location and plaintiff does not assert that Mr. Snyder resides here. Nor does plaintiff assert that Carolyn Cooksie resides in the District.

A plaintiff bears the burden to establish that a court possesses personal jurisdiction over each defendant, *see Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D.D.C. 1998), and the mere fact that each defendant is an employee of the USDA, which has its central office in the District of Columbia, is insufficient to establish the requisite "minimum contacts" with the District of Columbia. *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). The District of

---

[12]District of Columbia long-arm statute provides that personal jurisdiction may be exercised with respect to claims arising from a person's

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, [or] engages in any other persistent course of conduct . . . in the District of Columbia.

D.C. Code § 13-423(a)(1)-(4).

Columbia's long-arm statute does not reach Alabama conduct by non-resident defendants Knouff, Faust, Snyder and Cooksie. *See Risley v. Hawk*, 108 F.3d 1396 (D.C. Cir. 1997); *Zakiya v. United States*, 267 F. Supp.2d 47 (D.D.C. 2003); *Meyer v. Federal Bureau of Prisons,* 929 F. Supp. 10, 13 (D.D.C. 1996) (in *Bivens* action, court declined to exercise personal jurisdiction over federal defendant residing in Missouri where plaintiff failed to "allege that he was harmed in any way in the District of Columbia by [the defendant]"). Consequently, this Court cannot exercise personal jurisdiction over these defendants and they should be dismissed from this suit pursuant to Fed. R. Civ. P. 12(b)(2).

Finally, defendant Venenam has not been personally served and she does not assume that plaintiff intends to sue her in her individual capacity. She is not alleged to have had any contact with plaintiff personally, or even with the other defendants. Moreover, vague and conclusory allegations that a federal official committed a constitutional tort are insufficient to survive scrutiny under Rule 12(b)(6). Instead, a *Bivens* plaintiff must specify how each individual defendant was personally involved in the allegedly unconstitutional conduct. *See Siegert v. Gilley*, 500 U.S. 226 (1991); *Simpkins v. District of Columbia Government*, 108 F.3d 366, 369 (D.C. Cir. 1997); *Risley*, 108 F.3d at 1396-97.

Furthermore, a plaintiff cannot bring a *Bivens* claim against a federal official "based essentially on the bare assumption that policy decisions made in Washington might have affected [their] treatment" outside Washington, D.C. *Cameron*, 983 F.2d at 258. *See also Farmer v. Moritsugu*, 163 F.3d 610 (D.C. Cir. 1998); *Risley*, 108 F.3d at 1396-97. Indeed, to state a claim against an individual defendant under *Bivens*, "[t]he complaint must at least allege that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. District of*

*Columbia Government*, 108 F.3d 369. Such "claims cannot rest merely on respondeat superior." *Id*. *Cf. Brancaccio v. Reno*, 964 F. Supp. 1, 2 n.4 (D.D.C. 1997) (plaintiff failed to state a claim against federal officials in their individual capacities where allegations made against them referred to actions that could only be performed by the defendants in their official capacities and where plaintiff requested injunctive relief which could only be performed by defendants in their official capacities). Thus, a *Bivens* claim against Secretary Veneman, who is not alleged to have been personally involved in any allegedly unconstitutional and unofficial act, would be improper, to the extent one was intended. *See Simpkins*, 108 F.3d at 369; *Risley*, 108 F.3d at 1396-97. Likewise, the allegations against the individually-sued defendants lack the necessary specificity to support a *Bivens* claim and, for this reason too, must be dismissed under Rule 12(b)(6).[13]

D. *Claims Against Federal Defendants Cooksie and Snyder Also May Be Subject To Dismissal Under 12(b)(5) Because Proper Service Of Process Thus Far Is Lacking*

A federal court must have personal jurisdiction over a defendant before it can exercise its power. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982). To exercise jurisdiction, there must be proper service of process, as authorized by rule or statute. *Omni Capital International, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97 (1987). In this case, plaintiff's claims against several federal defendants may be subject to dismissal because plaintiff cannot establish that he has properly served process on these defendants. Without proof of proper service, this Court is deprived of jurisdiction over the individual federal defendants.

---

[13]The Secretary reserves the right to move for transfer to Alabama of any ECOA claim should the Court determine that any such claim is properly asserted. For such a case, the venue provisions set forth at 28 U.S.C. §§ 1391(e) and 1404(a) would control. No substantial activity giving rise to the claims occurred here, the real property is located in Alabama, plaintiff also resides there, as do the apparent witnesses.

