**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHAEL W. STOVALL,

Plaintiff,

v.

ANN M. VENEMAN,
Secretary of Agriculture,
RICHARD KNOUFF,
KENDALL FAUST,
CAROLYN COOKSIE and
CLARENCE SNYDER,

Defendants.

Civil Action No: 04-0319 (RMC)
**ECF**

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants, through undersigned counsel, hereby move to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3) and (6), because this Court lacks subject matter jurisdiction and personal jurisdiction over the individually sued defendants, because venue is improper, and because plaintiff has failed to state a claim upon which relief can be granted.

A memorandum of points and authorities and a proposed Order accompany this motion.

Respectfully submitted,

_/s/______________________________
KENNETH L. WAINSTEIN
DC Bar No. 451058
United States Attorney

_/s/______________________________
R. CRAIG LAWRENCE
DC Bar No. 171538
Assistant United States Attorney

_/s/________________________________

WILLIAM R. COWDEN
DC Bar No. 426301
Assistant United States Attorney
Judiciary Center Bldg.
Civil Division
555 Fourth Street, N.W., Rm E4412
Washington, DC 20530
(202) 307-0258

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL W. STOVALL,<br><br>Plaintiff,<br><br>v.<br><br>ANN M. VENEMAN,<br>Secretary of Agriculture,<br>RICHARD KNOUFF,<br>KENDALL FAUST,<br>CAROLYN COOKSIE and<br>CLARENCE SNYDER,<br><br>Defendants. | ) | Civil Action No: 04-0319 (RMC)<br>**ECF** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION**
**TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## Introduction

Michael W. Stovall, an African-American farmer residing in Alabama, brings this action alleging discrimination on the basis of his race against the Farm Service Agency ("FSA"), an agency of the United States Department of Agriculture ("USDA"), and Richard Knouff, Kendall Faust, Carolyn Cooksie, and Clarence J. "Sam" Snyder III, all FSA employees[1] named in their individual capacities. While not entirely clear from the First Amended Complaint, it appears that plaintiff is alleging discrimination in the period from 1998 through 2001. In the First Amended Complaint, plaintiff also may be alleging breach of a 1998 settlement agreement with USDA, which resolved a 1996 administrative discrimination complaint plaintiff filed against FSA.

[1] The First Amended Complaint misidentifies three defendants as Richard "Knoff" (rather than Knouff), as "Kenneth" Foust (rather than Kendall) and as Sam Snyder (rather than Clarence).

Plaintiff appears to have dropped several claims he originally asserted,[2] but still asserts claims under the Equal Credit Opportunity Act ("ECOA"); the Constitution; the Alabama Constitution; and for breach of contract.

As explained below, plaintiff's Complaint fails to state a claim upon which relief may be granted or the Court lacks subject matter jurisdiction over the claims. Accordingly, this action should be dismissed pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12 (b)(6). In addition, this Court lacks personal jurisdiction over individual defendants Knouff, Faust, Cooksie and Snyder and thus, claims asserted in this Court against them also must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Finally, proper service is lacking with respect to several defendants, subjecting claims against them to dismissal under Rule 12(b)(5) and dismissal for improper venue under Rule 12(b)(3) also is warranted.

**Factual Allegations**

While the Complaint was filed with the assistance of counsel, the Complaint is somewhat vague and unclear as to the events about which it complains. However, the following are what appear to be the key relevant factual allegations that can be accepted as true for purposes of this motion to dismiss.

Plaintiff is an African-American farmer residing in Town Creek, Alabama. First Amended Complaint ("Compl.") ¶ 2. Beginning in 1993, plaintiff attempted to apply for farm loans from the Lawrence County, Alabama FSA office, but he claims that he initially was unable to obtain an application. *Id.* at ¶ 11. In 1994, plaintiff submitted applications for a farm

---

[2] For example, violations of 42 U.S.C. § 2000d and 42 U.S.C. § 1981(a) are no longer alleged.

ownership loan and a farm operating loan. *Id.* at ¶ 12. Both applications were initially denied but, after an administrative appeal, the application for an operating loan was approved. *Id.* The funds on such loans were disbursed in March 1995. *Id.* On January 4, 1996, plaintiff filed an administrative complaint with USDA alleging discrimination on the basis of race in regard to his loan applications. *Id.* at ¶ 14. The Office of Civil Rights ("OCR") at USDA issued a Program Complaint Final Decision on plaintiff's administrative complaint. In the decision, OCR found discrimination on the basis of race by FSA against plaintiff in the denial of a farm ownership loan in 1994 and the denial of a farm operating loan in 1995. OCR did not find discrimination in the denial of a farm ownership loan in 1995. Compl. at ¶ 15.

In about January 1998, plaintiff and OCR reached a Resolution Agreement to settle plaintiff's administrative complaint. Compl. at ¶ 17. Under the Resolution Agreement, plaintiff received $145,000 in compensatory damages; discharge of all of his debt to FSA; reasonable attorney's fees and costs; priority consideration on certain future applications for FSA inventory property and FSA farm loans; and other programmatic relief. *See* Resolution Agreement at ¶¶ 2-3, Exhibit B to Plaintiff's Initial Complaint. Plaintiff agreed in the Resolution Agreement that he was waiving any and all rights he had arising from his administrative complaint against both USDA and USDA employees. *Id.* at ¶¶ 4-6.

