U. S. Department of Justice

**EXHIBIT 1**

Office of Legal Counsel

Office of the
Assistant Attorney General

Washington, D.C. 20530

April 18, 1994

MEMORANDUM FOR JAMES S. GILLILAND
GENERAL COUNSEL
DEPARTMENT OF AGRICULTURE

From: Walter Dellinger
Assistant Attorney General
Office of Legal Counsel

Re: Authority of USDA to Award Monetary Relief for Discrimination

This memorandum responds to your request for our opinion concerning the authority of the Secretary of Agriculture to award damages and other forms of monetary relief, attorneys' fees, and costs to individuals who the Department of Agriculture ("USDA") has determined have been discriminated against as applicants for, or participants in, USDA conducted programs.[1] You have informed us that the statutes authorizing these programs do not authorize such relief and have asked our opinion concerning whether various civil rights statutes authorize the Secretary to afford such relief.

The Secretary has authority to award monetary relief, attorneys' fees, and costs if a court could award such relief in an action by the aggrieved person. Accordingly, the dispositive questions regarding your inquiry are whether the anti-discrimination provisions of the individual civil rights statutes apply to federal agencies, and if so, whether the statutes waive the sovereign immunity of the United States against imposition of such relief. In considering your request, we have reviewed Title VI of the Civil Rights Act of 1964, the Fair Housing Act, the Rehabilitation Act, and the Equal Credit Opportunity Act. With respect to attorneys' fees and costs, we have also reviewed the Equal Access to Justice Act.

We conclude that the anti-discrimination provisions of Title VI do not apply to federal agencies. Some anti-discrimination provisions in each of the other statutes that we reviewed do apply to federal agencies, but only one of the statutes, the Equal Credit Opportunity Act, waives sovereign immunity with respect to monetary relief, authorizing imposition of compensatory damages. The Fair Housing Act and the Rehabilitation Act do not waive immunity against monetary relief. Attorneys' fees and costs may be awarded pursuant to the waiver of immunity contained in the Equal Access to Justice Act.

[1] See Letter to Walter Dellinger, Acting Assistant Attorney General, Office of Legal Counsel, from James S. Gilliland, General Counsel, Department of Agriculture (Oct. 8, 1993).

03 2306

FILED

NOV - 7 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

I. BACKGROUND

A federal agency must spend its funds only on the objects for which they were appropriated. 31 U.S.C. § 1301(a). Consistent with this requirement,[2] appropriations law provides that agencies have authority to provide for monetary relief in a voluntary settlement of a discrimination claim only if the agency would be subject to such relief in a court action regarding such discrimination brought by the aggrieved person.

This principle has been applied in a number of Comptroller General opinions. For example, the Comptroller General has concluded that agencies have the authority to settle administrative complaints of employment discrimination by awarding back pay because such monetary relief is available in a court proceeding under Title VII of the Civil Rights Act of 1964 ("Title VII"); however, "[t]he award may not provide for compensatory or punitive damages as they are not permitted under Title VII." Equal Employment Opportunity Commission, 62 Comp. Gen. 239, 244-45 (1983).[3] The Comptroller General has come to the same conclusion with respect to the Age Discrimination in Employment Act of 1967 ("ADEA"). Albert D. Parker, 64 Comp. Gen. 349, 352 (1985). The Comptroller General has applied this appropriations law limitation directly to USDA. See Comp. Gen. Decision No. B-237615, at 1 (June 4, 1990) ("Employee may not be reimbursed for economic losses pursuant to a resolution agreement made under [ADEA or Title VII] since there is no authority for reimbursement of compensatory damages under either statutory authority.").[4]

Therefore, the question you have raised regarding the Secretary's authority to award monetary relief in administrative proceedings turns on whether the various civil rights statutes authorize the award of such relief against federal agencies in a court proceeding. That question requires a two-step analysis: whether federal agencies are subject to the discrimination prohibitions of the statute; and, if so, whether the statute waives the sovereign

---

[2] See also 31 U.S.C. § 1341(a)(1) (Anti-Deficiency Act).

[3] Waiving sovereign immunity. Title VII expressly authorizes awards of back pay against federal agencies. A provision in Title VII entitled "Employment by Federal Government," 42 U.S.C. § 2000e-16, prohibits discrimination by federal agencies (subsec. (a)); authorizes a civil action in which "the head of the department, agency, or unit . . . shall be the defendant" (subsec. (c)); and incorporates the remedies provisions of 42 U.S.C. § 2000e-5 for such civil actions (subsec. (d)). Awards of back pay are expressly authorized by 42 U.S.C. § 2000e-5(g). Subsequent to issuance of the Comptroller General opinions cited in the text, Title VII was amended to provide for compensatory damage awards against all parties, including federal agencies, and punitive damage awards against all non-government parties. 42 U.S.C. § 1981a(b).

[4] The same appropriations limitation exists for settlements of litigation by the Department of Justice as exists for settlements of administrative proceedings by agencies. This Office has previously opined that the permanent appropriation established pursuant to 31 U.S.C. § 1304 ("the judgment fund") is available "for the payment of non-tort settlements authorized by the Attorney General or his designee, whose payment is 'not otherwise provided for,' if and only if the cause of action that gave rise to the settlement could have resulted in a final money judgment." 13 Op. O.L.C. 118, 125 (1989) (preliminary print) (emphasis added) (quoting 31 U.S.C. § 1304).

immunity of the United States against monetary relief. See U.S. Dept. of Energy v. Ohio, 112 S. Ct. 1627, 1632 (1992) (Energy Department conceded it was subject to procedural requirements of Clean Water Act and Resource Conservation and Recovery Act and liable for coercive fines under those statutes; therefore, only question presented was whether the statutes waived sovereign immunity from liability for punitive fines).[3]

The first step of the analysis requires application of conventional standards of statutory interpretation. The second step, however, requires application of a special, "unequivocal expression" interpretive standard that the Supreme Court has established to govern determinations as to whether a statute waives sovereign immunity -- either the inherent constitutional immunity of the federal government or the Eleventh Amendment immunity of the States:

> Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed. . . . [T]he Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarge[d] beyond what the language requires . . . . As in the Eleventh Amendment context, the unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text. If clarity does not exist there, it cannot be supplied by a committee report.

