**U.S. Department of Justice**

Civil Division

JED:DAB:DAWolak
154-05-400

Telephone: (202) 616-0170
Facsimile: (202) 514-8624

***Washington, DC 20530***

August 20, 2007

VIA ELECTRONIC MAIL

Mr. James W. Myart, Jr.
James W. Myart, Jr., P.C.
The Preston House
1104 Denver Boulevard
Suite 300
San Antonio, Texas 78210

Re: *Michael W. Stovall v. United States*, CFC No. 05-400

Dear Mr. Myart:

I am writing to address the issues that have arisen with respect to your request for the deposition of Mr. Clyde Thompson, the current Deputy Administrator for Operations and Management of Rural Development, an agency of the United States Department of Agriculture. As we have discussed on the telephone many times, and as you indicated in the draft notice of deposition for Mr. Thompson that you sent to me via e-mail on August 10, 2007,[1] you believe that Mr. Thompson will provide testimony concerning his involvement in negotiations to settle your client's administrative claim that preceded this lawsuit. You have also told me that Mr. Thompson once instructed your client to fire you, and that this statement was made in the context of negotiations over this case or the case of Williams v. United States, Fed. Cl. No. 06-124C.

The subjects you have identified for Mr. Thompson's testimony are objectionable, and do not form a proper basis for taking his deposition. First, assuming Mr. Thompson did engage in settlement discussions concerning this case, the substance of those discussions are inadmissible

[1] In subsequent conversations, you told me that you have properly served these notices, as required by the Rules of the Court of Federal Claims. As I have informed you, I still have not received these notices. Until I do, or you provide me with some proof of service, the Government has no obligation to produce any of these witnesses.

at trial under Federal Rule of Evidence 408. Also, the likelihood that Mr. Thompson's testimony upon that subject will lead to other discoverable information is extremely low, as this lawsuit involves allegations that the Government breached its contract with your client -- and that the breach allegedly occurred long before your client filed his administrative complaint concerning the breach. Also, whether Mr. Thompson instructed your client to fire you or not is completely irrelevant to this case. Finally, as the attached declaration demonstrates, and as I have repeatedly informed you in our prior conversations, Mr. Thompson had no involvement with the execution or implementation of the Stovall settlement agreement.

Despite all of this, you have insisted that Mr. Thompson be made available for his deposition, and you informed me that during his alleged negotiations to resolve this case at the administrative stage, Mr. Thompson had sent you "over twenty letters" concerning the case. I asked you to provide me with those letters, and you promised to include them in your client's document production. Based upon this representation, we agreed to make Mr. Thompson available for his deposition, and scheduled it for the afternoon of August 22, 2007. We informed you that Mr. Thompson was going to be out of town the previous weekend through the morning of the 22d, and that he was returning to Washington D.C. for the sole purpose of being deposed.

The promised letters were not included in your client's document production, so I telephoned you and asked again that you provide them so that Mr. Thompson could be prepared for his deposition. You then informed me that the letters were actually only about a dozen in number, and they were all from you to Mr. Thompson, and Mr. Thompson had never written back. I informed you that these letters were also not included in your client's document production, and that I would appreciate it if you would send me copies for Mr. Thompson to review. Last week, after another period where I did not receive any letters from you, I called again to request the letters. On Friday, you informed me that the only letters that you intended to question Mr. Thompson about were the two from you to him that were already contained in your client's document production. You also informed me that you were not going to yield in your demand that Mr. Thompson be produced for deposition, and that you intended to interrogate him about why he instructed Mr. Stovall to fire you.

Despite the fact that Mr. Thompson knows nothing about this case and you apparently have nothing with which to refresh his memory, we have, until this point, been willing to make him available for deposition. However, due to the recent schedule conflict caused by your late request to depose Mr. Clarence Snyder (who is only available on August 22), it was necessary to reschedule Mr. Thompson's deposition. We discussed this matter on the telephone on Friday, August 17, 2007. You requested that Mr. Thompson return from his vacation early to be deposed on August 21, or that we make him available after the other depositions in this case, on Friday, August 23. I told you that I would ask about these dates, even though I had previously informed you that he was already fully scheduled for those dates. I suggested that we could more easily agree upon any date during the week of August 27, as I knew that Mr. Thompson's

schedule was clear that week. You then informed me that you would not be available during the week of August 27 because you had just decided, the night before, that you were taking a vacation that entire week.

