**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MICHAEL W. STOVALL, | ) | |
| | ) | Electronic Filing |
| Plaintiff, | ) | |
| | ) | No. 05-400C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE**
**TO PLAINTIFF'S MOTION TO COMPEL AND APPENDIX**

Defendant, the United States, respectfully submits this response to the plaintiff's "Motion to Compel USA to Answer Interrogatories, Produce Documents, and to present Clyde Thompson for Deposition Subpoena Duces Tecum and for Sanctions and For Emergency Ruling or Hearing" (the "motion"), filed on August 22, 2007. In his motion, Mr. Stovall seeks to compel the deposition of Mr. Clyde Thompson, the Deputy Administrator for Operations and Management of Rural Development, an agency of the United States Department of Agriculture ("USDA"), the production of certain documents, and additional responses to certain interrogatories. Additionally, plaintiff's counsel has orally indicated that he will either amend the motion, or file a new one, to compel the deposition of Mr. Clarence "Sam" Snyder, the FSA Senior Loan Officer who was responsible for overseeing the implementation of Mr. Stovall's settlement agreement -- even though plaintiff's counsel agreed to depose Mr. Snyder on August 22, 2007, traveled from San Antonio, Texas to Washington, D.C. to do so, then failed to attend that deposition because he was busy drafting the present motion.

As we demonstrate below, the plaintiff's motion is based upon an erroneous understanding of what has transpired in this case, is without merit, and should be denied.

# I. BACKGROUND

## A. Nature Of The Case And Discovery Schedule

In 1998, the plaintiff, Michael W. Stovall, settled his 1993 racial discrimination claim against the United States Department of Agriculture for payment by the Government of $145,000 and an agreement that the Government would provide certain nonmonetary consideration in connection with any future farm loan applications made by Mr. Stovall. A1-A4.

In January 2004, Mr. Stovall filed a complaint in the United States District Court for the District of Columbia claiming, among other things, racial discrimination under the Equal Credit Opportunity Act ("ECOA"), the Constitution, the Alabama Constitution, and breach of the 1998 settlement agreement. See Stovall v. Veneman, 394 F. Supp. 2d 21 (D.D.C. 2004). On January 24, 2005, the district court dismissed Mr. Stovall's discrimination claims under ECOA because they were time-barred. Th district court dismissed his Constitutional claims because they were precluded by the doctrine of sovereign immunity. The district court transferred his breach-of-contract claim to this Court upon the ground that the Tucker Act vests this Court with exclusive jurisdiction to hear contract claims against the United States in excess of $10,000. Id. at 26-27.

After filing two amended complaints in this Court, Mr. Stovall alleges only that the Government breached his 1998 settlement agreement by failing to provide the nonmonetary consideration. A5-A15. Discovery, which was extended twice at the joint request of both parties, is scheduled to close on August 31, 2007.

## B. Discovery Requests And Responses At Issue

In his motion, Mr. Stovall complains about the defendant's responses to plaintiff's

Interrogatories Nos. 7, 8 and 10, Request For Production No. 12,[1] and the deposition scheduling of Messrs. Clyde Thompson and Clarence "Sam" Snyder.[2]

Mr. Stovall's motion conspicuously omits copies of the responses about which it complains. We have included full copies of the defendant's discovery responses in the appendix. A16-A32 (Interrogatories); A33-A51 (Requests For Production). The motion also indicates that Mr. Stovall seeks the production of settlement agreements similar to Mr. Stovall's; however, the plaintiff has never requested such documents, although Interrogatory No. 7 and Request For Production No. 12 do seek administrative complaints alleging the breach of any such settlement agreements.

In his motion, Mr. Stovall also fails to inform the Court that plaintiff's counsel, Mr. Myart, had agreed to a deposition schedule that differs from that contained in the plaintiff's alleged notices of deposition, that the defendant already produced Mr. Snyder at the agreed-upon time and place, and plaintiff's counsel failed to appear to take Mr. Snyder's deposition. A62-A72 (transcript of C. Snyder deposition).

