**STOVALL V. UNITED STATES**
**No. 05-400C**

**APPENDIX TO DEFENDANT'S RESPONSE**
**TO PLAINTIFF'S MOTION TO COMPEL**


| DOCUMENT | PAGE NUMBER |
|---|---|
| 1998 Stovall Settlement Agreement | A 1 |
| Complaint | A 5 |
| Defendant's Response to Plaintiff's Interrogatories | A 16 |
| Defendant's Response to Plaintiff's Requests for Production | A 33 |
| August 15, 2007 correspondence from D. Wolak to J. Myart | A 52 |
| August 20, 2007 correspondence from D. Wolak to J. Myart (with declaration of Clyde Thompson attached) | A 56 |
| Transcript from August 22, 2007 deposition of Clarence Snyder | A 62 |
| Complaint from Williams v. United States, Fed. Cl. No. 06-124C | A 73 |
| August 10, 2007 e-mail from J. Myart to D. Wolak, (with draft deposition notices attached) | A 85 |
| Plaintiff's Deposition Notices, received August 21, 2007 | A 123 |

# UNITED STATES DEPARTMENT OF AGRICULTURE

## RESOLUTION AGREEMENT – Michael Stovall

This agreement is by and between the complainant, Michael Stovall, and the United States Department of Agriculture (USDA). Michael Stovall is represented by attorney James M. Myart, Jr. of San Antonio, Texas. This agreement constitutes a full, complete, and final settlement of all claims for relief raised in Mr. Stovall's January 4, 1996, discrimination complaint submitted to USDA. This agreement is authorized by civil rights statutes and USDA regulations.

The parties wish to set forth the terms of the agreement in writing. The agreement is entered into for the purpose of resolving Mr. Stovall's discrimination claims for relief in a mutually acceptable voluntary agreement. The Farm Service Agency (FSA) reserves the right to follow-up on any information developed as a result of the complaint and to take corrective action concerning FSA employees or policies as appropriate. This agreement is intended to supercede the resolution agreement entered into by the parties on January 20, 1998.

**USDA AGREES:**

1. To pay Mr. Stovall the sum of $145,000 in compensatory damages. A check in the amount payable to Mr. Stovall and James M. Myart, Jr. of San Antonio, Texas, will be issued as soon as practicable but no later than 30 calender days after this agreement has been signed by all parties.

2. To provide Mr. Stovall with programmatic relief as follows:

   a. USDA will release Mr. Stovall from liability on his outstanding debt to USDA such that Mr. Stovall will have no debt to USDA. This release will not trigger the statutory provisions found at Section 648 of the Federal Agriculture Improvement and Reform Act of 1996 that preclude an individual who has received debt forgiveness from obtaining further farm loans from USDA or from obtaining future debt forgiveness.

   b. FSA will give Mr. Stovall priority consideration on any application for inventory property located in Madison, Jackson, Limestone, Lauderdale, Colbert, Franklin, Lawrence, Morgan, Marshall, and DeKalb Counties located in Alabama, and all Tennessee counties bordering Alabama. FSA will give Mr. Stovall the best purchase price available under law for such inventory property. FSA will provide notice of such property's existence to Mr. Stovall within 30 days of execution of this agreement. For the next five years, but only until such time as Mr. Stovall acquires a piece of inventory property, FSA will provide notice in writing to Mr. Stovall at

Michael Stovall, 105 Cramer Road, New Market, Alabama 35671, within 30 calendar days of newly acquired inventory property.

c. Mr. Stovall will be given priority consideration on one farm ownership loan at his election. Such election must be made within the next five years. Mr. Stovall will be given priority consideration by FSA on any direct farm operating loan he applies for in the next five years to the extent that this is consistent with the relevant statutes governing the loan program; however, no priority consideration will be provided to Mr. Stovall on any application for a farm operating or ownership loan five years after the date this agreement has been signed by all parties. The term "priority consideration" means that an application will be given first priority as to processing and as to the availability of funds available for the type of loan at issue.

d. Any application for a farm operating loan submitted by Mr. Stovall within five years after this settlement agreement has been signed by all parties (not just those applications in which priority consideration is provided) will be viewed in a light most favorable to Mr. Stovall, and the amount and terms of the loan will be the most favorable under the law so long as this is consistent with statute as stated above. In making any determination on a loan application, FSA will not take into account the sum paid under paragraph 1 of this agreement. Mr. Stovall will need to reestablish eligibility and repayment ability for any loan that will be approved.

e. In conjunction with any application for a farm ownership or operating loan, the national office of FSA will provide or obtain reasonable technical assistance for Mr. Stovall in submitting such application, including the preparation of a farm and home plan.

f. Final approval or disapproval of any application for a USDA loan will be completed under the auspices of the national office of FSA. In addition, the national office of FSA will monitor all assistance provided to Mr. Stovall for the next five years.

g. The Office of Civil Rights will monitor FSA's compliance with the programmatic remedies set forth in this section.

h. USDA will notify the appropriate credit bureau (as provided by Mr. Stovall) that Mr. Stovall no longer has any indebtedness to USDA.

i. As soon as is practicable but not later than seven days 7 calendar days after this agreement has been signed by all parties, FSA will sign over the May 8, 1996, certified check, previously issued jointly to Mr. Stovall and FSA, to Mr. Stovall. If the bank at issue refuses to honor such check, FSA will reissue a certified check in the amount of $12,590, payable to Mr. Stovall individually.

3. To pay reasonable attorney fees and costs upon submission of a bill of particulars. A check in the amount determined, payable to James M. Myart, Jr. of San Antonio, Texas, will be

issued as soon as practicable, but no later than 30 calendar days after such submission.

**MR. STOVALL AGREES:**

4. That this settlement agreement constitutes a withdrawal of all of his pending discrimination complaints with USDA, including his January 4, 1996, program discrimination complaint, and that he will not file any new complaint about the issues involved in these complaints.

5. To accept the above payment of compensatory damages and other relief set forth above as a full, final, and complete settlement of all claims in connection with all of his pending discrimination complaints with USDA, including his January 4, 1996, discrimination complaint. This settlement is also in complete and full satisfaction of any and all claims Mr. Stovall may have against USDA based on facts occurring prior to the date of this agreement of which Mr. Stovall knows and reasonably should know.

6. To waive and release any and all claims or complaints of any kind arising out of the events that were the subject of the complainant's pending discrimination complaint with USDA, including his January 4, 1996, discrimination complaint, against USDA, the United States of America, any other agency of the United States of America, or any officer, employee, or agent of the United States of America, in either his or her official or individual capacity.

**BOTH PARTIES AGREE:**

7. To respect the privacy rights of Mr. Stovall and all other individuals involved in this matter. The fact that the matter was voluntarily resolved in a manner acceptable to both sides may be communicated by either party to any person. However, except as otherwise required by law, the explicit terms of this agreement will not be disclosed by either party, without the express permission and consent of the other party, to any person not a party except as necessary for that party to perform official government duties, to implement the agreement, or to defend themselves against any claim or cause of action.

8. That this matter is resolved through this settlement agreement. If the terms of this agreement are not carried out (other than a result of actions by Mr. Stovall), Mr. Stovall may request specific enforcement of the terms or reinstatement of his complaints by writing to the Director, Office of Civil Rights, USDA, Room 326-W, Washington, D.C., 20250. This

request should be filed as soon as practicable but no later than 60 days of the date Mr. Stovall knows or reasonably should have known of the alleged failure to implement the agreement.

9. See attachment, marked Exhibit A, and same is incorporated herein as set forth verbatim.

2/27/98

Lloyd E. Wright, Director
Office of Civil Rights

Michael Stovall
Complainant

James M. Myart, Jr.
Attorney for the Complainant

**IN THE UNITED COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MICHAEL W. STOVALL** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 05-400C** |
| | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA** | ) | |

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiff MICHAEL W. STOVALL, Individually, complains of THE UNITED STATES OF AMERICA, by and through its agent, Mike Johanns, the Secretary of Agriculture (AGRI), and alleges as follows:

**I.**
**<u>JURISDICTION AND VENUE</u>**

1. Jurisdiction and venue lies in the Court of Federal claims pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2).

**II.**
**<u>PARTIES</u>**

2. Plaintiff MICHAEL W. STOVALL ("STOVALL") is a resident of Town Creek, Morgan County, Alabama.

3. Defendant THE UNITED STATES OF AMERICA is the sovereign served with process by the Clerk of this Court by delivery of the Complaint to the United States Attorney General.

