**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MICHAEL W. STOVALL** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 05-400C** |
| | ) | **(Judge F. Allegra)** |
| | ) | |
| **THE UNITED STATES OF** | ) | |
| **AMERICA** | ) | |
| | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND APPENDIX FILED IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL USA TO ANSWER INTERROGATORIES PRODUCE DOCUMENTS AND TO PRESENT CLYDE THOMPSON FOR DEPOSITION SUBPOENA DUCES TECUM AND FOR SANCTIONS AND FOR EMERGENCY RULING OR HEARING**

Comes now Plaintiff Michael Stovall and files this Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel and Appendix Filed in Opposition to Plaintiff's Motion to Compel USA to Answer Interrogatories, Produce Documents and to Present Clyde Thompson for Deposition Subpoena Duces Tecum and for Sanctions and for Emergency Ruling or Hearing ("Def's Rsp.") and would show upon the Court the following:

## PRELIMINARY STATEMENT

1. Defendant USA has been disingenuous in its legal maneuvering from the inception of this matter and, now, in resisting discovery tending to prove its breach of contract of that certain Resolution Agreement purporting to settle Mr. Stovall's discrimination case based on the USDA'S admitted discrimination against black farmers in violation of the Equal Credit Opportunity Act of 1972.

2. Plaintiff has no illusions as to the USA'S express purposes underlying its recalcitrant and damaging actions – (a) ***denying this black farmer, Michael Stovall, his day in Court, any Court*** and (b***) absolving itself from the financial liability it faces and the consequential damages due Mr. Stovall should Mr. Stovall's breach of contract claims be sustained before the honorable Court as the trier of fact and law.***

3. As below detailed, Plaintiff believes that the USA has indeed treated this case as a ***"trifling matter[1]"*** for which Plaintiff believes the USA should be severely sanctioned as allowed by law and in the discretion of the Court.

**PROCEDURAL BACKGROUND**

**A. CASE NATURE AND DISCOVERY SCHEDULE**

4. In 1998, the plaintiff, Michael W. Stovall, settled his 1993 racial discrimination claim against the United States Department of Agriculture ("USDA") for payment by the USDA of $145,000 and an agreement that the USDA would provide certain non-monetary Consideration. Such consideration is referred to in the USDA/Stovall Resolution Agreement as Programmatic Relief, such relief with value,

In January 2004, Mr. Stovall filed a complaint in the United States District Court for the District of Columbia claiming, among other things, racial discrimination under the Equal Credit Opportunity Act ("ECOA"), the Constitution, the Alabama Constitution, and

[1] **Plaintiff below invokes the Court's words as Plaintiff believes and, therefore, asserts that the USA'S blatant discovery abuses delineated in (a) Plaintiff's motion to compel, (b) the USA'S Response in Opposition and (c) herein constitute, part and parcel, the general demeanor of the USA with regard to this case, such demeanor being manifested in the discovery abuses the subject of the instant motion before the Court. See Docket # 36. FN9, PUBLISHED OPINION, to wit:**

> **"Nonetheless, having the United States take inconsistent positions before sister courts *is hardly a trifling matter,* particularly, where the integrity of the judicial system is implicated, and especially, where the case involves serious claims of racial discrimination." *(Emphasis added)***

breach of the 1998 settlement agreement. See ***Stovall v. Veneman,*** 394 F. Supp. 2d 21 (D.D.C. 2004). On January 24, 2005, the district court dismissed Mr. Stovall's discrimination claims under ECOA because they were time-barred. The district court dismissed his Constitutional claims because they were precluded by the doctrine of sovereign immunity. The district court transferred his breach-of-contract claim to this Court upon the ground that the Tucker Act vests this Court with exclusive jurisdiction to hear contract claims against the United States in excess of $10,000. Id. at 26-27. The USA, despite its argument in the district court that Plaintiff's breach of contract should be filed in this Court, filed a motion to dismiss Plaintiff's claim asserting that this Court, nor any other court, had jurisdiction to entertain Plaintiff's contract breach claim. In the action presently before this Court, Mr. Stovall alleges that the USDA breached the 1998 settlement agreement by failing to provide the non-monetary consideration, programmatic relief components of the agreement, components included in the agreement to provide Plaintiff the opportunity to re-build a successful farming operation, an operation destroyed by the USDA'S admitted racial discrimination against Plaintiff. See Affidavit of Lloyd Wright.

