February 14, 1996, discrimination complaint, of which Mr. Grant knows and reasonably should know.

7. To waive and release any and all claims or complaints of any kind arising out of the events between the years 1996 through 1998 that were the subject of the complainant's February 14, 1996, discrimination complaint with USDA, against USDA, the United States of America, any other agency of the United States of America, or any officer, employee, or agent of USDA or of the United States of America, in either his or her official or individual capacity.

**BOTH PARTIES AGREE:**

8. That this settlement is subject to review by DOJ. Upon review of this agreement, DOJ may determine that DOJ approval of the agreement is required. In the event that DOJ does not approve this agreement, neither party is under any obligation to carry out the terms of the agreement and Mr. Grant may have reinstated the complaint that is the subject of the agreement.

9. That this settlement is only a settlement of Mr. Grant's claims for relief for the years 1996 through 1998 that were raised in Mr. Grant's February 14, 1996, discrimination complaint. The parties further agree that this agreement does not waive Mr. Grant's right to file an action for compensatory damages against USDA as to events between the years 1972 through 1995 that were the subject of his February 14, 1996, discrimination complaint. Accordingly, USDA agrees that it will not use this agreement to defend such an action by Mr. Grant concerning the events between the years 1972 through 1995 that were the subject of his February 14, 1996, discrimination complaint; however, USDA reserves the right to raise any and all other affirmative defenses available to it in such a court action against USDA, the United States of America, any other agency of the United States of America, or any officer, employee, or agent of USDA or of the United States of America, in either his or her official or individual capacity. Mr. Grant agrees that he cannot recover any damages resulting from events between the years 1996 through 1998 that were the subject of his February 14, 1996, discrimination complaint. This paragraph is intended only to reserve Mr. Grant's right to file an action for compensatory damages against USDA for events between the years 1972 and 1995 that were the subject of his February 14, 1996, discrimination complaint. Nothing in this paragraph may be construed to reserve Mr. Grant's right to file an action for compensatory damages against any officer, employee, or agent of USDA or of the United States of America, in either his or her official or individual capacity.

10. That the purpose of the programmatic relief set forth in paragraph 3 of this agreement

LAW OFFICES OF
*JAMES W. MYART, JR., & ASSOCIATES*
306 PRESTON AVENUE
SAN ANTONIO, TEXAS 78210
(210) 532-6168

FAX (210) 533-7526 1-888-99 MYART (69278)

**"SPECIALIZING IN THE RIGHTS OF OTHERS"**

March 4, 1998

Mr. Lloyd Wright
Director, Office of Civil Rights
14th and Independence Ave.
Washington, D.C. 20015

RE: Dexter and Phillis Davis Settlement (s): Attorney Objection to DOJ Approval Authority

Dear Mr. Wright:

This is to serve notice upon the United States Department of Agriculture that Mr. and Mrs. Dexter Davis that each, individually, objects to the right of the Department of Justice to review and or approve or disapprove any term of the agreement reached between them and the Department of Agriculture in resolution of their claim of discrimination.

This letter is to be attached to the agreement, dated this date.

PLEASE SIGN ON THE SPACE BELOW PROVIDED AS ACKNOWLEDGMENT OF YOUR RECEIPT OF THIS LETTER AND ITS ATTACHMENT TO THE AGREEMENTS FOR EACH INDIVIDUAL.

Thank you.

Sincerely yours,

James W. Myart, Jr.

Date March 4, 1998

Mr. Lloyd Wright, Director, CR

COPY

# UNITED STATES DEPARTMENT OF AGRICULTURE

## FINAL RESOLUTION AGREEMENT – Richard Grant

This agreement is by and between the complainant, Richard Grant, and the United States Department of Agriculture (USDA). Richard Grant is represented by attorney James W. Myart, Jr. of 306 Preston Avenue, San Antonio, Texas 78210. This agreement constitutes a full, complete, and final settlement of all claims for relief for the years 1996 through 1998 raised in Mr. Grant's February 14, 1996, discrimination complaint submitted to USDA. This agreement is authorized by civil rights statutes and USDA regulations.

The parties wish to set forth the terms of the agreement in writing. The agreement is entered into for the purpose of resolving Mr. Grant's discrimination claims for relief in a mutually acceptable voluntary agreement. The Farm Service Agency (FSA) reserves the right to follow-up on any information developed as a result of the complaint and to take corrective action concerning FSA employees or policies as appropriate. This agreement is intended as the final resolution agreement entered into by the parties and sets forth specifically the settlement terms reached on February 24, 1998. The February 24, 1998, document signed by all the parties constituted a general statement of settlement between the parties and is intended to be superceded by this agreement.

**USDA AGREES:**

1. To pay Mr. Grant the sum of $162,000 in compensatory damages. A check in the amount payable to Mr. Grant and James W. Myart, Jr. of 306 Preston Avenue, San Antonio, Texas 78210, will be issued as soon as practicable but no later than 30 calender days after this agreement has been signed by all parties, reviewed by the Department of Justice (DOJ), and, if DOJ approval is required, approved by DOJ.

2. To pay all of Mr. Grant's unpaid outstanding debt owed to FSA. USDA and FSA will forever discharge and hold harmless the complainant from liability for such debt. This discharge will be executed, to the extent permissible under the law, so as to make it a tax-free transaction. This loan discharge will be completed as soon as practicable but no later than 15 calendar days after this agreement has been signed by all parties. The discharge of all debt to USDA will not be used by USDA or FSA in any negative manner in conjunction with Mr. Grant's application for, or participation in, any USDA or FSA

program, benefit, or activity.

3. To provide Mr. Grant with programmatic relief as follows:

a. USDA will convey to Mr. Grant any property previously owned by him that is now in USDA inventory property. Mr. Grant will be given free and clear title to such land with no liens or encumbrances held by USDA. As to the property that was the subject of a foreclosure sale in November 1996, the sale of which has never been completed by the highest bidder, bidding on behalf of Gary Grant, this property shall be conveyed to Richard Grant. Mr. Grant will be given free and clear title to such land with no liens or encumbrances held by USDA.

b. USDA will release all liens held by USDA on property currently owned by Mr. Grant such that the property will be free from all liens or encumbrances held by USDA.

c. Mr. Grant will be given priority consideration on one farm ownership loan at his election. Such election must be made within the next five years. The term "priority consideration" as used in this agreement means that an application will be given first priority as to processing and as to the availability of funds available for the type of loan at issue. At the time of making such election, Mr. Grant must notify FSA that he is exercising his right under this agreement to receive priority consideration on his application, but he must make this election within five years after the date this agreement has been signed by all parties.

d. Mr. Grant will be given priority consideration on any direct farm operating loan he applies for in a maximum of three separate years; however, no priority consideration will be provided to Mr. Grant on any application for a farm operating loan five years after the date this agreement has been signed by all parties. At the time of making such election, Mr. Grant must notify FSA that he is exercising his right under this agreement to receive priority consideration on his application, but he must make this election within five years after the date this agreement has been signed by all parties.

e. If a private lending institution approves Mr. Grant for a farm loan, USDA will process any application for a guaranteed loan from USDA in a manner most favorable to Mr. Grant.

f. Any application for a farm operating loan submitted by Mr. Grant within five years after this settlement agreement has been signed by all parties (not just those applications in which he seeks priority consideration) will be viewed in a light most favorable to Mr. Grant, and the amount and terms of the loan will be the most favorable under the law so long as this is consistent with the applicable statutes. In making a determination on such a loan application, FSA will not take

into account the sum paid under paragraph 1 of this agreement. Mr. Grant will have to meet eligibility requirements for either the direct or guaranteed ownership or operating loans as set forth in 7 C.F.R. §§ 1941 and 1943.

g. Mr. Grant will be given priority consideration for the purchase, lease, or other acquisition of any inventory property from USDA at the best purchase price for Mr. Grant available under the law. The term "priority consideration" in this paragraph means that Mr. Grant's application for inventory property will be given first priority above all other applicants listed in 7 C.F.R. § 1955.107(f)(1).

h. In conjunction with any application for a farm ownership or operating loan or inventory property, the national office of FSA will provide or obtain reasonable technical assistance for Mr. Grant in submitting such application, including the preparation of a farm and home plan.

i. Final approval or disapproval of any application for a USDA loan will be completed under the auspices of the national office of FSA. In addition, the national office of FSA will monitor all assistance provided to Mr. Grant for the next five years.

j. The Office of Civil Rights will monitor FSA's compliance with the programmatic remedies set forth in this section.

4. To pay reasonable attorney fees and costs upon submission of a bill of particulars. A check in the amount determined, payable to James W. Myart, Jr. of San Antonio, Texas, will be issued as soon as practicable, but no later than 30 calendar days after such submission.

**MR. GRANT AGREES:**

5. That this settlement agreement constitutes a withdrawal of his February 14, 1996, program discrimination complaint with USDA and that he will not file any new administrative complaint relating to the issues involved in this complaint that have been resolved through this settlement agreement, specifically his claims for relief for the years 1996 through 1998.

6. To accept the above payment of compensatory damages and other relief set forth above as a full, final, and complete settlement of all claims for relief for the years 1996 through 1998 that were raised in his February 14, 1996, discrimination complaint with USDA. This settlement is also in complete and full satisfaction of any and all claims Mr. Grant may have against USDA based on facts occurring prior to the date of this agreement, except for those events between the years 1972 and 1995 that were raised in Mr. Grant's

is to provide Mr. Grant the ability to efficiently and quickly reestablish himself as a full-time farmer. Therefore, USDA shall administer such programmatic relief so as to ensure that Mr. Grant is given a full opportunity, and provided with adequate technical assistance, to so reestablish himself.

11. To respect the privacy rights of Mr. Grant and all other individuals involved in this matter. The fact that the matter was voluntarily resolved in a manner acceptable to both sides may be communicated by either party to any person. However, except as otherwise required by law, the explicit terms of this agreement will not be disclosed by either party, without the express permission and consent of the other party, to any person not a party except as necessary for that party to perform official government duties, to implement the agreement, or to defend themselves against any claim or cause of action.

12. That this matter is resolved through this settlement agreement. If the terms of this agreement are not carried out (other than a result of actions by Mr. Grant), Mr. Grant may request specific enforcement of the terms or reinstatement of his complaints by writing to the Director, Office of Civil Rights, USDA, Room 326-W, Washington, D.C., 20250. This request should be filed as soon as practicable but no later than 60 days of the date Mr. Grant knows or reasonably should have known of the alleged failure to implement the agreement.

13. See attachment, marked Exhibit A, and same is incorporated herein as set forth verbatim.

March 2, 1998

Lloyd E. Wright, Director
Office of Civil Rights

Richard Grant
Complainant

March 5, 1998

James W. Myart, Jr.
Attorney for the Complainant

# AFFIDAVIT

I, Richard D. Grant, being beyond the age of majority, emancipated, and of sound mind and body, hereby state for this and all other purposes that I am not a member of the perspective putative class action captioned under the name of Timothy Pigford and/or in the intervening action by Clinton R. Martin, as a perspective putative class representative.

And further, that I do not wish to be considered a part of the above class actions in light of the settlement agreement I have reached with the Department of Agriculture and have signed herewith.

