UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
NOV - 7 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DEXTER DAVIS, AN INDIVIDUAL
and 305 HARVEST, SONDHEIMER, LA 71254
PHYLLIS DAVIS, AN INDIVIDUAL
305 HARVEST, SONDHEIMER, LA 71254
Plaintiffs
(318)-552-9109

v.

ANN VENEMAN, SECRETARY,
DEPARTMENT OF AGRICULTURE
UNITED STATES OF AMERICA,
and STEVE DOOLEY AND
REESE TRAYLOR, Individually

Defendants

Civil Action No.__________
DUE PROCESS AND EQUAL
PROTECTION OF THE LAW
Fourteenth Amendment
42 U.S.C. § 2000d, TITLE VI
42 U.S.C. § 1981
15 U.S.C. § 1691e, ECOA
PENDENT STATE CLAIMS
LOUISIANA STATE
CONSTITUTIONAL TORT
BREACH OF CONTRACT

JURY ACTION

CASE NUMBER 1:03CV02309
JUDGE: Colleen Kollar-Kotelly
DECK TYPE: Civil Rights (non-employment
DATE STAMP: 11/07/2003

## COMPLAINT

DEXTER DAVIS and PHYLLIS DAVIS (Plaintiffs), individuals, complain of ANN VENEMAN, Secretary, Department of Agriculture and STEVE DOOLEY AND REESE TRAYLOR, in their individual capacities ("Defendants") and allege as follows:

## JURISDICTION AND VENUE

1. This action is brought to remedy discrimination on the basis of race, black, pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution, Title VI, the Civil Rights Act of 1964, as amended, Louisiana Constitution, federal and state statutes regarding Breach of Contract, and the Equal Credit Opportunity Act of 1972, as amended (ECOA).

2. Injunctive and declaratory relief, damages and other appropriate legal and equitable reliefs are sought pursuant to 42 U.S.C. § 2000d ; 42 U.S.C. § 1981 AND 15 U.S.C. § 1691e.

3. Jurisdiction and venue lie in this judicial district, pursuant to 28 U.S.C. § 1391(e) because Defendant Ann Veneman is located in and the actions complained of occurred in the judicial district of the District of Columbia.

## PARTIES

4. Plaintiffs DEXTER AND PHYLLIS DAVIS are residents of Sondheimer, East Carroll Parish, Louisiana. Plaintiffs DEXTER AND PHYLLIS DAVIS have standing to bring this suit.

5. DEFENDANT ANN VENEMAN is the United States Secretary of Agriculture. She may be served with process by Certified Mail Return Receipt Requested, at 1400 Independence Avenue, SW. Washington, D.C. 20250, and/or through her agent for service as provided by law, by serving the United States Attorney for the District of Columbia at Judiciary Center Building, 555 4th Street N.W. Room 5806, Washington, D.C. 20001. DEFENDANT STEVE DOOLEY may be served with

process at 406 Lake Street, Suite B, Lake Providence, La. 71254. DEFENDANT REESE TRAYLOR may be served with process at 406 Lake Street, Suite B, Lake Providence, La. 71254.

## INTRODUCTION

6. This is yet another horrid story chronicling the years, of pain and suffering of an African- American farm family (in their area of the world - Sondheimer, Louisiana)[1] attempting only to pursue the American dream - life, liberty, property and the pursuit of happiness - as do White American farm families all over this country. Despite several lawsuits and claims, ostensibly settled[2], against the Secretary of Agriculture for discrimination, retaliation and reprisal, on the basis of their race, black, in violation of this country's well-established Civil Rights laws, the Davises, and thousands similarly situated, are still beset by the ingrained, institutional racism that emotionally, physically and financially destroy, forever, America's black farmers and their families. This hideous, concerted government ploy has all but caused the extinction of black farm families, including that of the Davises. The saga continues. To insure their constitutionally guaranteed rights, the surviving Davises, with dogged, rugged determinism, have weathered this **"hate storm"** through three (3) Presidents, several Congresses, five (5) Secretaries of Agriculture, a plethora of

---

**[1]The Davis' are one of only a few African American farm families remaining in Northern La.**

**[2]DEXTER AND PHYLLIS DAVIS settled their administrative complaints on March 11, 1998. Attached as Exhibit "A". The Defendant refused and continues to refuse to perform the entire 1998 Resolution Agreement, choosing instead to renege on the Agreement through improper and possibly illegal tactics.**

Presidential Appointees and countless USDA Farm Service Agency officials and Office of Civil Rights directors and investigators. The racial hatred and animus perpetrated by the USDA, dubbed, **"The Last Plantation,"** persist like a plague that cannot be medically or surgically eradicated, let alone legislated or presidentially executed into history.

