# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **MICHAEL W. STOVALL** v. **UNITED STATES OF AMERICA** | **No. 05-400C** **(Judge Allegra)** |

## AFFIDAVIT OF LAVERNE WILLIAMS

Before me was LAVERNE WILLIAMS who was deposed and said the following:

"My name is LAVERNE WILLIAMS. I am over 18 years old and I am capable of making this affidavit. I have personal knowledge of the facts stated herein and they are stated to the best of my recollection and ability. I make this affidavit under the penalty and understanding of perjury.

I know Mr. Michael Stovall, a fellow black farmer, and many other black farmers, including Dexter Davis and Richard Grant, now deceased, who got administrative settlements through the USDA Office of Civil Rights. I also know Walter Powell and Welchel Long, now deceased, who got hard fought settlement agreements as a result of their federal court cases.

I also personally know Clyde Thompson and Frederick Isler and I am keenly aware of their knowledge of the administrative settlements of Dexter Davis and Michael Stovall. I have had in person and phone conversations with Mr. Thompson and Mr. Isler. Mr. Thompson and Mr. Isler have been in my daughter's home in Texas to meet with me and my husband, Robert Williams over settlement of our administrative discrimination claims of discrimination.

After many years of horrible discrimination and degrading treatment, which continues to this day, against my husband and me by the Farm Service Agency Loan Officials in Texas and Washington D.C., we settled a US District Court case and two administrative discrimination claims against the United States Department of Agriculture in 1998. We are presently in US District Court in suit against the USDA, Mr. Clyde Thompson and Mr. Frederick Isler for the same discrimination that resulted in prior settlments.

The US District Court case alleges discrimination against us by the USDA in violation of the Equal Credit Opportunity Act of 1972 and egregious and unconstitutional conduct of two top government officials, Mr Thompson and Mr. Isler. While District Judge Colleen Koyler-Kotelly has dismissed the claims against Mr. Thompson and Mr. Isler, her order

is not final and it will be appealed. Judge Koyler-Kotelly also issued a ruling that our breach of Contract Claim should be bought in the Federal Court of Claims

The attorney who negotiated the our first court case and our first administrative settlements on our behalf was and is now Mr. James W. Myart, Jr. Mr. Lloyd Wright, former Director, Office of USDA Civil Rights, negotiated and signed the settlement on behalf of the USDA

The most recent settlement agreement, the one partially the subject of the federal court case was negotiated by us directly and Mr. Clyde Thompson and Mr. Frederick Isler. Mr. Thompson and Mr. Isler came to Texas after they got permission from our attorney, Mr. Myart, to speak with us about the facts of our administrative claim. Mr. Myart informed us that he thought it was ok because he felt that Mr. Thompson and Mr. Isler were sincere about their efforts to ultimately get out claim settled.

Upon their arrival in Texas at our daughter's home, Mr. Thompson and Mr. Isler said to us that they could settle our claim only if we fired Mr. Myart as our lawyer and that we needed to fire our lawyer right a way because there would be no more black farmer administrative settlements after ours. We were very scared and frightened by what Mr. Thompson and Mr. Isler were telling us.

Unfortunately and under pressure from and duress from Mr. Thompson or Mr. Isler, we fired our lawyer. In fact, it was either Mr. Thompson or Mr. Isler that actually wrote the letter of termination for us. We signed the termination letter and sent it to Mr. Myart with a copy to Mr. Thompson and the USDA.

After Mr. Thompson and the USDA received the termination letter, Mr. Thompson and Mr. Isler drafted the settlement agreement including what they had promised us in Texas and sent it to us. The settlement agreement drafted by Mr. Thompson and the USDA reflected that we would get $25,000 in compensatory damages and debt relief. We thought the agreement meant that the money was for my husband to get a tractor repaired. We did not understand the term compensatory damages and we were unaware that our claim for such damages was far greater than what they told us.

This was unfair and Mr. Thompson or Mr. Isler took advantage of us. My husband did not want to go along with what Mr. Thompson or Mr. Isler were proposing, especially the part about firing Mr. Myart. He did because like me he was afraid that we would lose out all together if we did not go along with Mr. Thompson or Mr. Isler.