It is well established that, in an action against a federal employee in an individual capacity, the individually sued defendant must be served with process in accordance with rules applicable to individual defendants. *See Lawrence v. Acree*, 79 F.R.D. 669, 670 (D.D.C. 1978); *Navy, Marshall & Gordon, P.C. v. U.S. Intern. Development-Cooperation Agency*, 557 F. Supp. 484, 489 (D.D.C. 1983) (federal agents sued in individual capacity for money damages must be served personally and not merely through service upon offices in which they work); *Delgado v. Federal Bureau of Prisons*, 727 F. Supp. 24 (D.D.C. 1989). Rule 4(e) requires that a copy of the summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. (Rule 4(i)(2)(B) further requires that in all cases where federal employees are sued individually for acts or omissions that occurred as a result of their federal employment, process also be served on the Attorney General of the United States and the United States Attorney for the district in which the action is brought.) The rule applicable to official capacity suits, "does not obviate the requirement of personal service . . . where the action is in substance against a federal official in his individual capacity." *Lawrence*, 79 F.R.D. at 670; *Delgado*, 727 F. Supp. at 27. Indeed, Rule 4(i) requires both personal service and service upon the federal government.[14]

---

[14]Fed. R. Civ. P. 4(m) provides for dismissal of a complaint if service of process has not been perfected within 120 days after the complaint's filing. In this case it appears that plaintiff will have failed to effect timely proper service on federal defendants Cooksie and Snyder as required by Rule 4(i) unless both are served by June 25, 2004. Under some circumstances, additional opportunities may be available to a plaintiff to effect proper service on a defendant in a civil action. *See* Fed. R. Civ. P. 4(i)(3); *Moore v. Agency for International Development*, 994 F.2d 874 (D.C. Cir. 1993). However, in light of the many additional reasons calling for dismissal of plaintiff's claims, no good purpose would be served by the calling for additional efforts to effect proper service. *See Simpkins v. District of Columbia Government*, 108 F.3d at 370

Where, as here, plaintiff apparently seeks relief against federal employees in their individual capacities, the Court must acquire personal jurisdiction over each defendant in order to enter a binding judgment against each. *See Reuber v. United States*, 750 F.2d at 1049; *Griffith v. Nixon*, 518 F.2d 1195 (2d Cir. 1975). And, as previously stated, the general rule is that a plaintiff has the burden of establishing personal jurisdiction. *Reube*r, at 1052; *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc*., 988 F.2d 476, 488 (3rd Cir. 1993).

The record in this case does not establish proper personal service on individual federal defendants Cooksie and Snyder. It may be the case that plaintiff mailed process to individuals working at agencies employing these federal defendants, and such employees may even have accepted mailings to the agencies, but such "evidence" would not be insufficient to establish effective service of process on the individual defendants sued in their individual capacities. *See Freeman v. Fallin*, 210 F.R.D. 255, 255-56 (D.D.C. 2002) (post Rule 4 amendment decision requiring personal service on a defendant in a *Bivens* action); *see also Leichtman v. Koons*, 527 A.2d 745, 747 & n.5 (D.C. 1987) (office employee with authority to receive business mail does not, by virtue of his or her position, have authority to receive process, and actual knowledge of the existence of a lawsuit is no substitute for personal service).[15] Accordingly, unless these

(dismissing baseless *Bivens* claims on the merits notwithstanding lack of proper service).

[15]Fed. R. Civ. P. 4(e)(1) also allows for service under state court rules and District of Columbia SCR-Civ. 4(c)(3) permits service by mail in some cases. But such service is allowed only where the court has personal jurisdiction over the defendant, *see* D.C. Code § 13-424 ("When the exercise of personal jurisdiction is authorized by this subchapter, service may be made outside the District of Columbia"), and where there is record evidence that the person to receive the summons and complaint is the defendant or someone authorized to accept service for them. SCR-Civ. 4(k); D.C. Code § 13-431(b) (requiring proof of mail service to include a receipt signed by the addressee or other evidence of personal delivery to the addressee).

defendants are properly and timely served, claims against them should be dismissed for failure to effect proper service.

*E. Defendants are Immune From Plaintiff's Constitutional Claims*

Additionally, any of the defendants sued in their individual capacities are entitled to qualified immunity from suit. All federal officials enjoy a qualified immunity from constitutional and statutory claims, and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985); *Procunier v. Navarette*, 434 U.S. 555, 561 (1978); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).[16] Under *Harlow* this determination requires an objective, not subjective, analysis. *McSurely v. McClellan*, 697 F.2d 309, 316 (D.C. Cir. 1982). *Harlow* thus places squarely on the plaintiff the burden of showing a "prima facie case of defendants' knowledge of impropriety, actual or constructive." *Krohn v. United States*, 742 F.2d 24, 31-32 (1st Cir. 1984). *Accord Davis v. Scherer*, 468 U.S. 183, 191 (1984). Furthermore, as the Supreme Court has held,

> Unless the plaintiffs' allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A defendant's right is to "immunity from suit" not a "defense to liability." *Id.*; *see also Cleavinger*, 474 U.S. at 207-08.