In 1998, after several attempts, plaintiff purchased farm land from FSA inventory property. Compl. at ¶ 19. Plaintiff's March 1998 applications for a farm ownership loan, presumably to purchase the inventory property, and a farm operating loan were approved in March of 1998, and he received the funds in November 1998. *Id.* at ¶¶ 20, 21. In applying for these loans, plaintiff sought the assistance of defendants Carolyn Cooksie and Sam Snyder in the

FSA national office. *Id.* at ¶ 21. Mr. Snyder visited plaintiff in Alabama to assist him with his application. *Id.* at ¶ 21.

In April 1999, plaintiff sought additional funds to build two chicken houses, and he consulted with Ms. Cooksie on this matter. *Id.* at ¶ 22. In December 1999, additional funds were added to plaintiff's loans so that he could build the chicken houses. However, in a meeting with the contractor and defendant Richard Knouff of the local FSA office, it was discovered that construction of the chicken houses would take additional funds. Plaintiff inquired of Mr. Knouff whether FSA could lend him additional money, and Mr. Knouff informed plaintiff that plaintiff was at his loan limit. *Id.* Plaintiff claims that Mr. Knouff told his contractor to terminate construction, though the contractor returned in three weeks. *Id.* Because of several difficulties, plaintiff contacted Mr. Snyder about his concerns. At some point, Mr. Snyder worked with plaintiff on a Farm and Home Plan in which Mr. Snyder included the funds awarded plaintiff in attorney's fees and costs as income in the plan (which, according to plaintiff "was improper as those funds were paid to [plaintiff]'s attorney pursuant to the 1998 Resolution Agreement."). *Id.* at ¶ 24. According to plaintiff, the Farm and Home Plan was not able to demonstrate adequate cash flow. *Id.* In October 2001, Mr. Knouff sent plaintiff a notice stating that FSA could not consider additional loans or loan restructuring due to the non-feasibility of the Farm and Home Plan and the because plaintiff had reached the maximum loan amounts. *Id.*

Plaintiff makes a general allegation that defendants Cooksie, Snyder, Faust, and Knouff collectively orchestrated a ploy to ensure that plaintiff could not farm and would be out of business. *Id.* at ¶¶ 24-26.

**Legal Standard**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C. Cir. 1996). A court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Maljack Prods. v. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C. Cir. 1995). A court does not, however, have to accept as true the plaintiff's legal conclusions. *Taylor v. F.D.I.C.*, 132 F.3d 753, 762 (D.C. Cir. 1997). A court also can reject unsupported assertions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. *Miree v. DeKalb County*, 433 U.S. 25, 27 (1977).

Fed. R. Civ. P. 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. *Id*. In contrast to a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), when a party moves to dismiss a complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court may consider the motion based on the complaint standing alone or, where necessary, on the complaint "supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). This standard follows from the "well established practice – adopted by the Supreme Court [many] years ago . . . – of allowing the District Court to make findings when a factual dispute regarding jurisdiction does arise." *Id*. at 198 n.6 (*citing Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Rasul v. Bush*, 215 F. Supp.2d 55, 61 (D.D.C. 2002), *aff'd*, 321 F.3d 1134 (2003), *rev'd on other grounds*, __ U.S.__, 124 S. Ct. 2686 (2004). In considering a motion to dismiss for lack of subject-matter jurisdiction, a court accepts as true all of the factual allegations contained in the complaint. *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)). But a court is not required to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Because subject matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a court resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(1) must give the complaint's factual allegations closer scrutiny than required for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp.2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.D.C. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. Of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## Argument

### I. Plaintiff Generally Has Not Stated A Cause Of Action For Failure To Set Forth Sufficient Facts In His Complaint.

Even under the liberal standards of notice pleading promulgated by Federal Rule of Civil Procedure 8, plaintiff's bare allegations do not suffice to state a claim on which relief can be

granted. As set forth above, the First Amended Complaint is vague as to the events about which plaintiff is complaining, asserting that defendants "continue to violate Plaintiff's rights to due process and equal protection" Compl. at ¶ 26, but without ever stating specifically how his constitutional rights supposedly are being violated. The First Amended Complaint gives defendants no notice of the facts underlying plaintiff's claims of racial discrimination. Plaintiff merely states the legal conclusion that he advances, i.e., that discrimination occurred and constitutional rights were violated. Likewise, the First Amended Complaint indicates that "no equipment loans were granted even though applied for[,]" First Amended Complaint at ¶ 25, but plaintiff never indicates when such loans were denied, let alone when he applied for such a USDA loan program. *See Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) (explaining that the purpose of Rule 8 is "to make the defendant aware of the facts") (emphasis added). For this reason alone, the First Amended Complaint should be dismissed.

However, even without Rule 8, the First Amended Complaint should be dismissed for the additional bases set forth below.

## II. Plaintiff's Claims Under The ECOA Must Be Dismissed Because They Are Time Barred.

Plaintiff's claims under the ECOA must be dismissed because the claims fall neither within the ECOA's two-year statute of limitations nor within the scope of special legislation containing a limited waiver of such statute of limitations.

### *A. Plaintiff's ECOA Claims Are Barred by the Applicable Statue of Limitations*

The FSA is a component of the USDA. Like its predecessor, the Farmers Home Administration ("FmHA"), the FSA is statutorily authorized to make loans to farmers who

cannot obtain credit from commercial institutions. *See* Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921, *et seq*. The FSA makes loans for a variety of different purposes including, *inter alia*, "farm ownership" loans, which are intended to assist farmers in buying or improving farm property, 7 C.F.R. § 1943.2, and "operating" loans, which provide credit and management assistance to help farmers run their farms, 7 C.F.R. § 1941.2.