United States v. Nordic Village, Inc., 112 S. Ct. 1011, 1014-16 (1992) (internal quotation marks and citations omitted). Thus, "[t]here is no doubt that waivers of federal sovereign immunity must be 'unequivocally expressed' in the statutory test." United States v. Idaho, Ex Rel. Dir., Dept. of Water Res., 113 S. Ct. 1893, 1896 (1993).

The methodology required by this "unequivocal expression" standard may be illustrated by the decision in Nordic Village. Seven Justices joined in an opinion for the Court that found that although a provision of the Bankruptcy Code could be read to effect a waiver of sovereign immunity for monetary claims against the United States by a bankruptcy trustee, the provision was "susceptible of at least two interpretations that do not authorize monetary relief." 112 S. Ct. at 1015 (emphasis in original). The Court made no effort to apply traditional rules of statutory construction to determine which was the better reading of the provision and simply concluded:

> The foregoing [two alternative interpretations] are assuredly not the only readings of [the provision], but they are plausible ones -- which is enough to

[3] The Court expressly identified in Department of Energy the fundamental difference between the substantive coverage of a statute and liability for violations of the statute, stating that the Clean Water Act contains "separate statutory recognition of three manifestations of governmental power to which the United States is subjected: substantive and procedural requirements; administrative authority; and 'process and sanctions,' whether 'enforced' in courts or otherwise. Substantive requirements are thus distinguished from judicial process . . . ." 112 S. Ct. at 1637.

establish that a reading imposing monetary liability on the Government is not "unambiguous" and therefore should not be adopted.

Id. at 1016.[6] The Court held that sovereign immunity against imposition of monetary relief had not been waived.

In consultation with the Civil and Civil Rights Divisions of the Department of Justice, and having received and considered submissions from various interested governmental and nongovernmental parties,[7] we have identified four civil rights statutes that may apply to USDA programs: Title VI of the Civil Rights Act of 1964, the Fair Housing Act, the Rehabilitation Act, and the Equal Credit Opportunity Act. We will discuss Title VI first. That analysis presents the least difficulty, because it is well established that the anti-discrimination provisions of Title VI do not apply to federal agencies and thus there is no need to discuss whether sovereign immunity has been waived. The remaining three statutes require more discussion. The first step of the analysis is satisfied in each case because federal agencies are covered by the anti-discrimination provisions of each statute, at least to some extent. Applying the "unequivocal expression" standard required under the second step, however, we have concluded that sovereign immunity has been waived with respect to monetary relief by only one of the statutes: the Equal Credit Opportunity Act. The final section of the memorandum discusses attorneys' fees and costs.

## II. TITLE VI

Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." By its terms, this anti-discrimination provision does not apply to programs conducted directly by a federal agency, but rather applies only to "any program or activity receiving federal financial assistance." The conclusion that this provision does not include federal agencies is reinforced by the definitions of "program or activity" and "program" contained in 42 U.S.C. § 2000d-4a. That provision specifically identifies the kinds of entities that are covered, including State and local governments, but contains no reference to the federal government. The courts have held that Title VI "was meant to cover only those situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary."

---

[6] Applying its rule that waivers of sovereign immunity must be unequivocally expressed in the statutory text, the Court declined to consider the legislative history in an attempt to resolve the ambiguity. Id.

[7] See Letters from Roberta Achtenberg, Assistant Secretary for Fair Housing and Equal Opportunity, and Nelson Diaz, General Counsel, U.S. Department of Housing And Urban Development (Nov. 15, 1993); Elaine R. Jones, Director-Counsel, NAACP Legal Defense and Educational Fund, Inc. (Oct. 28, 1993); Bill Lann Lee, Western Regional Counsel, NAACP Legal Defense and Educational Fund, Inc. (Nov. 12, 1993; Nov. 24, 1993); Les Mendelsohn, Esq., Speiser, Krause, Madole & Mendelsohn (Nov. 4, 1993); David H. Harris, Jr., Executive Director, Land Loss Prevention Project (Nov. 5, 1993, Nov. 8, 1993).

Soberal-Perez v. Heckler, 717 F.2d 36, 38 (2nd Cir. 1983), cert. denied, 466 U.S. 929 (1984); Fagan v. U.S. Small Business Administration, 783 F. Supp. 1455, 1465 n.10 (D.D.C. 1992) (Title VI inapplicable to SBA direct loan program).

In light of our conclusion that the discrimination prohibition of Title VI does not apply to federal agencies, there is no need to consider whether Title VI waives sovereign immunity.

## III. THE FAIR HOUSING ACT

### A.

The Fair Housing Act, 42 U.S.C. §§ 3601 et seq.,[8] prohibits covered persons and entities from engaging in any "discriminatory housing practice," which is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. § 3602(f). Section 3604 prohibits discrimination in the sale or rental of housing. Section 3603 of the Act provides that "the prohibitions against discrimination in the sale or rental of housing set forth in section 3604 . . . shall apply" to "dwellings owned or operated by the Federal Government." Thus, a federal agency is subject to the discrimination prohibitions of section 3604 whenever the agency itself is engaged in selling or renting real estate.

In contrast to the language explicitly subjecting federal agencies to the discrimination prohibitions of section 3604, it is unclear whether federal agencies are subject to section 3605, which prohibits "any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction." The definition section of the Act does not include governments or government agencies in the definition of "person," see § 3602(d), and unless otherwise specified, the term "person" in a statute does not include the federal government or a federal agency. United States v. United Mine Workers of America, 330 U.S. 258, 275 (1947) ("In common usage," the term person "does not include the sovereign, and statutes employing it will ordinarily not be construed to do so."). The term "entity" is not defined at all in the Act. It is not necessary to resolve this question for purposes of this opinion, however, because we conclude in the next section that the Act does not waive the sovereign immunity of the United States against monetary liability.[9]

---

[8] The Fair Housing Act was originally enacted as Title VIII of the Civil Rights Act of 1968, Pub.L. No. 90-284, 82 Stat. 73 (1968).