As you are fully aware, our extended discovery period ends on August 31, 2007. We sought this extension in large part so that you could complete certain discovery you deemed necessary to build your case. We enumerated that discovery in our joint motion to enlarge the discovery period. Immediately after we filed that motion, you began requesting discovery beyond what we had discussed and listed in the motion, and despite our better judgment, we have accommodated your every request. The present scheduling conflict was directly caused by your late request to depose Mr. Snyder -- a witness we identified in our initial disclosures, who we urged you depose, but you affirmatively ignored until after we filed our motion to enlarge the discovery period. Now you demand that the Government attorneys and witnesses cancel their vacation plans and scramble their schedules upon extremely short notice so that you can complete your tasks and then disappear for a vacation during the final week of discovery. We will not agree to your unreasonable demands.

Based upon all of this, the deposition schedule is as follows:

> Clarence Snyder, Wednesday, August 22, 2007, beginning at 9:30 a.m. at 1100 L Street, N.W., Washington D.C.
>
> Carolyn Cooksie, Thursday August 23, 2007, beginning at 10:00 a.m. at 1100 L Street, N.W., Washington D.C.
>
> Johnny Toles, Thursday, August 23, 2007, beginning at 1:00 p.m. at 1100 L Street, N.W., Washington D.C.

We will not produce Mr. Thompson for deposition. Mr. Thompson is a high-ranking Government official who has now provided you with a declaration stating that he knows nothing about this case. Scheduling his deposition at this point would be a complete waste of time and resources.

Sincerely,

[signature]

Devin A. Wolak
Trial Attorney
Commercial Litigation Branch

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL W. STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-400C |
| | ) | (Judge Francis Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**Declaration of Clyde Thompson**

I, Clyde Thompson, do hereby state and declare as follows:

1. I am the Deputy Administrator for Operations and Management of Rural Development (RD), an agency of the United States Department of Agriculture ("USDA"), Washington, D.C. I have held my current position since April 2007. From September 3, 2003 to April 2007, I was the Associate Assistant Secretary for Civil Rights in the Office of the Assistant Secretary for Civil Rights, a mission area created in 2003 at the Department of Agriculture that reports directly to the Secretary of Agriculture and provides civil rights policy guidance and direction to every USDA Agency. From April 2002 to September 2003, I was the Associate Assistant Secretary for Administration, where I had responsibility for the coordination of the diverse administrative activities of the Department, including human resources, ethics, procurement, and civil rights. Prior to this position, I served for twenty-five years in a number of positions with the Forest Service and was responsible for directing the business operations, information technology, procurement and contracting activities of the Forest Service.

2. In my former position as the Associate Assistant Secretary for Civil Rights, I was responsible for assisting the Assistant Secretary for Civil Rights and the Secretary of Agriculture

with a number of civil rights issues, including providing policy guidance to agencies concerning their programmatic activities, promoting a diverse and inclusive workplace at USDA, coordinating outreach activities with land grant universities and the Center for Minority Farmers. As a part of my duties, I was tasked with meeting with minority farmers on behalf of the Assistant Secretary for Civil Rights and listening to their concerns about USDA operations.

3. I am familiar with the plaintiff's attorney, Mr. James Myart, through my meetings with minority farmers. However, I have no recollection of meeting Mr. Stovall in the course of my duties as the Associate Assistant Secretary of Administration or my duties as the Associate Assistant Secretary for Civil Rights.

4. I have never held any job responsibilities within the Farm Service Agency and did not have any duties concerning the implementation of Farm Service Agency settlement agreements. I did not participate in the negotiations of the Michael Stovall settlement agreement in 1998, nor have I ever been in a position where I was responsible for monitoring the implementation of specific settlement agreements executed by the numerous individual USDA agencies.

5. I was informed in a telephone conference with counsel on July 18, 2007, that Mr. Myart had claimed to possess over twenty documents that would indicate my participation in the execution or implementation of the Michael Stovall settlement agreement. As of this date, Mr. Myart has not produced these documents to me, and it is my understanding that he has not produced these documents to counsel.

6. The statements made in this declaration are based on knowledge that I have acquired in the performance of my official duties, and information provided to me by attorneys

from the Office of the General Counsel, USDA (OGC) and the Department of Justice.

I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Clyde Thompson 8/17/07

CLYDE THOMPSON
Deputy Administrator for
Operations and Management
Rural Development
U.S. Department of Agriculture
Washington, D.C.