D. Scheduling Plaintiff's Depositions

Throughout the course of this case, Mr. Myart has consistently requested the depositions of several high-ranking government officials who were not identified by the defendant as potential witnesses, and who have absolutely no knowledge about Mr. Stovall's case. Each time

[1] The motion generally complains about all of the defendant's responses to plaintiff's request for production, but plaintiff's counsel has indicated that he is particularly focused upon the defendant's response to Request For Production No. 12.

[2] Although Mr. Snyder is not mentioned in the motion, Mr. Myart indicated, during the teleconference with chambers where we set the schedule for this motion, that he would be amending the motion to compel Mr. Snyder's deposition as well.

Mr. Myart requested the deposition of one of these officials, defendant's counsel would confirm that the official was unfamiliar with this case, inform Mr. Myart of this fact, and Mr. Myart would withdraw his request.

Mr. Myart has not yielded, however, in his request to depose Mr. Clyde Thompson, Deputy Administrator for Operations and Management of Rural Development (an agency of the Department of Agriculture). When defendant's counsel asked why Mr. Myart required Mr. Thompson's deposition, Mr. Myart responded that Mr. Thompson had been actively involved in settlement negotiations of Mr. Stovall's claim while it was still an administrative proceeding at the agency. Mr. Myart further informed defendant's counsel that, in connection with those negotiations, Mr. Thompson had written over twenty letters to Mr. Myart concerning Mr. Stovall's claim. Additionally, Mr. Thompson allegedly told Mr. Stovall that he should fire Mr. Myart. Upon that basis, defendant's counsel agreed to produce Mr. Thompson for his deposition, and requested that copies of the letters be included in Mr. Stovall's document production.

When Mr. Stovall's document production arrived on July 26, 2007, the letters were not included. Defendant's counsel contacted Mr. Myart and inquired about the letters. Mr. Myart said that the letters were not, in fact, written by Mr. Thompson, but were written by Mr. Myart himself and sent to Mr. Thompson. Defendant's counsel said that, notwithstanding that significant changed detail, such letters were still not part of the plaintiff's document production -- unless Mr. Myart meant that there were only two letters, not twenty, because there were two such letters included in the plaintiff's production. Mr. Myart stated that there were more than twenty, and that he would send copies to defendant's counsel. Mr. Myart also stated that Mr.

Thompson's involvement in settlement negotiations may not have occurred in connection with Mr. Stovall's claim, but rather the claim of Robert and Laverne Williams, another case similar to Mr. Stovall's.[3] Defendant's counsel then informed Mr. Myart that, if he did not produce the letters in advance of Mr. Thompson's deposition, and if Mr. Thompson was, in fact, not involved in Mr. Stovall's case, Mr. Thompson would not be produced for his deposition.

With those conditions, the parties agreed upon the following deposition schedule in late July, 2007: (1) Mr. Clyde Thompson, on the afternoon of August 22, 2007; (2) Ms. Carolyn Cooksie, Deputy Administrator for FSA Farm Loan Programs, on the morning of August 23, 2007, and (2) Mr. John Toles, Director, Office of Civil Rights, Farm Service Agency, on the afternoon of August 23, 2007. Defendant's counsel informed Mr. Myart that Mr. Thompson agreed to this schedule even though he was planning a vacation that week.

In early August 2007 (days prior to August 10, 2007), Mr. Myart telephoned defendant's counsel and requested the deposition of Mr. Clarence "Sam" Snyder, the FSA Senior Loan Officer who was responsible for overseeing the implementation of the 1998 settlement agreement with respect to Mr. Stovall's farm-loan applications. Because Mr. Snyder is the defendant's chief witness, and defendant's counsel had been strongly urging Mr. Myart to request his deposition, defendant's counsel immediately began trying to schedule Mr. Snyder's deposition during the week of August 20, 2007, so that Mr. Myart would not have to make more than one trip to Washington, D.C. from his office in San Antonio, Texas, for depositions. During the week of August 20, Mr. Snyder was only available on August 22 -- the same day Mr.