## III.

## INTRODUCTION

4 The instant action was transferred to the RCFC by order of the United States District Court for the District of Columbia. See *Stovall v. Veneman*, No. 04-319 (RMC), (D.D.C. January 24, 2005). PLAINTIFF brought suit against the Secretary of Agriculture and several USDA employees asserting violations of his rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment, made applicable to DEFENDANT through the Fifth Amendment, the Equal Credit and Opportunity Act ("ECOA"), § 15 U.S.C. 1691e, violations of 42 U.S.C. § 1981, pendent state claims, Alabama Constitutional tort and breach of contract. The District Court dismissed all constitutional and statutory claims and transferred, citing applicability of the Tucker Act. 28 U.S.C § 1346(a)(2), the breach of contract claims to this Court.

## III. FACTUAL BACKGROUND

### A. HISTORY OF STOVALL MATTER PRIOR TO CONTRACT BREACH

6. Beginning in 1993, PLAINTIFF attempted to apply for farm loans from the Lawrence County, Alabama from the Lawrence County, Alabama Farm Service Agency ("FSA") office, but he initially was unable to obtain an application. In 1994, PLAINTIFF submitted applications for a farm ownership loan and a farm operating loan. Both applications were initially denied but, after an administrative appeal, the application for an operating loan was approved. The funds obtained in these loans were disbursed in March 1995. On January 4, 1996, PLAINTIFF filed an administrative complaint with USDA alleging discrimination on the basis of race in regard to his loan applications. The USDA Office of Civil Rights ("OCR") issued a Program Complaint Final Agency

Decision on PLAINTIFF'S administrative complaint. In the decision, OCR found discrimination on the basis of race by FSA against PLAINTIFF in the denial of a farm ownership loan in 1994 and the denial of a farm operating loan in 1995.

10. Settlement, via a Resolution Agreement, (hereinafter, sometimes referred to as "Contract") was accomplished on February 27, 1998. The Contract was negotiated by attorney, Mr. James W. Myart, Jr. and Mr. Lloyd Wright, Office of Civil Rights Director, and Judge Henry Ramsey, Consultant to the Secretary. The Contract was signed by all parties on February 27, 1998. The Resolution Agreement is attached hereto marked, Attachment 1; same being incorporated herein as if fully set forth verbatim. Under the Contract, PLAINTIFF received $145,000 in compensatory damages; discharge of all of his debt to FSA; reasonable attorney's fees and costs; priority consideration on certain future applications for FSA inventory property and FSA farms loans; and other programmatic relief intended to place PLAINTIFF in the economic position he would have been but for the discrimination and to re-establish his previously profitable farming operation.

### B. <u>FACTS AND ALLEGATIONS IN CONTRACT BREACH</u>

7. In 1998, after several attempts, PLAINTIFF, pursuant to the Contract, purchased farm land from the FSA's inventory property. PLAINTIFF'S March 1998 applications for farm ownership and operating loans were approved in March of 1998, and he received the funds in November 1998. This was a direct violation since the loan application was delayed, a fundamental point in the original administrative complaint filed. In applying for these loans, PLAINTIFF sought the assistance of several USDA employees, to include Carolyn Cooksie and Sam Snyder in the FSA national office. Mr. Snyder visited

plaintiff in Alabama to assist him with his application. In April 1999, PLAINTIFF sought additional funds to build two chicken houses, and he consulted with Ms. Cooksie on this matter.

8. In December 1999, additional funds were added to plaintiff's loans so that he could build the chicken houses. However, in a meeting with the contractor and USDA employee, Richard Knouff of the local FSA office, it was discovered that construction of the chicken houses would take additional funds. PLAINTIFF asked Mr. Knouff if the FSA could lend him additional money, and Mr. Knouff informed PLAINTIFF that he was at his loan limit. PLAINTIFF claims that Mr. Knouff told Mr. PLAINTIFF'S contractor to terminate construction, though the contractor returned in three weeks. Due to several difficulties and his view that the USDA was continuing to discriminate against him, PLAINTIFF contacted Mr. Snyder. Mr. Snyder, when working on Mr. PLAINTIFF'S Farm and Home Plan, included, above the objection of PLAINTIFF, the funds awarded PLAINTIFF in attorney's fees and costs as income in the plan. This act "was improper as those funds were paid to PLAINTIFF'S attorney pursuant to the 1998 Resolution Agreement." PLAINTIFF received the compensatory damages delineated in the Contract, but the PLAINTIFF was denied, to his financial benefit, all injunctive relief stated in the contract.

9. Despite PLAINTIFF'S desperate efforts to enforce the complete contract, the DEFENDANT breached the contract by failing to implement the Resolution Agreement, ¶2(b)(d)(e)(f)(g)(h)

10. The Resolution Agreement, by intent and by its four corners, provided equitable and injunctive relief to PLAINTIFF at Paragraph 2(b)(d)(e)(f)(g)(h). These paragraphs

were put in the agreement to insure that PLAINTIFF would have the funds to build two poultry houses and to conduct his farming/ranching operation. Stated below are the specific sections of the Contract that were breached and the specific damages PLAINTIFF sustained after each breached provision.

a. "The Contract, in relevant parts, states:

**2. To provide Mr. Stovall with programmatic relief as follows:**

**b. FSA will give Mr. Stovall priority consideration on any application for inventory property located in Madison, Jackson, Limestone, Lauderdale, Colbert, Franklin, Lawrence, Morgan, Marshall and DeKalb Counties located in Alabama and all Tennessee counties bordering Alabama. FSA will give Mr. Stovall the best purchase price available under law for such inventory property. FSA will provide notice of such property's existence to Mr. Stovall within 30 days of execution of this agreement. For the next five years, but only until such time as Mr. Stovall acquires a piece of inventory property, FSA will provide notice in writing to Mr. Stovall at Michael Stovall, 105 Cramer Road, New Market, Alabama 35671, within 30 calendar days of newly acquired inventory property.**

11. Plaintiff did not receive notice of inventory property until about December 1999, and only got that notice because Plaintiff constantly called the Washington and Tennessee offices complaining that the local offices were ignoring this provision. Plaintiff never got priority consideration on any of his requests or applications for inventory property located in Madison, Jackson, Limestone, Lauderdale, Colbert, Franklin, Lawrence, Morgan, Marshall and DeKalb Counties located in Alabama and Tennessee. This caused Plaintiff to lose any production in the years 1998, 1999, and 2000 up to this day.

**c. Mr. Stovall will be given priority consideration on one farm ownership loan at his election. Such election must be made within the next five years. Mr. Stovall will be given priority consideration by FSA on any direct farm operating loan he applies for in the next five years to the**

**extent that this is consistent with the relevant statutes governing the loan program; however, no priority consideration will be provided to Mr. Stovall on any application for a farm operating or ownership loan five years after the date this agreement has been signed by all parties. The terms "priority consideration" means that an application will be given first priority as to processing and as to the availability of funds available for the type of loan at issue.**

12. Plaintiff never got priority consideration on one farm ownership as contracted. In fact, Plaintiff's loans were approved March 6, 1998 but not funded until November 5, 1998, eight months later. This type of delay is what caused Plaintiff to file a discrimination complaint in the first place. USDA did not change its discrimination ways. They breached the Contract.

**d. Any application for a farm operating loan submitted by Mr. Stovall within five years after this settlement agreement has been signed by all parties (not just those applications in which priority consideration is provided) will be viewed in a light most favorable to Mr. Stovall, and the amount and terms of the loan will be the most favorable under the law so long as this is consistent with statute as stated above. In making any determination on a loan application, FSA will not take into account the sum paid under paragraph 1 of this agreement. Mr. Stovall will need to reestablish eligibility and repayment ability for any loan that will be approved.**

13. Plaintiff has suffered financial ruin, injury to his business reputation, injury to his credit reputation and has lost the opportunity to a contract with Con-Agra, a chicken plant, in Lawrence County, Al. The contract was to produce six poultry runs per year times two houses times seven years. Because the houses were not complete and producing, Plaintiff lost the contract.

14. Plaintiff was forced to reduce his cattle herd from sixty-seven to fifteen head, representing a nearly 80% loss in production.

15. The loans for the poultry houses were approved March 6, 1998 but not funded

until November 5, 1998, eight months later. The contractor and the dozer man quit and did not return until May, 1999. This was all because of the USDA's discrimination and violation of the settlement agreement.

16. Further, the local USDA office violated this provision by using all the proceeds of my settlement agreement, including the amount paid my attorney, to hold up the processing of my loan.