5. Discovery, which was extended twice at the joint request of both parties[2],

[2] **While the extensions were jointly requested, Mr. Wolak will surely confirm to the Court that said extensions were request by the USA after Counsel repeatedly requested that the USA present discovery which was nearly four months late. Mr. Wolak repeatedly responded that the USDA was not responding to his request to respond to discovery. Each time Counsel inquired about the late discovery, Counsel would repeatedly warn Mr. Wolak that the USDA was notorious for not responding timely in the black farmer cases and that Counsel would eventually have to file a motion to compel. See also FN 1-3, Plaintiff's Motion to Compel.**

**Any statements by Mr. Wolak to the contrary would be untruthful. Counsel considers Mr. Wolak an honorable person who has been placed in this untenable position by his client, the USDA and its Offices of General Counsel and Civil Rights and the Farm Service Agency.**

is scheduled to close on August 31, 2007.

**USA FALACIOUS AND DUPLICTIOUS**
**EFFORT TO DISMISS THE ACTION**

6. In the United States District Court, the USA vociferously argues that this case should be brought before the Federal Court of Claims.[3] Upon transfer of the Plaintiff's contract claim to this Court, the USA argued that this Court has no jurisdiction and, indeed, no Court has jurisdiction to entertain Mr. Stovall's claims. **See Docket #s 1, 6, 7, 11, 15, 20, 25, 29, 32, 34, and 36.**

7. The USA's duplicitous, fallacious and contrived arguments and efforts, all of which further damaged and to this day continue to damage Mr. Stovall, were put to rest by this Court's order (docket # 34) denying the USA's motion to dismiss and discussed in detail in the Court's published opinion[4] at docket # 36. FN9 in the Published

[3] ***Stovall v.Veneman,*** **394 F. Supp. 2d 21, 27 (D.D.C. 2005)**

[4] **FN9, p. 8, Published Opinion, Docket # 36.**

**In the briefs that it filed in the African-American farmer cases in the D.C. Circuit, defendant consistently argued that this court, rather than the D.C. District Court, had jurisdiction over FSA settlement agreements. Defendant claims that it has since reconsidered its position, although one must wonder how it will approach future cases in the D.C. Circuit, given the binding precedent it has helped to establish there. At least at this juncture, however, there is no occasion for the court to consider whether judicial estoppel should prevent defendant from taking a position herein inconsistent with its prior views. *See, however, Cuyahoga Metro. HousingAuth. v. United States*, 65 Fed. Cl. 534, 554-55 (2005) (indicating that the doctrine of judicial estoppel may be applied to the United States); *and compare Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 14 (1st Cir. 1999) (indicating that judicial estoppel may be invoked to prevent claims of lack of jurisdiction) *with Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004), *cert. denied*, 125 S.Ct. 2938 (2005) (indicating that such estoppel cannot be used to confer absent jurisdiction); *see generally, Zedner v. United States*, 126 S.Ct. 1976, 1987 (2006) (describing the concept of judicial estoppel). Nor is there any basis for imposing sanctions here, *see* RCFC 11, although the court believes that defendant's argument overreads *Kania*. Nonetheless, having the United States take inconsistent positions before sister**

Opinion may be instructive here. These specious and contrived efforts had the net effect of (a) delaying the case by at least a full year and (b) prolonging Mr. Stovall's injuries and damages resulting from the blatant breach of contract the subject of this action.