__________________________ DATE ____________________

Richard Grant

__________________________

WITNESS

__________________________

WITNESS

# EXHIBIT 6

## USDA FINAL DECISION MATTHEW GRANT, OMITTED DISCRIMINATION CONFIRMED

SEE OCR FILES FOR DOCUMENT

# EXHIBIT 7

## USDA FINAL DECISION RICHARD GRANT, OMITTED DISCRIMINATION CONFIRMED

SEE OCR FILES FOR DOCUMENT

LAW OFFICES OF
**JAMES W. MYART, JR. & ASSOCIATES**
306 PRESTON AVENUE
SAN ANTONIO, TEXAS 78210
(210) 533-9461
FAX: (210) 533-4815
e-mail: Jwmyart@aol.com

**"SPECIALIZING IN THE RIGHTS OF OTHERS"**

**June 21, 2002**

# ADDENDUM

**Hon. Ann Veneman**
**Secretary, USDA**
**c/o Mr. Dale Moore, Chief of Staff**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMRRR**
**(202) 690-2119**

**Mr. Lou Gallegos, USDA**
**Assistant Secretary for Administration**
**c/o Mr. Joe McNeil, Confidential Assistant**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMRRR**
**(202) 720-2191**

**Ms. Nancy Bryson, USDA**
**General Counsel**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMRRR**
**(202) 720-8666**

**Mr. David Winningham**
**Director, Office of Civil Rights**
**US Department of Agriculture**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMMRRR**
**(202) 205-2891**

**RE: DAVIS, GRANT and COATS: Request to meet with appropriate USDA Authorities; Attempt to Avoid Unnecessary Litigation: <u>ADDENDUM TO JUNE 19, 2002 LETTER</u>**

**Dear USDA Officials:**

Please accept this as an addendum to my June 19, 2002 correspondence. Accordingly,

please insert the following as below indicated:

Page 6, at end of Paragraph 3, should state:

Additionally, there were several other USDA officials involved in the Davis, Grant(s) and Coates Resolution Agreements who should be contacted by OCR and Ms. Leland to determine the intent and meaning of paragraph # 9. They include the following:

(1) **Judge Henry Ramsey**, Independent legal, civil rights consultant retained by former Secretary Dan Glickman. Judge Ramsey, not a USDA employee, was intricately involved in the drafting of the Resolution Agreements and the settlement negotiations. Phone # (501) 549-0582.

(2) **John Sparks**, Special Assistant to the Secretary for Civil Rights. He has personal knowledge of all facts and circumstances attendant to the questioned Resolutions Agreements. Whereabouts unknown at this time.

(3) **Maureen O'Brien**, Assistant General Counsel, Office of Associate General Counsel for Civil Rights. Legal counsel for USDA that helped to draft questioned Resolution Agreements and who sat at negotiations table the during the entire settlement conference in each of the referenced cases. Whereabouts unknown at this time.

(4) **Ron Walkow**, Assistant General Counsel, Office of Associate General Counsel for Civil Rights. Legal counsel for USDA that helped to draft questioned Resolution Agreements and who sat at negotiations table the during the entire settlement conference in each of the referenced cases. Whereabouts unknown at this time.

Again, for the present USDA officials with the delegated legal authority to settle these cases not to contact the above-named former USDA officials would indicate, unequivocally, the USDA's intent on not seeking the truth and providing a remedy to the complainants pursuant to the law. In such an event, the complainants will be forced, needlessly, to file a federal lawsuit in the court of the Honorable Paul Friedman seeking a Declaratory Judgment since the only issue will be damages. Special request will be made to Judge Friedman to accept said law suit based on the similarities to ***Williams v. Veneman (Glickman), Pigford, et. al., v. Veneman (Glickman),and Brewington et. al. v. Veneman (Glickman)*** The complainants will seek further legally allowable damages for USDA to follow its' deal.

**TEXANS hold to a simple principle: A DEAL IS A DEAL!**

LAW OFFICES OF
**JAMES W. MYART, JR. & ASSOCIATES**
306 Preston Avenue
San Antonio, Texas 78210
(210) 533-9461
Fax: (210) 533-4815
**e-mail: Jwmyart@aol.com**

**"SPECIALIZING IN THE RIGHTS OF OTHERS"**

***TEXANS ADHERE TO A SIMPLE PRINCIPLE:***
***"A DEAL IS A DEAL"***

**June 24, 2002**

**Hon. Ann Veneman**
**Secretary, USDA**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMRRR**
**(202) 720-2166**

**Re: Last Request to Meet: Davis, Grant(s) and Coates; Week of July 8, 2002 or July 15, 2002 to discuss and complete Administrative Partial Settlements in stated Administrative Cases; Attempt to Avoid Unnecessary Litigation**

Dear Secretary Veneman:

Please find the June 21, 2002 legal opinion issued by the DC Appeals Court in ***Pigford et. al., v. Veneman*** . It is apparent that the court is not happy with the USDA nor the black farmers' class counsel - **"DUAL BETRAYAL"**. Even though the opinion sustains the USDA's points of error on appeal, it is not a flattering opinion for the USDA in the least. The opinion will surely spurn many more unnecessary law suits against you in your official capacity as Secretary of Agriculture and subject the Bush Administration to Congressional and public criticism.

The opinion buttresses and parallels what I have attempted to communicate, to absolutely no avail[1] , with Mr. Dale Moore, Chief of Staff, Mr. Lou Gallegos, Assistant Secretary For Administration, Mr. David Winningham, Director, OCR, Ms. Nancy Bryson, USDA General

---

[1] **I have sent numerous letters and made several hundred phone calls to the named officials requesting a simple meeting to discuss the four cases. I have not received returned phone calls, merely a simple, professional courtesy, nor have I even received a justifiable reason for the declinations to meet. Even calls to your Chief of Staff, Mr. Moore, and the USDA Genral Counsel, Nancy Bryson, have been summarily and rudely ignored.**

Counsel, and Ms. Arlean Leland, Associate Genral Counsel for Civil Rights. I have attempted, which much humility, and sometimes frustration, to prove to your top officials that their legal position on these four cases is just plain wrong and mean, certainly not **"kind or gentle."** All I have gotten in return is insult and being dismissed as an irrelevant, black, country, Texas lawyer trying to represent his clients as competently and intelligently as is humanly possible.

Secretary Veneman, I beseech you to grant me an audience before you, (with your General Counsel and any other USDA official you deem appropriate), to calmly and methodically layout my legal position on these **four administrative (not judicial actions as required under Chapter 7 of the Code of Federal Regulations), matters** during the week of July 8, 2002 or July 15, 2002.

Thank you for your favorable consideration of this request.

With every good wish, I remain

Sincerely yours,

/S/

James W. Myart, Jr.
Attorney for Administrative
Complainants

**c: Mr. Grant, Mr. Coates and Mr. Davis via regular mail**
**Mr. Andrew Card, Chief of Staff to the President (202) 456-1907**
**Mr. Albert Gonzalez, General Counsel to the President (202) 456-6279**
**Office of the General Counsel to the President of the United States**
**Mr. Dylan Glenn, Special Assistant to the President for Economic Policy (202) 456-2223**
**Senator Richard Lugar, M.C., c/o Ms. Carol Dubard, Senate Ag. Committee (202) 224-2682**
**Rep. Charles Stenholm, Minority Leader, House Agriculture Committee**
**Rep. J. C. Watts, M.C., House Agriculture Committee (202) 225-3512**
**Rep. Eva Clayton, M.C., House Agriculture Committee**
**Rep. Bennie Thompson, M.C., House Agriculture Committee**
**Rep. Cynthia McKinney, M.C.**
**Rep. Eddie Bernice Johnson, M.C.**

**Drew DeBerry, USDA White House Liaison (202) 720-9286**
**Ms. Angela Sailor, Associate Director, Office of Presidential Public Liaison**
**Ms. Josephine Robinson, Associate Director, Office of Presidential Public Liaison**
**Mr. Dale Moore, USDA Chief of Staff (202) 690-2119**
**Mr. Perlie Reed, Administrator, USDA, NRCS (301) 504-2174**
**Ms. Arlene Leland, USDA Associate General Counsel for Civil Rights (202) 720-1785**
**Mr. Lloyd Wright, former Director, USDA Office of Civil Rights (301) 691-3260**
**File**

USDA

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

In the Matter of Dexter Davis,
Complainant

and

U.S. Department of Agriculture

---

**DESIGNATION OF REPRESENTATIVE AND DELEGATION OF AUTHORITY**

The U.S. Department of Agriculture hereby gives notice that Farook Sait, Special Assistant to the Director, Office of Civil Rights, U.S. Department of Agriculture and Ronald Walkow, Attorney-Advisor, Civil Rights Division, Office of the General Counsel, have been delegated the responsibility to negotiate on behalf of the Director, Office of Civil Rights, in the above-referenced matter. This delegation shall remain in effect until such time as it is revoked in writing to all parties participating in the negotiations.

[signature]
David Winningham
Director
Office of Civil Rights

JUL 10 2002
Date

USDA

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

1400 Independence
Avenue SW

Washington, DC
20250-0103

July 22, 2002

**VIA FIRST-CLASS MAIL AND FACSIMILE AT (202) 638-6740**

James W. Myart, Jr., Esquire
306 Preston Avenue
San Antonio, Texas 78210

Dear Mr. Myart:

This letter follows up on our recent conversations and meetings, and responds to your letters, regarding a possible settlement of the outstanding complaints of your client, Dexter Davis. Specifically, you requested that the Department of Agriculture (USDA) enter into settlement negotiations on Mr. Davis' outstanding complaints. For the reasons set forth below, USDA is declining to enter into such settlement negotiations on Mr. Davis' complaints.

One of Mr. Davis' complaints, Docket No. 64, is docketed under the Office of Civil Rights (CR) Statute of Limitations (SOL) process. This concerns Mr. Davis' allegations arising from events during the years 1988 to 1994. On or about September 28, 2001, CR accepted an additional complaint, CRCTS No. 1151802, in which Mr. Davis alleged that the Farm Service Agency (FSA) discriminated against him based on race and reprisal with regard to events that occurred in 2001. This complaint has been processed under CR's standard complaint process since it is not eligible under the SOL process.

With regard to the SOL eligible complaint, on October 21, 1998, Congress enacted Section 741 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999, enacted in Division A section 101 (a) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105-277. In that legislation, Congress waived the applicable statute of limitations for a limited period. The legislation applies to any person who filed a nonemployment-related discrimination complaint with USDA before July 1, 1997, that alleged discrimination by USDA at any time between January 1, 1981, and December 31, 1996, either: (1) in violation of the Equal Credit Opportunity Act (15 U.S.C. § 1691, *et seq.*) with respect to the administration of a farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account, or with respect to a housing program established under Title V of the Housing Act of 1949; or (2) in the administration of a commodity program or a disaster assistance program.

As you know, there are two options for pursuing a Statute of Limitations claim: a hearing before an administrative law judge (ALJ) or a review by the Director of CR to determine if an informal resolution is appropriate. Mr. Davis' complaint was previously reviewed by the Director, CR, and by letter dated May 24, 2001 from David Winningham, Acting Director, CR, Mr. Davis, through his then attorney Phillip Fraas, was notified that his complaint was not appropriate for settlement and he was provided with his right to seek an ALJ hearing. Although Mr. Davis then requested an ALJ hearing, his request for a hearing was withdrawn by you by letter dated July 5, 2002. Specifically, you wrote that the complaints be "immediately removed from the administrative law judge venue and returned to the OFFICE OF CIVIL RIGHTS, THE PROPER AND ONLY VENUE WITH JURISDICTION, PURSUANT TO THE LAW AND APPLICABLE CFRs." (Emphasis in original).

Even though CR previously notified Mr. Davis that his case was not appropriate for resolution, pursuant to your requests, USDA conducted a fresh review of Mr. Davis' allegations concerning the years 1988-1995. After conducting a very thorough review, we have again determined that Mr. Davis' case is not appropriate for informal resolution under the SOL process. Enclosed please find a copy of the applicable regulations which set forth Mr. Davis' rights under the Statute of Limitations process. Mr. Davis may again exercise his right to elect an ALJ hearing on his complaint.

With regard to Mr. Davis' newer complaint alleging discrimination and retaliation, we have also conducted a review of this complaint (expedited at your request), based on a thorough investigation. Based on our review of this file, we have determined that it is not appropriate to enter into settlement negotiations on this complaint. However, CR will continue to give this complaint a complete and thorough review under its standard procedures, and will issue a final determination on this complaint no later than Friday, August 2, 2002.

For these reasons, we regret that USDA will not enter into settlement negotiations on any of Mr. Davis' pending complaints.