7. What is more - DEFENDANT SECRETARY ANN VENEMAN, through passivity, inaction and benign neglect, has knowingly allowed top government administrators and lawyers to local federal Farm Service Agency officials across this land to trample on the rights of the Davises and others similarly situated, all such rights guaranteed them by the U. S. Constitution. From numerous government reports, successful lawsuits and black farmers' personal pleas directly to her, the DEFENDANT SECRETARY knows or should know and should have known that these blatant violations of law run rampant throughout every single agency in the mammoth USDA, **"The Last Plantation."**

8. The USDA's Office of General Counsel and Office of Civil Rights, the supposed civil rights enforcement arms for the Secretary, are not only impotent, but also act, collusively, to deny black and minority farmers, including the Davises, their rights[3] under the law, while the unsuspecting black farmers rely, to their detriment, on an ineffectual and non-responsive administrative process. Much has been written and

3

**It is well established that the Bill of Rights constitute two types of individual protections - civil rights and civil liberties. *Civil Rights* are those rights that the government is obligated to protect between parties. *Civil Liberties* are those same exact rights but the government is prohibited from infringing upon. (Citation omitted) The USDA fails, intentionally and with malice, at both.**

declared, including official government reports, decrying the manner in which the USDA has performed and performs its legal duties pursuant to law.[4] In fact, on August 3, 2003 Mr. Lou Gallegos, former Presidentially- appointed USDA Assistant Secretary of Administration[5] was quoted in an article entitled, ***<u>"Virginia Bias Case Triggers Debate"</u>*** as follows:

**'There's nothing more demeaning to humanity than discrimination especially when it is done by your own government . . . ' Gallegos said the Department's Office of General Counsel pushed him to order a detailed review of the (Warren) decision - in effect, an appeal. He said that the lawyers tried to offer evidence that had not been a part of the court record . . . 'I thought that was unseemly . . . ' The payout ($6.6 million) 'was the cost of not acting when they (USDA) should have in a meaningful way'"**

***"Richmond Times Dispatch,*** April 3, 2003

9. Senator Chuck Grassley, in a July 3, 2003 press release entitled, ***<u>"Grassley Concerned About Civil Rights at Department of Agriculture"</u>*** states:

---

4

**See February 26, 2003 EEOC/Hayden, Annual Evaluation of Civil Rights at USDA; USDA Civil Rights Action Team Report, 1997; USDA Civil Rights Action Implementation Team Report; United States Civil Rights Commission Evaluation and Follow Up Reports, 1964, 2003;USDA Office of Inspector General Report to the Secretary, "Evaluation of the Office of Civil Rights Efforts to Implement Civil Rights Complaints, March 1999, "Evaluation of the Office of Civil Rights Efforts to Reduce the Backlog of Program Complaints, September 1997, "Office of Inspector General Report to the Secretary on Minority Participation in Farm Service Agency's Farm Loan Program," September 1997, numerous US Senate and House Agriculture Committee Hearings, Confirmation Hearing of Vernon Parker as Assistant Secretary for Civil Rights, letter from Mr. Lloyd Wright, former Director of Office of Civil Rights, stating that OGC will do anything to destroy civil rights at the USDA, Affidavit of Rosalind Gray, former Director of Office of Civil Rights, etc.**

5

**The Assistant Secretary for Administration was responsible for the USDA Civil Rights program prior to the April 3, 2003 US Senate confirmation of Mr. Vernon Parker as the new Assistant Secretary for Civil Rights. Mr. Gallegos recently retired. In the civil rights community, it is opined that Mr. Gallegos retired under pressure for overriding the Office of General Counsel in its opposition to the $6.6 million dollar award to a black farmer for the exact same circumstance, discrimination in the USDA farm loan program.**

**"The Department of Agriculture must give the Office of Civil Rights the necessary tools in order to overcome many of the problems that have plagued the department throughout the years . . . We can't have any more roadblocks, we need progress."**

In his letter to Secretary Veneman, Senator Grassley queries the Secretary as follows:

> **"I would also like to know what is being done to allow the Office of Civil Rights greater autonomy from the Office of General Counsel? Autonomy is another source of criticism from independent third party analysis, namely the EEOC and the Commission on Civil Rights (whose criticism made the news in a GovExec.com column, June 24.)"**

10. Still, the Secretary has done nothing to improve civil rights at the USDA or to enforce protection of the DAVISES, or those similarly situated, as prescribed by law. Thus, the Secretary has insured that the DAVISES and other similarly situated minority and black farmers and their farms cease to exist as viable farmers in the United States.