When we showed the agreement to Mr. Myart, after we signed I, and when the local USDA officials did not do what Mr. Thompson and Mr. Isler promised in the agreement, Mr. Myart was in shock and agnry. He informed us that we had been wronged again and placed under duress in signing such an unfair agreement based on the misrepresentations, unconstitutional and illegal conduct of Mr. Thompson and Mr. Isler.

We rehired Mr. Myart to sue the USDA and Mr. Thompson and Mr. Isler.

I have attached the important documents regarding our cases in US District Court and the Federal Court of Claims and I incorporate them as a part of this affidavit. The federal Court Claims case was dismissed. Mr. Myart explained to us that the claims court case had to be dismissed because of the pending case in the federal district court case.

Again, I am expressly aware and have knowledge that those other similarly situated black farmers also settled their administrative discrimination claims. I am aware of this because Michael Stovall, Richard Grant, Matthew Grant and Howard Coats have settlement agreements similar, almost exactly the same but for facts specific to each of them, to our first administratively settled discrimination case. Mr. Wright settled that case with us.

All of us black farmers talked and still talk on a regular basis and we share our personal stories on how USDA and the FSA discriminated against us and how despite the settlement in our cases and the over $800,000,000 settlement in *the **Pigford v. Veneman*** and the ***Brewington v. Veneman*** Class Black Farmer Class Action Lawsuits, the USDA and FSA officials in the state and national offices were continuing to discriminate against black farmers. We all joined the National Black Farmers Association and the Black Farmers and Agriculturalists Association. We all verbally shared and compared our settlements with each other and the black farmers in these groups.

The FSA Officials who discriminated against us, including Mr. Thompson and Mr. Isler, in furtherance of the discrimination, were not disciplined by the USDA and they were the same officials placed in charge of executing the programmatic relief provisions outlined in the settlement agreement. The discrimination has never stopped.

It was my understanding that Mr. Thompson and Mr. Isler were responsible for executing and monitoring the settlement agreements to insure that we and the other black farmers got what they were entitled to under the settlement agreements.

When it became obvious to us that neither the FSA officials in Texas and Washington, D.C., including Mr. Thompson and Mr. Isler, were concerned about our rights and our farming operation and that they were willfully and maliciously violating the agreement, we had no choice but to sue. We even met with Secretary of Agriculture, Ms. Ann Veneman and the present acting Secretary of Agriculture Chuck Conner when he worked in the White House as Special Assistant to President George Bush. Nothing has happened.

After the Tennessee protest, the black farmers including me and my husband were invited to meet on or about July 16, 2002, in Washington DC to meet with Secretary Ann Veneman, Clyde Thompson, Mr. Isler and Ms. Arlene Leland, USDA Deputy General Counsel for Civil Rights. Robert and I went to those meetings in Washington DC. The meetings were held at the La' Efant Plaza Hotel and in the USDA Conference Room in the USDA'S Whitten Office Building.

During the two meetings, Robert and I presented our horror stories to the entire panel and we discussed how the USDA officials were continuing to discriminate against us. We did so only after Mr. Myart gave us permission to discuss our cases in the open panel meeting. The panel included Mr. Thompson and Mr. Isler. After we discussed the cases, Robert and I were asked questions about the prior settlement agreements the programmatic relief provisions, and the continued malicious, retaliatory conduct of the USDA officials at the state and national levels.

In fact, all the framers in attendance at the meeting included Gary Grant, Richard Grant, Dexter Davis, Michael Stovall us and many other black farmers. All the farmers with these administrative civil rights complaints especially those with the settlement agreements discussed in detail during the panel meetings at the La' Efant Plaza Hotel and at the Department of Agriculture meeting with Secretary Ann Veneman. If my memory serves me correctly, Mr. Thompson and Mr. Isler were in attendance at the Veneman meeting.

I heard Mr. Stovall, Mr. Grant and Mr. Davis discuss their settlement agreements in detail at both meetings.

Mr. Thompson's assertion that he was not involved and does not know about Michael Stovall's case or the other black farmer administrative cases, the settlement agreement(s) and the breaches of the settlement agreement(s), including the Michael Stovall alleged breach is just not true.

AFFIANT SAYETH FURTHER NOT.

Laverne Williams

**SUBSCRIBED AND SWORN before me on this 9th day of November, 2007.**

Notary Public

KATHY BLUEFORD
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2011