---

[16]As further discussed below, assuming, *arguendo*, that plaintiff has asserted constitutional claims for damages against the USDA, those claims it would be barred, absent a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Marshall v. Reno*, 915 F. Supp. 426 (D.D.C. 1996). *See also Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984) (plaintiffs may not seek damages against the United States and federal officials sued in their official capacities because the government has not waived sovereign immunity with respect to constitutional tort claims).

In determining whether a federal official is entitled to qualified immunity, a federal court must follow a two-step process. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first threshold question is whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the offic[ial]'s conduct violated a constitutional right?" *Id*. Next, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. Therefore, if the first part of the two-pronged test is not met (and there is no constitutional violation established) then the defendants are entitled to qualified immunity. *See Verdecia v. Adams*, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because [plaintiff] cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

As described above, the plaintiff has filed a very ambiguous Complaint. It is not at all clear the specific role that each individually named defendant played in plaintiff's allegation of a violation of his constitutional rights. Instead, the plaintiff has made general allegations against these individuals and seeks to rely merely on pleading that "[o]n information and belief, Defendants COOKSIE, SNYDER, FAUST and KNOUFF collectively, intentionally and with reprisal orchestrated [a] ploy to insure that Stovall could not farm and would be out of business." Complaint ¶ 26. Such pleading does not articulate the violation of a clearly established constitutional right, as necessary to overcome the qualified immunity to which these individuals are due. The Complaint against defendants in their individual capacities should, therefore, be dismissed, *inter alia*, as legally frivolous. *See Denton v. Hernandez*, 504 U.S. 25, 32 (1992);

*Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994).

**V. Plaintiff's Alabama Tort Claims Must Be Dismissed.**

Plaintiff asserts a tort claim under Alabama law. This claim, too, must be dismissed because it does not fall within any applicable waiver of sovereign immunity. While the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, contains such a waiver for certain common law tort claims against the United States, the FTCA requires a plaintiff to exhaust administrative remedies prior to bringing such claims in a federal court. 28 U.S.C. § 2675(a). Specifically, a plaintiff cannot proceed under the FTCA unless he "shall have first presented his claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." *Id.*

Plaintiff does not appear to have followed the procedures necessary to exhaust his administrative remedies as required by the FTCA. Plaintiff does not allege that he ever presented his Alabama tort claims to USDA, let alone obtained a final decision on them. *See, e.g., Bruce v. United States*, 621 F.2d 914, 918 (8th Cir. 1980) (no jurisdiction under FTCA where plaintiff fails to allege exhaustion of administrative remedies); *Altman v. Connally*, 456 F.2d 1114, 1116 (2d Cir. 1972) (same). Moreover, plaintiff was required to present his tort claims to USDA within two years of their accrual, *see* 28 U.S.C. § 2401(b); *Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980), yet all the conduct at issue in this case appears to date back beyond two years. Because plaintiff did not exhaust his administrative remedies as the FTCA requires, his tort claims must be dismissed for lack of jurisdiction. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *Simpkins v. District of Columbia*, 108 F.3d at 371

(FTCA's exhaustion requirement is jurisdictional); *see also Vanover v. Hantman*, 77 F. Supp.2d 91, 99 (D.D.C. 1999) (official capacity tort claims dismissed where FTCA inapplicable).

Nor will plaintiff's state law claims lie against the individual defendants in their individual capacities. In 1988 the FTCA was amended to add a provision allowing the federal government to substitute itself as the defendant when its employees were sued in tort for acts undertaken in the scope of their federal employment:

> Upon certification of the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all reference thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). Here, the Attorney General, through his delegate, Craig Lawrence, Chief of the Civil Division of the United States Attorney's Office for the District of Columbia, has certified that the individual defendants acted within the scope of their employment at all times relevant to the settlement of the plaintiff's discrimination claim. *See* Exhibit A to this Memorandum. Accordingly, as to plaintiff's state law claims, the United States should be substituted as the defendant for those claims.