Although the FSA's credit and benefit programs are federally funded, until 1999, decisions to approve or deny applications for credit or benefits were made by a combination of farmers elected to local committees and USDA staff. *See Pigford v. Glickman*, 206 F.3d 1212, 1214 (D.C. Cir. 2000); *Dahl v. United States*, 695 F.2d 1373, 1378 (Fed. Cir. 1982). FSA decisions denying credit, loan servicing requests, or farm benefits may be appealed to the USDA's National Appeals Division ("NAD"), an entity entirely separate from the FSA. *See* 7 C.F.R. Part 11.

The ECOA prohibits discrimination in the field of consumer credit and, because the FSA extends credit, the ECOA applies to FSA's conduct. The ECOA makes it "unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). The Act creates a private right of action against creditors, including the United States, who violate its anti-discrimination provisions, and makes such creditors "liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." 15 U.S.C. § 1691e(a). The statute also allows for equitable and declaratory relief under appropriate circumstances. 15 U.S.C. § 1691e(c).

Defendants acknowledge that a claim asserting discrimination in the denial of an FSA

farm loan is cognizable under the ECOA, and that a claimant may recover money damages for such a claim. However, under subsection (f), no private district court action may be brought later than two years after the occurrence of an alleged ECOA violation. *See id.* § 1691e(f); *Mays v. Buckeye Rural Elec. Coop., Inc.*, 277 F.3d 873, 879-80 (6th Cir. 2002) (2-year statute of limitations runs from the date of the alleged discriminatory violation of the ECOA). *See also Pigford v. Glickman*, 206 F.3d 1212, 1214 (D.C. Cir. 2000) (noting the 2-year statute of limitations in the ECOA giving rise to special limited waiver in § 741).

The Complaint is far from clear as to the events that are the subject of plaintiff's ECOA claims. Plaintiff appears to be complaining about a number of events that occurred after the 1998 February 27, 1998 settlement agreement.[3] While the Complaint is not clear, the latest specific date that plaintiff mentions in the Complaint is October 2001 on which date he alleges defendant Knouff informed plaintiff that he could not receive additional loans or loan restructuring. Compl. at ¶ 24. Most important, plaintiff has not identified any specific events that occurred within the two-year period proceeding the commencement of this action. Accordingly, any ECOA claims that plaintiff is making about post-February 27, 1998 events are time-barred under ECOA, and should be dismissed against the government and, to the extent any ECOA claims are asserted against the individual defendants, against them too.

Plaintiff has not identified any specific event that occurred within the two-year period

[3] In any event, plaintiff could not proceed as to any event that occurred prior to the Resolution Agreement since, as noted above, he waived any and all claims against USDA and its employees that occurred prior to the date of the agreement. *See Autera v. Robinson*, 419 F.2d 1197, 1201 n.17 (D.C. Cir. 1969). The enforceability of settlement agreements is governed by the same principles governing the enforcement of any other contract. *See Shaffer v. Veneman,* 325 F.3d 370, 372 (D.C. Cir. 2003)*; Village of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C. Cir. 1982); *Sirmans v. Caldera*, 138 F. Supp.2d 14, 19 (D.D.C. 2001).

proceeding the January 2004 commencement of this action, let alone any specific conduct that the ECOA might prohibit. Consequently, any pre-2002 events of which plaintiff may complain are time-barred under the ECOA and should be dismissed.

*B. Plaintiff Is Not Eligible Under Legislation Waiving the Statute of Limitations*

Although the ECOA contains a two-year statute of limitations, 15 U.S.C. § 1691e(f), in 1999 Congress enacted legislation that *retroactively* extended the limitations period *for certain claims* against the USDA. Provided a civil action was commenced within two years of the date of the amendment (October 21, 1999), Congress allowed individuals who had filed administrative complaints of discrimination with the USDA between January 1, 1981 and July 1, 1997 to sue for discrimination alleged to have occurred between January 1, 1981 and December 31, 1996. *See* Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999, Pub. L. No. 105-277, § 741, 112 Stat. 2681 (codified at 7 U.S.C. § 2297 note).

Plaintiff filed the initial Complaint in this action in January 2004, over four years after the date of the October 1999 amendment. Over two years too late even if he had filed a claim that qualified under the 1999 amendment, plaintiff still would have no basis to claim that an ECOA lawsuit could be considered timely filed here.

## III. Plaintiff's Constitutional Claims Against the United States Are Barred by Sovereign Immunity.

Plaintiff allege a violation of the Due Process and Equal Protection guarantees of the United States Constitution.[4] Constitution-based claims for money damages against the federal

[4] Plaintiff asserts this cause of action under the Fourteenth Amendment, *see* Compl. at ¶ 30, which does not apply to the federal government. *See* U.S. Const. amend XIV, §1 ("No State

agencies are actually claims against the United States. *See Clark v. Library of Congress*, 750 F.2d 89, 103-104 (D.C. Cir. 1984); *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1316 (D.C. Cir. 1984).

It is well established that the United States can be sued only to the extent that it consents to suit. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotation marks and brackets omitted); *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity, however, does bar suits for money damages against officials in their capacity absent a specific waiver by the government.") (emphasis deleted); *Broadnax v. United States Army*, 710 F.2d 865, 866-67 (D.C. Cir. 1983). Thus, in suits seeking money damages, the United States enjoys sovereign immunity to the extent that its immunity has not been waived by Congress in unequivocal terms. *United States v. Testan*, 424 U.S. 392 (1976); *United States v. King*, 395 U.S. 1 (1968); *United States v. Sherwood*, 312 U.S. 392 (1976); *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991).