[9] For the same reason it is also unnecessary to resolve whether the discrimination prohibitions in sections 3606 and 3617 apply to federal agencies. We note, however, that these sections do not appear to be directed at government activities. Section 3606 makes it unlawful to discriminate with respect to "access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling or renting dwellings." Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with any person" with respect to the exercise of rights protected by sections

B.

Whether federal agencies are subject to monetary liability for violations of section 3604 of the Fair Housing Act turns on application of the "unequivocal expression" standard for waivers of sovereign immunity discussed in section I of this memorandum. We conclude that the Act does not waive sovereign immunity, because its text falls well short of satisfying the "unequivocal expression" standard.

Section 3613 authorizes aggrieved persons to enforce the Fair Housing Act's anti-discrimination prohibitions in court. Although section 3613 is silent as to whom this action may brought against, it does specify what relief may be awarded. Subsection (c)(1) authorizes a court to award an aggrieved person "actual and punitive damages," as well as injunctive relief. In addition, under subsection (c)(2), the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person."

We do not believe that section 3613 waives sovereign immunity, except with respect to attorneys' fees and costs. Although the Fair Housing Act expressly establishes a general cause of action for redress of discriminatory practices, it is silent as to the parties against whom such a cause of action may be brought and it does not contain language expressly subjecting the United States to such a suit.

It is possible to infer from the fact that section 3603 expressly subjects the United States to the discrimination provisions of section 3604 that Congress intended that the cause of action established by section 3613 would also apply to the United States. However, section 3613 does not say so and the Supreme Court has held that subjecting a governmental entity to the substantive or procedural requirements of a statute does not necessarily mean that sovereign immunity has been waived or abrogated with respect to claims for damages. See, e.g., U.S. Dept. of Energy v. Ohio, 112 S. Ct. 1627 (1992) (federal agencies subject to procedural requirements of Clean Water Act and Resource Conservation and Recovery Act but immune from actions for punitive fines); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 244-46 (1985) (States subject to section 504 of Rehabilitation Act but immune from actions for monetary relief); Employees v. Missouri Public Health Dept., 411 U.S. 279 (1973) (States subject to Fair Labor Standards Act but immune from actions for monetary relief).[10] The Court has stated that additional language in the suit authorization provision is necessary to "indicat[e] in some way by clear language that the constitutional immunity [is being] swept away." Id. at 285.

---

3603-3606 of the Act.

[10] The Supreme Court has stated that the standard for establishing a waiver of the federal government's sovereign immunity is substantially the same as the standard for finding congressional abrogation of state Eleventh Amendment immunity. See Nordic Village, 112 S. Ct. at 1016. Eleventh Amendment cases like Atascadero and Missouri Public Health Dept. are therefore helpful in our analysis.

The only additional relevant language in section 3613 is subsection (c)(2), which authorizes the award of attorneys' fees:

> In a civil action [brought by an aggrieved person under section 3613], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person.

The presence, in a provision authorizing the bringing of suits by private parties, of language indicating that the United States may be liable for attorneys' fees and costs certainly indicates a recognition that the United States may be subject to suits under the provision. The question remains whether that is a sufficient expression of a waiver of sovereign immunity against damages or any other monetary relief except attorneys' fees and costs.

We recognize that it is a plausible reading of the statute to answer that question in the affirmative. We note, however, that the Supreme Court has declined to give such a reading to an attorneys' fees provision in a State sovereign immunity context. See Dellmuth v. Muth, 491 U.S. 223, 231 (1989) (stating in decision holding State sovereign immunity not abrogated by Education of the Handicapped Act: "The 1986 Amendment to the EHA deals only with attorney's fees, and does not alter or speak to what parties are subject to suit."). In any event, we conclude that the statute does not meet the "unequivocal expression" standard because there is another plausible interpretation of the attorneys' fees language that would not entail waiver of immunity for damages and other monetary relief. Just because the United States is subject to the cause of action does not necessarily mean it is subject to the full range of remedies that are set forth in the statute. These remedies include not only compensatory and punitive damages, but also a "permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such [discriminatory housing] practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1).

The alternative plausible interpretation of the statute is that the attorneys' fees provision contemplates an action that is limited to seeking relief other than money damages. This reading is based on the fact that the sovereign immunity of the United States against non-monetary relief already has been waived by the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701 et seq., which provides that

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States.

5 U.S.C. § 702.[11] "[T]he caselaw of [the Court of Appeals for the District of Columbia Circuit] confirms that 'the [APA] waiver applies to any suit, whether under the APA . . . or any other statute.'"[12] Other Circuits are in accord,[13] and the Supreme Court has implicitly held that the APA waiver is not limited to actions brought under the APA, see Bowen v. Massachusetts, 487 U.S. 879, 891-901 (1988) (APA waiver applied in action brought under 28 U.S.C. § 1331).

Under the Supreme Court's "unequivocal expression" standard, the availability of this alternative interpretation of the Fair Housing Act attorneys' fees provision -- that it contemplates an action for non-monetary relief based on the APA waiver of sovereign immunity -- precludes finding a waiver of sovereign immunity. See Nordic Village, 112 S. Ct. at 1016 (when a provision is subject to more than one plausible interpretation, the "reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted").[14]

---

[11] The legislative history of this APA provision indicates that its purpose was "to eliminate the defense of sovereign immunity with respect to any action in a court of the United States seeking relief other than money damages and based on the assertion of unlawful official action by a Federal officer." S. Rep. No. 996, 94th Cong., 2d Sess. at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 6121. See also id. at 9, 1976 U.S.C.C.A.N. at 6129 ("[T]he time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity."). See generally, Kenneth C. Davis, Administrative Law Treatise § 23.19, at 192 (2nd ed. 1983) ("The meaning of the 1976 legislation is entirely clear on its face, and that meaning is fully corroborated by the legislative history. That meaning is very simple: Sovereign immunity in suits for relief other than money damages is no longer a defense.").