---

[3] That claim evolved into Williams v. United States, Fed. Cl. No. 06-124C. The complaint in that case alleges that Mr. Thompson was involved in negotiating with the Williams', and that he allegedly urged the Williams to fire Mr. Myart. See A78 at ¶ 21.

Thompson was interrupting his vacation in order to sit for his deposition. Mr. Myart said that he needed a full day to depose Mr. Snyder, thus creating a conflict that prevented the parties from scheduling all the depositions in the same week. In light of this scheduling conflict, Mr. Myart elected to depose Mr. Snyder for August 22nd, and the parties agreed to work to reschedule Mr. Thompson's deposition for a different date. Defendant's counsel inquired about the Thompson letters, which still had not been produced, and Mr. Myart renewed his promise to send them as soon as possible.

On August 10, 2007, defendant's counsel received an e-mail message from Mr. Myart, to which were attached four Microsoft Word documents that were drafts of a "Notice Of Intention To Take Oral Deposition Subpoena Duces Tecum." A85-A122. There was one for each witness: Mr. Snyder (for August 24, 2007), Ms. Cooksie (for the morning of August 23, 2007), Mr. Toles (for the afternoon of August 23, 2007), and Mr. Thompson (for the afternoon of August 22, 2007). Defendant's counsel immediately telephoned Mr. Myart to discuss the email and the attachments. Defendant's counsel told Mr. Myart that the dates for Messrs. Snyder and Thompson were not consistent with the previously agreed schedule, and the new schedule would not work because -- as we had previously discussed -- Mr. Snyder was not available on August 24. Defendant's counsel also told Mr. Myart that the email transmission of these unsigned, unissued subpoenas did not comply with the Court's rules, that the defendant considered them fatally defective, and that we would continue with the previous schedule -- Snyder on the 22nd, Cooksie and Toles on the 23rd, and Thompson on a date to be determined, pending the Government's receipt of the alleged Thompson letters. Mr. Myart agreed to the schedule, and said that he was only sending the notices to preserve his client's rights. Defendant's counsel

suggested that, if preserving Mr. Stovall's rights was the goal, Mr. Myart should refamiliarize himself with the Rules, and serve an appropriate notice and/or subpoena. Defendant's counsel said that he would put the notices in the mail. Defendant's counsel repeated his suggestion to read the rules, and then informed Mr. Myart (as he has on many prior occasions) that mail delivery to defendant's counsel's office is extremely slow due to mandatory x-raying of U.S. Mail, but that Mr. Myart could avoid the delay and ensure the defendant's timely receipt of the notices by shipping the notices via overnight courier. Defendant's counsel then asked again about the Thompson letters. Mr. Myart indicated that the letters would also be sent soon.

On August 17, 2007, Mr. Myart telephoned defendant's counsel to express his dissatisfaction with the defendant's correspondence of August 15, 2007, relating to the dispute over the defendant's responses to plaintiff's Interrogatory No. 7 and Request For Production No. 12. See A52-A55. Mr. Myart also stated that he would be deposing Messrs. Thompson and Snyder at the times listed upon the e-mailed draft notices, and not at the times the parties had previously agreed upon. Defendant's counsel told Mr. Myart that this was unreasonable, the witnesses' personal schedules made this late change unworkable, and that the defendant would be producing the witnesses according to the previously agreed schedule. Defendant's counsel also stated that he still had not received any proper or effective deposition notices. Defendant's counsel also informed Mr. Myart that Mr. Thompson was available for deposition on multiple days during the week of August 27, 2007, but he was not available at any time (including the afternoon of the 22nd) during the week of August 20th because he was going to be on vacation. Mr. Myart agreed to depose Messrs. Snyder and Toles and Ms. Cooksie according to the agreed-upon schedule, but insisted that Mr. Thompson had to be produced during the week of the 20th