> **e. In conjunction with any application for a farm ownership or operating loan, the national office of FSA will provide or obtain reasonable technical assistance for Mr. Stovall in submitting such application, including the preparation of a farm and home plan.**

17. Mr. Sam Snyder and Ms. Carolyn Cooksie, national officials, together falsified the farm and home plan by including the amount of $35,000 of the attorney's fees, thereby insuring that Plaintiff had no operating capital. This was not the type of technical assistance Plaintiff was entitled to receive. This destroyed Plaintiff's ability to operate.

> **f. Final approval or disapproval of any application for a USDA loan will be completed under the auspices of the national office FSA. In addition, the national office of FSA will monitor all assistance provided to Mr. Stovall for the next five years.**

See preceding paragraph regarding damages.

> **g. The Office of Civil Rights will monitor FSA's compliance with the programmatic remedies set forth in this section.**

18. In spite of Plaintiff's constant phone calls to OCR and complaints about FSA's non-performance and breach of the equitable and injunctive relief provisions, OCR never did anything, including monitoring the FSA's compliance with the programmatic remedies listed in all the provisions. This allowed FSA to continue to breach, year after year, the five-year period designed to insure a profitable farming operation. The OCR's refusal to abide by this paragraph was, in itself, a breach of the agreement, thus

contributing to my losses, including economic consequential damages and loss of very valuable producer contracts.

**h. USDA will notify the appropriate credit bureau (as provided by Mr. Stovall) that Mr. Stovall no longer has any indebtedness to USDA.**

19. The USDA delayed its notification of Plaintiff's non-indebtedness to the appropriate credit bureaus for months after the agreement was signed. Plaintiff, therefore, was unable to get credit from any bank for the period Plaintiff needed it to successfully farm by operation. The USDA is clearly aware that the timing of funding is critical if a farmer is to have a successful annual crop or production season. Plaintiff also lost a lucrative contract with Con Agra Poultry Farms valued at approximately $640,000 because of his credit situation and the non-removal of the negative comment on Plaintiff's credit report.

20. These injunctive and equitable relief provisions were intended to place Plaintiff in the economic position he would have been but for the discrimination and to re-establish his previously profitable farming operation. These injunctive and equitable relief provisions provided Plaintiff an economic benefit, which if breached, would cause Plaintiff to suffer actual and consequential damages.

21. The USDA breached its contract in completely violating and/or delaying the processing of all these provisions causing Plaintiff's farming operation to fail and for Plaintiff to suffer approximately $4,500,000 economic damages, which were foreseeable.

22. Plaintiff STOVALL was qualified for credit, attempted to and did apply for credit and FSA assistance. Plaintiff STOVALL was denied credit and/or adequate credit while white farmers received ample credit for farm purchases, equipment, operating and emergency and disaster loans. Defendant violated and continues to violate Plaintiff's

rights to due process and equal protection under the law as guaranteed by the Fourteenth Amendment.

23. Plaintiff suffered and continues to suffer injuries and damages as a result of Defendant's illegal actions, including, but not limited to, injury to his business, his credit reputation as well as his standing in the local farm community. Plaintiff has suffered almost incalculable pecuniary and non-pecuniary damages, and will in all probability, continue to suffer damages in the future unless and until this Court intercedes.

24. Plaintiff was and is entitled to the benefits of his bargain. But for the Defendant's continued illegal conduct on the basis of the Plaintiff's race and his intention to exercise punishment on the Plaintiff, Plaintiff would have not suffered the losses complained of.

25. Plaintiff is entitled to recover his reasonable attorneys' fees, including paralegals' fees, and expenses associated with the litigation of his claims. Plaintiff is entitled to recover a sum from Defendants to compensate Plaintiff for a reasonable fee for his attorneys' fees, including paralegals' fees, in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

## V.
## CAUSE OF ACTION

### BREACH OF CONTRACT

26. Plaintiff restates and re-alleges paragraphs 1-25, above, as if fully stated herein and would further show the Court as follows:

27. The Defendant breached the 1998 Resolution Agreement with Plaintiff in, but not limited to, the following ways, each of which proximately caused Plaintiff's damages, as described above and as follows:

a. Their handling of Plaintiff's loan applications submitted subsequent to the January 1998 Resolution Agreement;

b. Their denial of Plaintiff's loan application submitted subsequent to the January 1998 Resolution Agreement; and

c. Their failure to remove the FSA debt, released in the 1998 Resolution Agreement, from Plaintiff's credit report until December 2001.

d. Failure to monitor contract execution; and

e. all matters stated in paragraphs 1-25 above

28. All conditions precedent, if any, to Plaintiff's right to recovery under his contract with the OCR have been satisfied.

29. Plaintiff's extended money and non-pecuniary damages were consequential and foreseeable by the Defendant; and Plaintiff alleges that such actions were in furtherance of the Defendant's discrimination and reprisal against Plaintiff.

30. Plaintiff's loss of his farm was foreseeable by the Defendant and Plaintiff alleges that such actions were in furtherance of the Defendant's race-based discrimination and reprisal against Plaintiff.

31. PLAINTIFF'S foreseeable economic losses and consequential damages resulting from DEFENDANT'S contract breach exceed $4,000, 000. Plaintiff seeks recovery of all foreseeable and consequential damages as a result of the Defendant's intentional breach of contract.

32. Plaintiff is entitled to recover his attorneys' fees from Defendant to compensate Plaintiff for a reasonable fee for his attorneys' fees, including paralegals' fees, in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

**PRAYER**

WHEREFORE, Plaintiff MICHAEL W. STOVALL requests that Defendant UNITED STATES OF AMERICA be required to appear and answer herein, and that the Court:

Grant Plaintiff MICHAEL W. STOVALL judgment against Defendant for:

(1) Breach of Contract damages and all foreseeable and consequential damages, in excess of $4,000,000, flowing there from; including, but not limited to, damages resulting from the contracted injunctive relief not provided pursuant to the Resolution Agreement;

(2) All injunctive and equitable relief provided under the Resolution Agreement;

(3) Reasonable attorney's fees and expenses;

(4) Costs of suit; and

(5) such other and further relief as are just and equitable.

Respectfully submitted,

James W. Myart, Jr. P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4815

By:______________________________
James W. Myart, Jr.
Federal Bar No. TX 0021

ATTORNEYS FOR PLAINTIFF

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MICHAEL W. STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-400C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 33 and 34 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, serves its objections and response to the first set of interrogatories served by plaintiff, Michael W. Stovall. The following response is based upon defendant's current knowledge, information and belief after making reasonable inquiry. Defendant expressly reserves the right to modify or supplement its response as it discovers additional information relevant to these interrogatories and requests for production.

GENERAL OBJECTIONS

Defendant asserts and incorporates by reference the following general objections to plaintiff's interrogatories and requests for production as though they were set forth in full in each response to each interrogatory and request for production:

1. Defendant objects to each interrogatory to the extent that they seek information or documents protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or any other applicable privilege or immunity, or any statutory or regulatory restriction upon disclosure, including the Privacy Act of 1974, 5 U.S.C. § 552(a). Furthermore, defendant objects to each interrogatory that seeks the identification and/or the disclosure of "all documents" to the extent that it seeks the disclosure or

identification of documents written by defendant's counsel.

2. Defendant objects to each interrogatory to the extent that it seeks documents prepared in anticipation of or in connection with litigation.

3. Defendant objects to plaintiff's interrogatories, definitions, and instructions to the extent that they would require defendant to take actions and/or provide information not required by RCFC 33 and 34 and to the extent that they are overbroad and unduly burdensome.

4. Defendant objects to each interrogatory to the extent that it seeks information that is already in plaintiff's possession or that is equally available to plaintiff through publicly available sources.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all persons who you believe have knowledge of relevant facts of the "USDA/Stovall settlement agreement" and the implementation thereof and describe the issues upon which you believe they have knowledge. (Identify means state the names, addresses, and telephone numbers of the individual(s). Relevant facts include those concerning the incident made the basis of this lawsuit.)

**RESPONSE:**

**Clarence Snyder.** 1400 Independence Ave., S.W., Washington, DC, 20250. Mr. Snyder has knowledge regarding the handling and processing of the loan applications, National Office monitoring, and the removal of FSA debt from plaintiff's credit report.

**Carolyn Cooksie.** 1400 Independence Ave., S.W., Washington, DC, 20250. Ms. Cooksie has knowledge regarding the handling and processing of the loan applications, National Office monitoring, and the removal of FSA debt from plaintiff's credit report.