8. It appears that the Court may have contemplated ordering sanctions against the USA for its duplicitous arguments but chose at that time not to issue sanctions. See Published Opinion, docket # 36. This point further addressed in Plaintiff's prayer to the Court.

**USA REPUGNANT, DILATORY AND SANCTIONABLE ACTIONS IN RESISTING DISCOVERY: PLAINTIFF'S REPLY**

9. In its Published Opinion, the Court stated, ***"This court will not paint the lily.*** **For the reasons previously stated, defendant's motion to dismiss must be denied."** ***(Emphasis added)*** Docket # 36, Published Opinion

10. Likewise, Plaintiff "***will not paint the lily"*** in replying to the USA'S response ("Def's Rsp.) to Plaintiff's motion to compel.

**ARGUMENT AND AUTHORITIES**

11. For the USA to contend to this Court that Plaintiff has "***an erroneous understanding of what has transpired in this case"*** is simply ridiculous and enraging.

---

**courts is hardly a trifling matter, particularly, where the integrity of the judicial system is implicated, and especially, where the case involves serious claims of racial discrimination.**

Moreover, this kind of lawyering[5] and positioning (a) points directly to the USA'S continuing, disgusting and disingenuous efforts in this matter and (b) underlies the Plaintiff's complete frustration with the USDA/USA in the defendant's not so subtle efforts to thwart the judicial process and this Plaintiff, same being manifested in outright violations of and blatant disregard for the discovery rules.

12. In USA'S first very telling salvo against Plaintiff, USA states,

> **"As we demonstrate below, the plaintiff's motion is based upon *an erroneous understanding of what has transpired in this case*, is without merit, and should be denied." *(Emphasis added)***

Def's Rsp. P.1

Since 1998, nearly seven (7) years, Plaintiff has painstakingly attempted to present his claims, administratively and judicially, against and be compensated his foreseeable consequential damages by the USDA, and then the USA, as a result of the USA/USDA'S[6] blatant breach of contract resulting in such foreseeable and consequential

---

**[5] Counsel does not fault any lawyer for being a zealous advocate for his client. The lawyer is so bound. On the other hand, every lawyer is bound by ethics and his oath to comply with the rules to insure orderly conduct in the judicial process toward adjudication of the dispute. Defendant's lawyer, Plaintiff asserts, has been in violation of the lawyer's oath throughout this entire case and is presently in violation of ethics and the lawyer's oath by filing such a pleading with such outlandish argument and statement(s). Other examples will be forthcoming herein.**

**[6] Plaintiff employs the phrase "USA/USDA" in this context in order that the Court is aware that Plaintiff contends that the beach of the "Stovall/USDA Resolution Agreement," the contract the subject of this action,**

> **(a) occurred within months of the settlement {dated February, 27, 1998} of his ECOA racial discrimination claims;**
>
> **(b) an administrative claim was filed with the USDA for breach of the contract;**
>
> **(c) a new racial discrimination complaint was also filed in 1998 with the USDA Office of Civil Rights asserting that the breach of contract and the implementation of the contract (settlement agreement) constituted continued racial discrimination;**
>
> **(d) a civil action containing the breach of contract claim was filed in the US District Court ("USDC"), *Stovall v.Veneman,* 1:04-cv-00319-RMC, Rosemary M. Collyer, presiding; and,**

damages.

13. The USA devotes the next eight (8) pages of its response attempting to explain to the Court the discussions and efforts between the parties to complete written discovery and to schedule depositions. The Court should note that all the USA'S explanations are in regard to **(a)** the USA'S woefully late discovery and inadequate responses being persistently and constantly demanded, via phone conversations and e-mail by Counsel for Plaintiff *(See Plaintiff's Motion to Compel,* ¶¶ *1-3 p. 1-3)* and **(b)** the discovery schedule finally agreed to by the parties on August 10, 2007, *(See Plaintiff's Motion to Compel, p. 5)*. The USA/USDA[7]'S barrage of personal statements on these pages simply show its outrageous conduct in not cooperating and being forthcoming in the discovery process.