Sincerely,

Clyde Thompson

Clyde Thompson
Associate Assistant Secretary for Administration

Enclosure

number assigned to your Section 741 Complaint Request. When the Docketing Clerk receives your request for a hearing, your Section 741 Complaint Request will be assigned to an ALJ. The Docketing Clerk will send a notice of your hearing request to OCR and the agency, notifying them of the docket number and the assigned ALJ. The Docketing Clerk also will send you a notice of receipt of the hearing request that will inform you of the name of the assigned ALJ.

ß15f.12 Am I entitled to a hearing in all circumstances?

Under section 741, you have a right to a hearing as part of the process for USDA to render a final determination on your eligible complaint. However, if at any time the ALJ determines that your complaint is not an eligible complaint, he or she may dismiss your complaint with a final determination and USDA review of your complaint will then have been completed. You also are not entitled to a hearing if there are no material issues of fact in dispute between you and USDA. In other words, if the only dispute remaining is a question of law, you will not receive a hearing and the ALJ will make a final determination under ß15f.16.

ß15f.13 What is the function of the ALJ and who may communicate with him?

(a) What are the powers of the ALJ? The ALJ is responsible for conducting a hearing at your request on your Section 741 Complaint Request. He or she will have all powers prescribed in these rules and will make a proposed determination on your complaint. The proposed determination then will become the final determination after 35 days, unless the ASA reviews the proposed determination.

(b) What is an ex parte communication? An ex parte communication is a communication by one party to a proceeding with the ALJ outside of the presence of, or without notice to, the other parties to a proceeding. Ex parte communications in the proceedings on your complaint are prohibited and will be handled as follows:

(1) The ALJ will not engage in ex parte communications regarding the merits of a complaint with any party or with any person having any interest in the proceedings on the complaint, including OCR and any person in an advocacy or investigative capacity, at any time between the assignment of a hearing to him or her and the issuance of a proposed determination. This prohibition does not apply to:

(i) Discussions of procedural matters related to the complaint; or

(ii) Discussions of the merits of the complaint where all parties to the proceeding on the complaint have been given notice and an opportunity to participate.

(2) In the case of a communication described in paragraph (b)(1)(ii) of this section, a memorandum of any such discussion shall be included in the hearing record.

(3) No party to the proceeding or other interested person shall make or knowingly cause to be made to the ALJ an ex parte communication relevant to the merits of the complaint.

(4) If the ALJ receives an ex parte communication in violation of this section, the ALJ will place in the written record:

(i) All such written communications;

(ii) Memoranda stating the substance of all such oral communications; and

(iii) All written responses to such communications, and memoranda stating the substance of any oral responses to such communications.

(c) Upon receipt of a communication knowingly made or knowingly caused to be made by a party in violation of this section the ALJ may, to the extent consistent with the interests of justice and the policy underlying these proceedings, require the party or other interested person making the communication to show cause why such party's claim or interest in the complaint should not be dismissed, denied, disregarded, or otherwise adversely affected on account of such violation.

ß15f.14 What happens after I file a request for a hearing?

Within 20 days after you have filed your request for a hearing, ALJ shall file with the Docketing Clerk a notice stating the time, place, and manner of the hearing. The ALJ will have due regard for the public interest and the convenience and necessity of the parties in determining the time, place, and manner of the hearing. The notice will state whether the hearing will be conducted by telephone, audiovisual telecommunication, or personal attendance of any individual expected to participate in the hearing. The Docketing Clerk will send copies of the notice to the complainant and to all other parties to the proceeding.

ß15f.15 What happens after the Docketing Clerk notifies all parties?

The first step in this process involves a response to your hearing request by OCR. OCR will turn over its entire file on your complaint to the ALJ. OCR also will file a report with the ALJ stating its position with respect to whether or not your complaint is an eligible complaint, with reasons for its position, as well as stating its position with respect to the merits of your complaint. OCR must turn over its file and make its report on its position on your complaint within 35 days. OCR must provide a copy to you of anything it provides to the ALJ.

ß15f.16 Although I request a hearing, may I request the ALJ to issue a decision without a hearing?

(a) At any time after the parties have been notified of your hearing request, you may file a request with the ALJ to make a determination based on the written record. With your request, you should file any other arguments or evidence that you wish the ALJ to consider. The agency and OCR will have 35 days after you file your request to file any additional information, arguments, or evidence for the consideration of the ALJ. The ALJ may recommend dismissal of your complaint on the basis of a finding that it is not an eligible complaint; recommend denial of your eligible complaint on the merits; or make a proposed finding of discrimination on your eligible complaint and recommend to award you such relief as would be afforded under the applicable statute or regulation under which the eligible complaint was filed. The ALJ will make a proposed determination on your complaint based on the original complaint, the Section 741 Complaint Request, the OCR report, and any other evidence or written documents filed by the parties. The proposed determination will become the final determination 35 days after it is filed unless you request review of the proposed determination by the ASA. The ASA also may review the proposed determination on his or her own initiative. If the ASA reviews the decision, he or she will allow the parties a reasonable opportunity to file briefs in support of or opposition to the proposed determination, and afterwards will issue a final determination within 35 days after you request review of the proposed determination.

(b) To the maximum extent practicable, a final determination will be made within 180 days of your filing of the Section 741 Complaint Request.

ß15f.17 What happens before the hearing?

(a) Do I need to file another answer or pre-hearing brief? You may file a pre-hearing brief in support of your complaint.

(b) Will there be a pre-hearing conference? The ALJ may hold a pre-hearing conference. If such a conference

is to be held, the notice of the pre-hearing conference also will contain a notice to the parties of a time and date for the pre-hearing conference. Pre-hearing conferences normally will be held by telephone. Issues that may be addressed at the pre-hearing conference may include: simplification of the issues; the possibility of obtaining stipulations of fact and of the authenticity of documents; limitation of the number of witnesses; exchange of copies of hearing exhibits; negotiation, compromise or settlement of issues; identification of documents of which official notice will be requested; a schedule for completion of the actions decided upon at the conference; and any other matters that may aid and expedite the conclusion of the proceeding. No transcript of the pre-hearing conference will be made but the ALJ will issue a written memorandum summarizing the results of the pre-hearing conference.

(c) What else may the ALJ ask for before the hearing?Prior to the hearing, the ALJ may require each of the parties to furnish any or all of the following: an outline of a party's position with respect to the complaint, the facts upon which the party intends to rely, the legal theories upon which the party intends to rely, copies of or a list of the documents and exhibits which the party anticipates on introducing at the hearing, and a list of anticipated witnesses.

ß15f.18 May I depose potential witnesses?

(a) A party may request an order from the ALJ to take the testimony of any person by deposition upon oral examination or written interrogatories before any officer authorized to administer oaths at the place of examination, for use as evidence. The application for the order must specify the reason and need for taking testimony by deposition.

(b) The time, place, and manner of taking depositions will be as mutually agreed by the parties, or failing agreement, by order of the ALJ.

(c) No testimony taken by depositions will be considered as part of the evidence in the hearing until such testimony is offered and received in evidence at the hearing, and ordinarily it will not be received into evidence if the deponent is present and can testify at the hearing. However, when the deponent is present and can testify, the deposition may be used to contradict or impeach the testimony of the deponent given at the hearing. Where you have requested a final determination by the ALJ based on the written record without a hearing, the ALJ, in his or her discretion, may receive depositions to supplement the record.

(d) Each party will bear its own expenses associated with the taking of any deposition.

ß15f.19 Other than myself, OCR, and the agency, may any other interested party participate in the proceeding?

In most cases, there will be no parties to a proceeding under these rules, other than the complainant, OCR, and, and if it so desires, the agency. However, if there are circumstances in which additional parties have an interest in the proceeding, such as a bank which participated in a case involving a guaranteed loan, such other interested parties may be permitted to participate in the proceeding at the discretion of the ALJ.

ß15f.20 May I subpoena witnesses to the hearings?

No. USDA has no statutory authority to subpoena witnesses to testify at the hearing.

ß15f.21 What rules are applicable to the actual conduct of the hearing?

(a) Who may appear at the hearing? You may appear at the hearing in person or through your attorney. OCR or the agency will appear through a designated representative, which may include a USDA attorney. Any person who appears as counsel must conform to the standards of ethical conduct required of practitioners before the courts of the United States.

(b) What happens if I fail to show up? If, after having received notice of the hearing under ß15f.14, you fail to appear at the hearing without good cause, you will have waived your right to a hearing in the proceeding and the ALJ may proceed to issue a final determination based on the written record as provided for under ß5f.16.

(c) Which party presents its case first at the hearing?You, as the complainant, will proceed first at the proceeding, unless otherwise determined by the ALJ.

(d) What kind of evidence will be admitted and how will it be handled?(1) In general.The hearing will be conducted by the ALJ in the manner he or she determines most likely to obtain the facts relevant to the matter or matters at issue. The ALJ may confine the presentation of facts and evidence to pertinent matters and exclude irrelevant, immaterial, or unduly repetitious evidence, information, or questions. Each party will have the opportunity to present oral and documentary evidence, oral testimony of witnesses, and arguments in support of the party's position; controvert evidence relied on by any other party; and question all witnesses. The testimony of witnesses at a hearing will be on oath or affirmation and will be subject to cross-examination. Any evidence may be received by the ALJ without regard to whether that evidence could be admitted in judicial proceedings. Upon a finding of good cause, the ALJ may order that any witness be examined separately and apart from all other witnesses except those who may be parties to the proceeding.

(2) Objections.(i) If a party objects to the admission of any evidence or to the limitation of the scope of any examination or cross-examination or to any other ruling of the ALJ, the party must state briefly the grounds of such objection.

(ii) Only objections made before the ALJ may subsequently be relied upon in the proceeding.

(3) Depositions.The deposition of any witness will be admitted in the manner provided in and subject to the provisions of ß15f.18(c) of these rules.

(4) Exhibits. Unless the ALJ finds that the furnishing of copies is impracticable, two copies of each exhibit must be filed with the ALJ. A party submitting an exhibit must provide every other party (except interested parties) a copy of the exhibit one week before the hearing. A true copy of an exhibit may be substituted for the original.

(5) Official records or documents.An official government record or document or entry therein, if admissible for any purpose, will be admissible in evidence without the production of the person who made or prepared the same, and will be prima facie evidence of the relevant facts stated therein. Such record or document must be evidenced by an official publication thereof or a copy certified by a person having legal authority to make such certification.

(6) Official notice. Official notice will be taken of such matters as are judicially noted by the courts of the United States and of any other matter of technical, scientific, or commercial fact of established character if the parties are given adequate notice of matters so noticed, and the parties will be given adequate opportunity to show that such facts are erroneously noticed.

(7) Offer of proof.Whenever evidence is excluded by the ALJ, the party offering such evidence may make an offer of proof, which must be included in the transcript. The offer of proof should consist of a brief statement describing the evidence excluded. If the evidence consists of a brief oral statement, it must be included in the transcript in its entirety. If the evidence

consists of an exhibit, it must be marked for identification and inserted in the hearing record.

(8) Interlocutory review. Interlocutory review of rulings by the ALJ will not be permitted.

(9) Transcript or recording.(i) Hearings to be conducted by telephone will be recorded verbatim by electronic recording device. Hearings conducted by audio-visual telecommunication or by the personal attendance of parties and witnesses must be transcribed, unless the ALJ finds that recording the hearing verbatim would expedite the proceeding and the ALJ orders the hearing to be recorded verbatim. The ALJ must certify that to the best of his or her knowledge and belief any recording made pursuant to this paragraph with exhibits that were accepted into evidence is the record of the hearing.

(ii) If a hearing is recorded verbatim, a party requests the transcript of a hearing or part of a hearing, and the ALJ determines that the disposition of the proceeding would be expedited by a transcript of the hearing or part of a hearing, the ALJ shall order the verbatim transcription of the recording as requested by the party.

(iii) The costs of transcription or verbatim recordings will be paid for by USDA and charged to the agency whose action gave rise to the complaint at issue. Copies of recordings or transcripts of hearings will be made available to any party at the actual cost of duplication.