11. It is only the federal judiciary, particularly the DC Circuit, that has historically and recently[6] righted the wrongs perpetrated by racist individuals, institutions and government officials in the USDA.

12. A three-judge panel of the D. C. Appeals Court has spoken on this issue: **(The black farmers have been the victims of double betrayal - first by the USDA and then by their own lawyers) (paraphrased)** ***Pigford v. Veneman*** (Citation omitted)

13. But for the intervention of this court, the Davises will lose their farming operations

---

[6] *Pigford, et. al. v. Veneman, Brewington, et. al. v. Veneman, DAVISES v. Veneman, Long v. Veneman, Powell v. Veneman, Bowie v. Veneman, Bowie v. Veneman, Keepseegal v. Veneman,* etc. (Citations omitted)

as will others similarly situated. But for the intervention of this court, the Secretary will be allowed to continue to make a mockery of this country's civil rights laws and painstaking efforts to eradicate discrimination and the effects thereof from our society. But for the intervention of this court, this black farm family will cease to exist - a travesty- like so many before them.

## FACTUAL BACKGROUND

14. PLAINTIFF DEXTER DAVIS is a second generation farmer. PLAINTIFF DEXTER DAVIS' father was a farmer who became ill with emphysema. In February 1982, the senior Davis died. PLAINTIFF DEXTER DAVIS ran his father's farm for two-years after the death. At the age of eighteen (18), PLAINTIFF DEXTER DAVIS began his own farming operation on forty-eight (48) acres of land planting soy beans. PLAINTIFFS DEXTER and PHYLLIS DAVIS were married in 1982. They have two children, Latish (20) and Dexter, Jr. (15).

15. In 1984 that PLAINTIFF DEXTER DAVIS sought financing from the United States Department of Agriculture. His first loan from USDA was $4,800.

16. PLAINTIFF DEXTER DAVIS filed his first discrimination complaint in 1989, claiming unfair and illegal loan denials. At this time PLAINTIFF DEXTER DAVIS was farming approximately 220 acres of cotton and sot beans. The loan denials continued causing economic and personal losses to PLAINTIFFS DEXTER and PHYLLIS DAVIS.

17. PLAINTIFF DEXTER DAVIS continued to file discrimination complaints, and the Defendant Secretary continued refusing to process the complaints.[7]

20. PLAINTIFF DEXTER DAVIS became a participant, like thousands of white farmers

[7] **The Defendant Secretary has admitted that during the Ronald Reagan presidency, the Office of Civil Rights was essentiality shut down and did not process, in accordance with the law, administrative complaints of discrimination.**

had already been, in the FmHA (now, the Farm Service Agency, FSA) loan programs. PLAINTIFF DEXTER DAVIS' painstaking first, and subsequent, communications with FSA loan officials wreaked of disgusting, filthy, ignorant and dehumanizing discrimination and was followed by PLAINTIFF DEXTER DAVIS' intentional exclusion loan program exclusion by USDA government officials simply because he was black. PLAINTIFF DEXTER DAVIS did get financing from the FSA, but it was too little money, too late; each time, for no other reason than, simply, PLAINTIFF DEXTER DAVIS was black.

21. **1998** and beyond, PLAINTIFFS DEXTER AND PHYLLIS DAVIS' nightmare continues.