Once the United States is substituted in the individual defendants' stead, sovereign immunity attaches. *See, e.g., Rodriguez v. Sarabyn*, 129 F.3d 760, 764 (5th Cir. 1997) ("Once the substitution occurs, the FTCA applies, and some claims may be dismissed for lack of subject-matter jurisdiction because the United States has not waived it sovereign immunity."); *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997) ("Once this certification is made, the United States is substituted as the sole defendant… [T]hen the plaintiff's sole route for recovery is the

Tort Claims Act. For many torts the United States has not waived its sovereign immunity through the Tort Claims Act and therefore, the plaintiff cannot recover from the federal government despite the merits of his or her claim."). *See also Pauly v. Department of Agriculture*, 348 F.3d 1143, 1151 (9th Cir. 2003); *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2001); *Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000); *Midland Psychiatric Associates v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998). This is true even if the attachment of sovereign immunity would mean that the plaintiff has no ability to recover whatsoever. *See United States v. Smith*, 499 U.S. 160, 166 (1991) ("§ 5 [of the FTCA] precludes an alternative mode of recovery against a Government employee in cases where the FTCA itself does not provide a means of recovery."); *Simpkins v. District of Columbia Government*, 108 F.3d at 371 ("[T]he FTCA [is] the exclusive remedy for such torts by government employees acting within the scope of their duties even when the FTCA itself precludes Government liability.") (internal quotation marks omitted). As explained above, the FTCA does not waive sovereign immunity for claims arising from "misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Therefore, plaintiff's state law tort claims against the individual defendants in their individual capacities—now against the United States—are barred by sovereign immunity and should be dismissed.[17]

## VI. Improper Venue Mandates Dismissal (or Transfer) of Plaintiff's Individual Capacity Claims Under Rule 12(b)(3).

When federal officials are sued in their individual capacities, the venue provisions which operate in the typical case against the government itself do not control. *Stafford v. Briggs*, 444

---

[17]Because, for the reasons discussed, there is no federal claim upon which plaintiff may proceed, his claim under the Alabama constitution should also be dismissed.

U.S. 527 (1980). In *Stafford v. Briggs*, the Supreme Court held that a suit properly brought against federal officials in their official capacities, for which venue would lie under 28 U.S.C. § 1391(e), would not provide a basis for venue against such officials in their individual capacities. Rather, one must look to 28 U.S.C. § 1391(b) which provides that:

> A civil action where jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In this action, not all defendants are alleged to reside in the same state. Therefore, venue cannot lie in this district under subsection (1) of Section 1391(b). Clearly, no substantial part of the events or omissions giving rise to plaintiff's claims – whatever those unarticulated events might have been – are alleged to have taken place in the District of Columbia. Instead, whatever conduct plaintiff may intended to be complaining about presumably took place in Alabama, where he claims residency and where several federal defendants are or were employed.

Alternatively, the Court could transfer personal capacity claims to Alabama pursuant to 28 U.S.C. § 1406, which allows a district court, in the interests of justice, to grant a change of venue to any district or division in which the case could have been brought. This section does not require that a district court have personal jurisdiction over the defendants before transferring the case, as does 28 U.S.C. § 1404. *See Goldlawr v. Heiman*, 369 U.S. 463 (1962); *Lozano v. Civiletti*, 89 F.R.D. 475, 480 (D.D.C. 1980). However, federal defendants submit that even though venue is improper here, and although a transfer might not be inappropriate, this frivolous

case should instead be dismissed with prejudice for the numerous other reasons set forth in this memorandum. *See Simpkins v. District of Columbia*, 108 F.3d at 370 (recognizing duty of courts "to weed out" insubstantial *Bivens* actions "expeditiously" through dismissals on the merits rather than merely transferring claims, thereby "delaying the inevitable").

**Conclusion**

For the reasons stated, the federal defendants respectfully request that the Court dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6). A proposed order is attached.

Dated: June 9, 2004

Respectfully submitted,

_/s/______________________________
KENNETH L. WAINSTEIN
DC Bar No. 451058
United States Attorney

_/s/______________________________
R. CRAIG LAWRENCE
DC Bar No. 171538
Assistant United States Attorney

_/s/______________________________
WILLIAM R. COWDEN
DC Bar No 426301
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0258

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 9, 2004, I caused a copy of the foregoing to be served on plaintiff's counsel by means of the Court's ECF system.

_/s/________________________
William R. Cowden
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL W. STOVALL,<br><br>Plaintiff,<br><br>v.<br><br>ANN M. VENEMAN,<br>Secretary of Agriculture,<br>RICHARD KNOUFF,<br>KENNETH FAUST,<br>CAROLYN COOKSIE and<br>SAM SNYDER,<br><br>Defendants. | ) | Civil Action No: 04-0400319 (RMC)<br>**ECF** |

**ORDER**

Upon consideration of Federal Defendants' Motion to Dismiss and the entire record herein, it is this ____ day of __________________, 2004, hereby ORDERED that Defendants' Motion is granted. This case is dismissed as to all defendants, with prejudice.

______________________________
United States District Judge

ECF service to counsel of record