The United States, however, has not waived sovereign immunity for constitutional torts. *Kline v. Republic of El Salvador*, 603 F. Supp. at 1317; *see also Laswell v. Brown*, 683 F.2d 261 (8th Cir. 1982); *Birnbaum v. United States*, 588 F.2d 319, 327-28 (2nd Cir. 1978). Since the

---

shall … deny to any person within its jurisdiction the equal protection of the laws.") (emphasis added). However, the Due Process Clause of the Fifth Amendment expressly guarantees that the federal government will provide due process to its citizens. And the Supreme Court also locates an equal protection guarantee in the Due Process Clause of the Fifth Amendment that applies to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497 (1954). Therefore, plaintiff's error is insignificant.

United States has not waived sovereign immunity for constitutional tort claims, such claims must be dismissed. *See Ward v. Kennard*, 133 F. Supp.2d 54, 59 (D.D.C.) ("[T]he D.C. Circuit recognized the well-established rule that sovereign immunity bars suits for money damages against officials in their official capacity, absent a specific waiver by the government."); *Garcia v. United States*, 538 F. Supp. 814 (D.C. Tex. 1982).[5] Consequently, such claims, whether characterized as a violation of Federal or Alabama constitutional law, must be dismissed.

## IV. Any Claim Against The Government For Breach Of The 1998 Settlement Agreement Would Have To Be Brought Before The Court Of Federal Claims.

After its amendment, it is clear that plaintiff is asserting a claim for breach of the 1998 Resolution Agreement. Compl. at ¶¶ 43, 44. But plaintiff cannot proceed in this Court on his breach of contract claim. The Tucker Act waives the sovereign immunity of the United States for contract claims, but rests exclusive jurisdiction over plaintiff's contract claim in the United States Court of Federal Claims.[6] *See* 28 U.S.C. §1491(a)(1). *See also United States v. Mitchell*, 463 U.S. 206, 215 (1983); *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003). A settlement agreement is a contract, and a lawsuit based on a settlement agreement is a contract claim. *See Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003) ("[U]nder the Tucker Act … a

[5] It is unclear whether constitutional claims are intended against defendants in their individual capacities, but immunity would apply to them too, for reasons discussed below.

[6] The Little Tucker Act creates concurrent jurisdiction in federal district courts for contract claims against the United States for less than $10,000. *See* 28 U.S.C. § 1346(a)(2). Here, however, plaintiff's claims are far in excess of the Little Tucker Act's cap. In the initial complaint, Plaintiff indicated that he was seeking twenty million dollars in damages. *See* Initial Compl. at page 16. That language appears to have been dropped, although plaintiff does assert that as a result of USDA's actions he "has suffered almost incalculable pecuniary and non-pecuniary damages[.]" Compl. at ¶ 27. To the extent plaintiff intends to assert that he is owed any money under the 1998 Resolution Agreement, he must limit his claim to less than $10,000 or he will have pled that contract claim out of this Court.

settlement agreement is considered a contract."); *Presidential Gardens Associates v. United States*, 175 F.3d 132, 141 (2d Cir. 1999) (similar). As a result, any cause of action alleging a breach of the 1998 Resolution Agreement between plaintiff and USDA can be brought only in the Court of Claims.

**V. Plaintiff Is Not Entitled To Declaratory Or Injunctive Relief.**

Plaintiff says he seeks a "temporary injunction" enjoining defendants from denying any loan applications submitted by plaintiff to FSA. Compl. Prayer for Relief. He also asks the Court to appoint an administrator "to conduct the affairs" of the USDA's Office of Civil Rights. *Id.* at ¶¶ 38 and Prayer for Relief. Such relief is inappropriate, among other reasons, because plaintiff has not stated a proper ECOA claim or established a basis for this Court's subject matter jurisdiction.

In similar cases recently filed by plaintiff's counsel in this Court, counsel has asserted that the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201-02, provides a basis for this Court to act on similar requests to intercede in USDA's operation of its Office of Civil Rights. But the DJA is not an independent basis of subject matter jurisdiction. The DJA gives a federal court the power to enter a declaratory judgment only in cases of <u>actual controversies</u> that are otherwise within the court's subject matter jurisdiction. *See generally Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963-64 (D.C. Cir. 1995); *Ranger v. Tenet*, 274 F. Supp.2d 1, 9 (D.D.C. 2003). Relief by way of declaratory judgment is discretionary with the courts, and it may be denied when the plaintiffs have other remedies available. *See Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 (1993).

As demonstrated above, this Court cannot hear plaintiff's ECOA claim because it is

barred by the statute of limitations. As there is no actual case or controversy before the Court, the provision of declaratory relief would be inappropriate. Moreover, even if plaintiff's ECOA claim were to proceed, this Court should exercise its discretion to deny declaratory relief because remedies exist under the ECOA that Congress intended as the means to make eligible plaintiffs whole.

Finally, to the extent plaintiff's First Amended Complaint can be interpreted as an effort to obtain declaratory relief not only for an ECOA violation, but also on the basis of an alleged constitutional violation, the constitutional claim similarly provides no basis for such relief. Implying the existence of a constitutional remedy would not be appropriate on these facts. In analogous cases the courts have counseled against the creation of alternative constitutional-type remedies where comprehensive statutory schemes have been established to provide relief in a given area. *See e.g., Bush v. Lucas*, 462 U.S. 367 (1983) (comprehensive procedural and substantive provisions of the Civil Service Reform Act (CSRA) constitute "special factors" counseling hesitation against a *Bivens* remedy); *Brown v. General Servs. Admin.*, 425 U.S. 820, 834 (1976) (construing Title VII and recognizing that "[i]n a variety of contexts, the Court has held that a precisely drawn, detailed statute pre-empts more general remedies"); *Kizas v. Webster*, 707 F.2d 524, 536-537, 541-43 (D.C. Cir. 1983) (Title 5's compensation specificity counsels against permitting a Fifth Amendment takings claim in a compensation dispute and Title VII similarly bars effort to characterize discrimination claim as a Fifth Amendment equal protection violation). The statutory scheme Congress created in ECOA is the very type of comprehensive scheme that has led the Supreme Court and lower courts to decline to create general constitutional remedies in similar cases.