[12] State of Alabama v. Bowsher, 734 F. Supp. 525, 533 (D.D.C. 1990), quoting P. Bator, P. Mishkin, D. Meltzer & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1154 (3rd ed. 1988), and citing National Ass'n of Counties v. Baker, 842 F.2d 369, 373 (D.C. Cir. 1988), cert. denied, 488 U.S. 1005 (1989); Schnapper v. Foley, 667 F.2d 102, 108 (D.C. Cir. 1981), cert. denied, 455 U.S. 948 (1982); Sea-land Service, Inc. v. Alaska R.R., 659 F.2d 243, 244 (D.C. Cir. 1981), cert. denied, 455 U.S. 919 (1982).

[13] See, e.g., Specter v. Garrett, 995 F.2d 404, 410 (3rd Cir. 1993) ("the waiver of sovereign immunity contained in [the APA] is not limited to suits brought under the APA"); Red Lake Band of Chippewa Indians v. Barlow, 846 F.2d 474, 476 (8th Cir. 1988) ("[T]he waiver of sovereign immunity contained in [the APA] is not dependent on application of the procedures and review standards of the APA. It is dependent on the suit against the government being one for non-monetary relief.").

[14] Another alternative interpretation may also be possible. Because the United States may intervene in private actions brought under section 3613 in order to seek broader relief, see 42 U.S.C. § 3613(e), it is possible that the United States could incur liability for attorneys' fees and costs without being a defendant. We find this interpretation to be less plausible than the non-monetary relief interpretation because the latter gives effect to provisions in the same subsection, which is devoted to "[r]elief which may be granted," 42 U.S.C. § 3613(c), while the former requires reading together separate subsections and inferring that Congress may have contemplated in subsection (c) that interventions by the Attorney General under subsection (e), in cases where she "certifies that the case is of general public importance" and seeks broader relief, might result in awards of attorneys' fees and costs against the United States.

We therefore conclude that the text of the Fair Housing Act as amended does not waive the sovereign immunity of the United States against imposition of monetary relief. The APA waives sovereign immunity as to any non-monetary relief available under the Act.

C.

The foregoing conclusion is reinforced by consideration of the text and legislative history of the Fair Housing Act when it was originally enacted as Title VIII of the Civil Rights Act of 1968 ("Title VIII"), supra, and of the 1988 amendments to the Fair Housing Act (the "1988 Amendments"), Pub.L. No. 100-430, 102 Stat. 1619. This is a useful methodology for considering whether the Act waives sovereign immunity because it allows a focused analysis of whether Congress specifically intended to waive sovereign immunity.[15]

As discussed above, the language in the Fair Housing Act that provides the most specific basis for an argument that sovereign immunity for monetary liability has been waived is the language in the attorneys' fees provision authorizing a court to award

> the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person.

42 U.S.C. § 3613(c)(2). This specific reference to the United States was not contained in the original Fair Housing Act's (Title VIII's) attorneys' fees provision, which authorized the courts to "award to the plaintiff . . . reasonable attorney fees in the case of a prevailing plaintiff: Provided, that the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees." Pub. L. No. 90-284, § 812(c), 82 Stat. 88 (1968). As with the current version of the Act, the original provision on enforcement by private persons authorized an award of damages to an aggrieved person but was silent as to who could be potential defendants in the civil actions. Id., § 812, 82 Stat. at 88.

Thus, the original Fair Housing Act contained no express or implied reference to any cause of action against the United States in its provisions establishing a private cause of action and authorizing awards of attorneys' fees. The 1988 Amendments to the Act removed

---

[15] Justice Scalia criticized this methodology in Pennsylvania v. Union Gas Co., 491 U.S. 1, 29-30 (1989) (Scalia, J., concurring in part and dissenting in part) ("That methodology is appropriate . . . if one assumes that the task of a court of law is to plumb the intent of the particular Congress that enacted a particular provision. That methodology is not mine . . . . It is our task . . . not to enter the minds of the Members of Congress . . . but rather to give fair and reasonable meaning to the text of the United States Code, adopted by various Congresses at various times."). Notwithstanding this criticism, we believe the methodology is appropriate here. Whatever the merit of Justice Scalia's emphasis of code meaning over congressional intent in other contexts, we do not think that approach is required or desirable where the question presented is whether sovereign immunity has been waived and more than one statutory enactment is involved. We note that no other Justice expressed agreement with Justice Scalia's statement in Union Gas. Moreover, the Court's majority in Dellmuth used this approach. See 491 U.S. at 227-32.

the "ability to pay" limitation on attorneys' fee awards and added language making it clear that the United States was subject to an award of attorneys' fees and costs. The 1988 Amendments, however, did not add any language suggesting that the United States was subject to damages claims.

The legislative history of the 1988 Amendments reinforces the conclusion that the Housing Act does not waive the sovereign immunity of the United States for monetary relief.[16] The principal legislative history for those amendments is contained in the report of the Committee on the Judiciary of the House of Representatives. H.R. Rep. No. 711, 100th Cong., 2d Sess. (1988), reprinted in 1988 U.S.C.C.A.N. 2173. In a paragraph giving an overview of the purpose of the amendments made by the committee, the report stated that the revision "brings attorney's fee language in title VIII closer to the model used in other civil rights laws." 1988 U.S.C.C.A.N. at 2174. The committee went on to state later in the report that "[t]he bill strengthens the private enforcement section by expanding the statute of limitations, removing the limitation on punitive damages, and brings [sic] attorney's fee language in title VIII closer to the model used in other civil rights laws." Id. at 2178.[17]

The committee report indicates that the thrust of the amendments was to remove limitations on effective private enforcement by changing the statute of limitations, removing the limit on punitive damages, and removing the "ability to pay" limitation on the award of attorneys' fees. It also indicates an intent to conform the language of the attorneys' fees provision to that in other civil rights laws.[18] There is no discussion whatsoever of actions

[16] Although legislative history cannot be relied upon to provide the "unequivocal expression" the Supreme Court requires, Nordic Village, 112 S.Ct. at 1016, we believe it is permissible to cite legislative history to reinforce a text-based conclusion that a statute does not waive sovereign immunity. Confidence in a conclusion based on the text can be strengthened where the legislative history reveals no evidence of intent to waive sovereign immunity.