because Mr. Myart had decided, the evening of August 16, that he and his wife were going to take their own vacation during the week of August 27th. Defendant's counsel reminded Mr. Myart that the week of the 27th was the final week of discovery in this case, and suggested that this was not a good time to schedule an impromptu vacation. Defendant's counsel then inquired, again, about the status of the Thompson letters. Mr. Myart said there were not twenty of them, but only two, and they were the two that were contained in the plaintiff's document production. Defendant's counsel informed Mr. Myart that he would make one last effort to schedule Mr. Thompson's deposition, but Mr. Myart should expect the defendant to refuse to produce him, as it was now clear that Mr. Thompson had no knowledge about Mr. Stovall's case, and Mr. Myart had nothing suggesting otherwise. On August 20, 2007, we sent Mr. Myart a letter confirming the agreed-upon deposition schedule and ending the negotiation over Mr. Thompson's deposition date. A56-A61.

On August 21, 2007, the defendant received the plaintiff's "notices" of deposition. They are unsigned, unissued printouts of the drafts Mr. Myart had e-mailed on August 10, 2007. A123-154.

E. <u>The Plaintiff's Depositions</u>

On the morning of August 22, 2007 -- the morning of Mr. Snyder's deposition -- defendant's counsel received a telephone call from Mr. Myart at 8:04 a.m. Mr. Myart stated that he would be late to the deposition because he was busy drafting the motion to compel. Defendant's counsel told him to hurry, and that the 7-hour clock would start at 9:30 a.m. as scheduled. Mr. Snyder, the court reporter, agency counsel and defendant's counsel were all present at 9:30 a.m. At 10:30 a.m., when Mr. Myart had not arrived, defendant's counsel

telephoned to see if there was a new estimated time of arrival. Mr. Myart did not answer, so defendant's counsel left a message. At approximately 11:25 a.m., Mr. Myart telephoned defendant's counsel and said that he had filed his motion to compel, and that he had a new deposition plan: he would not be coming to Mr. Snyder's deposition, but he would arrive at the deposition location at 1:30 p.m. for the deposition of Mr. Thompson, who would not be present, and he would have the court reporter issue a "notice of non-appearance." A62-A72. Defendant's counsel informed Mr. Myart that Mr. Snyder was present and waiting to be deposed, and that, if Mr. Myart did not come and depose him, we would consider the deposition waived and refuse to produce him in the future. Id. Mr. Myart repeated that he would be at the deposition location at 1:30 p.m. for Mr. Thompson's deposition. Defendant's counsel told Mr. Myart not to come, because nobody would be there.

During the afternoon on August 22, 2007, Mr. Myart telephone defendant's counsel and asked if the defendant was going to produce Mr. Snyder on Friday, August 24, 2007, in accordance with the "notice" he had sent by e-mail on August 10, 2007. Defendant's counsel reminded Mr. Myart that, that same morning, Mr. Snyder was sitting in the deposition room waiting to be deposed, and Mr. Myart never arrived.

On August 23, 2007, the deposition of Ms. Cooksie occurred as scheduled. Mr. Myart voluntarily canceled the deposition of Mr. Toles. On his way out of the building, Mr. Myart asked defendant's counsel if the defendant would be producing Mr. Snyder the following morning. Defendant's counsel, again, told Mr. Myart that, in light of his failure to show up for Mr. Snyder's deposition the day before, if he wanted Mr. Snyder's deposition, we would not voluntarily make him available.

## ARGUMENT

In his motion, Mr. Stovall seeks to compel further answers to certain interrogatories, sanctions against the United States for those allegedly insufficient responses, and to have the Court order a deposition in San Antonio, Texas or have the defendant pay costs for Mr. Myart to return to Washington, D.C. As we demonstrate below, Mr. Stovall's motion to compel should be denied.