**James Radintz.** 1400 Independence Ave., S.W., Washington, DC, 20250. Mr. Radnitz has knowledge regarding the handling and processing of the 1998 loan applications.

**Frank Rodgers.** 579 U.S. Courthouse, 801 Broadway, Nashville, TN 37203-3816. Mr. Rodgers has knowledge regarding the handling and processing of the 1998 loan applications in the Tennessee FSA office.

**Lawrence Mashburn.** Current address unknown. Mr. Mashburn has knowledge regarding the handling and processing of the 1998 loan applications in the Tennessee FSA office.

**Phyllis Holt.** Current address unknown. Ms. Holt has knowledge regarding the handling and processing of the 1998 loan applications in the Tennessee FSA office.

**William Sewell.** 4121 Carmichael Rd., Suite 600 Montgomery, Alabama 36106. Mr. Sewell has knowledge regarding the handling and processing of the 1998 loan applications in the Alabama FSA office.

**Jason Thomas.** Current address unknown. Mr. Thomas has knowledge regarding the handling and processing of the 1998 loan applications in the Alabama FSA office in Plaintiff's Amended Complaint.

**Johnny Raby.** 13075 Alabama Hwy, Moulton, AL 35650. Mr. Raby has knowledge

regarding the handling and processing of the 1998 loan applications in the Alabama FSA office.

**Robert Springer.** Current address unknown. Mr. Springer has knowledge regarding the handling and processing of the 1998 loan applications in the Alabama FSA office.

**Kendall Foust.** 2345 S Broad St., Scottsboro, AL 35769-7520. Mr. Foust has knowledge regarding the handling and processing of the 1998 loan applications in the Alabama FSA office.

**Arthur Veldon Hall.** 1400 Independence Ave., S.W., Washington, DC, 20250. Mr. Veldon Hall has knowledge regarding loan servicing.

**Orlando Kilcrease.** 1400 Independence Ave., S.W., Washington, DC, 20250. Mr. Kilcrease has knowledge regarding national office monitoring of all loan activities

**Phelan Savage.** 4121 Carmichael Rd., Suite 600 Montgomery, Alabama 36106. Ms. Savage has knowledge regarding the handling and processing of the 1998 loan applications in the Alabama FSA office.

**Dana Hester.** 4121 Carmichael Rd., Suite 600 Montgomery, Alabama 36106. Mr. Hester has knowledge regarding the handling and processing of the 1998 loan applications in the Alabama FSA office.

**Ricky Knouff.** 4121 Carmichael Rd., Suite 600 Montgomery, Alabama 36106. Mr. Knouff has knowledge regarding the handling and processing of the 1998 loan applications in the Alabama FSA office.

**Jonathan Howard.** 1400 Independence Ave., S.W., Washington, DC, 20250. Mr. Howard has knowledge regarding national office monitoring of all loan activities.

**INTERROGATORY NO. 2:** Please identify all persons that you expect will be called as witnesses during the trial of this case and describe what you believe they will testify to at trial and/or via affidavit.

**RESPONSE:** The defendant has not yet determined whom it may call as a fact witness at the trial in this matter. The defendant will timely provide information regarding fact witnesses it may call to testify on its behalf pursuant to the time frame set forth in any pretrial scheduling orders in this matter.

**INTERROGATORY NO. 3:** Identify all persons or entities that have possession, custody, or control of documents relevant to this suit and identify the documents over which they have possession, custody, and control.

**RESPONSE:**

**Rick Gibson**, USDA Office of the General Counsel. Mr. Gibson has possession, custody or control of (1) Mr Stovall's FSA Borrower Files, (2) Mr. Stovall's Civil Rights Complaint Files, and (3) FSA's National Office Monitoring File.

**Devin Wolak**, United States Department of Justice, Commercial Litigation Branch. Mr. Wolak has possession, custody or control of copies of (1) Mr Stovall's FSA Borrower Files, (2) Mr. Stovall's Civil Rights Complaint Files, and (3) FSA's National Office Monitoring File.

**INTERROGATORY NO. 4:** Identify each person who for the USDA/United States of America (USA) participated in the Office of Civil Rights investigation of the Plaintiff's discrimination complaint which formed the basis of the USDA/USA's decision to enter into settlement negotiations of the Plaintiff's discrimination complaint.

**RESPONSE:**

Lloyd Wright, Director, USDA Office of Civil Rights

D.J. Miller & Associates, Investigators

**INTERROGATORY NO. 5:** Identify each and every document in the Plaintiff's file in the sole custody of the USDA/USA Stovall Farm Service Agency and Office of Civil Rights files up to and including the date of the service hereof.

**RESPONSE:** The defendant objects to this discovery request because it is vague and ambiguous, seeks information beyond the scope of discovery, and is unduly burdensome. The defendant is not required to create document summaries, indices or digests to satisfy the plaintiff's discovery requests. We have met our discovery obligation by making documents requested by the plaintiff available for inspection. See RCFC 34(a).

**INTERROGATORY NO. 6:** Identify each and every person you expect to call as an expert witness at the trial of this case, and as to each expert so identified, state the subject matter on which each is expected to testify, the substance of the facts and opinions to which they are expected to testify, and a summary of the grounds for each opinion, as well as a brief description of that person's area of expertise and identify all documents reviewed or relied upon by the expert in forming any opinion, diagnosis, or conclusion.

**RESPONSE:** The defendant has not yet determined whether it will use an expert witness at the hearing in this matter. The defendant will timely provide information regarding expert witnesses it may call to testify on its behalf pursuant to the time frame set forth in any pretrial scheduling orders in this matter.

**INTERROGATORY NO. 7:** Please identify each and every person who has complained of breach of contract by the USDA in connection with any actual or proposed settlement agreements resulting from complaints of discrimination by the USDA against them whether such complaints occurred in programs or employment. (Identify means state the date the action occurred or actions complained of occurred, the identity of the person receiving the complaint, the action taken to investigate the complaint, the persons investigating any such complaints, the persons negotiating such proposed and/or actual settlement agreements, and detail what the status of any such complaint action was taken and identify each and every witness to the action taken.

**RESPONSE:** Defendant objects to this interrogatory upon the basis that it seeks information beyond the scope of the limitations imposed by RCFC 26 and 36; specifically, the information sought regarding prior complaints or settlement agreements that are unrelated to the agreement with the plaintiff is not relevant, nor is the request reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. Defendant further objects to this interrogatory upon the grounds that is overbroad and seeks information that may not be disclosed per the Privacy Act of 1974, 5 U.S.C. § 552(a). Moreover, defendant objects to this interrogatory on the grounds that it is unduly burdensome for defendant to "identify," as that term is defined in plaintiff's discovery request, each and every person who has ever complained of breach of contract by the USDA in connection with any actual or proposed settlement agreements resulting from complaints of discrimination by the USDA against them whether such complaints occurred in programs or employment.

Without waiving these objections, the defendant states that it does not maintain records of complaints by the subject matter of the complaint (i.e., breach of settlement agreement). Nevertheless, we have conducted a search of LEXIS and PACER, which revealed that the following plaintiffs filed federal court complaints against the USDA that included an allegation of a breach of a USDA program discrimination settlement agreement (non-employment):

Stovall v. Veneman (DDC No. 04-319)
Stovall v. United States (Fed. Cl. No. 05-400)
Hall v. Veneman (N.D. Ala. No. 04-971)
Hall v. United States (Fed. Cl. No. 05-517)
Shaffer v. Glickman (DDC No. 00-1729)
Shaffer v. Veneman (DC Cir. No. 02-5009)
Coats v. Veneman (DDC No. 03-2306)
Davis v. Veneman (DDC No. 03-2309)
Williams v. Veneman (DDC No. 03-2245)
Williams v. United States (Fed. Cl. No. 06-124)
Matthew and Richard Grant v. Veneman (DDC No. 03-2308)

**INTERROGATORY NO. 8:** Please identify each and every person who participated in the Stovall settlement agreement negotiations that resulted in the USDA/Stovall settlement agreement. Describe each person's role, title, and involvement therein and state what testimony you expect each to give at trial and/or affidavit or deposition.

**RESPONSE:**

**Lloyd Wright**, Acting Director of the Office of Civil Rights 1996-1998. Mr. Wright negotiated and executed the settlement agreement on behalf of USDA.

**James Myart.** Mr. Myart negotiated and executed the settlement agreement on behalf of Michael Stovall.

**Michael Stovall.** Mr. Stovall executed the settlement agreement.

**<u>INTERROGATORY NO. 9</u>:** Describe in detail each element and/or paragraph of the USDA/Stovall Settlement agreement.