14. It is not until page 5 of Def's Rsp. does the USA finally admit that it **agreed to a certain deposition schedule and agreed to produce those witnesses** at the times agreed to by Counsels and so scheduled. See Def. Rsp. P. 5 as follows:

> **Defendant's counsel then informed Mr. Myart that, if he did not produce the letters in advance of Mr. Thompson's deposition, and if Mr. Thompson was, in fact, not involved in Mr. Stovall's case, Mr. Thompson would not be produced for his deposition. With those**

---

**(e) the breach of claim was transferred from the USDC to the Federal Court of Claims. *Stovall v.Veneman,* 394 F. Supp. 2d 21, 27 (D.D.C. 2005)**

[7] **Mr. Wolak and Counsel would speak, it seems, weekly, and then daily, over the prior four months about the USDA's non-delivery of the discovery and Counsel's request to take depositions of certain individuals. Mr. Wolak would continually say that the USDA'S agency counsel was not responding to his multiple e-mail requests for the discovery and his multiple requests for deposition availability dates of the USDA employees Counsel noticed him in four separate amended Rule 26(a) disclosure filings. Counsel, over and over, during these conversations and e-mails warned Mr. Wolak that "the handwriting was on the wall," meaning a motion to compel was going to have to be filed despite Counsel's reluctance to so file.**

**Again, Counsel asserts that Mr. Wolak will surely verify the truthfulness of Counsel's statements if asked by the Court to do so.**

> **conditions, the parties agreed upon the following deposition schedule in late July, 2007: (1) Mr. Clyde Thompson, on the afternoon of August 22, 2007; (2) Ms. Carolyn Cooksie, Deputy Administrator for FSA Farm Loan Programs, on the morning of August 23, 2007, and (2) Mr. John Toles, Director, Office of Civil Rights, Farm Service Agency, on the afternoon of August 23, 2007. Defendant's counsel informed Mr. Myart that Mr. Thompson agreed to this schedule even though he was planning a vacation that week.**

15. Counsel emphatically denies that he agreed to the deposition schedule with any reservations or conditions as to Mr. Thompson's appearance.

16. Counsel, deeply concerned that the USA/USDA would pull a last minute or eleventh hour maneuver to disrupt Counsel's preparation fro the scheduled depositions, sent the hard copy of the deposition notices, including the notice for Mr. Sam Snyder, to the USA on August 10, 2007. The notices apparently arrived on August 21, 2007 the day before the depositions were to commence. The fact is the USA agreed to voluntarily produce all the named witnesses before August 3, 2007 and after at least two months of waiting for the USA/USDA to give Counsel the available deposition dates for the witnesses. Just getting the dates was laborious and frustrating.

17. Now, the USA is arguing and raising for the first time that the notices are procedurally defective and void, a maneuver that is appropriately raised in a motion to quash and/or motion for protective order. Neither was filed by the USA. See Def's Rsp. P10-13. These arguments have been waived.

18. The remaining pages of the USA'S response is devoted to explaining Mr. Thompson should not be required to be deposed, even though the USA agreed to produce him, and why it did not answer certain interrogatories and produce certain documents, none of which is persuasive as all the questions and the production requests are allowable

discovery requests as they contain evidence relevant to the instant action.

19. The USA argues that Mr. Thompson somehow does not remember his direct involvement in the Stovall matter even though evidence suggests here and in other cases that Mr. Thompson was so involved that he may have advised Mr. Stovall and other black farmers with similar breach complaints to terminate their Counsel in return for resolving their complaints. For the USA to now say Mr. Thompson is too busy to give testimony in matters of which he has direct knowledge is disingenuous and perhaps even dishonest.