§15f.22 What happens after the hearing?

The ALJ will fix a reasonable time for filing posthearing briefs, proposed findings of fact and conclusions of law, and if permitted, reply briefs. Briefs should include a summary of evidence relied upon together with references to exhibit numbers and citations to the transcript and authorities relied upon. Briefs must be filed with the Docketing Clerk with copies to all parties.

§15f.23 What will constitute the record for the final determination?

The original complaint, the Section 741 Complaint Request, the OCR report, the agency answer, the transcript of testimony, exhibits, affidavits, depositions, briefs, memoranda of law, and all pleadings, motions, papers, and requests filed in the proceeding, including rulings, and the proposed determination by an ALJ (if applicable) shall constitute the exclusive record for the final determination.

§15f.24 When and in what form will a final determination be made on my complaint by USDA?

(a) The ALJ will make a proposed determination orally at the close of a hearing, or in writing within 35 days. The ALJ may recommend dismissal of your complaint on the basis of a finding that it is not an eligible complaint; recommend denial of your eligible complaint on the merits; or make a proposed finding of discrimination on your eligible complaint and recommend to award you such relief as would be afforded under the applicable statute or regulation under which the eligible complaint was filed. The proposed determination will become the final determination 35 days after it is made, unless you request review of the proposed determination by the ASA. The ASA also may review the proposed determination on his or her own initiative. If the ASA reviews the proposed determination, he or she will allow the parties a reasonable opportunity to file briefs in support or opposition to the proposed determination, and afterwards file a final determination within 35 days after you request review of the proposed determination.

(b) To the maximum extent practicable, a final determination will be filed within 180 days after you filed your Section 741 Complaint Request.

§15f.25 Will USDA pay my attorneys fees if I win?

If you prevail on your eligible complaint, either in whole or in part, after a proceeding before an ALJ under the procedures in this subpart, you may be eligible for an award of attorneys fees as a prevailing party under the Equal Access to Justice Act (EAJA), 5 U.S.C. 504. To get an EAJA award, you must file an application for such fees with the ALJ within 30 days after the final determination is made. Instructions for filing an EAJA application and obtaining an EAJA award are contained in 7 CFR part 1, subpart J. The ALJ must follow those rules, and not these Section 741 Complaint Request rules, in making any EAJA award.

## Subpart E–What If I Do Not Agree With The Final Determination by USDA?

§15f.26 May I seek judicial review of the final determination?

Section 741 provides that you have at least 180 days after a final determination denying your eligible complaint under these rules to seek judicial review in the United States Court of Federal Claims or a United States District Court of competent jurisdiction.

## Subpart F–How Do I Count Days For Purposes Of Deadlines and What Happens If I Miss A Deadline In These Rules?

§15f.27 When is something considered "filed" as required by these rules and to whom do I need to give copies of what I file?

A document, or other item, that must be "filed" under these rules is considered filed when postmarked or when it is received and date-stamped by the Docketing Clerk.

§15f.28 When I or someone else has to do something within a certain number of days, how will USDA or the ALJ count the days?

Unless otherwise specifically noted, a "day" refers to a calendar day and a document that must be filed by a certain date must either be postmarked on that date or received by the Docketing Clerk on that date. For documents that must be or are "filed" under these regulations, you count the number of days after filing starting with the day after the filing date as day one. For other time periods, you calculate the time period by counting the day after receipt by the party as day one. If the last day of a time period expires on a Saturday, a Sunday, or a Federal holiday, the last day of the time period will expire on the next business day.

§15f.29 May I request an extension of a deadline or may I get relief for missing a deadline in these rules?

You may request that the ALJ extend a deadline in these rules, or afford you relief for missing a deadline, which he or she may do, consistent with the principles of sovereign immunity, the terms of any applicable statute, these rules, and the necessity of expeditious completion of the public business. It is the intent of USDA that the time deadlines expressed in these regulations be construed equitably to ensure resolution of eligible complaints, to the extent permitted by law.

Done at Washington, D.C., this 30th day of November, 1998.

Dan Glickman,

Secretary of Agriculture.

[FR Doc. 98-32279 Filed 12-2-98; 1:00 pm]

BILLING CODE 3410-01-P

programs, Nondiscrimination, Price support programs.

For the reasons set out in the preamble, subtitle A of Title 7 of the Code of Federal Regulations is amended as set forth below:

Part 15f is added to read as follows:

## PART 15F—ADJUDICATIONS UNDER SECTION 741

Subpart A—What Is The Purpose Of These Regulations And To Whom And To What Programs Do They Apply?

Sec.
15f.1 What is the purpose of these regulations?
15f.2 Who may use these procedures for processing their discrimination complaint with USDA?
15f.3 If I want to use these procedures to have USDA consider my complaint, how long will it take for USDA to make a decision?
15f.4 What do certain words and phrases in these regulations mean?

Subpart B—I Filed A Complaint With USDA Prior To July 1, 1997, How Do I Request That USDA Consider My Complaint Using These Procedures?

15f.5 How do I request that USDA consider my complaint under these procedures?
15f.6 What must I say or include in my Section 741 Complaint Request?
15f.7 May I be represented by an attorney?

Subpart C—What Happens After I Send In My Request? May I Seek to Resolve My Complaint Informally With OCR?

15f.8 What does the Docketing Clerk do with my request?
15f.9 What will the Director do to settle my Section 741 Complaint Request when it is received?
15f.10 What if I do not want the Director to review my Section 741 Complaint Request and I want to proceed directly to a hearing?

Subpart D—If I Request A Hearing, What Will Happen? How Will The Hearing Be Conducted?

15f.11 Where must I file a hearing request and what happens to it?
15f.12 Am I entitled to a hearing in all circumstances?
15f.13 What is the function of the ALJ and who may communicate with him?
15f.14 What happens after I file a request for a hearing?
15f.15 What Happens After the Docketing Clerk Notifies All Parties?
15f.16 Although I request a hearing, may I request the ALJ to issue a decision without a hearing?
15f.17 What happens before the hearing?
15f.18 May I depose potential witnesses?
15f.19 Other than myself, OCR, and the agency, may any other interested party participate in the proceeding?
15f.20 May I subpoena witnesses to the hearing?
15f.21 What rules are applicable to the actual conduct of the hearing?
15f.22 What happens after the hearing?
15f.23 What will constitute the record for the final determination?
15f.24 When and in what form will a final determination be made on my complaint by USDA?
15f.25 Will USDA pay my attorneys fees if I win?

Subpart E—What If I Do Not Agree With The Final Determination By USDA?

15f.26 May I seek judicial review of the final determination?

Subpart F—How Do I Count Days For Purposes Of Deadlines And What Happens If I Miss A Deadline In These Rules?

15f.27 When is something considered "filed" as required by these rules and to whom do I need to give copies of what I file?
15f.28 When I or someone else has to do something within a certain number of days, how will USDA or the ALJ count the days?
15f.29 May I request an extension of a deadline or may I get relief for missing a deadline in these rules?

Authority: 5 U.S.C. 301; section 101(a) of Pub. L. 105±277, 112 Stat. 2681; Reorganization Plan No. 2 of 1953 (5 U.S.C. App.).

### Subpart A—What Is The Purpose Of These Regulations And To Whom And To What Programs Do They Apply?

**ß15f.1 What is the purpose of these regulations?**

These regulations provide the rights of complainants and the procedures for the processing of certain nonemployment related complaints alleging discrimination by USDA that were filed with USDA prior to July 1, 1997, as authorized under section 741(b) of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999, enacted in Division A, section 101(a) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105± 277.

**ß15f.2 Who may use these procedures for processing their discrimination complaint with USDA?**

A person may use these procedures if he or she filed a nonemployment related discrimination complaint with USDA prior to July 1, 1997, that alleged discrimination by USDA at any time during the period beginning January 1, 1981 and ending December 31, 1996:

(a) In violation of the Equal Credit Opportunity Act (15 U.S.C. 1691et seq) in administering—

(1) A farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account; or

(2) A housing program established under title V of the Housing Act of 1949; or

(b) In the administration of a commodity program or a disaster assistance program.

**ß15f.3 If I want to use these procedures to have USDA consider my complaint, how long will it take for USDA to make a decision?**

To the maximum extent practicable, a final determination under these procedures will be issued within 180 days after you have filed your request.

**ß15f.4 What do certain words and phrases in these regulations mean?**

*Agency* means the USDA agency, office, or committee that the complainant alleges has discriminated against the complainant in the administration of a covered program.

*ALJ* means an Administrative Law Judge appointed pursuant to the Administrative Procedure Act (5 U.S.C. 557(b)(3), 3105) who presides over a hearing if requested by a complainant.

*ASA* means the Assistant Secretary for Administration.

*Complainant* means a person who requests that USDA consider his or her complaint under the procedures of this part.

*Complaint* means a written document filed with USDA by a person alleging discrimination by USDA under a covered program.

*Covered program* means:

(1) A farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account;

(2) A housing program established under title V of the Housing Act of 1949; or

(3) A commodity program or disaster assistance program.

*Director* means the Director of USDA, OCR, or his or her subordinate designee.

*Docketing clerk* means an employee of the USDA Office of Civil Rights, designated to serve in this capacity.

*Eligible complaint* means a complaint that was filed with the Department of Agriculture before July 1, 1997, and that alleges discrimination occurring at any time during the period beginning on January 1, 1981 and ending December 31, 1996—

(1) In violation of the Equal Credit Opportunity Act (15 U.S.C. 1691et seq) in administering—

(i) A farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account; or

(ii) A housing program established under title V of the Housing Act of 1949; or

(2) In the administration of a commodity program or a disaster assistance program.

Ex parte communicationmeans a prohibited communication between a party to a proceeding and the ALJ outside of the presence of, or without notice to, the other parties to the proceeding, as explained more fully in ß15f.13.

Final determination means the final USDA decision made on your complaint under these rules.

Hearingmeans a proceeding in which you may present your case before the ALJ.

Interested partymeans a person, other than the complainant, OCR, and the agency, who has an interest in a proceeding under these rules and is admitted to the proceeding under ß15f.20.

OCRmeans the USDA Office of Civil Rights.

Party or partiesmeans the complainant, OCR, the agency, or a person admitted to the proceeding as an interested party.

Secretarymeans the Secretary of Agriculture.

Section 741means section 741 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999, enacted in Division A, section 101(a) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105± 277.

Section 741 Complaint Request (or Request)means a request by a complainant to consider his complaint under these rules.

USDAmeans the United States Department of Agriculture.

## Subpart B—I Filed A Complaint With USDA Prior To July 1, 1997, How Do I Request That USDA Consider My Complaint Using These Procedures?

### ß15f.5 How do I request that USDA consider my complaint under these procedures?

In order for USDA to consider your complaint under these procedures, a Section 741 Complaint Request must be docketed with the Docketing Clerk in the USDA OCR.

(a)Do I have to file a "Section 741 Complaint Request"if USDA is already working on my complaint? Do I have to file again?If USDA OCR already reviewed or is working on your complaint, you will receive a notice by March 1, 1999, indicating that your complaint automatically has been docketed as a Section 741 Complaint Request for consideration under these procedures. The notice will provide you with the docket number assigned your Request and will give you further instructions with respect to what options you have or what actions you must take.

(b) What if USDA is not working on my complaint? If I think USDA has reviewed or is working on my complaint, but do not receive a letter by March 1, 1999, what should I do?If USDA is not already working on your complaint, or you do not receive a letter from USDA by March 1, 1999, or within 30 days thereafter, you should file a Section 741 Complaint Request with the Docketing Clerk at USDA OCR.

(c) How long do I have to file my Section 741 Complaint Request?You have until October 21, 2000 to file your Section 741 Complaint Request.

### ß15f.6 What must I say or include in my Section 741 Complaint Request?

If you must file a Section 741 Complaint Request, it should include a copy of your original complaint, a request in writing that USDA consider the complaint in accordance with these procedures, a statement as to when your complaint was filed with USDA, and any other evidence you consider necessary to prove that your complaint is an eligible complaint suitable for consideration under these procedures.