22. PLAINTIFFS DEXTER AND PHYLLIS DAVIS seek justice and protection from the federal court.

**THE USDA FARM SERVICE PROGRAM**
**AND THE OFFICE OF CIVIL RIGHTS**
**USDA FARM LOAN PROGRAMS**
**AN OVERVIEW**

23. The former FmHA was a credit agency for USDA. It was authorized, as FSA now is, to make various types of loans to farmers who, generally, are unable to obtain credit from commercial sources. ***Hicks v. United States,*** 23 Cl. Ct. 647,650 (1991); *see* Consolidated Farm and Rural Development Act, 7 U.S.C.§ 1922, 1941. FSA is authorized to make loans to qualified borrowers directly, or to guarantee loans made to such persons by commercial lenders. The terms and conditions of such loans vary with the particular circumstances of the borrower, and the loans are made upon the borrower's full personal liability and, typically, are secured by chattels, crops, and/or real estate. *See generally* 7 C.F.R. 1941, *et seq.*

**FSA/ASCS Crop Subsidy and Price Support Programs**

24. FSA also administers the crop subsidy and price support programs of the former ASCS. Because these programs, many of which no longer exist, were wide-ranging and complex during the time period at issue, only a brief explanation of two such programs is offered here.

Disaster payments were made during the late 1980's and early 1990's for the benefit of qualified farmers who experienced certain natural disasters that caused specified levels of area-wide crop losses. To qualify for such assistance, an applicant's gross revenue must have been at or below a specific level. The amount of any disaster payment depended upon various factors including crop type, historic levels of planted acreage and yield, market price, and the individual loss experienced by the farmer-applicant. Such payments did not involve the extension of credit, and there was no repayment required. *See generally* 7 C.F.R. part 1477 (1996) and progeny.

ASCS also administered deficiency payment programs. *See*, e.g. 7. C.F.R. part 713 (1987). These programs typically required a farmer to participate in an acreage reduction program, under which a farmer voluntarily reduced his acreage in a crop by some established percentage and devoted the non-planted acreage to a conservation use. The level of reduction depended upon a determined acreage level, which was based on a farm's historic acreage and yields. Participating farmers were then eligible for deficiency payments when the market price for a crop fell below a target price.

**USDA NON DISCRIMINATION REGULATIONS**

**(7 C.F.R. §§ 2.28, 15.51 AND 15.52, AS AMENDED)**

As early as 1966, which was eight years prior to ECOA's enactment, USDA promulgated internal management guidelines proscribing discrimination based on "race, color, religion, sex, age, disability, or national original" in the administration of any of its direct programs and activities. *See* **(7 C.F.R. §§ 15.51 and 15.52)**. *See also* 31 Fed. Reg. 8175, 8175 (June 10, 1966)/ These guidelines have remained in effect continuous since then and include a voluntary administrative mechanism by which USDA receives complaints of discrimination involving *any* USDA program, including the farm credit and ASCS subsidy programs at issue in this case. *See* 7 C.F.R. §15.52. Under § 15.52(a), a person who believes he or she has been the victim of discrimination in programs conducted directly by USDA may file a complaint with USDA's Office of Civil Rights ("OCR")" within 180 days from the date the person knew or should have known of the alleged discrimination." OCR then investigates the complaint and determines the corrective actions, if any, required to resolve it. 7 C.F.R. §15.52(b). The regulation sets no deadline by which OCR must act on a complaint, it does not establish requirements for how an investigation should be conducted or a claim reviewed, and it does not require that USDA advise a complainant regarding the determination of, or corrective action taken in response to, his/her complaint.

USDA's decision to promulgate section 15.51 and 15.52 was a voluntary and unilateral one, *see* 54 Fed. Reg. 31,163, 31,163(July 27, 1989); 50 Fed. Reg. 25,687,

25,687(June 21,1985), and the filing of an administrative complaint under section 15.52 is not a prerequisite to filing suit against USDA under ECOA or any other statute. Instead, section 15.52 was designed to enable USDA to police itself internally and correct any discriminatory conduct that might arise in programs USDA administers directly. *See* 54 Fed. Reg. 31,163, 31,163-164(July 27, 1989) (citing 5 U.S.C. §301) *See also* 7 U.S.C. §15.50. The USDA Office of Civil Rights has failed at its own regulations and intentionally violates all authorizing federal statutes.