In *Bush*, 462 U.S. at 388, the Supreme Court observed that the CSRA is "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." Thus, that Court held that the comprehensive procedural and substantive provisions of the CSRA constitute "special factors" counseling hesitation against a *Bivens* remedy. Based on *Bush* and its progeny, this Court in *Mittleman v. U.S. Treasury*, held that the Privacy Act, 5 U.S.C. § 552a, is the controlling statute for seeking access to or correction of records or damages resulting from unlawful disclosures and therefore precludes a plaintiff from seeking to have a court imply a *Bivens* action based on similar allegations. *See Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 454 (D.D.C. 1991). The Court observed that:

> Like the CSRA, the Privacy Act provides a comprehensive scheme for addressing plaintiff's concerns about the inaccuracy of the records and about disclosure of them to third parties. In establishing the Privacy Act, Congress has undertaken to balance the individual interests of the subjects with the interest in protecting certain records and assuring an efficient government. Therefore, pursuant to the Bush mandate that courts should refrain from implying a Bivens remedy when "special factors" counseling hesitation, such as Congressionally-provided remedies for constitutional violations, are present, the Court concludes that plaintiff's constitutional claims regarding her records and any disclosures by defendants about those records are barred. *See Bush,* 462 U.S. at 378, 103 S.Ct. at 2411.

*Mittleman*, 773 F. Supp. at 454.

It is not even necessary that the statutory remedial scheme be capable of affording plaintiff all of the relief he may seek in this action. The controlling factor is that through enactment of ECOA, Congress created a comprehensive scheme intended to address these same discrimination issues. *See Spagnola v. Mathis*, 859 F.2d 223, 228-30 (D.C. Cir. 1988); *Bush*, 462 U.S. at 388-90. Thus, any general constitutional claim, even one for declaratory relief, should similarly be precluded by the existence of remedies in the ECOA statute. Accordingly,

any "implicit" constitutional claim seeking declaratory relief that plaintiff may also intend should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) & (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

## VI. Plaintiff's First Amended Complaint Establishes No Basis For Personal Liability On The Part Of Any Individually-Sued Defendant.

### *A. This Court Lacks Personal Jurisdiction Over the Individually-Sued Defendants*

This Court lacks jurisdiction over three of the four defendants who are sued in their individual capacities.[7] A district court does not have nationwide jurisdiction over defendants who live outside the forum state just because the defendants are federal government employees. *Stafford v. Briggs*, 444 U.S. 527 (1980). When federal officials are sued in their individual capacities, the statutes that operate to confer personal jurisdiction and venue in cases where the federal government itself is the defendant do not apply. *See Reuber v. United States*, 750 F.2d 1039, 1049 (D.C. Cir. 1984). Instead, the plaintiff must satisfy the requirements applicable to individuals generally when he or she names a federal employee personally as a defendant. *Id*.

Consistent with "minimum contacts" analysis, absent actual residency status, *in personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia and the District of Columbia's long arm statute, D.C. Code § 13-423 (2000). *See Reuber*, 750 F.2d at 1049 (long arm statute provides only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia.). *Accord Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). Consequently, plaintiff

---

[7] Only defendant Cooksie, who is the Deputy Administrator for Farm Loan Programs of FSA, works in the USDA headquarters in the District of Columbia.

must rely on the District of Columbia's long-arm statute as the basis for obtaining personal jurisdiction over any individuals sued as such. *See Reuber*, 750 F.2d at 1049.

The relevant portion of that statute provides that personal jurisdiction may be exercised with respect to claims arising from a person's business transaction, contracts for services or tortious injuries *in the District of Columbia*.[8] With respect to defendants Knouff and Faust, plaintiff does not allege that they have ever resided or even worked in the District of Columbia at any time relevant to this case. The discrimination about which plaintiff appears to complain presumably occurred, if at all, in Alabama, where defendants Knouff and Faust work and appear to live. *See* Affidavits of Service. Thus, even if plaintiff's allegations are assumed to be true, it is apparent that any wrongful acts or tortious injuries occurred, if at all, in Alabama, not in the District of Columbia. As to defendant Sam Snyder, while this individual worked in the USDA headquarters in the District of Columbia part of the time relevant to the events in question, he currently does not work in that location and plaintiff does not assert that Mr. Snyder resides here. (Nor does plaintiff assert that Carolyn Cooksie resides in the District.)

A plaintiff bears the burden to establish that a court possesses personal jurisdiction over

---

[8] District of Columbia long-arm statute provides that personal jurisdiction may be exercised with respect to claims arising from a person's

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, [or] engages in any other persistent course of conduct . . . in the District of Columbia.

D.C. Code § 13-423(a)(1)-(4).

each defendant, *see Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D.D.C. 1998), and the mere fact that each defendant is an employee of the USDA, which has its central office in the District of Columbia, is insufficient to establish the requisite "minimum contacts" with the District of Columbia. *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). The District of Columbia's long-arm statute does not reach Alabama conduct by non-resident defendants Knouff, Faust, Snyder and Cooksie. *See Risley v. Hawk*, 108 F.3d 1396 (D.C. Cir. 1997); *Zakiya v. United States*, 267 F. Supp.2d 47 (D.D.C. 2003); *Meyer v. Federal Bureau of Prisons,* 929 F. Supp. 10, 13 (D.D.C. 1996) (in *Bivens* action, court declined to exercise personal jurisdiction over federal defendant residing in Missouri where plaintiff failed to "allege that he was harmed in any way in the District of Columbia by [the defendant]"). Consequently, this Court cannot exercise personal jurisdiction over these defendants and they should be dismissed from this suit pursuant to Fed. R. Civ. P. 12(b)(2).