[17] In the discussion of section 813(c) in the section-by-section portion of the report, the committee focused on removing the punitive damages limitation. The following is the entirety of the discussion of section 813(c):

> Section 813(c) provides for the types of relief a court may grant. This section is intended to continue the types of relief that are provided under current law, but removes the $1000 limitation on the award of punitive damages. The Committee believes that the limit on punitive damages served as a major impediment to imposing an effective deterrent on violators and a disincentive for private persons to bring suits under existing law. The Committee intends that courts be able to award all remedies provided under this section. As in Section 812(o), the court may also award attorney's fees and costs.

1988 U.S.C.C.A.N. at 2200-01.

[18] For example, the attorneys' fees provision in Title VII of the Civil Rights of 1964 (employment discrimination) contains the following similar language concerning the United States: "[T]he court . . . may allow the prevailing party, other than . . . the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and . . . the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k).

against the United States, much less any reference to an intent to waive sovereign immunity or to establish monetary liability for the United States.

Given the focused nature of the 1988 amendments to the Fair Housing Act, it is not reasonable to infer any intent to waive the sovereign immunity of the United States against imposition of monetary relief. At most, the amendments can be read to waive sovereign immunity against awards of attorneys' fees. Reading into the amendment a broader waiver would be impermissible under the interpretative method required by the Supreme Court and would amount to finding an accidental waiver or a waiver by inadvertence.

D.

Our conclusion regarding waiver of sovereign immunity under the Fair Housing Act is supported by the case law on other statutes. In Dellmuth v. Muth, 491 U.S. 223 (1989), the Supreme Court discussed whether the Education of the Handicapped Act ("EHA"), which, like the Fair Housing Act, had been amended to impose liability for attorneys' fees on an otherwise immune governmental entity (in that case, the States), subjected the States to suit. Although the textual basis for arguing waiver of sovereign immunity under that statute appears to be stronger than is the case under the Fair Housing Act, the Court declined to find waiver.

The EHA "enacts a comprehensive scheme to assure that handicapped children may receive a free public education appropriate to their needs. To achieve these ends, the Act mandates certain procedural requirements for participating state and local educational agencies." Id. at 225. In Dellmuth, the Supreme Court reversed a decision of the Third Circuit Court of Appeals that the EHA abrogated the States' sovereign immunity against suit for damages. According to the Supreme Court,

> [T]he Court of Appeals rested principally on three textual provisions. The court first cited the Act's preamble, which states Congress' finding that "it is in the national interest that the Federal government assist State and local efforts to provide programs to meet the education needs of handicapped children in order to assure equal protection of the law." Second, and most important for the Court of Appeals, was the Act's judicial review provision, which permits parties aggrieved by the administrative process to "bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." Finally, the Court of Appeals pointed to a 1986 Amendment to the EHA, which states that the Act's provision for a reduction of attorney's fees shall not apply "if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." In the view of the Court of Appeals, this amendment represented an express statement of Congress' understanding that States can be parties in civil actions brought under the EHA.

Id. at 228 (citations omitted).

We quote at length the Supreme Court's rejection of the Court of Appeals' analysis, because it can be applied directly to the Fair Housing Act:

> We cannot agree that the textual provisions on which the Court of Appeals relied, or any other provisions of the EHA, demonstrate with unmistakable clarity that Congress intended to abrogate the States' immunity from suit. The EHA makes no reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity. Nor does any provision cited by the Court of Appeals address abrogation in even oblique terms, much less with the clarity Atascadero requires. The general statement of legislative purpose in the Act's preamble simply has nothing to do with the States' sovereign immunity. The 1986 Amendment to the EHA deals only with attorney's fees, and does not alter or speak to what parties are subject to suit. . . . Finally, [the private cause of action provision] provides judicial review for aggrieved parties, but in no way intimates that the States' sovereign immunity is abrogated. As we made plain in Atascadero, "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment."
>
> . . . We recognize that the EHA's frequent reference to the States, and its delineation of the States' important role in securing an appropriate education for handicapped children, make the States, along with local agencies, logical defendants in suits alleging violations of the EHA. This statutory structure lends force to the inference that the States were intended to be subject to damages actions for violations of the EHA. But such a permissible inference, whatever its logical force, would remain just that: a permissible inference. It would not be the unequivocal declaration which . . . is necessary before we will determine that Congress intended to exercise its powers of abrogation.

Id. at 231-32 (emphasis added) (citations omitted).

Dellmuth presented a stronger case for waiver of sovereign immunity than the Fair Housing Act because the EHA contains "frequent reference[s] to the States" and is obviously very much focused on the activities of the States, while the Fair Housing Act is focused on the private sector and has relatively minor relevance to the activities of federal agencies. Nonetheless, the Supreme Court refused to find that the EHA waived sovereign immunity, relying on specific points that are directly applicable to the Fair Housing Act: that an attorneys' fees provision speaks only to attorneys fees and does not address who is subject to suit or what remedies are available; that a general authorization for suit is not an

"unequivocal expression"; and that legitimate inferences that Congress intended a damages cause of action are not "unequivocal expressions."[19]

The Department of Housing and Urban Development ("HUD") has submitted a letter stating its conclusion that "a federal agency . . . may be required to pay damages and other relief . . . [for] violations of the [Fair Housing Act]."[20] HUD relies principally on the analysis contained in Doe v. Attorney General of the United States, 941 F.2d 780 (9th Cir. 1991), which held that the Rehabilitation Act waives the sovereign immunity of the United States against damage awards. As discussed in the next section of this memorandum, we believe that Doe used a method of statutory interpretation that is impermissible under the Supreme Court precedents and that the case was incorrectly decided.

## IV. REHABILITATION ACT

We reach fundamentally the same conclusions with respect to the Rehabilitation Act of 1973 as amended (the "Rehabilitation Act"), 29 U.S.C. §§ 794 et seq., as we have reached with respect to the Fair Housing Act.

### A.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination on the basis of disability:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

[19] The Court's opinion in Dellmuth relies heavily on Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985). See 491 U.S. at 227, 230-32. Atascadero also strongly supports the conclusion that the Fair Housing Act does not waive sovereign immunity for monetary relief. Atascadero concerned the discrimination provisions of the Rehabilitation Act of 1973 and is discussed in detail in the next section of this memorandum, which addresses that Act. Atascadero held that the Rehabilitation Act does not abrogate the sovereign immunity of the States. We conclude in the next section that the analysis in that case should apply fully to actions against the federal government. The case is significant for purposes of the discussion in this section because the Rehabilitation Act has a structure that is similar to the Fair Housing Act.