A. The Court Should Not Compel The Deposition of Clyde Thompson

The defendant attempted to make Mr. Thompson available for his deposition even though it appeared that Mr. Thompson knew nothing about the case and Mr. Myart had little, if nothing, to refresh his recollection. The three asserted bases for Mr. Thompson's deposition have proven illusory. Mr. Thompson did not participate in any negotiations over Mr. Stovall's claim, nor did he ever instruct Mr. Stovall to fire his attorney -- indeed, those are the allegations in the Williams case. A78. Mr. Myart never produced any correspondence from Mr. Thompson concerning this case. For his part, Mr. Thompson has sworn in a declaration that he did not participate in the negotiations of the Michael Stovall settlement agreement in 1998, nor has he ever been in a position where he was responsible for monitoring the implementation of specific settlement agreements executed by the numerous individual USDA agencies. A59-61. Mr. Thompson knows nothing about this case, and compelling his deposition would be a waste of the parties' and the Court's resources.

The plaintiff relies upon the "Notice of Intention to Take Oral Deposition Subpoena Duces Tecum of Clyde Thompson" as the basis for his motion. However, this notice/subpoena is procedurally defective and thus void. The document has not been signed by any counsel, and it

is clearly not signed and issued by the Clerk of this Court, both of which are required by RCFC 45. It was mailed to defendant's counsel using regular mail so that it arrived on August 21, 2007 -- one day before the deposition that it purportedly notices.

However, assuming *arguendo* that the notice/subpoena is a valid subpoena under RCFC 45, the Government hereby moves to quash the Notice upon the following grounds. First, RCFC 45(c)(3)(A)(i) requires the Court to quash or modify the subpoena if it fails to allow reasonable time for compliance. Reasonable notice is also required when noticing a deposition. When documents are sought from a party, thirty days notice is required. See RCFC 30(b)(5) (requiring compliance with Rule 34, which allows 30 days for document requests). Again, assuming that appropriate service was made, the unsigned notice/subpoena in question allows only one day for compliance with respect to the deposition and the documents. This is insufficient under the Rules.

Second, RCFC 45(c)(3)(A)(iv) requires the Court to quash or modify the subpoena if it subjects the deponent to an undue burden. As noted above, counsel engaged in a lengthy process of negotiation concerning this deposition which was conditioned on the production of a score of letters purportedly authored by Mr. Thompson that were not in Mr. Thompson's files and, believed to be only in Mr. Myart's possession. Mr. Myart only produced two letters, written by himself to a number of high-ranking USDA officials, including Mr. Thompson. Yet, Mr. Myart still seeks to compel the deposition of a high-ranking USDA official to provide some kind of clarification on words that he composed himself. Additionally, where the subpoenaed or noticed witness has no personal knowledge of the matter in dispute, it is unduly burdensome to compel his or her testimony. See Fed. R. Civ. P. 45(c)(3)(a)(iv), advisory committee's note

("Illustratively, it might be unduly burdensome to compel an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of matters in dispute . . . ."). As our August 20 letter to Mr. Myart and Mr. Thompson's own sworn declaration indicate, Mr. Thompson has no personal knowledge of the Stovall matter. A56-A61.

Third, it is well-settled that high-ranking Federal officials may not be deposed absent extraordinary circumstances, and that their testimony may only be compelled as a last resort. See, e.g. Energy Capital Corp. v. United States, 60 Fed. Cl. 315, 318 (Ct. Cl. 2004) ("Morgan has come to stand for the idea that current high-ranking officials may only be deposed and otherwise personally involved in a civil suit if "exceptional circumstances" exist that require their personal testimony."); In re United States, 985 F.2d 510, 512 (11th Cir. 1993). See generally, United States v. Morgan, 313 U.S. 409, 422 (courts should refrain from probing the thought processes of agency decisionmakers).

"The reason for requiring exigency before allowing the testimony of high officials is obvious." In re United States, 985 F.2d at 512. Such officials are charged with sweeping statutory and regulatory responsibilities in furtherance of the public interest, and their agencies are generally involved in litigation in courts across the nation. If there were no such exception, high-ranking officials "would be spending their time giving depositions and would have no opportunity to perform their functions." Capitol Vending v. Baker, 36 F.R.D. 46 (D.D.C. 1964).