> **<u>RESPONSE</u>:** The defendant refers to the USDA/Stovall Settlement Agreement, which speaks for itself. The defendant understands that this document is already in the plaintiff's possession.

**<u>INTERROGATORY NO. 10</u>:** Please identify each and every person who was responsible in and for the implementation of the injunctive relief portions of the USDA/Stovall settlement agreement and describe in detail what actions each such identified persons took to implement the injunctive relief provisions of the USDA/Stovall settlement agreement.

> **<u>RESPONSE</u>:** The defendant objects to this interrogatory, as the term "injunctive relief" is vague and ambiguous. Injunctive relief is an equitable remedy in the form of a court order. The USDA/Stovall Settlement Agreement is an administrative settlement agreement, and it contains no court orders or "injunctive relief" provisions. It does, however, create certain obligations to be fulfilled by the USDA with respect to post-settlement loan applications submitted to the USDA by the plaintiff. Without waiving these objections, the defendant directs the plaintiff to its response to Interrogatory No. 1, which includes persons involved in the handling of the plaintiff's post-settlement loan applications.

**<u>INTERROGATORY NO. 11</u>:** Please identify and describe every legal defense the United States has present[ed] and will present to the Plaintiff's claim of Breach of Contract of the USDA/Stovall settlement agreement.

> **<u>RESPONSE</u>:** The legal defenses the defendant has presented upon plaintiff's claims are set forth in the defendant's public filings in <u>Stovall v. United States</u>, United States Court of Federal Claims No. 05-400C, and they speak for themselves. Generally, the defendant intends to generally demonstrate that the plaintiff cannot prove some or all of the elements of its claims against the United States. The specific contours of the defendant's case will be presented in accordance with the Rules of the Court of Federal Claims.

**INTERROGATORY NO. 12**: Please identify each and every person who participated, contributed in and/ or answered the interrogatories propounded on the United States of America

**RESPONSE**: Clarence Snyder, Rick Gibson, and Devin Wolak.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

D A Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

July 6, 2007

Attorneys for Defendant

**CERTIFICATION**

I, Clarence Snyder, state that I provided the factual information in support of defendant's responses to plaintiff's first set of interrogatories in the matter of Stovall v. United States, Fed. Cl. No. 05-400C. I conferred with other current and former employees of the Federal Government and reviewed documents in the files to obtain some of the facts. I have reviewed the responses, and hereby certify under the laws of the United States of America, that the responses are true and correct to the best of my knowledge.

July 6, 2007
Date

Clarence J. Snyder

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on July 6, 2006, I caused to be served by first-class mail (postage prepaid) copies of "DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES" addressed as follows:

JAMES W. MYART, JR.
James W. Myart, Jr., P.C.
The Preston House
1104 Denver Boulevard
Suite 300
San Antonio, Texas 78210

[signature]

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MICHAEL W. STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-400C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, provides the following responses to plaintiff's request for production of documents. Defendant reserves the right to supplement its responses, including any objections that may be applicable, based upon any additional information that may be discovered subsequent to this response.

GENERAL OBJECTIONS AND QUALIFICATIONS

Defendant asserts and incorporates by reference the following general objections to plaintiff's document requests as though they are set forth in full in each response:

1. Defendant objects to the extent plaintiff's definitions exceed the requirements of the Rules of the United States Court of Federal Claims.

2. Defendant objects to the requests upon the grounds and to the extent that, by them, plaintiffs seek to have defendant draw certain legal conclusions and/or conclusions as to the legal significance of certain information or documents, which is not the purpose of discovery requests.

3. Defendant objects to plaintiff's requests to the extent that any of them seek documents or information protected by the attorney-client privilege, the deliberative process

privilege, the attorney work product doctrine, or any evidentiary privilege, or protected from disclosure under applicable law, including the Privacy Act of 1974, 5 U.S.C. § 552a.

4. Defendant objects to plaintiff's requests upon the grounds and to the extent that, by them, plaintiffs seek the discovery of documents or information that is irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

5. Defendant objects to plaintiff's requests upon the grounds that the manner in which they are worded, when read with their definitions, are so vague, broad, general, and all inclusive that they do not permit a proper or reasonable response and are, therefore, unduly burdensome and oppressive.

6. Defendant objects to plaintiff's requests to the extent that, when read with other discovery requests, they are unreasonably cumulative or duplicative.

7. Defendant's responses are based upon the present knowledge of, and information provided to, counsel. Discovery proceedings are continuing, and defendant will provide additional non-privileged information responsive to these requests as it becomes known and available to counsel. In addition, defendant reserves the right to assert legal or factual contentions, including any applicable objections, not set forth in its present responses.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**Request No. 1.** Any and all documents related to Plaintiff's complaints of racial discrimination against the United States Department of Agriculture ("USDA").

**RESPONSE:** Defendant objects to this request for production upon the basis that it seeks information beyond the scope of the limitations imposed by RCFC 26 and 36; specifically, the information sought regarding prior complaints or settlement agreements that are unrelated to the agreement with the plaintiff is not relevant, nor is the request reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request for production to the extent that it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. Defendant further objects to this request for production upon the grounds that is overbroad and seeks information that may not be disclosed per the Privacy Act of 1974, 5 U.S.C. § 552(a).

Without waiving these objections, see bates range STV001141-STV001984 (Office of Civil Rights file for plaintiff).

**Request No. 2.** Any and all documents related in the file of USDA Farm Service Agency on Plaintiff since the inception of his loan relationship with the USDA to the date hereof.

> **RESPONSE:** See documents at bates ranges STV000001-STV001142 (Alabama state office), STV001985-STV002615 (national office), and STV002616-STV002657 (Tennessee state office).

**Request No. 3.** Any and all settlement agreements (documents) between USDA and Plaintiff resulting from any complaints of discrimination filed by Plaintiff.

**<u>RESPONSE</u>:** See the Exhibit to the Second Amended Complaint (the 1998 Resolution Agreement). See also bates range STV001164-STV001167.

**Request No. 4.** Any and all documents by the Office of Civil Rights where there is reflected an investigation of and/or finding of discrimination against Plaintiff by the USDA Office of Civil Rights.

**RESPONSE:** See bates range STV001141-STV001984 (Office of Civil Rights file for plaintiff).

**Request No. 5.** Any and all applications for loans of any type (documents) by Plaintiff produced in order by year since the inception of Plaintiff's relationship with the USDA.

> **RESPONSE:** See bates ranges STV001985-STV002615 (USDA national office file for plaintiff), and STV000001-STV001142 (Alabama state office file for plaintiff).

**Request No. 6.** Any and all reports (documents) completed by USDA Office of Civil Rights and the Office of Inspector General reflecting investigation of the USDA for racial discrimination against any civil rights complainants by the USDA.

> **<u>RESPONSE</u>:** Defendant objects to this request for production upon the basis that it seeks information beyond the scope of the limitations imposed by RCFC 26 and 36; specifically, the information sought regarding investigations of racial discrimination are not relevant, nor is the request reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request for production to the extent that it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. Defendant further objects to this request for production upon the grounds that is overbroad and seeks information that may not be disclosed per the Privacy Act of 1974, 5 U.S.C. § 552(a). Finally, defendant objects to this request for production because it is duplicative of Request No. 1.
>
> Without waiving these objections, see the response to Request No. 1, above.

**Request No. 7.** Any and all reports, memoranda, notes, message pads, phone bill statements, whether written or computer generated, reflecting the USDA's written and or verbal communications with Plaintiff subsequent to execution of the USDA/Stovall settlement agreement whether such communications were done at the USDA National or Alabama State Farm Service Agency Office.

> **RESPONSE:** See bates ranges STV001985-STV002615 (USDA national office file for plaintiff), and STV000001-STV001142 (Alabama state office file for plaintiff).

**Request No. 8.** Any and all policies, procedures or guides utilized by the USDA to instruct USDA officers in procedures to be followed in insuring that the injunctive relief portions of USDA black farmer settlement agreements are carried out or executed.

**RESPONSE:** See bates range STV002658-STV004661.

**Request No. 9.** Any and all correspondence, policies and procedures used to implement the injunctive relief portions of the USDA/Stovall settlement agreement.

**RESPONSE:** See bates range STV002658-STV004661 (policies, procedures and regulations); STV001985-STV002615 (USDA national office file for plaintiff), and STV000001-STV001142 (Alabama state office file for plaintiff).