20. In its response, the USA also raises for the first time what appears to be a complaint regarding Plaintiffs responses to the USA'S discovery request as follows:

> **In stark contrast, the responses provided by the plaintiff to our interrogatories were spartan, unresponsive, and contumacious in that Mr. Myart refused to answer a vast majority of the narrowly tailored interrogatories. As mentioned before, Mr. Myart merely cited defendant's production as his sources of documents for the majority of defendant's document requests and did not indicate whether he withheld any documents for privilege.**

Def. Rsp. P.19

21 Counsel can only assume that since the USA has not one time lodged a verbal or written complaint or filed a motion to compel on this point prior to the present dispute, the only reasonable purpose for the inclusion of this paragraph is to somehow convince the Court to conclude that the USA is saying, "Don't sanction us because they have not co-operated with the discovery process either." If this is the motive underlying the USA'S inclusion of this paragraph, it, too, is another example of how the USA has been disingenuous in this matter.

22. The Rules of this Court, Rule 37, Failure to Make Disclosure or Cooperate in Discovery; Sanctions, authorizes this Court to compel discovery and to impose myriad of

sanctions on a recalcitrant party. The rule in applicable parts provide, to wit:

**(A) If a party fails to make a disclosure required by RCFC 26(a), any other party may move to compel disclosure and for appropriate sanctions. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.**

**(B) If a deponent fails to answer a question propounded or submitted under entity fails to make a designation under RCFC 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under RCFC 33, or if a party, in response to a request for inspection submitted under RCFC 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order.**

**(3) Evasive or Incomplete Disclosure, Answer, or Response.**
**For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.**

**(4) Expenses and Sanctions.**

**(A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.**

**(d) Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.**

**If a party or an officer, director, or managing agent of a party or a person designated under RCFC 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to 46 appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under RCFC 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under RCFC 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. Any motion specifying a failure under clause (2) or (3) of this subdivision shall include a certification that the movant has in good faith conferred or attempted to confer with the party failing to answer or respond in an effort to obtain such answer or response without court action. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by RCFC 26(c).**

23. The USA has willfully and intentionally violated each of the above cited provisions of Rule 37 by failing to fully, completely and honestly answer Interrogatory # 7, refusing to produce requested documents, the settlement agreements of certain black farmers who have complained of breach of contract, the agreements themselves and to produce Mr. Sam Synder and Mr. Clyde Thompson at the times noticed and agreed by the parties.

24. The USA further violated the rule by presenting Ms. Carolyn Cooksie for her deposition subpoena duces tecum without a single document, that in spite of the warning on the notice itself that failure to produce any document would be cause for a contempt motion. Indeed, Ms. Cooksie testified that she had never even seen the deposition notice duces tecum and that her attorney had not shown it to her.

25. Plaintiff for the reasons above delineated respectfully request the Court revisit, in light of the present discovery dispute and contemptible actions of the USA, issuing severe sanctions against the USA for its continued duplicitous actions, such actions being manifested in the present discovery dispute.

26. Plaintiff asserts that the USA's refusal in discovery, the subject of the instant motion, is a mere laches loaded and continuing effort to deny Mr. Stovall the right to proceed in this action and to prove the USA'S breach of his contract, consequential damages for which were foreseeable and perhaps even intended by the USA officials at the USDA.

27. Plaintiff prays the Court consider all the sanctions available to it pursuant to Rule 37 up to and including dismissal of the USA'S articulate defenses as well as impose financial sanctions in the amount of at least $6000 for reasonable attorneys fees and costs inclusive of all request made in Plaintiff's original motion to compel.

28. Counsel certifies here that he exercised more than due diligence in

conferring with Mr. Wolak in attempting to get the USA to comply timely and substantively with this Court's discovery rules. It was jus not to be.

Respectfully submitted,

James W. Myart, Jr., P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9561
Fax: (210) 533-4815

By:/s/________________________
James W. Myart, Jr.
D. C. Bar No. TX 0021
Attorney for Plaintiff

DATE: August 26, 2007

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument was served upon Mr. Devin Wolak via facsimile transmission and/or e-mail and/or first class mail on this 36th day of August, 2007.

/s/____________________________

James W. Myart, Jr.