### ß15f.7 May I be represented by an attorney?

(a) If your Section 741 Complaint Request is automatically docketed as set forth in ß15f.5(a), and you already are represented by counsel of whom you have notified USDA, then this section does not apply.

(b) If you are filing your Section 741 Complaint Request with USDA, and if you are represented by an attorney, your Section 741 Complaint Request should also include an authorization signed by you indicating that the attorney is entitled to represent you on your behalf. If USDA receives such an authorization, all documents in connection with consideration of your complaint under these procedures will be sent to your attorney and not to you.

(c) Once your Section 741 Complaint Request is docketed with USDA, and you afterwards retain an attorney, you should forward an authorization to USDA signed by you indicating that the attorney is entitled to represent you on your behalf. If USDA receives such an authorization, all documents in connection with consideration of your complaint under these procedures will be sent to your attorney and not to you.

## Subpart C—What Happens After I Send In My Section 741 Complaint Request? May I Seek to Resolve My Complaint Informally With OCR?

### ß15f.8 What does the Docketing Clerk do with my Section 741 Complaint Request?

All Section 741 Complaint Requests docketed by the OCR Docketing Clerk will be referred to the Director for an informal review. The Director will determine if the complaint is one that can be resolved informally, and, if so, the Director will seek to resolve the complaint informally with the complainant.

### ß15f.9 What will the Director do to settle my Section 741 Complaint Request when it is received?

The Director will review each Section 741 Complaint Request. If the Director finds that your complaint is an eligible complaint, the Director will: review all documents and evidence submitted by you; review all agency or OCR files, if any exist, regarding the circumstances surrounding the alleged discrimination; review any damage claims; and seek any further clarification, if necessary, from either you or the agency. OCR also may refer your eligible complaint for a formal investigation by the OCR, Program Investigation Division or by an outside contractor. Based on his or her review, the Director will either undertake negotiations with you to resolve the complaint; or inform you that OCR will not settle the complaint and explain to you your options, including your right to pursue formal proceedings before an ALJ under subpart D. If the complaint is successfully resolved or settled, the Director will issue a final determination disposing of the matter.

### ß15f.10 What if I do not want the Director to review my Section 741 Complaint Request and I want to proceed directly to a hearing?

If you do not want the Director to review your Section 741 Complaint Request, you may request a hearing following the procedures below in subpart D. You may request a hearing at any time during informal review or negotiations with the Director, or at any time during USDA consideration of your Section 741 Complaint Request.

## Subpart D—If I Request A Hearing, What Will Happen? How Will The Hearing Be Conducted?

### ß15f.11 Where must I file a hearing request and what happens to it?

If you desire a hearing, you must file a request for a hearing with the Docketing Clerk, citing the docket

the provisions of the APA applicable to formal adjudications, as well as EAJA, are applicable to the formal consideration of administrative complaints processed by USDA under section 741. The regulations promulgated below implement a process for eligible complainants to seek an administrative determination on their complaints from USDA under section 741(b) that complies with the requirements of both the APA and EAJA.

### Initiating USDA Consideration of a Complaint Under Section 741

In order for a complaint to be processed under these regulations, it must already have been filed with USDA and be an "eligible complaint" as defined in section 741(e). Therefore these regulations presume that there is a pre-existing complaint, and that proceedings under these regulations will be at the request of, or with the consent of, the complainant to consider his or her pre-existing complaint under these procedures. Accordingly, a brief description of the process follows.

The USDA Office of Civil Rights (OCR) has reviewed, or already is in the process of reviewing, many of these eligible complaints. For those already reviewed or in process, OCR automatically will docket them for consideration as "Section 741 Complaint Requests" under these rules. OCR will issue a letter notifying the complainants of this action, and their Section 741 Complain Request docket number, by March 1, 1999. Such a letter also will provide further instructions or options for the individual circumstances of each complainant, and may include an offer of settlement for the complaint.

For those complaints not currently under review by OCR, or for those complainants who do not receive letters by March 29, 1999, notifying them that their complaints have been docketed under these rules, complainants must file a Section 741 Complaint Request with OCR seeking review of his or her complaint under these regulations. OCR will assign the Section 741 Complaint Request a docket number, and will so notify the complainant.

### OCR Administrative Review and Settlement Opportunities

Until a complainant elects to request a hearing, the Section 741 Complaint Request will be reviewed by OCR. The intent of these regulations is to provide all eligible complainants with every opportunity to seek administrative (informal and formal) and judicial adjudication of their complaints as permitted by Section 741. The Director will review all eligible complaints and consider possible settlement opportunities. Specifically, if the Director finds that your complaint is an eligible complaint, the Director will: (1) review all documents and evidence submitted by you; (2) review all agency or OCR files, if any exist, regarding the circumstances surrounding the alleged discrimination; (3) review any damage claims; and (4) seek any further clarification, if necessary, from either you or the agency. OCR also may refer your eligible complaint for a formal investigation by the OCR Program Investigation Division or by an outside contractor. Based on his or her review, the Director will either (1) undertake negotiations with you to resolve the complaint; or (2) inform you that OCR will not settle the complaint and explain to you your rights, including your right to pursue formal proceedings before an ALJ under these rules. If the complaint is successfully resolved or settled, the Director will issue a final determination disposing of the matter and concluding consideration of the complaint under these procedures.

Notwithstanding the informal settlement process, once OCR dockets a complainant's Section 741 Complaint Request, a complainant may request a hearing before an administrative law judge (ALJ) at any time during consideration of his or her complaint under these rules. These rules provide procedures for the conduct of such hearings.

### Proceedings Before an Administrative Law Judge

As noted above, the complainant may request a hearing on the record before an ALJ at any time after his Section 741 Complaint Request is docketed. OCR will turn over to the ALJ its entire file on the complaint, and file a report with the ALJ stating its position with respect to whether the complaint is an eligible complaint, and, if so, its position on the merits of the complaint. If the complainant chooses to have an ALJ consider the complaint, he or she may either request that the ALJ render a proposed determination on the written record consisting of the complaint, the Section 741 Complaint Request, the OCR report, and other submissions of the parties, or proceed with a full hearing.

The ALJ will make a proposed decision that may either deny the complaint or sustain the complaint and recommend award to the complainant of such relief as would be afforded under the applicable statute or regulation under which the eligible complaint was filed, notwithstanding any statute of limitations. The proposed decision of the ALJ will become final within 35 days, unless you request review of the determination by the Assistant Secretary for Administration (ASA). The ASA may also choose to review this on his or her own motion.

### Timing of Final Determinations and Judicial Review

Whether with or without a hearing or review by the ASA, the USDA will render a final determination to the maximum extent practicable within 180 days after docketing of the Section 741 Complaint Request. If the complaint is denied by USDA, in whole or in part, the complainant will have at least 180 days to file suit in Federal court seeking a review of the denial, regardless of any applicable statute of limitations.

### Determination To Issue an Interim Final Rule

Delay, neglect, and inadequate consideration of these discrimination complaints by USDA in the past created the need for Congress to pass this extraordinary relief statute in the first instance. The waiver of the statute of limitations in section 741(a) is available only for a period of 2 years after the date of enactment which occurred on October 21, 1998. That is, all complaints under section 741 must be filed either in court or with USDA by October 21, 2000. (Those complainants, who initially seek USDA administrative review, then will have 180 days after USDA's issuance of a final determination under section 741 to pursue an action for judicial review even if the USDA review or the 180-day period extends beyond October 21, 2000.) Since less than two years remain for those who allegedly have suffered discrimination to file complaints with USDA, time is of the essence in implementing this procedure as soon as possible. Accordingly, publication of these rules of procedure as interim final, without prior notice and comment, is permissible under either the procedural rules or good cause exceptions to the APA requirement for notice and comment rulemaking. 5 U.S.C. ß553(b)(3) (A) and (B). However, USDA is providing a comment period of 30 days to provide for comment and subsequent modification of this rule, if necessary.

### List of Subjects in 7 CFR Part 15f

Administrative practice and procedure, Agriculture, Appeal procedures, Civil rights, Equal access to justice, Ex parte communications, Farmers, Federal aid programs, Guaranteed loans, Insured loans, Loan

67392 Federal Register / Vol. 63, No. 233 / Friday, December 4, 1998 / Rules and Regulations

DEPARTMENT OF AGRICULTURE

Office of the Secretary

7 CFR Part 15f

# Administrative Civil Rights Adjudications Under Section 741

AGENCY: Office of the Secretary, USDA.

ACTION: Interim final rule.

SUMMARY: This interim final rule implements the United States Department of Agriculture (USDA) adjudication process for certain civil rights discrimination complaints filed administratively with USDA, as authorized by section 741 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999, enacted in Division A, section 101(a) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105±277.

DATES: This interim final rule is effective December 4, 1998. Written comments via letter, facsimile, or Internet are invited from interested individuals and organizations, and must be received by January 4, 1999.

ADDRESSES: Comments should be sent to Alyce Boyd-Stewart, Special Assistant to the Director, Office of Civil Rights, 202±720±5212.

FOR FURTHER INFORMATION CONTACT: Alyce Boyd-Stewart, Special Assistant to the Director, Office of Civil Rights, 202±720±5212.

SUPPLEMENTARY INFORMATION:

## Classification

This final rule has been reviewed under E.O. 12866, and it has been determined that it is not a "significant regulatory action" because it will not have an annual effect on the economy of $100 million or more or adversely and materially affect a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities. This final rule will not create any serious inconsistencies or otherwise interfere with actions taken or planned by another agency. It will not materially alter the budgetary impact of entitlements, grants, user fees, or loan programs, or the rights and obligations of recipients thereof, and does not raise novel legal or policy issues arising out of legal mandates, the President's priorities, or principles set forth in E.O. 12866.

## Regulatory Flexibility Act

USDA certifies that this rule will not have a significant impact on a substantial number of small entities as defined in the Regulatory Flexibility Act, Pub. L. 96±534, as amended (5 U.S.C. 601 et seq).

## Paperwork Reduction Act

USDA has determined that the provisions of the Paperwork Reduction Act of 1995, 44 U.S.C., chapter 35, do not apply to any collections of information contained in this rule because any such collections of information are made during the conduct of administrative action taken by an agency against specific individuals or entities. 5 CFR 1320.4(a)(2).

## Background and Purpose

### History

During much of the 1980's and 1990's, the USDA administrative processes for review of program civil rights complaints filed against USDA agencies by program participants did not function effectively. As a result, while administrative complaints were pending, the statutes of limitation for certain discrimination statutes under which complainants potentially could obtain relief continued to run and the time periods available for obtaining relief expired, thus foreclosing the possibility for relief for those who had filed discrimination complaints administratively with the Department. Accordingly, the Secretary of Agriculture sought the enactment of legislation to waive the applicable statutes of limitation for those individuals who had filed nonemployment related discrimination complaints with USDA alleging discrimination during that time period.

### Requirements of Section 741 Statute

Congress enacted legislation to so waive the applicable statutes of limitation in section 741 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999, enacted in Division A, section 101(a) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105±277, for a period of two years after the enactment of that Act. The section 741 provisions are available to any person who filed a nonemployment related discrimination complaint with USDA before July 1, 1997, that alleged discrimination by USDA occurring at any time between January 1, 1981, and December 31, 1996, either (1) in violation of the Equal Credit Opportunity Act (15 U.S.C. 1691 et seq) with respect to the administration of a farm ownership, farm operating, or emergency loan funded from the Agricultural Credit Insurance Program Account, or with respect to a housing program established under title V of the Housing Act of 1949, or (2) in the administration of a commodity program or a disaster assistance program. Section 741 also allows an eligible complainant to bring suit directly either in the United States Court of Federal Claims or a United States District Court to seek relief on the same bases within two years of enactment of Pub. L. 105±277.