25. In an effort to give the USDA Civil Rights program more authority, the Congress authorized the creation of a new presidential appointee, Assistant Secretary for Civil Rights. President Bush nominated and the US Senate confirmed Mr. Vernon Parker as Assistant Secretary for Civil Rights on April 3, 2003. The Assistant Secretary has been intentionally hampered from performing his statutory and regulatory duties by the Defendant's Veneman, Thompson, Isler and the USDA General Counsel Nancy Bryson, Deputy General Counsel J. Michael Kelly, Associate General Counsel for Civil Rights Arlean Leland and her staff attorneys all in violation of the above-cited federal statutes and Code of Federal Regulations and to the detriment of the Plaintiffs and others similarly situated.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

26. DEFENDANT SECRETARY VENEMAN, by and through her local county supervisors, DEFENDANTS STEVE DOOLEY AND REESE TRAYLOR repeatedly rebuffed and continue to rebuff the efforts of PLAINTIFFS DEXTER AND PHYLLIS DAVIS to receive the benefits of the FSA farm loan programs. The loans

received were time-delayed to the extent that the crop yields at harvest were lower than anticipated. If the loans had been timely, yields would have fulfilled projection. The loan amounts were inadequate to sustain PLAINTIFF DAVIS' farm acreage. There were no equipment loans, even though application was made. The loans received were too little, too late all because PLAINTIFFS DEXTER AND PHYLLIS DAVIS was black. See the Discrimination Complaint of attached hereto marked, Exhibit "B". The Affidavit is incorporated herein for all purposes, expressly including its content as allegations common to all causes of action below delineated, as if set forth fully verbatim.

27. PLAINTIFFS DEXTER AND PHYLLIS DAVIS, socially disadvantaged black farmers, were qualified for credit, attempted to and did apply for credit and FSA assistance , were actually and constructively denied the credit and/or adequate credit while white farmers received ample credit for farm purchases, equipment, operating, emergency and disaster loans. The DEFENDANT'S denials were on the basis of PLAINTIFFS DEXTER AND PHYLLIS DAVIS' race, black, in violation of the ECOA of 1972, as amended, and all other previously cited statutes.

28. On information and belief, the DEFENDANTS in February, 1998, employed an independent company, Compucon, to conduct a discrimination investigation to determine PLAINTIFF DEXTER AND PHYLLIS DAVIS had been discriminate against by Defendant.

29. On information and belief, the Compucon Report to the DEFENDANT affirmed PLAINTIFFS DEXTER AND PHYLLIS DAVIS' allegations of discrimination and

recommended to DEFENDANTS that the case be settled. [8]

30. On information and belief, the DEFENDANT'S, by and through Mr. Lloyd Wright, then Director of OCR, found, pursuant to OCR's enabling regulations, that PLAINTIFFS DEXTER AND PHYLLIS DAVIS had been the victims of discrimination.

31. OCR proceeded to settle the case.

32. On March 11, 1998, settlement was reached and executed between PLAINTIFFS DEXTER AND PHYLLIS DAVIS and Defendant VENEMAN. During the negotiations, DEFENDANT VENEMAN, by and through her attorneys, insisted that a clause requiring Department of Justice approval be included in the Resolution Agreement. PLAINTIFFS DEXTER AND PHYLLIS DAVIS, by and through their attorney, Myart, vehemently objected and disagreed, and so stated in writing, that DOJ had the authority to invade the administrative province of the Defendant. The objection was made because, as suspected, and later confirmed, Defendant's OGC attorneys were clandestinely communicating with DOJ attorneys to stop OCR and Mr. Wright from settling black farmer cases including but not limited to the Davis case. Mr. Wright, angered at the antics of OGC, wrote a letter to Mr. James Gilliland, OGC, (with a copy to Defendant) decrying OGC's deceit, stating specifically:

> **This is a reply to your memorandum addressed to "File and for Interested Parties" dated July 17, 1997, concerning the Carpenter case. This memorandum is clear documentation showing how you, in a very malicious way, are misinterpreting**

[8] **The COMPUCON Report made the same findings and recommendations in the Case.**

**the facts. Also other memorandums (*sic)* that have been written by J. Michael Kelly and others from the Office of General Counsel(OGC) have been designed to distance the OGC from decisions that were made that you or your office fully participated in the development of and approved prior to implementing. Further, it is very clear to me that I cannot trust or depend on OGC for any assistance in dealing with civil rights issues at USDA. Also, it is very clear to me that OCG will do everything it can to discredit me personally and professionally and to obstruct any effort to improve civil rights at USDA.**

**cc: Dan Glickman, Secretary, Richard Rominger, Deputy Secretary, Pearlile Reed, Acting Assistant Secretary for Administration; File And other interested parties.**

See the Lloyd Wright letter, attached hereto, marked Exhibit "C "; same being incorporated herein as if set for fully verbatim.