Finally, defendant Venenam has not been personally served and she does not assume that plaintiff intends to sue her in her individual capacity. She is not alleged to have had any contact with plaintiff personally, or even with the other defendants.[9]

*B. Claims Against Federal Defendants Cooksie and Snyder Also Are Subject To Dismissal Under 12(b)(5) Because Proper Service Of Process Thus Far Is Lacking*

A federal court must have personal jurisdiction over a defendant before it can exercise its power. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694

---

[9] The Secretary reserves the right to move for transfer to Alabama of any ECOA claim should the Court determine that any such claim is properly asserted. For such a case, the venue provisions set forth at 28 U.S.C. §§ 1391(e) and 1404(a) would control. No substantial activity giving rise to the claims occurred here, the real property is located in Alabama, plaintiff also resides there, as do the apparent witnesses.

(1982). To exercise jurisdiction, there must be proper service of process, as authorized by rule or statute. *Omni Capital International, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97 (1987). In this case, plaintiff's claims against several federal defendants may be subject to dismissal because plaintiff cannot establish that he has properly served process on these defendants. Without proof of proper service, this Court is deprived of jurisdiction over the individual federal defendants.

It is well established that, in an action against a federal employee in an individual capacity, the individually sued defendant must be served with process in accordance with rules applicable to individual defendants. *See Lawrence v. Acree*, 79 F.R.D. 669, 670 (D.D.C. 1978); *Navy, Marshall & Gordon, P.C. v. U.S. Intern. Development-Cooperation Agency*, 557 F. Supp. 484, 489 (D.D.C. 1983) (federal agents sued in individual capacity for money damages must be served personally and not merely through service upon offices in which they work); *Delgado v. Federal Bureau of Prisons*, 727 F. Supp. 24 (D.D.C. 1989). Rule 4(e) requires that a copy of the summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. (Rule 4(i)(2)(B) further requires that in all cases where federal employees are sued individually for acts or omissions that occurred as a result of their federal employment, process also be served on the Attorney General of the United States and the United States Attorney for the district in which the action is brought.) The rule applicable to official capacity suits, "does not obviate the requirement of personal service . . . where the action is in substance against a federal official in his individual capacity." *Lawrence*, 79 F.R.D. at 670; *Delgado*, 727 F. Supp. at 27. Indeed, Rule 4(i) requires both personal service and service upon

the federal government.[10]

Where, as here, plaintiff apparently seeks relief against federal employees in their individual capacities, the Court must acquire personal jurisdiction over each defendant in order to enter a binding judgment against each. *See Reuber v. United States*, 750 F.2d at 1049; *Griffith v. Nixon*, 518 F.2d 1195 (2d Cir. 1975). And, as previously stated, the general rule is that a plaintiff has the burden of establishing personal jurisdiction. *Reuber*, at 1052; *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc*., 988 F.2d 476, 488 (3rd Cir. 1993).

The record in this case does not establish proper personal service on individual federal defendants Cooksie and Snyder. It may be the case that plaintiff mailed process to individuals working at agencies employing these federal defendants, and such employees may even have accepted mailings to the agencies, but such "evidence" would not be sufficient to establish effective service of process on the individual defendants sued in their individual capacities. *See Freeman v. Fallin*, 210 F.R.D. 255, 255-56 (D.D.C. 2002) (post Rule 4 amendment decision requiring personal service on a defendant in a *Bivens* action); *see also Leichtman v. Koons*, 527 A.2d 745, 747 & n.5 (D.C. 1987) (office employee with authority to receive business mail does not, by virtue of his or her position, have authority to receive process, and actual knowledge of

[10] Fed. R. Civ. P. 4(m) provides for dismissal of a complaint if service of process has not been perfected within 120 days after the complaint's filing. In this case it appears that plaintiff will have failed to effect timely proper service on federal defendants Cooksie and Snyder as required by Rule 4(i) unless both are served by June 25, 2004. The Docket does not reflect that proper service has occurred. Under some circumstances, additional opportunities may be available to a plaintiff to effect proper service on a defendant in a civil action. *See* Fed. R. Civ. P. 4(i)(3); *Moore v. Agency for International Development*, 994 F.2d 874 (D.C. Cir. 1993). However, in light of the many additional reasons calling for dismissal of plaintiff's claims, no good purpose would be served by the calling for additional efforts to effect proper service. *See Simpkins v. District of Columbia Government*, 108 F.3d at 370 (dismissing baseless *Bivens* claims on the merits notwithstanding lack of proper service).

the existence of a lawsuit is no substitute for personal service).[11] Accordingly, unless these defendants are properly and timely served, claims against them should be dismissed for failure to effect proper service.