[20] Letter to Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Roberta Achtenberg, Assistant Secretary for Fair Housing and Equal Opportunity, and Nelson Diaz, General Counsel, at 1 (Nov. 15, 1993).

Id. at § 794(a) (emphasis added). The underlined language, which was added to section 504 in 1978,[21] expressly subjects federal agencies to the discrimination prohibitions of the Act.

B.

Section 505 of the Rehabilitation Act (29 U.S.C. § 794a), which also was added in 1978,[22] sets forth the remedies available for violations of the discrimination prohibitions. The following provisions of section 505 are pertinent here:[23]

> (a)(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.
>
> (b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Thus, as with the Fair Housing Act, the Rehabilitation Act has had two legislative enactments that bear on the sovereign immunity question: the original discrimination prohibition and a later amendment that can be argued to effect a waiver of immunity against imposition of monetary relief because it refers to the United States in a way that recognizes that federal agencies may be defendants in private actions. The history of the Rehabilitation Act enactments would at least initially suggest the possibility of a more plausible argument in favor of waiver, however, because its amendments were more sweeping than the Fair Housing Act amendments: while the Fair Housing Act amendments of 1988 merely made relatively minor changes to an existing cause of action and modified an attorneys' fees provision, the section 504 amendments in 1978 added for the first time a provision authorizing a private action for violations and a provision authorizing attorneys' fees awards.

However, after analyzing the Rehabilitation Act enactments under the Supreme Court's "unequivocal expression" standard, we conclude that there is no waiver of sovereign immunity for monetary relief. There is no fundamental difference between the effect of the Rehabilitation Act enactments and the effect of the Fair Housing Act enactments. In both cases, there is no express language authorizing actions against the United States for damages or other monetary relief and it is reasonable to read the cause of action and attorneys' fees provisions as allowing actions against the United States for injunctive relief pursuant to the

[21] Pub.L. No. 95-602, § 119, 92 Stat. 2982.

[22] Pub.L. No. 95-602, § 120, 92 Stat. 2982.

[23] The only other provision of section 505 (29 U.S.C. § 794a(a)(1)) concerns discrimination in federal employment, which we do not understand to be covered by your opinion request.

waiver of sovereign immunity for such relief contained in the Administrative Procedure Act. As the Supreme Court made clear in Nordic Village, where a plausible reading is available that does not authorize monetary relief, "a reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted." 112 S. Ct. at 1016.[24]

C.

Our conclusion is supported by the case law. The Supreme Court already has held that the Rehabilitation Act does not abrogate the sovereign immunity of the States. In Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985), the Court held that sections 504 and 505 of the Act do not abrogate the States' Eleventh Amendment sovereign immunity against imposition of monetary relief. Id. at 244-46. Applying an "unequivocally clear" standard,[25] which is substantially the same as the "unequivocal expression" standard governing waiver of federal immunity (Nordic Village, 112 S. Ct. at 1016), the Court held that States that receive federal assistance are clearly subject to the discrimination prohibition of section 504,

> [b]ut given their constitutional role, the States are not like any other class of recipients of federal aid. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically. Accordingly, we hold that the Rehabilitation Act does not abrogate the Eleventh Amendment bar to suits against the States.

473 U.S. at 246 (citations omitted).[26] The Court did not specifically address the section 505 attorneys' fees and costs provision, but its holding contains an implicit conclusion that the provision does not waive immunity for any monetary relief other than the attorneys' fees

---

[24] As we explained in the course of our consideration of the Fair Housing Act, we believe it is permissible to cite legislative history to reinforce a text-based conclusion that a statute does not waive sovereign immunity. We have reviewed the legislative history of the Rehabilitation Act amendments of 1978 and have found, as was the case with respect to the Fair Housing Act amendments of 1988, that it does not include any consideration of the subjects of sovereign immunity or of establishing monetary liability for the United States. Thus, it is consistent with our conclusion that those amendments do not waive sovereign immunity.

[25] Atascadero established the following standard: "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." 473 U.S. at 242.

[26] Responding to the Supreme Court's decision in Atascadero, Congress passed legislation expressly abrogating the sovereign immunity of the States under the Rehabilitation Act and other civil rights statutes. Pub.L. No. 99-506, § 1003, 100 Stat. 1845 (1986). That legislation contained no provisions bearing on the sovereign immunity of the United States.

and costs themselves. The statutory framework with respect to the United States is substantially the same as with respect to the States, and we see no basis for concluding that the language of the Act waives the federal government's sovereign immunity when it does not abrogate the immunity of the States.[27]

A panel of the Ninth Circuit Court of Appeals has concluded otherwise, holding that the Rehabilitation Act does indeed waive the sovereign immunity of the United States against imposition of damages. Doe v. Attorney General of the United States, 941 F.2d 780 (1991). We believe, however, that Doe was incorrectly decided. First, the Ninth Circuit's analytical approach was inconsistent with the Supreme Court's requirement of an "unequivocal expression" in statutory text without resort to legislative history. See Nordic Village, 112 S. Ct. at 1014-16. In the section of its opinion entitled "The Legal Standard for Ascertaining Whether the Government has Waived Sovereign Immunity," 941 F.2d at 787, the Ninth Circuit incorrectly stated that "[t]he key to determining whether there has been a waiver is Congress's intent as manifested in the statute's language and legislative history." Id. at 788. Rather than using the special standard established by the Supreme Court, the Ninth Circuit chose to view the issue as requiring application of the factors for implying a private right of action under Cort v. Ash, 422 U.S. 66, 78 (1975), with an additional sovereign immunity gloss that "only explicit congressional intent in the statutory language and history will suffice" for implying a private right of action against the United States. Doe, 941 F.2d at 788.

In addition, the Ninth Circuit's analysis of the Rehabilitation Act is unpersuasive. The court's conclusion was as follows:

> In amending section 504, Congress made certain that federal agencies would be liable for violations of the statute. Congress's insertion of federal agencies in the pre-existing clause subjecting others to liability and its broad-brush remedy provision indicate that Congress intended that there be no distinction among section 504 defendants.