Consequently, courts have ruled that the party seeking the deposition must demonstrate that the official has personal knowledge of the events at issue, in this case the execution and implementation by the Farm Service Agency of Mr. Stovall's settlement agreement, and that the information cannot be obtained elsewhere. See Alexander v.FBI, 186 F.R.D. 1,4 (D.D.C. 1998).

In spite of countless opportunities provided by the Government, Mr. Stovall has shown neither.

Mr. Thompson has already declared that he knows nothing about Mr. Stovall's case. Mr. Myart maintained for months that Mr. Thompson was directly involved in this case during the administrative stage, and that Mr. Thompson sent over twenty letters to Mr. Myart about this case during that time. This has all proven untrue.

Moreover, Mr. Stovall has also failed to show that the information sought cannot be obtained elsewhere. The plaintiff has not endeavored to obtain information about the execution and implementation of the Stovall agreement from other sources. Mr. Myart had scheduled the deposition of Mr. Lloyd Wright, the USDA official who negotiated the settlement agreement, in June 2007, but abruptly canceled it only days before it was to take place. Mr. Myart also failed to appear for Mr. Snyder's deposition on August 22nd. Mr. Snyder is the FSA official responsible for monitoring the Stovall settlement agreement, and has personal knowledge of the likely relevant facts.

Finally, despite our belief that scheduling Mr. Thompson's deposition would be a huge waste of time and resources, we were more than reasonable in our attempts to accommodate the plaintiff's request to depose Mr. Thompson. In the end, Mr. Myart became inflexible in his demands, going so far as to insist that Mr. Thompson cancel his vacation so that Mr. Myart could take one of his own (one that, incidentally, was not scheduled until the evening of August 16). Mr. Myart has gone beyond the pale. Based upon the foregoing, this Court should quash the notice/subpoena (assuming it is valid) and any future subpoenas for the deposition of Clyde Thompson.

B. The Court Should Not Compel The Second Deposition Of Clarence Snyder

The parties agreed that the plaintiff could depose Mr. Snyder for a full day on August 23, 2007. The deposition was scheduled to begin at 9:30. The witness, defense counsel and the court reporter were all present. Mr. Myart, despite having traveled from San Antonio, Texas to Washington, D.C. for the sole purpose of conducting depositions in this case, failed to appear. Mr. Myart's reason for his failure to appear was that he was busy writing the present motion -- a motion he intends to amend with a demand to take the deposition of Mr. Snyder. This is as outrageous as it is absurd. The Court should not compel Mr. Snyder's second deposition, and we respectfully request that the Court quash any future attempts by the plaintiff to notice or subpoena Mr. Snyder's deposition.

C. The Defendant's Responses To Plaintiff's Interrogatories

1. Interrogatory No. 7

Plaintiff's interrogatory no. 7, and the defendant's response, is as follows:

**INTERROGATORY NO. 7:** Please identify each and every person who has complained of breach of contract by the USDA in connection with any actual or proposed settlement agreements resulting from complaints of discrimination by the USDA against them whether such complaints occurred in programs or employment. (Identify means state the date the action occurred or actions complained of occurred, the identity of the person receiving the complaint, the action taken to investigate the complaint, the persons investigating any such complaints, the persons negotiating such proposed and/or actual settlement agreements, and detail what the status of any such complaint action was taken and identify each and every witness to the action taken.