**Request No. 10.** Any and all statements recorded or written in any manner by any party relating to the allegations contained in the Complaint and Answer in the above-styled lawsuit.

**RESPONSE:** See bates range STV000001-STV004717.

**Request No. 11.** Any and all lawsuit complaints and answers in any law suit filed against the USA and the USDA for breach of any USDA/Black Farmer settlement agreement.

**RESPONSE:** See bates range STV004718-STV004882.

**Request No. 12.** Any and all written complaints of Breach of Contract by any other black farmers who have complained that the USDA or the USA have breached a settlement agreement entered into on behalf of the USDA by the Office of Civil Rights. This request includes all offices of the USDA, including but not limited to the Office of the Inspector General. (All such documents are public information.)

**RESPONSE:** Defendant objects to this request for production upon the basis that it seeks information beyond the scope of the limitations imposed by RCFC 26 and 36; specifically, the information sought regarding complaints or settlement agreements that are unrelated to the agreement with the plaintiff is not relevant, nor is the request reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request for production to the extent that it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. Defendant further objects to this request for production upon the grounds that is overbroad and seeks information that may not be disclosed pursuant to the Privacy Act of 1974, 5 U.S.C. § 552(a). Moreover, defendant objects to this request for production upon the grounds that it is unduly burdensome for defendant to produce any and all written complaints by any "black farmer" who has ever complained of breach of contract by the USDA in connection with a settlement agreement.

Without waiving these objections, the defendant states that it does not maintain records of complaints by the subject matter of the complaint (i.e., breach of settlement agreement). Pursuant to the request of plaintiff's counsel, we have investigated the files of Matthew Grant, Richard Grant, Dexter Davis, Howard Coats, William Crute, and Bernice Turner. We have not located any responsive documents at this time.

**Request No. 13.** Any reports and documents to be relied upon by any expert to be called as an expert witness in the trial of this cause.

**RESPONSE:** Defendant has not yet determined whether it will use an expert in this matter. The defendant will timely provide any expert reports pursuant to the Rules Of The United States Court Of Federal Claims.

**Request No. 14.** The résumé and/or vitae of any expert to be called as an expert witness in the trial of this cause.

> **RESPONSE:** The defendant has not yet determined whether it will use an expert witness at the hearing in this matter. The defendant will timely provide information regarding expert witnesses it may call to testify on its behalf pursuant to the time frame set forth in any pretrial scheduling orders in this matter.

**Request No. 15.** Any and all exhibits to be used in the trial of this cause.

**RESPONSE:** The defendant has not yet determined what exhibits it will use during trial. The defendant will timely provide information regarding its trial exhibits pursuant to the time frame set forth in any pretrial scheduling orders in this matter.

**Request No. 16.** Any and all documents identified in your answer to Interrogatory #5 served simultaneously herewith.

**RESPONSE:** Defendant objects to this request for production because it is duplicative of Request No. 10. Without waiving this objection, see the response to Request No. 10, above.

**PRIVILEGE LOG.** For documents withheld or redacted upon the basis of privilege, please see the defendant's privilege log, attached.

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

DrA Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

July 30, 2007

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on July 30, 2007, I caused to be served by first-class mail (postage prepaid) copies of "DEFENDANT'S RESPONSE TO PLAINTIFFS' REQUESTS FOR PRODUCTION" addressed as follows:

JAMES W. MYART, JR.
James W. Myart, Jr., P.C.
The Preston House
1104 Denver Boulevard
Suite 300
San Antonio, Texas 78210

**U.S. Department of Justice**

Civil Division

JED:DAB:DAWolak
154-05-400

Telephone: (202) 616-0170
Facsimile: (202) 514-8624

***Washington, DC 20530***

August 15, 2007

VIA ELECTRONIC MAIL

Mr. James W. Myart, Jr.
James W. Myart, Jr., P.C.
The Preston House
1104 Denver Boulevard
Suite 300
San Antonio, Texas 78210

Re: *Michael W. Stovall v. United States*, CFC No. 05-400

Dear Mr. Myart:

I am in receipt of your August 9, 2007 e-mail in which you renewed your request for documents relating to "complaints of black farmers filed against [the USDA]," and "Resolution Agreements settling claims of discrimination," as well as a "full[], truthful[] and adequate[] answer [to] interrogatory question #7." You also indicated that, if the United States did not provide you the responses and documents requested by August 15, 2007, you would file a motion to compel such answers and documents. Finally, you indicated that any motion to compel would be accompanied by a motion for sanctions.

As we have discussed on previous occasions, your renewed request originates from Plaintiff's Interrogatory No. 7 and Plaintiff's Request For Production No. 12.

Plaintiff's Interrogatory No. 7 states:

> Please identify each and every person who has complained of breach of contract by the USDA in connection with any actual or proposed settlement agreements resulting from complaints of discrimination by the USDA against them whether such complaints occurred in programs or employment. (Identify means state the date the action occurred or actions complained of occurred, the identity of the person receiving the complaint, the action taken to investigate the complaint,

> the persons investigating any such complaints, the persons negotiating such proposed and/or actual settlement agreements, and detail what the status of any such complaint action was taken and identify each and every witness to the action taken.

Our response to Plaintiff's Interrogatory No. 7, which was certified by Clarence Snyder, was:

> Defendant objects to this interrogatory upon the basis that it seeks information beyond the scope of the limitations imposed by RCFC 26 and 36; specifically, the information sought regarding prior complaints or settlement agreements that are unrelated to the agreement with the plaintiff is not relevant, nor is the request reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. Defendant further objects to this interrogatory upon the grounds that is overbroad and seeks information that may not be disclosed per the Privacy Act of 1974, 5 U.S.C. § 552(a). Moreover, defendant objects to this interrogatory on the grounds that it is unduly burdensome for defendant to "identify," as that term is defined in plaintiff's discovery request, each and every person who has ever complained of breach of contract by the USDA in connection with any actual or proposed settlement agreements resulting from complaints of discrimination by the USDA against them whether such complaints occurred in programs or employment.
>
> Without waiving these objections, the defendant states that it does not maintain records of complaints by the subject matter of the complaint (i.e., breach of settlement agreement). Nevertheless, we have conducted a search of LEXIS and PACER, which revealed that the following plaintiffs filed federal court complaints against the USDA that included an allegation of a breach of a USDA program discrimination settlement agreement (non-employment):
>
> Stovall v. Veneman (DDC No. 04-319)
> Stovall v. United States (Fed. Cl. No. 05-400)
> Hall v. Veneman (N.D. Ala. No. 04-971)
> Hall v. United States (Fed. Cl. No. 05-517)
> Shaffer v. Glickman (DDC No. 00-1729)
> Shaffer v. Veneman (DC Cir. No. 02-5009)
> Coats v. Veneman (DDC No. 03-2306)

Davis v. Veneman (DDC No. 03-2309)
Williams v. Veneman (DDC No. 03-2245)
Williams v. United States (Fed. Cl. No. 06-124)
Matthew and Richard Grant v. Veneman (DDC No. 03-2308)

Plaintiff's Request For Production No. 12 states:

> Any and all written complaints of Breach of Contract by any other black farmers who have complained that the USDA or the USA have breached a settlement agreement entered into on behalf of the USDA by the Office of Civil Rights. This request includes all offices of the USDA, including but not limited to the Office of the Inspector General. (All such documents are public information.)

Our response to Plaintiff's Request For Production No. 12 was:

> Defendant objects to this request for production upon the basis that it seeks information beyond the scope of the limitations imposed by RCFC 26 and 36; specifically, the information sought regarding complaints or settlement agreements that are unrelated to the agreement with the plaintiff is not relevant, nor is the request reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request for production to the extent that it seeks information that is protected by the attorney-client privilege and the attorney work product doctrine. Defendant further objects to this request for production upon the grounds that is overbroad and seeks information that may not be disclosed pursuant to the Privacy Act of 1974, 5 U.S.C. § 552(a). Moreover, defendant objects to this request for production upon the grounds that it is unduly burdensome for defendant to produce any and all written complaints by any "black farmer" who has ever complained of breach of contract by the USDA in connection with a settlement agreement.
>
> Without waiving these objections, the defendant states that it does not maintain records of complaints by the subject matter of the complaint (i.e., breach of settlement agreement). Pursuant to the request of plaintiff's counsel, we have investigated the files of Matthew Grant, Richard Grant, Dexter Davis, Howard Coats, William Crute, and Bernice Turner. We have not located any responsive documents at this time.