Section 741(b) of the statute also preserves to an eligible complainant the right, in lieu of court proceedings, to first seek an administrative determination by USDA on the merits of his or her complaint. Such an administrative determination then would still be subject to de novo review in either the United States Court of Federal Claims or a United States District Court, if filed within 180 days of the final USDA determination.

Section 741(b) provides some minimal steps that must be a part of this administrative process, but the language of section 741 triggers the application of other law that fills out the balance of the required procedures. Section 741(b)(1) provides the complainant with the right of an opportunity for a hearing on the record before USDA makes a determination on the complaint. A statutory requirement for a determination to be made on the record after opportunity for hearing generally makes an agency administrative process for making a determination subject to section 554(a) of the Administrative Procedure Act (APA), 5 U.S.C. §§551±559, and thus specifically triggers the application of the provisions of the APA applicable to formal adjudications, i.e., 5 U.S.C. §§554, 556, 557, and 3105. See, e.g., Lane v. U.S. Dep't. of Agriculture, 120 F.3d 106 (8th Cir. 1997); City of West Chicago, Ill. v. U.S. Nuclear Regulatory Comm'n., 701 F.2d 632 (7th Cir. 1983). Section 741(g) applies chapter 5 of title 5 of the United States Code generally to these proceedings, except for the standard for judicial review. Both the APA and the Equal Access to Justice Act, 5 U.S.C. 504 (EAJA), which permits eligible prevailing parties to recover attorneys fees when the position of the agency is not substantially justified in an administrative adversary adjudication, are included in chapter 5 of title 5 of the United States Code.

On the basis of these provisions of section 741, USDA has determined that

# URGENT

LAW OFFICES OF
JAMES W. MYART, JR. & ASSOCIATES
306 PRESTON AVENUE
SAN ANTONIO, TEXAS 78210
(210) 533-9461
FAX: (210) 533-4815
E-mail: Jwmyart@aol.com

"SPECIALIZING IN THE RIGHTS OF OTHERS"

*Texans Hold to A Simple Principle:*
*A DEAL IS A DEAL*

July 27, 2002

**Mr. Lou Gallegos, Assistant Secretary for Administration** **BY FAX 720-2191**
**United States Department of Agriculture**
**14th and Independence Ave.**
**Washington, D.C. 20001**

**Mr. Clyde Thompson, Deputy Assistant Secretary for Administration** **SAME**
**United States Department of Agriculture**
**14th and Independence Ave.**
**Washington, D.C. 20001**

**RE: DEXTER DAVIS AND APPEAL: REQUEST FOR SECOND (ILLEGAL AND NON-SOLICITED FAD; REQUEST FOR DATE AND TIME TO PRESENT NEW EVIDENCE AND LEGAL ARGUMENT PRIOR TO DECISION**

**Dear Sirs:**

**This specifically request that I be provided the second, official DAVIS FAD (I have a copy of the Draft) on which you have based your denial of Mr. Davis' 1998 RESOLUTION AGREEMENT. You should know that your "fresh review" of the Original FAD, eight (8) year old FINAL AGENCY DECISION, is against public policy and the law. Federal law prohibits an administrative agency, OCR, to go behind its' final decisions and change the decision to suit its' fancy.**

## This action shows bad-faith, whether you agree or not.

*POINT 1.*

For the sake of argument, let's assume that your dubious actions in this regard are legally acceptable ( which of course they are not). Extending your first FAD finding discrimination for the events contained within the Findings and Conclusions and your second FAD finding no discrimination to logical conclusion, Mr. Davis would have to return the $127,000 and debt relief value to the USDA. How and Why? The answer is that the 1988-1994 events that were clearly delineated in the first FAD served as the basis for the 1995 affirmative finding of discrimination. If you issue a second FAD finding no discrimination in the 1988-1994 events, then the first FAD would necessarily have to fail. This is an illogical result - denying Mr. Davis the benefit of the bargain, agreement, made with him in the 1998 Resolution Agreement. This is an absurd result. If allowed to stand, Mr. Davis would have a right without a remedy, a circumstance which is not allowed under the law. This appears to support the proposition that your denial is arbitrary and capricious.

## PLEASE RESPOND TO POINT 1 BEFORE APPEAL DECISION.

Your refusal to address this, again, shows bad-faith and USDA's intent on denying ("betraying") black farmers payment of legally allowable compensatory damages under the ECOA of 1972 as amended.

*POINT 2.*

Your insistence that Mr. Davis go to the ALJ for relief is merely a tactic to shift the OCR's responsibilities under the CFRs from one USDA forum to another, a circumstance which is wrought with the principles of the TEXAS TWO-STEP, side step the real issues at every cost. Why have an administrative resolution process, pursuant to regulations, when the officials charged with the duty and responsibility to implement those regulations refuse to do so. That equates to bad-faith and/or fear of criticism from other USDA top officials (who will not identify themselves) who do not believe black farmers ought to be paid in accordance with the law and the commitments of Secretary Ann Veneman.

## PLEASE RESPOND TO POINT 2 BEFORE APPEAL DECISION

***POINT 3***

**Lyold Wright, former OCR Director is willing to provide you an affidavit stating that the ORIGINAL FAD, indeed, found discrimination for all the years of events delineated therein. I have over and over and over and over, ask your attorneys and you, Mr. Thompson, to call Mr. Wright to get a true understanding of the FAD and Resolution Agreement. USDA has stubbornly refused to make that simple contact. WHY? Could it be that someone (WHO?) at USDA does not want to know the truth from the official that signed the Resolution Agreement? Your refusal to make this simple five (5) minute phone call[1] is yet another example of bad faith and the mind set - We will not pay these black farmers in spite of the law and the commitment of Secretary Ann Venneman.**

**PLEASE RESPOND TO POINT 3 BEFORE APPEAL DECISION**

**Again, request is made to meet with you the week of July 29, 2002 to finally resolve this matter after 5 years of USDA's TWO-STEP APPROACH, CAUSING MORE PAIN AND SUFFERING.**

**Sincerely yours,**

**James W. Myart, Jr.**

---

**[1]Mr. Wright can be contacted at Home phone # (301) 681-7764, Cell Phone (301) 221-3423, Fax (301) 681-3260 and address: 11307 Barlone Court, Silver Spring, Maryland, 20291**

LAW OFFICES OF
JAMES W. MYART, JR. & ASSOCIATES
306 PRESTON AVENUE
SAN ANTONIO, TEXAS 78210
(210) 533-9461
FAX: (210) 533-4815
e-mail: Jwmyart@aol.com

"SPECIALIZING IN THE RIGHTS OF OTHERS"

July 7, 2002

*Texans Hold To A Simple Principle:*
*A DEAL IS A DEAL*

# FIRST AMENDED DEMAND

**Hon. Ann Veneman**
**Secretary, USDA**
**c/o Mr. Dale Moore, Chief of Staff**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMRRR**
**(202) 690-2119**

**Mr. Lou Gallegos, USDA**
**Assistant Secretary for Administration**
**c/o Mr. Joe McNeil, Confidential Assistant**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMRRR**
**(202) 720-2191**

**Ms. Nancy Bryson, USDA**
**General Counsel**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMRRR**
**(202) 720-8666**

**Mr. David Winningham**
**Director, Office of Civil Rights**
**US Department of Agriculture**
**1400 Independence Ave. SW**
**Washington, D.C. 20250**

**By Fax and CMMRRR**
**(202) 205-2891**

**RE: DEXTER DAVIS AMENDED DEMAND FOR SETTLEMENT: Scheduled meeting with USDA Authorities; Attempt to Avoid Unnecessary Litigation**

**Dear USDA Officials:**

Enclosed, please find the original Dexter Davis Demand for settlement forwarded to Mr. Wright in 1997 ***(Original and Exhibits Omitted)***. This demand served as the basis for the partial Resolution Agreement which is in your files.

Please know that the OCR is in the troughs of adjudicating three (3) additional administrative cases filed by Mr. Davis since the original, partial Resolution Agreement was executed. I have no doubt that the adjudication process and staff will render affirmative findings of discrimination in each of the three cases.

Therefore, Mr. Davis' amended demand for settlement is as follows:

**A. Payment of Compensatory Damages for Original OCR Finding of Discrimination**

(1) Original Demand.........................................................$789,280.86
Less Amount Paid by USDA....................................... 127,000.00

Remaining Amount not paid $ 662,228.86

(2) Prior Debt Relief/Release of Deeds...........................ACCOMPLISHED

**(3) Current Debt Relief is demanded (any outstanding loans to USDA and current release of any security agreements, deed in fee simple.)**

**(4) Additional Demand for legally allowable Compensatory Damages, including actual losses, out-of-pocket expenses, and pain and suffering due to the continued discrimination and reprisal suffered by my client since the original, partial settlement pursuant to ECOA of 1972, as amended. [1]**

---

**[1] Mr. Davis claims that USDA's refusal to pay his claim constitutes continued discrimination and reprisal for which he demands payment pursuant to the ECOA of 1972, as amended.**

pursuant to ECOA of 1972, as amended.

..........................................................................................$2,000,000

**Total demand..................................................................$2,662,228.86**

Plus Reasonable and Necessary Attorneys fees....................Not Yet Determined

**B. DEMAND for Payment of Compensatory Damages on Three Administrative Complaints of Discrimination.**[2]

(1) Reasonable compensatory damages pursuant to ECOA of 1972, as amended.



**Total Demand for three AdministrativeCases..................................................................$1,797,347.28**

(2) Plus Reasonable and Necessary Attorneys fees....................Not Yet Determined]



---

[2] ***This demand should in no way inhibit immediate settlement in Original Matter.***

**TOTALDEMAND..................................................$4,459,576.14**[3]

Please know that I consider thIS offer to settle as reasonable under the circumstances; however, they are negotiable. I respectfully request a meeting with Mr. Lou Gallegos, Assistant Secretary of Administration[4] within thirty (30) days of your receipt of this letter to negotiate and resolve this matter.

It would appear any reasonable person (or any reasonable government official) might conclude, more likely than not, that the USDA officials with the legal authority to settle this case would attempt to swiftly settle this and similar matters, especially since the USDA has been roundly critized by Judge Paul Friedman and the United States Court of Appeals for the District of Columbia for what the appeals court characterized as the USDA's complicity in "**double betrayal**" of black farmers. *Please see the June 21, 2002 legal opinion issued by the DC Appeals Court in* ***Pigford et. al., v. Veneman*** .

It is apparent that the court is not happy with the USDA nor the black farmers' class counsel's - **"DOUBLE BETRAYAL"**. Even though the opinion sustains the USDA's points of error on appeal, it is not a flattering opinion for the USDA in the least. The opinion will surely spurn many more unnecessary law suits against Secretary Veneman and the United States government in her official capacity as Secretary of Agriculture and subject the Bush Administration to Congressional and public criticism.

While the undersigned recognizes that the case here, Davis, is an administrative rather than a litigated matter, the undersigned is doing everything to keep from filing other embrassing, unnecesary lawsuits against Secretary Veneman. Such a requirement would definitely subject

---

[3] **The USDA must, as a part of any settlement, set aside the appropriate percentage of dollars representing taxes, to be paid directly to the Internal Revenue Service.**

[4] **The request is made to meet with Mr. Gallegos because he is the only person other than Secretary Ann Veneman with the legal authority to settle these cases, pursuant to Chapter 7 of the Code of Federal Regulations, since Mr. David Winningham has issued a proclamation of self-recusal from settlement of this and similar cases. Of course, as previously stated by the undersigned, Mr. Winningham does not have the legal authority to abdicate his legal responsibility under the law.**

the Department and the Bush Administration to further **undeserved** public, legislative, executive and judicial criticism. It is the undersighned's belief that Judge Friedman will be assigned these cases if law suits are file on the basis of similarity to the issues in ***Pigford et. al., v. Veneman*** .

In conclusion, time is of the essence. I look forward to your request to meet.