33. The 1998 Resolution Agreement specifically provided , in part, as follows:

**Paragraph 1:** **To pay Mr. and Mrs. Davis the sum of $114,000 in compensatory damages. A check in the amount payable to Mr. and Mrs. Davis and James W. Myart, Jr. of 306 Preston Avenue, San Antonio, Texas 78210, will be issued as soon as practicable but no later than 30 calender days after this agreement has been signed <u>by all parties, reviewed by the Department of Justice (DOJ), and , if DOJ approval is required, approved by DOJ.</u> (Emphasis added)**

**Paragraph 9.** **That this settlement is only a settlement of Mr. and Mrs. Davis claims for relief for the years 1995 through 1998 that were raised in Mr. and Mrs. Davis November 13, 1995 discrimination complaint. The parties further agree that this agreement does not waive Mr. and Mrs. Davis right to file an action for compensatory damages USDA as to events between the years 1988 through**

**1994 that were the subject of their November 13, 1995, discrimination complaint. Accordingly, USDA agrees that it will not use this agreement to defend such an action by Mr. and Mrs. Davis against USDA concerning the events between the years 1988 through 1994 that were the subject of his December 6, 1995 discrimination complaint, however, USDA reserves the right to raise any and all other affirmative defenses available to it in such a court action against USDA, the United States of America, any other agency of the United States, or any officer, employee, or agent of USDA or of the United States of America, in either his or her official or individual capacity. Mr. and Mrs. Davis agree that they cannot recover any damages resulting from events between the years 1995 through 1998 that were the subject of his November 13, 1995 discrimination complaint. This paragraph is intended only to reserve Mr. and Mrs. Davis' right to file an action for compensatory damages against USDA for events between the years 1988 and 1994 that were the subject of his November 13, 1995, discrimination complaint. Nothing in this paragraph may be construed to reserve Mr. and Mrs. Davis right to file an action for compensatory damages against any officer, employee or agent of USDA or of the United States of American, in either his or her official or individual capacity.**

The March 11, 1998 executed Resolution Agreement, marked Exhibit "A", same being incorporated herein as if fully set forth verbatim. See also Affidavits of Mr. Lloyd Wright, former OCR Director, and Judge (Ret.) Henry Ramsey, Civil Rights Consultant to the Secretary, Exhibit "D."

34. Not only did the Defendant not perform the executed Resolution Agreement, but also refused, pursuant to paragraph #9, to compensate PLAINTIFFS DEXTER AND

PHYLLIS DAVIS damages due in accordance with the Congress' extension of the limitations period of the ECOA.

35. DEFENDANT VENEMAN'S actions in connection with her non-performance of the 1988 settlement agreement constitute the intentional furtherance and continuation of the discrimination suffered by PLAINTIFFS DEXTER AND PHYLLIS DAVIS, thereby, increasing the damages up to the present.

36. Due to DEFENDANT VENEMAN'S illegal conduct, refusal to perform the Resolution Agreement and breach of contract, PLAINTIFFS have suffered almost incalculable damages and will, in all probability, continue to suffer said damages up to and until this court intervenes.

37. On or about July 6, 2002, the DEFENDANT SECRETARY VENEMAN engaged in settlement negotiations with PLAINTIFF DEXTER DAVIS to settle his case. Abruptly, Secretary Veneman presented to PLAINTIFF DEXTER DAVIS and his attorney, James W. Myart, Jr. a "new FAD" that essentially overturned the 1998 FAD finding discrimination. This was a clear violation of law. See Dexter Davis exhibits submitted to the ALJ containing correspondence and argument against this tactic. Attached as Exhibit "E", same being incorporated herein as if fully stated verbatim.

38. On or about June 1, 2000, PLAINTIFF DEXTER DAVIS filed a discrimination complaint based on retaliation. Assistant County Supervisor Steve Dooley, USDA, constantly harassed PLAINTIFF DEXTER DAVIS in regards the 1998 settlement received from the USDA. DEFENDANT STEVE DOOLEY said "I do not feel that you were discriminated against and if I were in Washington D. C., I would not have

settled your case." Dooley further said, " the only reason the USDA settled with you was to get rid of your case."