### *C. All Defendants are Immune From Plaintiff's Statutory, Constitutional and/or Common Law Claims*

Additionally, to the extent any statutory and/or constitutional claims are asserted against any of the individually-named defendants, each of the defendants is entitled to qualified immunity from suit. All federal officials enjoy a qualified immunity from constitutional and statutory claims, and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985); *Procunier v. Navarette*, 434 U.S. 555, 561 (1978); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).[12] Under *Harlow* this determination requires an objective, not subjective, analysis. *McSurely v. McClellan*, 697 F.2d 309, 316 (D.C. Cir. 1982). *Harlow* thus places squarely on the plaintiff the

---

[11] Fed. R. Civ. P. 4(e)(1) also allows for service under state court rules and District of Columbia SCR-Civ. 4(c)(3) permits service by mail in some cases. But such service is allowed only where the court has personal jurisdiction over the defendant, *see* D.C. Code § 13-424 ("When the exercise of personal jurisdiction is authorized by this subchapter, service may be made outside the District of Columbia"), and where there is record evidence that the person to receive the summons and complaint is the defendant or someone authorized to accept service for them. SCR-Civ. 4(k); D.C. Code § 13-431(b) (requiring proof of mail service to include a receipt signed by the addressee or other evidence of personal delivery to the addressee).

[12] As previously discussed and further discussed below, assuming, *arguendo*, that plaintiff means to assert constitutional claims for damages against the USDA, those claims would be barred, absent a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Marshall v. Reno*, 915 F. Supp. 426 (D.D.C. 1996). *See also Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984) (plaintiffs may not seek damages against the United States and federal officials sued in their official capacities because the government has not waived sovereign immunity with respect to constitutional tort claims).

burden of showing a "prima facie case of defendants' knowledge of impropriety, actual or constructive." *Krohn v. United States*, 742 F.2d 24, 31-32 (1st Cir. 1984). *Accord Davis v. Scherer*, 468 U.S. 183, 191 (1984). Furthermore, as the Supreme Court has held,

> Unless the plaintiffs' allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A defendant's right is to "immunity from suit" not a "defense to liability." *Id.*; *see also Cleavinger*, 474 U.S. at 207-08.

In determining whether a federal official is entitled to qualified immunity, a federal court must follow a two-step process. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first threshold question is whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the offic[ial]'s conduct violated a constitutional right?" *Id*. Next, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. Therefore, if the first part of the two-pronged test is not met (and there is no constitutional violation established) then the defendants are entitled to qualified immunity. *See Verdecia v. Adams*, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because [plaintiff] cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

As described above, even after its amendment, the plaintiff's Complaint remains ambiguous. It is not at all clear the specific role that each individually named defendant played in plaintiff's allegation of a violation of his constitutional rights. Instead, the plaintiff has made

general allegations. Apparently, he seeks to rely merely on pleading that "[o]n information and belief, Defendants COOKSIE, SNYDER, FAUST and KNOFF [sic] collectively and intentionally orchestrated [a] ploy to insure that [plaintiff] could not farm and would effectively be out of business." Complaint ¶ 24. Such pleading does not articulate the violation of a clearly established constitutional right, as necessary to overcome the qualified immunity to which these individuals are due. The Complaint against defendants in their individual capacities should, therefore, be dismissed, *inter alia*, as legally frivolous. *See Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994).[13]

*D. Improper Venue Mandates Dismissal (or Transfer) of Plaintiff's Individual Capacity Claims Under Rule 12(b)(3), Were Any Claims to Survive*

When federal officials are sued in their individual capacities, the venue provisions which operate in the typical case against the government itself do not control. *Stafford v. Briggs*, 444 U.S. 527 (1980). In *Stafford v. Briggs*, the Supreme Court held that a suit properly brought against federal officials in their official capacities, for which venue would lie under 28 U.S.C. § 1391(e), would not provide a basis for venue against such officials in their individual capacities. Rather, one must look to 28 U.S.C. § 1391(b) which provides that:

> A civil action where jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if

[13] In the First Amended Complaint, plaintiff appears to have dropped a claim asserted under 42 U.S.C. § 1983 that defendants construed, and previously discussed, as an improper *Bivens* claim. To the extent Plaintiff did not intend to drop such a claim, the arguments defendants asserted in their initial Motion to Dismiss the Complaint should be incorporated herein.

there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In this action, not all defendants are alleged to reside in the same state. Therefore, venue cannot lie in this district under subsection (1) of Section 1391(b). Clearly, no substantial part of the events or omissions giving rise to plaintiff's claims – whatever those unarticulated events might have been – are alleged to have taken place in the District of Columbia. Instead, whatever conduct plaintiff may intended to be complaining about presumably took place in Alabama, where he claims residency and where several federal defendants are or were employed.

Alternatively, the Court could transfer personal capacity claims it chooses not to dismiss now to Alabama pursuant to 28 U.S.C. § 1406, which allows a district court, in the interests of justice, to grant a change of venue to any district or division in which the case could have been brought. This section does not require that a district court have personal jurisdiction over the defendants before transferring the case, as does 28 U.S.C. § 1404. *See Goldlawr v. Heiman*, 369 U.S. 463 (1962); *Lozano v. Civiletti*, 89 F.R.D. 475, 480 (D.D.C. 1980). However, federal defendants submit that even though venue is improper here, and although a transfer might not be inappropriate, this frivolous case should instead be dismissed with prejudice for the numerous other reasons set forth in this memorandum. *See Simpkins v. District of Columbia*, 108 F.3d at 370 (recognizing duty of courts "to weed out" insubstantial *Bivens* actions "expeditiously" through dismissals on the merits rather than merely transferring claims, thereby "delaying the inevitable").