941 F.2d at 794. That conclusion is incorrect in two fundamental respects. First, the addition of federal agencies to section 504 was not to a "clause subjecting others to liability," but rather to a clause that imposed a non-discrimination substantive requirement and did not address liability in any way; it was not until section 505 was added in 1978 that the Rehabilitation Act addressed remedies. Second, the Supreme Court has rejected the view that the "broad-brush remedy provision [section 505] indicate[s] that Congress intended that

[27] The only treatment of the federal government in section 505 that is different from the treatment of the States (other than the obvious difference that federal agencies are not recipients of federal assistance) is that the attorneys' fees provision (paragraph (b)) does not allow the United States as a prevailing party to recover attorneys' fees. That exception says nothing, of course, about the liability of the United States for damages or other monetary relief, and the fact that the United States may be subject to attorneys' fees awards does not waive sovereign immunity for damages and other kinds of monetary relief.

there be no distinction among section 504 defendants." As discussed above, the Supreme Court opined in Atascadero State Hospital v. Scanlon that there are indeed distinctions to be made among section 504 defendants, holding that

> given their constitutional role, the States are not like any other class of recipients of federal aid. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically.

473 U.S. at 246. The United States, of course, also has special constitutional status, and the approach taken in Atascadero requiring an unequivocal specific expression of intent to waive sovereign immunity is equally applicable in the context of the federal government. Nordic Village, 112 S. Ct. at 1016.

## V. EQUAL CREDIT OPPORTUNITY ACT

In contrast to our preceding conclusions, we conclude that the Equal Credit Opportunity Act (the "Credit Act"), 15 U.S.C. §§ 1691 et seq., partially waives the sovereign immunity of the United States against the imposition of monetary relief, by authorizing an award of compensatory damages. Although this conclusion is not completely free from doubt because it is possible that the Supreme Court would require a more explicit statement of waiver, we reach this conclusion because we can find no reasonable explanation for a provision exempting all government creditors from liability for punitive damages other than that the provision recognizes that government creditors are liable for compensatory damages. There is no comparable provision in any of the other civil rights statutes addressed in this memorandum.

### A.

The Credit Act prohibits any creditor from discriminating against any applicant with respect to any aspect of a credit transaction. § 1691(a). The term "creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew or continue credit." § 1691a(d). For purposes of the Act, a "person" is "a natural person, a corporation, government or governmental subdivision or agency, trust, estate partnership, cooperative, or association." § 1691a(f) (emphasis added).

Although the Credit Act contains no further indication in its text or legislative history as to whether the governmental references in the definition of "person" were intended to include federal agencies, the natural understanding of the references is that the federal government is included, because the language is unrestricted and there is no language suggesting any different treatment for different levels of government. If it were intended that

the federal government was to be exempt and the statute limited in its coverage to State and local governments, we would expect that the text of the statute would make such a distinction -- or at least the distinction would be identified in legislative history. Neither the statute nor the legislative history contain any such suggestion.

Our conclusion that the federal government is subject to the discrimination provisions of the Credit Act may be reinforced by reference to another, previously enacted statute that also regulates the extension of credit, the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq. Both the Credit Act and TILA are part of the Consumer Credit Protection Act.[28] Statutes addressing the same subject matter -- that is, statutes "in pari materia" -- should be construed together.[29]

TILA uses the same language as the Credit Act concerning covered government organizations. TILA applies to any "creditor," which is defined as a "person" who regularly extends certain types of consumer credit. § 1602(f). "Person" is defined as a "natural person" or an "organization," § 1602(d), and "organization" includes a "government or governmental subdivision or agency." § 1602(c). As with the Credit Act, there is no further indication of what levels of government are covered. Unlike the Credit Act, however, TILA contains an express assertion of sovereign immunity in the enforcement section of the statute, thus indicating a clear recognition that the federal government is subject to the substantive provisions of TILA:

> [N]o civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any department or agency thereof, or any agency of any State or political subdivision.

§ 1612(b). It is reasonable to assume that when Congress defined "person" in the Credit Act to include a "government, governmental subdivision or agency," it intended those terms to have the same scope as the identical terms used in the previously enacted TILA.[30]

---

[28] TILA was enacted in 1968 as title I of the Consumer Credit Protection Act, Pub. L. 90-321, 82 Stat. 146, and the Credit Act was added to the Consumer Credit Protection Act as title VII in 1974, Pub. L. 93-495, title V, 88 Stat. 1521.

[29] See 2B Sutherland Stat. Const. § 51.02, at 121 (5th ed. 1992) ("It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes. Thus, they all should be construed together.").

[30] See 2B Sutherland, supra, § 51.02, at 122 ("Unless the context indicates otherwise, words or phrases in a provision that were used in a prior act pertaining to the same subject matter will be construed in the same sense.").

B.

Of course, as discussed in prior sections of this memorandum, the fact that federal agencies are subject to the substantive requirements of the Credit Act does not necessarily mean that there has been a waiver of sovereign immunity against imposition of monetary liability for violation of such requirements. The Credit Act sovereign immunity question is not a simple one, because there is no language directly addressing the subject of sovereign immunity or directly stating that the United States may be subject to an award of monetary relief. However, as discussed below, we find there has been a waiver because the Act contains a provision that indirectly, but in our view unequivocally, indicates that the United States may be required to pay compensatory damages.

Section 1691e of the Credit Act provides for a private right of action against creditors who violate the discrimination prohibitions of the Act. Under subsection (a), all creditors are liable for compensatory damages: "[a]ny creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." Under subsection (b), all creditors except governmental creditors are liable for punitive damages: "[a]ny creditor, other than a government or governmental subdivision or agency . . . shall be liable to the aggrieved applicant for punitive damages . . . ." Equitable relief is authorized under subsection (c).[31] Finally, under subsection (d), costs and attorneys' fees may be imposed: "In the case of any successful action under subsection (a),(b), or (c) . . . , the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court . . . ."