**RESPONSE:** Defendant objects to this interrogatory upon the basis that it seeks information beyond the scope of the limitations imposed by RCFC 26 and 36; specifically, the information sought regarding prior complaints or settlement agreements that are unrelated to the agreement with the plaintiff is not relevant, nor is the request reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory to the extent that it seeks information that is protected by the

> attorney-client privilege and the attorney work product doctrine. Defendant further objects to this interrogatory upon the grounds that is overbroad and seeks information that may not be disclosed per the Privacy Act of 1974, 5 U.S.C. § 552(a). Moreover, defendant objects to this interrogatory on the grounds that it is unduly burdensome for defendant to "identify," as that term is defined in plaintiff's discovery request, each and every person who has ever complained of breach of contract by the USDA in connection with any actual or proposed settlement agreements resulting from complaints of discrimination by the USDA against them whether such complaints occurred in programs or employment.
>
> Without waiving these objections, the defendant states that it does not maintain records of complaints by the subject matter of the complaint (i.e., breach of settlement agreement). Nevertheless, we have conducted a search of LEXIS and PACER, which revealed that the following plaintiffs filed federal court complaints against the USDA that included an allegation of a breach of a USDA program discrimination settlement agreement (non-employment):
>
> Stovall v. Veneman (DDC No. 04-319)
> Stovall v. United States (Fed. Cl. No. 05-400)
> Hall v. Veneman (N.D. Ala. No. 04-971)
> Hall v. United States (Fed. Cl. No. 05-517)
> Shaffer v. Glickman (DDC No. 00-1729)
> Shaffer v. Veneman (DC Cir. No. 02-5009)
> Coats v. Veneman (DDC No. 03-2306)
> Davis v. Veneman (DDC No. 03-2309)
> Williams v. Veneman (DDC No. 03-2245)
> Williams v. United States (Fed. Cl. No. 06-124)
> Matthew and Richard Grant v. Veneman (DDC No. 03-2308)

The Government noted in its initial response that the Agency does not maintain records of complaints by the subject matter of the complaint. Notwithstanding our objections, we provided a list of persons who had filed federal court complaints alleging a breach of a USDA civil rights settlement agreement. We further searched for certain Complainants identified by Mr. Stovall for complaints alleging a breach of a civil rights settlement agreement. We informed Mr. Myart by letter dated August 15, 2007 that none of the persons provided by Mr. Myart filed administrative complaints with the USDA Office of Civil Rights containing a breach of a civil

rights settlement agreement allegation. See A52-A55. However, Mr. Stovall contends that the information is essential to show the "pattern or practice of . . . violating the settlement agreements and further discriminating against black farmers." This argument is meritless.

This Court lacks jurisdiction to hear pattern or practice discrimination claims and Mr. Stovall's ECOA claim was properly dismissed by the District Court of the District of Columbia before this matter was transferred. It is well-settled that, in non-class litigation, brought by non-governmental plaintiffs, the "pattern or practice method of proof [is] not available[.]" Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003); see also Murphy v. PriceWaterhouseCoopers, LLP, 357 F. Supp. 2d 230, 246-47 (D.D.C. 2004). Finally, any pattern-or-practice discrimination allegations would hardly be relevant to the simple matter of whether the USDA breached a plainly written civil rights settlement agreement.

2. Interrogatory No. 8

As an initial matter, Mr. Myart never met and conferred about this interrogatory response. This motion is the first time the defendant has been made aware of the plaintiff's objection.

Plaintiff's interrogatory no. 8, and the defendant's response, is as follows:

> **INTERROGATORY NO. 8:** Please identify each and every person who participated in the Stovall settlement agreement negotiations that resulted in the USDA/Stovall settlement agreement. Describe each person's role, title, and involvement therein and state what testimony you expect each to give at trial and/or affidavit or deposition.
>
> > **RESPONSE:**
> > **Lloyd Wright**, Acting Director of the Office of Civil Rights 1996-1998. Mr. Wright negotiated and executed the settlement agreement on behalf of USDA.
> >
> > **James Myart.** Mr. Myart negotiated and executed the settlement

agreement on behalf of Michael Stovall.