We have discussed these discovery requests, the Government's responses, and the Government's efforts to provide you with additional responsive material upon many occasions. During those discussions, you have explained that the discovery you seek are copies of other settlement agreements similar to Mr. Stovall's (i.e., settlement agreements resolving claims of racial discrimination and providing programmatic relief for the complainant to obtain future FSA loans), and the reason you seek them is so that you can prove the alleged breach of Mr. Stovall's agreement by introducing evidence that the Government is accused of breaching, or has breached, other similar agreements.

During these discussions, we have stood by our objections to these discovery requests, and continue to do so. We have also reiterated our view that such documents are completely irrelevant to Mr. Stovall's case, because allegations that the Government has breached other settlement agreements do not inform the main issue in this case -- whether the Government breached Mr. Stovall's 1998 settlement agreement. We have also repeatedly explained that the USDA does not keep its files according to what type of agreement or complaint was lodged by a particular individual; rather, the USDA keeps its files in alphabetical order, by the last name of the complainant. Thus, locating such documents (assuming they exist) would require the defendant to search every file of every person who ever lodged a compliant with the USDA. Imposing such an extreme burden upon the Government is not warranted in light of the minimal relevance of the discovery you seek.

Nevertheless, we have made efforts to comply with more limited requests. During our telephone conversation on July 25, 2007, we asked you to provide names of individuals whose files we could search for the documents you have requested, and you identified Matthew Grant, Richard Grant, Dexter Davis, Howard Coats, William Crute, and Bernice Turner. As we have previously informed you and indicated in our discovery responses, our searches of those files have not produced any administrative complaints alleging that the Government breached a settlement agreement similar to Mr. Stovall's. In light of your letter, we tasked a team of USDA employees to search these files again; they have now confirmed that none of these individuals have complained that the Government breached any settlement agreements.

I trust this response will satisfy your concerns regarding your discovery requests -- the information you have requested does not exist.

Sincerely,

Devin A. Wolak
Trial Attorney
Commercial Litigation Branch

**U.S. Department of Justice**

Civil Division

JED:DAB:DAWolak
154-05-400

Telephone: (202) 616-0170
Facsimile: (202) 514-8624

***Washington, DC 20530***

August 20, 2007

VIA ELECTRONIC MAIL

Mr. James W. Myart, Jr.
James W. Myart, Jr., P.C.
The Preston House
1104 Denver Boulevard
Suite 300
San Antonio, Texas 78210

Re: *Michael W. Stovall v. United States*, CFC No. 05-400

Dear Mr. Myart:

I am writing to address the issues that have arisen with respect to your request for the deposition of Mr. Clyde Thompson, the current Deputy Administrator for Operations and Management of Rural Development, an agency of the United States Department of Agriculture. As we have discussed on the telephone many times, and as you indicated in the draft notice of deposition for Mr. Thompson that you sent to me via e-mail on August 10, 2007,[1] you believe that Mr. Thompson will provide testimony concerning his involvement in negotiations to settle your client's administrative claim that preceded this lawsuit. You have also told me that Mr. Thompson once instructed your client to fire you, and that this statement was made in the context of negotiations over this case or the case of Williams v. United States, Fed. Cl. No. 06-124C.

The subjects you have identified for Mr. Thompson's testimony are objectionable, and do not form a proper basis for taking his deposition. First, assuming Mr. Thompson did engage in settlement discussions concerning this case, the substance of those discussions are inadmissible

[1] In subsequent conversations, you told me that you have properly served these notices, as required by the Rules of the Court of Federal Claims. As I have informed you, I still have not received these notices. Until I do, or you provide me with some proof of service, the Government has no obligation to produce any of these witnesses.

at trial under Federal Rule of Evidence 408. Also, the likelihood that Mr. Thompson's testimony upon that subject will lead to other discoverable information is extremely low, as this lawsuit involves allegations that the Government breached its contract with your client -- and that the breach allegedly occurred long before your client filed his administrative complaint concerning the breach. Also, whether Mr. Thompson instructed your client to fire you or not is completely irrelevant to this case. Finally, as the attached declaration demonstrates, and as I have repeatedly informed you in our prior conversations, Mr. Thompson had no involvement with the execution or implementation of the Stovall settlement agreement.

Despite all of this, you have insisted that Mr. Thompson be made available for his deposition, and you informed me that during his alleged negotiations to resolve this case at the administrative stage, Mr. Thompson had sent you "over twenty letters" concerning the case. I asked you to provide me with those letters, and you promised to include them in your client's document production. Based upon this representation, we agreed to make Mr. Thompson available for his deposition, and scheduled it for the afternoon of August 22, 2007. We informed you that Mr. Thompson was going to be out of town the previous weekend through the morning of the 22d, and that he was returning to Washington D.C. for the sole purpose of being deposed.

The promised letters were not included in your client's document production, so I telephoned you and asked again that you provide them so that Mr. Thompson could be prepared for his deposition. You then informed me that the letters were actually only about a dozen in number, and they were all from you to Mr. Thompson, and Mr. Thompson had never written back. I informed you that these letters were also not included in your client's document production, and that I would appreciate it if you would send me copies for Mr. Thompson to review. Last week, after another period where I did not receive any letters from you, I called again to request the letters. On Friday, you informed me that the only letters that you intended to question Mr. Thompson about were the two from you to him that were already contained in your client's document production. You also informed me that you were not going to yield in your demand that Mr. Thompson be produced for deposition, and that you intended to interrogate him about why he instructed Mr. Stovall to fire you.

Despite the fact that Mr. Thompson knows nothing about this case and you apparently have nothing with which to refresh his memory, we have, until this point, been willing to make him available for deposition. However, due to the recent schedule conflict caused by your late request to depose Mr. Clarence Snyder (who is only available on August 22), it was necessary to reschedule Mr. Thompson's deposition. We discussed this matter on the telephone on Friday, August 17, 2007. You requested that Mr. Thompson return from his vacation early to be deposed on August 21, or that we make him available after the other depositions in this case, on Friday, August 23. I told you that I would ask about these dates, even though I had previously informed you that he was already fully scheduled for those dates. I suggested that we could more easily agree upon any date during the week of August 27, as I knew that Mr. Thompson's

schedule was clear that week. You then informed me that you would not be available during the week of August 27 because you had just decided, the night before, that you were taking a vacation that entire week.

As you are fully aware, our extended discovery period ends on August 31, 2007. We sought this extension in large part so that you could complete certain discovery you deemed necessary to build your case. We enumerated that discovery in our joint motion to enlarge the discovery period. Immediately after we filed that motion, you began requesting discovery beyond what we had discussed and listed in the motion, and despite our better judgment, we have accommodated your every request. The present scheduling conflict was directly caused by your late request to depose Mr. Snyder -- a witness we identified in our initial disclosures, who we urged you depose, but you affirmatively ignored until after we filed our motion to enlarge the discovery period. Now you demand that the Government attorneys and witnesses cancel their vacation plans and scramble their schedules upon extremely short notice so that you can complete your tasks and then disappear for a vacation during the final week of discovery. We will not agree to your unreasonable demands.

Based upon all of this, the deposition schedule is as follows:

> Clarence Snyder, Wednesday, August 22, 2007, beginning at 9:30 a.m. at 1100 L Street, N.W., Washington D.C.
>
> Carolyn Cooksie, Thursday August 23, 2007, beginning at 10:00 a.m. at 1100 L Street, N.W., Washington D.C.
>
> Johnny Toles, Thursday, August 23, 2007, beginning at 1:00 p.m. at 1100 L Street, N.W., Washington D.C.

We will not produce Mr. Thompson for deposition. Mr. Thompson is a high-ranking Government official who has now provided you with a declaration stating that he knows nothing about this case. Scheduling his deposition at this point would be a complete waste of time and resources.

Sincerely,

[signature]

Devin A. Wolak
Trial Attorney
Commercial Litigation Branch

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL W. STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-400C |
| | ) | (Judge Francis Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**Declaration of Clyde Thompson**

I, Clyde Thompson, do hereby state and declare as follows:

1. I am the Deputy Administrator for Operations and Management of Rural Development (RD), an agency of the United States Department of Agriculture ("USDA"), Washington, D.C. I have held my current position since April 2007. From September 3, 2003 to April 2007, I was the Associate Assistant Secretary for Civil Rights in the Office of the Assistant Secretary for Civil Rights, a mission area created in 2003 at the Department of Agriculture that reports directly to the Secretary of Agriculture and provides civil rights policy guidance and direction to every USDA Agency. From April 2002 to September 2003, I was the Associate Assistant Secretary for Administration, where I had responsibility for the coordination of the diverse administrative activities of the Department, including human resources, ethics, procurement, and civil rights. Prior to this position, I served for twenty-five years in a number of positions with the Forest Service and was responsible for directing the business operations, information technology, procurement and contracting activities of the Forest Service.