With every good wish, I remain

Sincerely yours,

James W. Myart, Jr.
Attorney For Dexter Davis

**c: Mr. Dexter Davis via regular mail**
**Mr. Andrew Card, Chief of Staff to the President (202) 456-1907**
**Senator Richard Lugar, M.C., c/o Ms. Carol Dubard, Senate Ag. Committee (202) 224-2682**
**Drew DeBerry, USDA White House Liaison (202) 720-9286**
**Ms. Angela Sailor, Associate Director, Office of Presidential Public Liaison**
**Ms. Arlene Leland, USDA Associate General Counsel for Civil Rights (202) 720-1785**
**File**

USDA

252-582-0191

JUL 3 2002

United States Department of Agriculture

Office of the Assistant Secretary for Administration

1400 Independence Avenue SW

Washington, DC 20250-0103

Dept./Agency | Phone # 202-720-3291
Fax # 210-533-4815 | Fax # 202-720-2191
NSN 7540-01-317-7368 5099-101 GENERAL SERVICES ADMINISTRATION

**VIA FACSIMILE, FEDEX & FIRST-CLASS MAIL**

Mr. James W. Myart, Jr.
306 Preston Avenue
San Antonio, Texas 78210

Dear Mr. Myart:

This response is being provided to your numerous letters and phone calls requesting a meeting to discuss resolution of program discrimination complaints filed by Matthew Grant, Dexter Davis, Howard Coats and Richard Grant. In addition, you have requested clarification regarding David Winningham's recusal in certain cases that arose while he was the Director of the Farm Service Agency, Office of Civil Rights & Small Business Utilization. I will address each of these matters below, in order to clarify the status of each matter and explain how the U.S. Department of Agriculture (USDA) is currently handling each matter. In sharing this information with your clients, please ensure that each individual's privacy interests are adequately protected by not disclosing information about one client to the others.

**Matthew Grant**

In December 1995, Matthew Grant filed a complaint of discrimination alleging that the Farm Service Agency had denied loan servicing and other benefits on the basis of his race. USDA conducted an investigation into the allegations and events underlying the complaint. The parties reached a resolution agreement, which was signed March 2, 1998, subject to review by the Department of Justice (*see* Final Resolution Agreement, para. 8). The March 2, 1998 agreement dealt only with claims from the period 1994 through 1998. By letter dated April 21, 1998, the Department of Justice informed USDA that it could not approve the proposed resolution for the following reasons: (1) the claim underlying USDA's settlement with Mr. Grant was time-barred at the time of the settlement; and (2) USDA lacked authority to pay compensatory damages on the time-barred claim. Thus, the March 2, 1998 resolution agreement was voided.

919-688-5596

In October 1998, Congress passed the section 741 legislation, extending the statute of limitations on certain discrimination complaints brought against USDA. On or about January 27, 1999, Matthew Grant completed a Request for Exclusion from the *Pigford v. Glickman*, Civil Action No. 97-1978 (D.D.C.), class action, pursuant to the opt-out procedures established by the Court in that proceeding. The passage of section 741 and Mr. Grant's opt-out of *Pigford* allowed the parties to resume their settlement negotiations. On February 23, 1999, Mr. Grant informed USDA that you were no longer his attorney and that Stephon Bowens with Land Loss Prevention Project would be representing him. Thus, further settlement negotiations were held with Mr. Bowens.

Mr. Bowens submitted a proposed resolution to USDA in April 1999 seeking over $9 million in compensatory damages and complete debt relief, among other things, for Matthew Grant. The proposed resolution offered a complete release of all claims from January 1, 1981 to April 1, 1999. USDA responded in early June 1999 with a counter-offer that was substantially less than $9 million and included a complete release of all discrimination claims made by Mr. Grant. USDA's settlement offer was rejected, and the parties were unable to reach an agreement.

On or about October 19, 2000, Matthew Grant joined a group of farmers in filing a class action complaint of discrimination, captioned *Wise v. Veneman*, Civil Action No. 00-CV-2508 (JR) (D.D.C.). That case is currently pending in U.S. District Court before Judge James Robertson. Thus, any further discussions about Mr. Grant's claims must be directed to the Department of Justice. The Department of Justice attorney handling the *Wise* case is Judry Subar, U.S. Department of Justice, Civil Division.

**Dexter Davis**

Dexter Davis filed a complaint of discrimination with USDA on or about November 13, 1995. The parties reached a resolution dealing with the period 1995 through 1998. The Resolution Agreement was signed on or about March 4, 1998. The Department of Justice notified USDA that their approval of the resolution was not required. Mr. Davis has received payment of the compensatory damages and the debt relief set forth in that Agreement.

The Resolution Agreement reserved the right for Mr. Davis to pursue his claims for the period 1988 through 1994 (*see* Resolution Agreement, para. 9). Mr. Davis decided to pursue his remaining claims in the process established by the Office of Civil Rights for section 741 claims. On October 25, 2001, and again on November 23, 2001, Mr. Davis and his attorney requested that Mr. Davis' claims be presented to the Administrative Law Judge for hearing. The Office of Civil Rights is currently preparing the file for submission to an Administrative Law Judge. That process should be completed within sixty (60) days. Once the file is submitted, the Administrative Law Judge will determine how the matter shall proceed.

Mr. Davis filed a more recent complaint on or about May 4, 2001, which is being processed and investigated. We will not be in a position to discuss that complaint until the investigation and adjudication are concluded. Thus, we believe that any discussions regarding Dexter Davis' claims should be deferred until the case file on the section 741 case is complete and has been submitted to the Administrative Law Judge and the investigation and adjudication on the May 2001 complaint are completed.

**Howard Coats**

Howard Coats filed complaints of discrimination with USDA in 1992 and 1995. USDA entered into a settlement agreement with Mr. Coats, providing programmatic relief on his 1992 complaint. The settlement agreement allowed a reservation of rights for Mr. Coats to pursue his remaining claims. In February 1999, Mr. Coats filed a Claim Sheet and Election Form under the *Pigford* Consent Decree, seeking relief pursuant to the Track A process (Claim No. 524). On October 11, 1999, the Adjudicator issued a decision granting Mr. Coats's claim. As a result of this favorable decision, Mr. Coats was paid $50,000 on January 6, 2000 and was awarded debt forgiveness and injunctive relief pursuant to the Consent Decree. Participation in the Consent Decree results in full release of all claims against USDA encompassed by the *Pigford* lawsuit. Consent Decree ¶ 18.

Thus, Mr. Coats' claims of discrimination against USDA have been released and satisfied in full.

**Richard Grant**

Richard Grant filed a complaint of discrimination with USDA on or about February 14, 1996. Pursuant to a Final Resolution Agreement entered into in March 1998, Mr. Grant's claims for the period 1996 through 1998 were fully resolved. Mr. Grant has received payment of the compensatory damages and the debt relief set forth in that Agreement. The Agreement contained a reservation of rights for the period 1972 through 1995 (*see* Final Resolution Agreement, para. 9).

The Office of Civil Rights is conducting an administrative review of Mr. Grant's remaining claims under the informal part of the section 741 process. *See* 7 C.F.R. § 15f.8. We anticipate completing that review within sixty (60) days. Once that review is completed, we will provide you with a response as to our position on Mr. Grant's claims. At that point in time, the parties may evaluate whether further discussions regarding resolution of Mr. Grant's claims is warranted.

**Recusal of David Winningham**

You have questioned the recusal of David Winningham, Director of the Office of Civil Rights, in certain program discrimination matters. Mr. Winningham was previously the Director of the Farm Service Agency, Office of Civil Rights & Small Business Utilization. In that capacity, he reviewed some of the program discrimination matters currently pending with the Department's Office of Civil Rights and may have advised Farm Service Agency officials in conjunction with those matters. For that reason, and to avoid a potential or actual conflict of interest, Mr. Winningham voluntarily recused himself as the Director of the Office of Civil Rights in certain matters.

Mr. Winningham's recusal has had no impact on the complaints of Matthew Grant, Dexter Davis, Howard Coats or Richard Grant. Those four complaints received final decisions before Mr. Winningham assumed his current position as Director of the Office of Civil Rights. Moreover, to the extent that any further determinations are made on these matters, myself or a designee within the Office of the Assistant Secretary for Administration will remain involved.

We have attempted to be comprehensive in our response to your numerous inquiries. If you have any remaining questions after reviewing this correspondence, please direct them to my office in writing, and we will respond.

Sincerely,

Lou Gallegos
Assistant Secretary
for Administration

cc: Dale Moore, Chief of Staff
Nancy S. Bryson, General Counsel
Clyde Thompson, Associate Assistant Secretary for Administration
David Winningham, Director, Office of Civil Rights

USDA

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

1400 Independence
Avenue SW

Washington, DC
20250-0103

James W. Myart, Jr.
Law Office of James W. Myart, Jr.
and Associates
306 Preston Avenue
San Antonio, Texas 78210

AUG - 9 2002

RE: Administrative Complaints of Howard Coats and Dexter Davis

Dear Mr. Myart:

I am writing in response to your letters dated July 22 and July 27, 2002, regarding your purported appeals to the Assistant Secretary for Administration of the decisions issued during the administrative review of the complaints of Howard Coats, Docket No. 163, and Dexter Davis, Docket No. 64. Please be advised that your clients' cases are not in the proper posture for an appeal to the Assistant Secretary for Administration. The regulations grant the Assistant Secretary for Administration the authority to review only proposed determinations issued by the Administrative Law Judge 7 C.F.R. § 15f.24. As your clients have not requested that their cases be submitted to the Administrative Law Judge, any review by the Assistant Secretary for Administration would be premature.

Mr. Davis' and Mr. Coats's appeal rights at this stage were set forth in my earlier letter dated July 22, 2002, regarding Mr. Davis, and Frederick Isler's letter dated July 31, 2002, regarding Mr. Coats. As stated in those letters, Mr. Davis and Mr. Coats may request a hearing before the Administrative Law Judge, pursuant to 7 C.F.R. Part 15f. We previously sent copies of the applicable regulations for your convenience.

In your July 27 letter, you requested a copy of the final agency decision on Mr. Davis' complaint. Since this complaint was handled in the administrative review process, no final agency decision was issued. With regard to your disagreement with our decision on the Davis complaint, you may wish to raise these arguments with the Administrative Law Judge.

As stated in previous correspondence, the Department's administrative review of the complaints submitted by Dexter Davis and Howard Coats is now complete. As the decisions in both cases stated that informal resolution is not appropriate, we decline your invitation to enter into mediation or further discussion with regard to these complaints.

Sincerely,

Clyde Thompson

Clyde Thompson
Associate Assistant Secretary
for Administration

AN EQUAL OPPORTUNITY EMPLOYER

# URGENT

LAW OFFICES OF
JAMES W. MYART, JR. & ASSOCIATES
306 PRESTON AVENUE
SAN ANTONIO, TEXAS 78210
(210) 533-9461
FAX: (210) 533-4815
E-mail: Jwmyart@aol.com

"SPECIALIZING IN THE RIGHTS OF OTHERS"

*Texans Hold to A Simple Principle:*
*A DEAL IS A DEAL*

**August 21, 2002**

**By Fax (202) 720-1785 & CMRRR**

**Ms. Arlean Leland, Esq.**
**Associate General Counsel for Civil Rights**
**United States Department of Agriculture**
**14th & Independence Ave., NW**
**Washington, D.C. 20001**

**Re: Thompson/OCR Denial of Dexter Davis Claim Pursuant to 2002 FAD (No Discrimination); USDA Estopped As A Matter of Law; Demand to Settle Case (1998 Resolution Agreement); Amended Demand to Pay Compensatory Damages (ECOA of 1972 as Amended)**

**Dear Ms. Leland:**

**As you are aware, there has been considerable discussion, frustration and continuing damages incurred over the Thompson/OCR/OGC decision not to complete settlement in the Davis/USDA Resolution Agreement matter.**

**In the July 22, 2002 letter by Mr. Clyde Thompson, Associate Assistant Secretary for Administration, the statement "we have conducted a fresh review of the Davis 1996 Final Agency Decision (FAD) and find that in the years 1988 - 1994, there was no discrimination." You and other USDA officials are keenly aware that I vociferously and in writing objected to the "fresh review" of the 1996 FAD as being against public policy and merely a USDA consistent and patterned ploy to deny Mr. Davis his right to payment of compensatory damages pursuant to the 1998 Resolution Agreement and the ECOA of 1972, as amended.**

**Subsequently, in letters between us and conversations with me, you recommended that I appeal the Thompson/OCR/OGC decision to the ALJ for further adjudication and decision. Again, I vociferously objected on the basis that, in my opinion, the correct forum for**

**settlement of this matter was the OCR administrative process outlined in 7 CFR 15.58, et. seq. and not the ALJ process as you have insisted.**

**Ms. Leland, I have indicated to you and other interested USDA officials that I would prove, based on public policy and the law, to you and those interested USDA officials that the Thompson/OCR/OGC decision, based on the "fresh review" of the 1998 FAD by a 2002 re-investigation and the issuance of a 2002 FAD, is legally insufficient and just plain incorrect.**[1]

---

1

The USDA/OGC legal decisions have been incorrect, historically, and just plain mean-spirited, whether intended or not, on the issue of USDA payment to black farmers for violations of the United States Constitution and federal law prohibiting discrimination in the FSA lending programs. As an example, in 1992, I filed the first ever administrative claim for damages in the Williams matter pursuant to 7 CFR 15.58 and the ECOA.