39. The DEFENDANT SECRETARY VENEMAN, by and through her subordinate, DEFENDANT DOOLEY, said that PLAINTIFF DEXTER DAVIS in order to complete the loan transaction, he would have to bring in your settlement agreement to show how much cash he had. This was a clear violation of the settlement agreement in that the DEFENDANT SECRETARY VENEMAN agreed not to use any part of the settlement proceeds in determining PLAINTIFF DEXTER DAVIS' right to participate in USDA farm programs.

40. On or about July 3, 2001, PLAINTIFF DEXTER DAVIS filed yet another discrimination complaint claiming discrimination and retaliation in denial of a farm and home operating loan. DEFENDANT STEVE DEFENDANT DOOLEY, again, the offending official demanded that PLAINTIFF DEXTER DAVIS bring in all of his checks and receipts related to the 2000 crop expenses. DEFENDANT STEVE DEFENDANT DOOLEY said he was not going to approve the loan in advance of the standard loan processing procedure. He in fact, denied the loan and stated as the reason, that PLAINTIFF DEXTER DAVIS had mismanaged the funds.

41. PLAINTIFF DEXTER DAVIS transferred his files to Madison Parish USDA office because of the discrimination and retaliation of Steve DEFENDANT DOOLEY. DEFENDANT REESE TRAYLOR, Farm Loan Manager, said that he need needed the same information that Steve DEFENDANT DOOLEY requested and you did not want to release that information to DEFENDANT DOOLEY because you thought that

national office was going to support your position. This indicates conspiracy among the Defendant's men to deny PLAINTIFF DEXTER DAVIS his rights under the law.

42. The DEFENDANT SECRETARY VENEMAN, by and through the USDA office of Civil Rights, completed an investigation and dismissed the complaints on pre-textual grounds in furtherance of the intent to punish PLAINTIFF DEXTER DAVIS for filing civil rights complaints and attempting to protect his farming operation and family.

43. DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR willfully conspired to violate, violated and continue to violate the PLAINTIFFS' rights to due process and equal protection under the law as guaranteed by the Fourteenth Amendment.

44. DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR willfully violated and continues to violate the right to due process of and equal protection of the laws as guaranteed by the Louisiana Constitution, Article I §19.

45. PLAINTIFFS were forced to hire the undersigned attorneys to bring this law suit, and, thus seek payment of reasonable attorneys and expenses pursuant to ECOA.and other federal and state statutes.

**FIRST CAUSE OF ACTION**

46. PLAINTIFFS repeat and re-allege each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein.

47. DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR have discriminated against PLAINTIFFS in the terms and conditions of their right not to be discriminated against on the basis of their race, Black, in violation of Title VI, while other non-black citizens are given preferential treatment in federally conducted farm and loan

programs. The PLAINTIFFS, DAVISES, have shown themselves eligible for participation in USDA federal programs, have availed themselves as socially disadvantaged persons, have applied to participate in the federal programs, have been denied participation in such programs, while non-black persons have been allowed, unfettered, to participate in said programs, all in detriment to their ability to earn a living and pursue the right to life, liberty and happiness as afforded white citizens. 42 U.S.C. 2000d.

48. PLAINTIFFS are now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR's discriminatory, conspiratory and retaialtitory practices unless and until the Court grant PLAITIFFS DEXTER AND PHYLLIS DAVIS relief.

**SECOND CAUSE OF ACTION**

48. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein.

49. DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR have willfully and intentionally violated and continue to violate the rights of the PLAINTIFFS by depriving the PLAINTIFFS, on the basis of race, black, of life, liberty, property and the pursuit of happiness without due process of law and denying PLAINTIFFS within the jurisdiction, District of Columbia and State of Louisiana, the equal protection of the laws of the United States of America. Fourteenth Amendment, United States Constitution.

## THIRD CAUSE OF ACTION

50. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein

51. DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR have intentionally discriminated against PLAINTIFFS in the terms and conditions of participation in constitutionally protected federal programs on the basis of their race, Black, in violation of 42 U.S.C. §1981. Non-Black American citizens are being afforded preferential treatment in acquiring Farm and Home loans and Davises pursuant to the federal-funded farm and loan programs administered by the Secretary. PLAINTIFFS have shown themselves eligible for participation in USDA federal programs, have availed themselves as socially disadvantaged person, have applied to participate in the federal programs, have been denied participation in such programs while non-black persons have been allowed, unfettered, to participate in said programs all in detriment to their ability to earn a living and pursue the right to life, liberty and happiness as is afforded white citizens.