## VII. Defendants Are Immune From Plaintiff's Alabama Constitutional Tort Claim.

Plaintiff asserts a tort claim under Alabama law. This claim, too, must be dismissed because it does not fall within any applicable waiver of sovereign immunity. While the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, contains such a waiver for certain common law tort claims against the United States, the FTCA requires a plaintiff to exhaust administrative remedies prior to bringing such claims in a federal court. 28 U.S.C. § 2675(a). Specifically, a plaintiff cannot proceed under the FTCA unless he "shall have first presented his claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." *Id.*

Plaintiff does not appear to have followed the procedures necessary to exhaust his administrative remedies as required by the FTCA. Plaintiff does not allege that he ever presented his Alabama tort claims to USDA, let alone obtained a final decision on them. *See, e.g., Bruce v. United States*, 621 F.2d 914, 918 (8th Cir. 1980) (no jurisdiction under FTCA where plaintiff fails to allege exhaustion of administrative remedies); *Altman v. Connally*, 456 F.2d 1114, 1116 (2d Cir. 1972) (same). Moreover, plaintiff was required to present his tort claims to USDA within two years of their accrual, *see* 28 U.S.C. § 2401(b); *Schuler v. United States*, 628 F.2d 199, 201 (D.C. Cir. 1980), yet all the conduct at issue in this case appears to date back beyond two years. Because plaintiff did not exhaust his administrative remedies as the FTCA requires, his tort claims must be dismissed for lack of jurisdiction. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *Simpkins v. District of Columbia*, 108 F.3d at 371 (FTCA's exhaustion requirement is jurisdictional); *see also Vanover v. Hantman*, 77 F. Supp.2d

91, 99 (D.D.C. 1999) (official capacity tort claims dismissed where FTCA inapplicable).

Nor will any state law claims lie against the individual defendants in their individual capacities. In 1988 the FTCA was amended to add a provision allowing the federal government to substitute itself as the defendant when its employees were sued in tort for acts undertaken in the scope of their federal employment:

> Upon certification of the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all reference thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). Here, the Attorney General, through his delegate, R. Craig Lawrence, Chief of the Civil Division of the United States Attorney's Office for the District of Columbia, has certified that the individual defendants acted within the scope of their employment at all times relevant to the events described in the First Amended Complaint. *See* Exhibit A to this Memorandum. Accordingly, as to plaintiff's common law claims, the United States should be substituted as the defendant for those claims.

Once the United States is substituted in the individual defendants' stead, sovereign immunity attaches. *See, e.g., Rodriguez v. Sarabyn*, 129 F.3d 760, 764 (5th Cir. 1997) ("Once the substitution occurs, the FTCA applies, and some claims may be dismissed for lack of subject-matter jurisdiction because the United States has not waived it sovereign immunity."); *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997) ("Once this certification is made, the United States is substituted as the sole defendant… [T]hen the plaintiff's sole route for recovery is the Tort Claims Act. For many torts the United States has not waived its sovereign immunity

through the Tort Claims Act and therefore, the plaintiff cannot recover from the federal government despite the merits of his or her claim."). *See also Pauly v. Department of Agriculture*, 348 F.3d 1143, 1151 (9th Cir. 2003); *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2001); *Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000); *Midland Psychiatric Associates v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998). This is true even if the attachment of sovereign immunity would mean that the plaintiff has no ability to recover whatsoever. *See United States v. Smith*, 499 U.S. 160, 166 (1991) ("§ 5 [of the FTCA] precludes an alternative mode of recovery against a Government employee in cases where the FTCA itself does not provide a means of recovery."); *Simpkins v. District of Columbia Government*, 108 F.3d at 371 ("[T]he FTCA [is] the exclusive remedy for such torts by government employees acting within the scope of their duties even when the FTCA itself precludes Government liability.") (internal quotation marks omitted). The FTCA does not waive sovereign immunity for claims arising from allegations that its employees committed constitutional torts or for "misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); *Laswell v. Brown*, 683 F.2d 261, 267-68 (8th Cir, 1982); *Adeogba v. Migliaccio*, 266 F. Supp.2d 142, 145 (D.D.C. 2003). Therefore, plaintiff's state law tort claims against the individual defendants in their individual capacities—now against the United States—are barred by sovereign immunity and should be dismissed.

**Conclusion**

For the reasons stated, the Court should dismiss plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6).

Respectfully submitted,

_/s/______________________________
KENNETH L. WAINSTEIN
DC Bar No. 451058
United States Attorney

_/s/______________________________
R. CRAIG LAWRENCE
DC Bar No. 171538
Assistant United States Attorney

_/s/______________________________
WILLIAM R. COWDEN
DC Bar No. 426301
Assistant United States Attorney
Judiciary Center Bldg.
555 Fourth Street, N.W., Rm E4412
Washington, DC 20530
(202) 307-0258

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing motion, memorandum in support and proposed order has been served by email to plaintiff's counsel of record through the Court's ECF system on this 30th day of August 2004.

_/s/____________________________________
WILLIAM R. COWDEN, DC BAR #426301
Assistant United States Attorney
United States Attorney's Office
Judiciary Center - Civil Division
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0258

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL W. STOVALL,<br><br>Plaintiff,<br><br>v.<br><br>ANN M. VENEMAN,<br>Secretary of Agriculture,<br>RICHARD KNOUFF,<br>KENDALL FAUST,<br>CAROLYN COOKSIE and<br>CLARENCE SNYDER,<br><br>Defendants. | ) | Civil Action No: 04-0319 (RMC)<br>**ECF** |

**ORDER**

Upon consideration of the Defendants' Motion to Dismiss, Plaintiff's Opposition, and any Reply, it is this ____ day of ______________, hereby

ORDERED that the Defendants' motion is hereby GRANTED, and further

ORDERED that Plaintiff's First Amended Complaint is DISMISSED in its entirety, with prejudice.

_______________________________________
UNITED STATES DISTRICT JUDGE

Copies to counsel of record through ECF