Subsection (b) of section 1691e provides the key to finding a partial waiver of sovereign immunity against monetary relief. Coming immediately after a provision (subsection (a)) that states that all creditors are liable for compensatory damages, a provision exempting government creditors from liability for punitive damages necessarily implies a recognition that government creditors are otherwise liable for damages under the Act and remain liable for compensatory damages under the preceding section, which contains no such limitation. "[A] limitation of liability is nonsensical unless liability existed in the first place." Pennsylvania v. Union Gas Co., 109 S. Ct. 2273, 2280 (1989) (holding that CERCLA abrogated State sovereign immunity based in part on implication of provisions exempting States from liability for certain actions).

Thus, the Credit Act is different from the Fair Housing Act and the Rehabilitation Act in the fundamental respect that it contains a provision indicating liability for damages that is susceptible to no other plausible interpretation that would not impose liability. Whereas we concluded that the attorneys' fees provisions in the Fair Housing Act and the Rehabilitation Act did not satisfy the "unequivocal expression" standard because there was another plausible

---

[31] "Upon application by an aggrieved applicant, the [court] may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this subchapter." § 1691e(c).

interpretation that did not impose monetary liability, see Nordic Village, Inc., 112 S. Ct. at 1016, the interpretation of subsections (a) and (b) that subjects government creditors, including the United States, to liability for compensatory damages is the only plausible interpretation. Accordingly, we conclude that the Credit Act waives sovereign immunity with respect to compensatory damages.[32]

## VI. ATTORNEYS' FEES AND COSTS

The analysis for whether attorneys' fees and costs may be awarded under the civil rights statutes whose anti-discrimination provisions apply to federal agencies is simpler than the foregoing analysis on whether monetary relief may be awarded. There is no need to decide whether the individual civil rights statutes waive sovereign immunity for attorneys' fees and costs, because the Equal Access to Justice Act (the "EAJA") expressly waives sovereign immunity. Immunity for costs is waived by 28 U.S.C. § 2412(a), and immunity for attorneys' fees is waived by 28 U.S.C. §§ 2412(b) and 2412(d). Each of these sections contains language authorizing an award of attorneys' fees or expenses to "the prevailing party in any civil action brought by or against the United States."

The EAJA also specifically addresses the extent of the United States' liability for attorneys' fees and costs. There are two separate attorneys' fees regimes under the EAJA. Under 28 U.S.C. § 2412(b), a court may award attorneys' fees against the United States, and if it does, "[t]he United States shall be liable for [attorneys'] fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."[33] Because the common law applies the "American Rule," which provides that each litigant must ordinarily pay his or her own lawyer, Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975), the extent of liability for attorneys' fees under the individual civil rights statutes should generally

[32] Our conclusion with respect to the waiver of sovereign immunity under the Credit Act has implications with respect to claims alleging violations of the Fair Housing Act. Although the latter statute does not waive sovereign immunity, conduct violative of that statute may also violate the Credit Act. The fact that the two statutes are, to some extent, coextensive is acknowledged in the Credit Act's provision that "[n]o person aggrieved by a violation of this subchapter and by a violation of section 3605 of [the Fair Housing Act] shall recover under this subchapter and section 3612 of [the Fair Housing Act], if such violation is based on the same transaction." 15 U.S.C. § 1691e(i). Thus, where a federal agency is discriminating in the extension of credit, that conduct may violate both statutes. If it does, the agency would have authority pursuant to the Credit Act's waiver of sovereign immunity to provide monetary relief in settlement of a claim, even if the claim cites only the Fair Housing Act, to the extent allowed by the Credit Act.

[33] Because section 2412(b) begins with the caveat "[u]nless expressly prohibited by statute," we have reviewed the civil rights statutes to determine whether they "expressly prohibit" an award of attorneys' fees against the United States. They do not.

be governed by the specific fee-shifting language of the statutes, each of which authorizes the court to award "a reasonable attorney's fee."[34]

As an alternative to an award of attorneys' fees under section 2412(b), the EAJA provides in section 2412(d) for a mandatory award of attorneys' fees against the United States (upon application by the prevailing party), except when the United States' position was substantially justified or when special circumstances would make an award of fees unjust. Under subsection (d), attorneys' fees are capped at the rate of $75 per hour, absent a special judicial finding that special factors justify higher fees, § 2412(d)(2)(A), and parties may only recover if they have incomes or net worths below certain levels, § 2412(d)(2)(B).

The EAJA also provides for the extent of the United States' liability for costs: "[A] judgment for costs when taxed against the United States shall . . . be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation." 28 U.S.C. § 2412(a)(1). Because this provision begins with the caveat "[e]xcept as specifically provided by statute," it is necessary to decide whether the civil rights statutes provide differently with respect to costs. The Rehabilitation Act and the Equal Credit Opportunity Act do not contain language specifically addressing the liability of the United States for costs. See 29 U.S.C. § 794a(b); 15 U.S.C. § 1691e(d). Therefore, the EAJA provision applies under those two statutes. The Fair Housing Act, however, does contain a specific provision that displaces the EAJA provision. It provides that "[t]he United States shall be liable for . . . costs to the same extent as a private person." 42 U.S.C. § 3613(c)(2).

## VII. CONCLUSIONS

The Supreme Court has established a strict "unequivocal expression" standard for determinations on whether a statute waives the sovereign immunity of the United States against imposition of monetary relief. One of the civil rights statutes that we have been asked to review, Title VI of the Civil Rights Act of 1964, does not prohibit discrimination by federal agencies. Anti-discrimination provisions in the remaining statutes do apply to federal agencies but only one of them, the Equal Credit Opportunity Act, contains a waiver of sovereign immunity regarding monetary relief, and that waiver is limited to compensatory damages. Agencies therefore have authority to provide compensatory damages to the extent allowed by the Credit Act in their voluntary settlement of discrimination claims if the conduct complained of violates the Credit Act. In addition, the Equal Access to Justice Act authorizes awards of attorneys' fees and costs against federal agencies.

[34] See Fair Housing Act, 42 U.S.C. § 3613(c)(2); Rehabilitation Act, 29 U.S.C. § 794a(b); Equal Credit Opportunity Act, 15 U.S.C. § 1691e(d).