**Michael Stovall.** Mr. Stovall executed the settlement agreement.

In our response, we provided the name of the former director of the Office of Civil Rights who negotiated and executed the agreement with Mr. Stovall and Mr. Myart. Mr. Stovall contends that the answer does not include all the names of the USDA employees who attended the settlement negotiations. Motion at 6. This argument is also meritless. It appears that Mr. Myart wishes for the defendant to refresh his recollection of events that he attended himself. Furthermore, the defendant is not alleging that the 1998 settlement agreement is somehow invalid. There is no basis for compelling defendant to provide further information.

3. Interrogatory No. 10

As an initial matter, Mr. Myart never met and conferred about this interrogatory response. This motion is the first time the defendant has been made aware of the plaintiff's objection.

Plaintiff's interrogatory no. 10, and the defendant's response, is as follows:

> **INTERROGATORY NO. 10:** Please identify each and every person who was responsible in and for the implementation of the injunctive relief portions of the USDA/Stovall settlement agreement and describe in detail what actions each such identified persons took to implement the injunctive relief provisions of the USDA/Stovall settlement agreement.
>
> > **RESPONSE:** The defendant objects to this interrogatory, as the term "injunctive relief" is vague and ambiguous. Injunctive relief is an equitable remedy in the form of a court order. The USDA/Stovall Settlement Agreement is an administrative settlement agreement, and it contains no court orders or "injunctive relief" provisions. It does, however, create certain obligations to be fulfilled by the USDA with respect to post-settlement loan applications submitted to the USDA by the plaintiff. Without waiving these objections, the defendant directs the plaintiff to its response to Interrogatory No. 1, which includes persons involved in the handling of the plaintiff's post-settlement loan

applications.

In our response, we provided Mr. Myart with a lengthy list of persons with knowledge of the implementation of the 1998 settlement agreement. Nevertheless, the plaintiff is now raising his objections to the defendant's response for the first time, and apparently even now refuses to specify what is incomplete about the response other than Mr. Myart's own "information and belief." There is no basis for compelling defendant to provide further information.

D. Document Production

The plaintiff complains at great length about discovery extensions that defendant requested and for which he provided his consent. However, the plaintiff received the benefit of these extensions as well. As a result of these extensions, both parties produced discovery responses to their respective discovery requests in July 2007.

Although plaintiff has used the entirety of the Government's document production to respond to our document requests, his counsel now raises the issue for the first time that this document production is somehow unresponsive and confusing. We produced, in bates-labeled electronic and paper formats, the following: a complete copy of Mr. Stovall's borrower file (which contains all communications and transactions concerning farm loans with Farm Service Agency), a complete copy of plaintiff's civil rights file (which contains all documents pertaining to plaintiff's complaints against the agency), and a complete copy of the FSA monitoring file (which exhaustively documents all communications with Mr. Stovall on the issues relevant to this case). The defendant also provided a privilege log that indicates which documents had been withheld and the privilege claimed. Finally, although the production was made as the documents are kept in the usual course of business, our response identifies bates-ranges where documents

responsive to each specific request may be found within the production.

In stark contrast, the responses provided by the plaintiff to our interrogatories were spartan, unresponsive, and contumacious in that Mr. Myart refused to answer a vast majority of the narrowly tailored interrogatories. As mentioned before, Mr. Myart merely cited defendant's production as his sources of documents for the majority of defendant's document requests and did not indicate whether he withheld any documents for privilege.

The only new issue that Mr. Myart raises is that "USDA has wholly failed to produce the settlement agreements of the black farmers who complained of breach of contract settlement agreements (sic)." Motion at 6. A quick and cursory review of plaintiff's own requests for production of documents indicate that Mr. Stovall never requested any settlement agreements other than Mr. Stovall's, which was produced by defendant and is attached to Mr. Stovall's initial complaint. The defendant can only respond to the discovery requests contained in the requests for production or interrogatories, not requests that plaintiff's counsel makes for the first time in plaintiff's motion to compel.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny the plaintiff's motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 616-0170
Fax (202) 514-8624

August 24, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on August 24, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND APPENDIX" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin A. Wolak
DEVIN A. WOLAK