2. In my former position as the Associate Assistant Secretary for Civil Rights, I was responsible for assisting the Assistant Secretary for Civil Rights and the Secretary of Agriculture

with a number of civil rights issues, including providing policy guidance to agencies concerning their programmatic activities, promoting a diverse and inclusive workplace at USDA, coordinating outreach activities with land grant universities and the Center for Minority Farmers. As a part of my duties, I was tasked with meeting with minority farmers on behalf of the Assistant Secretary for Civil Rights and listening to their concerns about USDA operations.

3. I am familiar with the plaintiff's attorney, Mr. James Myart, through my meetings with minority farmers. However, I have no recollection of meeting Mr. Stovall in the course of my duties as the Associate Assistant Secretary of Administration or my duties as the Associate Assistant Secretary for Civil Rights.

4. I have never held any job responsibilities within the Farm Service Agency and did not have any duties concerning the implementation of Farm Service Agency settlement agreements. I did not participate in the negotiations of the Michael Stovall settlement agreement in 1998, nor have I ever been in a position where I was responsible for monitoring the implementation of specific settlement agreements executed by the numerous individual USDA agencies.

5. I was informed in a telephone conference with counsel on July 18, 2007, that Mr. Myart had claimed to possess over twenty documents that would indicate my participation in the execution or implementation of the Michael Stovall settlement agreement. As of this date, Mr. Myart has not produced these documents to me, and it is my understanding that he has not produced these documents to counsel.

6. The statements made in this declaration are based on knowledge that I have acquired in the performance of my official duties, and information provided to me by attorneys

from the Office of the General Counsel, USDA (OGC) and the Department of Justice.

I declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Clyde Thompson 8/17/07

CLYDE THOMPSON
Deputy Administrator for
Operations and Management
Rural Development
U.S. Department of Agriculture
Washington, D.C.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
------------------------------X
                              )
MICHAEL W. STOVALL,           )
                              )
            Plaintiff,        )
                              )
v.                            )Civil Action
                              )No. 05-400C
UNITED STATES OF AMERICA,     )(Judge Allegra)
                              )
                              )
            Defendant.        )
------------------------------X
```

Wednesday
August 22, 2007

Washington, D.C.

DEPOSITION OF:

CLARENCE SNYDER

called for examination by counsel for the Plaintiff, Michael W. Stovall, pursuant to notice of deposition, in the Office of the Department of Justice, Civil Division, 1100 L Street, N.W., when were present on behalf of the respective parties:

APPEARANCES:

On Behalf of the Defendant, United States of America:

DEVIN A. WOLAK, ESQ.
Trial Attorney
of: Commercial Litigation Branch
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0170
fax 514-8624
devin.wolak@usdoj.gov

P R O C E E D I N G S

11:31 a.m.

MR. WOLAK: Let's go ahead and go on the record.

All right. This is Devin Wolak here for the United States in the matter of Stovall v. United States, Federal Claim Court No. 05-400c.

We are here for the deposition of Mr. Clarence "Sam" Snyder, which was agreed to be held by the parties at 9:30 a.m., on August 22nd, at 1100 L Street, N.W., Washington, D.C. 20005, which is the DOJ Commercial Litigation Section building.

This is Plaintiff's deposition, but Plaintiff's attorney has not appeared this morning. It is now 11:30 in the morning. So he's two hours late, and I just want to go through a few things here of what happened.

Approximately 8:04 this morning, Plaintiff's attorney telephoned me to notify me that he was at his hotel room drafting a

motion to compel the testimony of another witness in this case, and that he would not be able to be here by 9:30 in the morning, the scheduled start time, and the conversation ended.

I called him back shortly thereafter to confirm what time he would be here. He told me that he would be here at 10:30. I immediately started trying to contact the witness and Agency counsel, who were going to attend, to let them know of the delay.

I was able to serendipitously contact the witness, who called me from his own cell phone where he was waiting to take the Metro over to our office, and I informed him that we would be delayed this morning, and he said he would arrive on time anyway, and he did, along with Agency counsel.

The court reporter arrived early, as well. So everybody was here this morning to conduct this deposition except for

Plaintiff's counsel.

A little after 10:30 Plaintiff's counsel called me again to tell me that -- actually he didn't tell me anything because we had a bad connection on the telephone and transmissions were garbled.

About 20 minutes after that he called back to let me know that he would not be taking Mr. Snyder's deposition this morning; that instead he would arrive at the deposition location at 1:30 in the afternoon to take the deposition of Mr. Clarence Thomas -- I'm sorry -- Clyde Thompson, Clyde Thompson -- even though we had discussed with Mr. Myart that we will not be making Mr. Thompson available for a deposition, which our reasons were given in the correspondence we sent to him earlier this week and late last week.

Because Mr. Myart has indicated to us that he is not going to be taking Mr. Snyder's deposition today, and we have already been here for two hours and are ready and

willing and able to be here for the remaining five which he has available to take his deposition, we consider this deposition closed and see no reason to continue to stay here.

And Mr. Myart, for his client, has waived his right to take Mr. Snyder's deposition, and we will not be producing him, absent an order from the court compelling us to do so.

Do you have anything for the record?

MR. WALKOW: No.

MR. WOLAK: Ron Walkow of the USDA is here from the Office of the General Counsel, as well. That's who my question was addressed to.

That's it. This deposition is closed.

(Whereupon, the foregoing matter went off the record at 11:35 a.m. and went back on the record at 11:44 a.m.)

MR. WOLAK: Back on the record.

Even though Mr. Snyder's deposition is closed, Mr. Myart again has informed us that he intends to arrive at 1100 L Street today to take the deposition of Mr. Clyde Thompson, someone whom he has requested the deposition of. Originally, the United States was willing to make him available for a deposition this afternoon at 1:30. even though Mr. Thompson has informed us -- and we have informed the Plaintiff -- that he knows nothing about this case.

When the Plaintiff requested, approximately a week and a half ago, the deposition of Mr. Snyder, and it appeared that Mr. Snyder's availability directly conflicted with Mr. Thompson's availability, we presented that fact to Plaintiff's counsel and he elected to take Mr. Snyder's deposition today, but also insisted that Mr. Thompson be made available some time during this week while Plaintiff's attorney was in Washington, D.C.

We informed Plaintiff's attorney

that Mr. Thompson was not available, that he was on vacation this week, and he was actually returning this day just for the deposition and would be going back on vacation. But that he was available many times, beginning next week. August 27th, I believe, is on a Monday.

Mr. Myart, last Friday the 17th, informed me that the night before, Thursday night the 16th, he had decided that he would be taking vacation during the week of the 27th, and therefore it would not -- his schedule would not be amenable to deposing Mr. Thompson during the week of the 27th and insisted again that we make him available during this week.

We then sent Mr. Myart a letter informing him of the reasons why we would not be making Mr. Thompson available before the close of discovery on August 31st due to scheduling conflicts and the fact that Mr. Thompson does not know anything about this case. Mr. Thompson provided a declaration

stating as much and we gave that to the Plaintiff's attorney, for the Plaintiff, and the Plaintiff's attorney informed Defense counsel that he would be filing a motion to compel Mr. Thompson's deposition which, to the best of my knowledge at this point, has still not been filed.

Mr. Myart again, this morning, informed me that he had completed the Motion to Compel, that he would not be taking Mr. Snyder's deposition today -- he informed me of this after Mr. Snyder's deposition had commenced -- and that he would be arriving at 1:30 this afternoon to take the deposition of Mr. Thompson even though we had previously informed Plaintiff's counsel that Mr. Thompson was not even in the Washington, D.C. area at this point.

So therefore, because Mr. Thompson is not available and we're not making him available today, there will be no deposition this afternoon.

And that's the end of everything I think we have to say on that.

Now Mr. Snyder's deposition is closed.

[Whereupon, at 11:47 a.m. the deposition was concluded]

**CERTIFICATE**

This is to certify that the foregoing transcript in the matter of: Stoval v USA

Deposition of Clarence Snyder

Date: Wednesday, August 22, 2007

Place: Washington, D.C.

represents the full and complete proceedings of the aforementioned matter, as reported and reduced to typewriting.

______________________________

Neal Gross