The USDA, on advice from then General Counsel James Gillilan and OGC career attorneys, Mr. J. Michael Kelly, Mr. Ken Cohen and Mr. Arnold Grundeman, denied the Williams claim, even after a 1.5 million negotiated, written, USDA approved and signed settlement with FSA representatives, in San Antonio, Texas on the legal basis that the ECOA did not waive sovereign immunity to allow for payment of compensatory damages **(betrayal # 1)**.

Aghast at USDA's reversal of the settlement; and, even more, OGC's miserly, miserable misreading of the ECOA waiver of immunity provisions, I personally convinced then Secretary Mike Espy to seek a legal opinion from the Department of Justice, Office of General Counsel on this legal issue: **Did Congress waive sovereign immunity under the ECOA as it relates to USDA/FSA's lending functions?**

Mr. Walter Dellinger, then DOJ General Counsel, based on his own research and amicus briefs submitted my law office, the NAACP legal Defense Fund (Bill Lan Lee, former Associate Attorney General for Civil Rights), the then General Counsel of Housing and Urban Development, and Mr. David Harris, (then Director of the Land Loss Project and former USDA Associate General Counsel for Civil Rights), issued a legal opinion finding **that the Congress had, in fact, waived sovereign immunity under ECOA of 1972, as amended; and, therefore, the USDA was liable for payment of legally allowable compensatory damages** in cases where the USDA/OCR had issued FADs affirming discrimination against black farmers. A victory? Not quite!

Subsequent to the Dellinger Memo, General Counsel Gillian sent a letter, a copy of which I possess, to Secretary Espy indicating that USDA/OGC's opinions on payment of compensatory damages had been, indeed, incorrect and that he, Gillian, would be establishing " in a couple weeks" a structure by which the Secretary may want "to resolve these cases." On advice from Kelly, Cohen and Grundeman, the USDA still refused to settle the Williams administrative claim **(betrayal # 2)**. I, therefore, filed the first ever ECOA law suits against the USDA: ***Williams v.Espy; Powell v. .Espy; Bowie v. .Espy and Long v. .Espy, (subsequently, Glickman)***. I subsequently filed the first ever ECOA class Action law suit against the USDA: ***Williams, et. al. v. Glickman*** ( Judge Thomas Flannery did not certify the class ). ***Pigford et. al. v. Glickman, (Subsequently, Veneman)*** was filed by Al Pires. ***Pigford*** is the derivative of Williams (Judge Paul Friedman certified ***Pigford***).

Mr. Gillian then resigned and so did Mr. Espy. However, prior to Secretary Espy's departure, Judge Flannery ordered, via mediation, the DOJ and USDA to commence settlement negotiations in ***Williams***. A $1.4 million settlement resulted. It was signed y the Williams and myself, approved and signed by Secretary Espy and awaiting DOJ approval and signature as required by law.

Espy signs the Williams settlement, but resigns and departs prior to DOJ approval. Dan Glickman is appointed

**A. <u>USDA/OCR ESTOPPED FROM IMPLEMENTING NEW FAD AS A MATTER OF LAW FOR FAILURE TO NOTIFY DEXTER DAVIS OF REOPENING</u>**

**The law is well settled that an agency charged with the administrative responsibility of issuance of Final Agency Decisions (FADs), in accordance with the Code of Federal Regulations (CFR), "...may decide to reopen or reconsider a decision *(FAD)* 'own its own motion.' It is not a violation of a party's due process rights for the agency to reopen a proceeding on its own motion so long as the party has notice." *Charlesworth v. US Immigaration and Naturalization Service,* 966 F.2d 1323, 1326 (9th Cir. 1992), citing, with approval, *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 742,746 (9th Cir. 1992) and *Elnanger v. INS,* 930 F.2d 784,787 (9th Cir. 1991).**

***Charlesworth, El Rescate and Elnanger,*** **at above cited pages, stand for the proposition that an agency can indeed reopen a final decision, but with notice only to the other party as allowed by the agency's implementing CFRs . The 1995 Dexter Davis FAD affirmed race discrimination against Davis by the USDA/FSA pursuant to 7 CFR Sec. 2.89 (30)(31). In *Charlesworth, El Rescate and Elnanger,* the INS, employing its own CFR implementing regulations which specifically allow for case reopening( See and compare 8 CFR Section 3.2 and 7 CFR Sec. 2.89), reopened a case without notice to the other party although the court found that the other party had constructive notice that his/her case would be reopened.**

**Interestingly, you will note that the Ag. CFRs (7) do not provide for a reopening of a case or FAD by the USDA/OCR for re-investigation or a "fresh review" as do the INS' CFRs (8).**

**B. <u>USDA/OCR IS ESTOPPED FROM REOPENING A PREVIOUSLY ISSUED FAD; ACTIONS TIME BARRED AS A MATTER OF LAW.</u>**

**Even assuming that OCR has the right to re-open the Dexter Davis 1995 and issue a new opinion, fresh review or FAD (whatever OCR wants to call it) to support not settling the remainder of the Davis Resolution Agreement, is clearly prohibited by public policy, law and the Federal Rules of Civil Procedure.**

---

as Secretary of Agriculture. Four months after Secretary Glickman's appointment and on advice from Kelly, Cohen and Grundeman, Glickman orders OCR to re-investigation of the Williams 1992 FAD, years after its first issuance. The new FAD finds no discrimination. I complain to Judge Flannery about USDA's improvident actions in attempting to reverse a FAD. Judge Flannery sustains my motion to force the USDA/DOJ back to mediation to settle the Williams and the three other cases, essential agreeing with my argument that the USDA was estopped as a matter of law and in violation of public policy in its ploy to conduct **"a fresh review"**

First, I believe that it in uncontroverted that when the Secretary or her authorized agents with legally delegated authority (i.e. Assistant Secretary for Administration {Lou Gallegos}, Director of the Office of Civil Rights {David Winningham} or the Deputy Assistant Secretary for Administration {Clyde Thompson} perform functions pursuant to 7 CFR 2.89, investigation complaints of discrimination, issuance of Final Agency Decisions and settlement of cases where there exists affirmative findings of discrimination, then she or they act in the administrative process (Administrative Procedures Act) as a district judge could in a judicial case[2].

If this is true, which it is, then the Secretary and her official decisions (FADs) when accepted by her[3], have the same legal effect as a final judgment in a federal or state district court. Such a decision is covered not only under the applicable Ag. CFRs, but also under Rule 60(b) of the FRCP and any state's rules of civil procedure.

Second, even if a federal agency reopens a FAD, it must do so timely, within one year to correct a mistake of fact.[4] *Vlassis v. INS*, 963 F.2d 547, 550 (2d Cir.1992); *Reich v. Youghiogheny and Ohio Coal Co.*, 66 F.3d 111, 115 n. 4 (6th Cir.1995) (government agency may reopen case within one year to correct mistake of fact, citing Fed. Rule Civ. Proc. 60); *Sones v. United States, Railroad Retirement Bd.*, 933 F.2d 636, 637 (8th Cir.1991); *Dulane v. INS*. 46 F.3d 988, 994 (10th Cir.1995); *CSX Trans., Inc. V. ICC*, 952 F.2d 500, 505 (D.C.Cir. 1992). See FRCP Rule 60(b).

Thus, Mr. Davis has been denied due process in accordance with the law, the Administrative Procedures Act, the Agriculture Department's CFRs, the Equal Credit Opportunity Act, as amended; and, he has been improvidently denied the benefit of his bargain as delineated in the Resolution Agreement, dated March 4, 1998.

Moreover, it is clear that the Thompson/USDA/OGC denial to complete the DAVIS settlement is based on erroneous legal advice and buttressed by a "do not pay black farmers anything if we can help it" mentality in the OGC as evidenced by the OGC's historical

---

[2] A cursory review of the law would convince even the most suspicious of OGC attorneys that this is an accurate reading of the APA and its implementing provisions.

[3] The Dexter Davis USDA/FAD was issued and accepted in 1996, nearly six years ago.

[4] USDA/OCR is disingenuously claiming that the 1996 DAVIS FAD mistakenly included a discussion of years that were not meant to be adjudicated in that FAD; and, further that the inclusion of those years in the FAD were there for background purposes only not-with-standing my enumerated position that the continuing violation and relation back legal theories apply.

resistance and pattern (justice delayed, is justice denied, an intentional and malicious effort by OGC[5]) as described in detail in Footnote Number 1, above.

C. 7 CFR PART 15f, ADMINISTRATIVE CIVIL RIGHTS: ADJUDICATIONS UNDER 741 NOT APPLICABLE TO DAVIS RESOLUTION AGREEMENT; ALJ FORUM INAPPROPRIATE; OCR/THOMPSON FORUM APPROPRIATE

No where in the 15f regulations is there a provision for a previously settled case or complaint, Dexter Davis or Howard Coats, to be adjudicated by an administrative law judge. Just because a case has been docketed in Section 741 does not automatically mean that OCR was correct in effecting such a docketing. OCR was, in fact, wrong to docket DAVIS in Section 741 because Davis is neither a complaint nor a case. Davis is a Resolution Agreement derived from a fully adjudicated complaint.

OGC's effort to transfer the DAVIS matter to ALJ is, once again, a disingenuous effort to deny DAVIS the benefit of his bargain and shift the responsibility for settlement away from the OCR as is required by the 7 CFR 2.89, et. seq., an attempt to shield the political appointees from criticism for paying black farmers too much money.

The USDA/OGC's efforts to defeat a legitimate settlement in DAVIS and COATS[6] is unconscionable and chracteristic.

In view of the above discusion, I demand that a meeting be sceduled, immediatedly, with Mr. Thompson and yourself to resolve the DAVIS matter. Mr. Davis and I will fly to Washington next week to resolve this matter. I plan to be in Washington beginning on September 4, 2002 on other USDA matters.

With every good wish, I remain

---

[5] The DOJ attorneys in charge of the *Pigford* law suit have the exact same attitude as the OGC attorneys as evidenced by the "paucity" of cases settled by USDA. See *Washington Post* article, comment by J. Michael Kelly, Deputy General Counsel.

[6] The OGC has also denied the Coats Resolution Agreement settlement on different but just as improvident and erroneous legal advice and grounds. A Memorandum Brief, although considered a waste of time, energy and money, on the COATS matter is forthcoming.

Sincerely yours,

James W. Myart, Jr.

c: Mr. Dexter Davis
Dale Moore
Lou Gallegos
Clyde Thompson
Nancy Bryson
J. Michael Kelly
Dylan Glenn