52. PLAINTIFFS are now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR's discriminatory practices unless and until the Court DAVISES relief.

## FOURTH CAUSE OF ACTION

54. PLAINTIFFS repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein. PLAINTIFFS are members of a protected class as that phrase is defined in the Civil

Rights Act of 1964, as amended, and the Equal Credit Opportunity Act of 1972, as amended. The Davises have shown themselves eligible for participation in USDA federal programs, to wit: Farm Ownership, Farm Loans, Operating Loans, Equipment loans, emergency loans, etc. have availed themselves as socially disadvantaged person, have applied for each and every such loan and Davis to participate in the federal programs, have been denied participation in such programs and have been denied all such loans while white and non-black persons have been allowed, unfettered, to participate in said programs and receive such loans. The DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR have destroyed the DAVISES ability to earn a living and to pursue the right to life, liberty and happiness as is afforded white citizens and in violation of 15 U.S.C. 1691e. DEFENDANTS DOOLEY AND TRAYLOR'S actions were so outrageous and a total disregard for the rights of the DAVISES that such conduct should not go unpunished. PLAINTIFFS are within the statute of limitations proscribed by 15 U.S.C. 1691e.

55. PLAINTIFFS DEXTER AND PHYLLIS DAVIS are now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR'S discriminatory practices unless and until the Court Davis relief.

**FIFTH CAUSE OF ACTION**
**PENDENT STATE CLAIM**

56. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein.

57. **Louisiana Constitutional Tort.** At all times material and relevant herein, DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR intentionally violated PLAINTIFFS DEXTER AND PHYLLIS DAVIS' rights to equality under the law on account of their respective race, black, and national origin, African-American, all to the PLAINTIFFS DEXTER AND PHYLLIS DAVIS damages. Louisiana Const. Art. I § 19.

57. PLAINTIFFS DEXTER AND PHYLLIS DAVIS are now suffering and will, in all probability, continue to suffer irreparable injury and monetary damages as a result of DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR ANN VENEMAN'S violations of the PLAINTIFFS DEXTER AND PHYLLIS DAVIS' state constitutional rights.

58. Pursuant to Rule 38(b) of the *Federal Rules of Civil Procedure*, PLAINTIFFS DEXTER AND PHYLLIS DAVIS demand a trial by jury in this action.

**WHEREFORE, PLAINTIFFS DEXTER AND PHYLLIS DAVIS REQUEST THAT:**

1. The Court enjoin, by any legal means necessary, DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR continuing, demeaning, unconstitutional and unlawful discriminatory and retaliatory practices;

2. The Court grant PLAINTIFFS DEXTER AND PHYLLIS DAVIS, a judgment against DEFENDANTS VENEMAN, DOOLEY AND TRAYLOR, jointly and severally, in the amount of $35,000,000.00 as damages, in addition, if allowable, to pre-judgment and post-

judgment interest as provided by law together with such other relief as the court deems appropriate,

3. The Court order exemplary damages against DEFENDANTS DOOLEY AND TRAYLOR to punish their total disregard of the plaintiffs' rights

4. The Court award equitable relief as legally appropriate,

5. The Court award reasonable attorney's fees and expenses in accordance with law; and

6. The court award the PLAINTIFFS DEXTER DAVIS AND PHYLLIS DAVIS costs and such other and further relief as appears just and equitable under the circumstances.

Respectfully submitted,

James W. Myart, Jr., P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4815

By:__________________________
James W. Myart, Jr.,
Texas Bar No. 14755950
Jwmyart@aol.com

By:__________________________ Pro Se
DEXTER DAVIS

By:__________________________ Pro Se[9]
PHYLLIS DAVIS

[9] PENDING SWEARING IN OF JAMES W. MYART, JR.

Respectfully submitted,

~~James~~ W. Myart, Jr., P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4813

By:____________________________
James W. Myart, Jr.
Texas Bar No. 14755950
Jwmyart@aol.com

Pro Se

By:____________________________Pro Se
DEXTER DAVIS

By:____________________________Pro Se[9]
PHYLLIS DAVIS

Pro Se

[9]PENDING SWEARING IN OF JAMES W. MYART, JR.