# ATTACHMENT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT WILLIAMS, an Individual, and LAVERNE WILLIAMS, an Individual;<br><br>Plaintiffs<br><br>ANN VENEMAN, SECRETARY, DEPARTMENT OF AGRICULTURE<br><br>UNITED STATES OF AMERICA, FREDERICK ISLER and CLYDE THOMPSON, Individually and in their governmental capacities<br><br>Defendants | Civil Action No. 03-2245 (CKK)<br><br>Equal Protection and Due Process<br>Fifth Amendment<br>15 U.S.C. § 1691e, ECOA |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs ROBERT WILLIAMS and LAVERNE WILLIAMS, Individually, complain of Defendant ANN VENEMAN, Secretary of the Department of Agriculture, in her official capacity and Defendants FREDERICK ISLER and CLYDE THOMPSON, Individually and in their official capacities. and allege as follows:

## I.
## JURISDICTION AND VENUE

1. Jurisdiction and venue lies in this judicial district, pursuant to 28 U.S.C. § 1391(e), because Defendants Ann Veneman, Frederick Isler and Clyde Thompson are located in and the actions complained of occurred in the judicial district of the District of Columbia.

## II.
## PARTIES

2. Plaintiffs Robert Williams and LaVerne Williams are residents of Roscoe, Nolan County, Texas.

3. Defendant Ann Veneman is the United States Secretary of Agriculture ("USDA"). Secretary Veneman has appeared and is before the Court. Defendant Clyde Thompson is the Deputy Assistant Secretary for Civil Rights. Defendant Clyde Thompson has appeared and is before the Court. Defendant Frederick Isler is the USDA Deputy Director of the Office of Civil Rights. Defendant Frederick Isler has appeared and is before the Court.

## III.
## FACTUAL BACKGROUND

### A. THE USDA FARM SERVICE PROGRAM AND THE OFFICE OF CIVIL RIGHTS

4. The United States Department of Agriculture ("USDA") was founded in 1862 by President Abraham Lincoln. According to President Lincoln, it was the "people's department." Since its founding, the functions of the USDA have increased. One of its governmental functions at present is to provide assistance to America's farmers and ranchers. The USDA created the FmHA, a credit agency that was authorized to make various types of loans to farmers who are unable to obtain credit from commercial sources. *Hicks v. United States,* 23 Cl. Ct. 647,650 (1991). *See also* Consolidated Farm and Rural Development Act, 7 U.S.C.§ 1922, 1941.

5. These functions are now performed by the FSA, the successor agency to the FmHA. The FSA makes direct and guaranteed farm ownership and operating loans to family-size farmers and ranchers who cannot obtain commercial credit from a bank, Farm Credit System institution, or

other lender. FSA loans can be used to purchase land, livestock, equipment, feed, seed, and supplies. FSA loans can also be used to construct buildings or make farm improvements.

6. The terms and conditions of such loans vary with the particular circumstances of the borrower. The loans are made upon the borrower's full personal liability and are typically secured by chattels, crops, and/or real estate. *See generally* 7 C.F.R. 1941, *et seq*. By law, all such loans are extended to first time and socially disadvantaged farmers, including black farmers such as Plaintiffs.

## B. USDA NONDISCRIMINATION REGULATIONS

7. In 1966, the USDA promulgated internal management guidelines proscribing discrimination based on race, color, religion, sex, age, handicap, or national original in the administration of any of its direct programs and activities. These internal guidelines are currently codified in 7 CFR §§ 15.3, 15d.2. The guidelines include a voluntary administrative mechanism by which USDA receives complaints of discrimination involving any USDA program, including the Farm Credit and ASCS subsidy programs at issue in this case. *See* 7 CFR §§ 15.6, 15d.4.

8. The Office of Civil Rights ("OCR"), an agency created by federal law under the operation and control of the USDA, is the government agency that is charged with the responsibility of accepting, investigating, issuing final agency decisions and resolving complaints of discrimination pursuant to Title VI, the Equal Credit and Opportunity Act ("ECOA") and the Code of Federal Regulations. Pursuant to the ECOA, the USDA can be held liable for acts of discrimination in the conduct of FSA's federally assisted programs. 15 USC § 1691e *et seq*. *See also* 42 U.S.C. 2000d; Dellinger Report. Moreover, the USDA can be ordered to pay compensatory damages as well as attorneys fees and costs to a person who has been found to have been discriminated against in a USDA program. 15 USC § 1691e. The court is also empowered to "grant such equitable and

declaratory relief as is necessary to enforce the requirements of the ECOA." 15 USC § 1691e(c).

9. Under § 15.6, a person who believes he/she has been the victim of discrimination in programs conducted directly by USDA may file a complaint with the Secretary or any agency within 180 days from the date of the alleged discrimination. 7 CFR § 15.6. Upon receipt, the complaint "shall be promptly referred to the Assistant Secretary for Civil Rights." *Id.* Under the guidelines, OCR is then supposed to investigate the complaint and determine the appropriate corrective actions, if any, required to resolve it. The regulations do not set a deadline by which OCR must act on a complaint nor do the regulations establish requirements regarding the conduct or review of investigations. The filing of an administrative complaint under §15.6 is not a prerequisite to filing suit against USDA under ECOA or any other statute. Instead, §15.6 was designed to enable USDA to police itself internally and correct any discriminatory conduct that might arise in programs USDA administers directly. *See* 54 Fed. Reg. 31,163, 31,163-164(July 27, 1989) (citing 5 U.S.C. §301) *See also* 7 U.S.C. §15.6.

10. Rather than operating as intended to protect persons such as Plaintiffs, the USDA's Office of General Counsel ("OGC") and OCR, the supposed civil rights enforcement arm for the USDA and Defendant Veneman, have in the past and continue to deny black and minority farmers, including Plaintiffs, their rights under the law.

## C. PLAINTIFFS' HISTORY WITH THE USDA

11. Plaintiffs Robert and LaVerne Williams operate a small farm in Roscoe, Texas. Due to their race, Plaintiffs have experienced thirteen years of continually racial discrimination, racial animus, hatred, reprisal and retaliations from Defendant Secretary Veneman and the other

Defendants, as well as FSA officials in Washington, D.C. and Nolan County Texas; OCR officials in Washington, D.C. and the State of Texas; and OGC staff attorneys.

12. In 1995, Plaintiffs were the very first black farmers to file suit against the Secretary of Agriculture invoking Title VI and ECOA because of insidious, intentional discrimination when Plaintiffs attempted to avail themselves of the FSA's federally assisted programs.

13. In conjunction with their 1995 lawsuit, Plaintiffs requested that Agriculture Secretary Mike Espy seek a legal opinion from the Office of General Counsel, Department of Justice ("DOJ") on the applicability of the ECOA and the damages it provided to the USDA. The legal opinion issued by DOJ General Counsel Walter Dellinger contradicted Defendant Veneman's position regarding sovereign immunity. The legal opinion specifically stated that Congress, through enactment of the ECOA, waived sovereign immunity and that, as a consequence, the USDA was liable for the payment of compensatory damages and other relief, including attorneys fees, if found to have violated the ECOA. After issuance of the legal opinion, Plaintiffs' 1995 lawsuit, along with companion lawsuits, *Powell v. Glickman*, *Bowie v. Glickman* and *Long v. Glickman,* were successfully settled giving impetus to black and other minority farmers all over the country to join the *Pigford v. Veneman*, *Brewington v. Veneman,* and *Keepsegal v. Veneman* class action lawsuits.

14. Despite the settlement of their 1995 lawsuit, Plaintiffs continue to be victimized by Defendant Veneman. Since 1999, Plaintiffs have filed two more complaints of discrimination against Defendant Veneman as well as an administrative complaint. The 1999 matter was investigated by the OCR and negotiations with the Williams, represented by counsel James W.

Myart, Jr., began in Washington in July 2002. Plaintiffs returned to Texas when no settlement was reached.

15. Prior to such negotiations, on or about January 15, 2002, Plaintiffs made application to the FSA for a farm and home loan to operate their 1000 acre farm. The application was completed by Plaintiffs with the assistance of Don Craduck, the local FSA official in Fisher County, Texas. On or about February 8, 2002, Plaintiffs were informed by Craduck that their application was complete and that all procedures for loan approval were complete.

16. On or about February 22, 2002, Plaintiffs contacted Sam Snyder, a FSA Loan Official in Washington, D.C., regarding the status of their loan application The following week, Snyder advised Plaintiff LaVerne Williams that there had been some hold-ups because of complaints from local white farmers. Plaintiffs were justifiably alarmed given that local white farmers had harassed Plaintiffs for the past 13 years in concert with local FSA officials.

17. On information and belief, Craduck discussed Plaintiffs' farm and home loan application with other parties including local white farmers. As a result of such discussion, the news of Plaintiffs' loan application was brought to the attention of Plaintiffs' creditors causing the creditors to immediately file liens against Plaintiffs' property in an effort to thwart Plaintiffs' loan application. Plaintiffs were also advised by Craduck that that the outcome of their application was delayed as he needed additional information.

18. On or about March 15, 2002, Plaintiffs discovered that Craduck had investigated the existence of liens on Plaintiffs' property on three different occasions. Upon information and belief,

Craduck was delaying the application while he unlawfully recruited opposition to the Williams loan among local white farmers and other FSA officials.

19. On or about April 10, 2002, Plaintiffs contacted Carolyn Cooksie, the Assistant Administrator of the FSA. Plaintiffs advised Ms. Cooksie that they had concerns regarding the handling of their loan application by the local FSA office. Ms. Cooksie advised Plaintiffs to move on and just pay off any liens so there would be no problem receiving loan funds. Taking Ms. Cooksie at her word, Plaintiffs paid off the liens. After Plaintiffs advised Craduck that their liens had been paid off, he told them they needed to show $3,000.00 in their bank account in order for the farm operation to show cash flow. At that point out of sheer frustration, Plaintiffs gave up. Every time they complied with FSA instructions, additional obstacles were placed in the way that prevented the processing of their loan application. Defendants' actions in delaying Plaintiffs' 2002 application violated the provisions of the ECOA given that Plaintiffs were qualified for a farm loan, had applied for a farm loan, and were denied a farm loan without any reasonable justification and on the basis of their race.

20. On or about May 9, 2002, Plaintiffs filed a discrimination complaint with OCR. The OCR contacted Plaintiffs in response and commenced an investigation. Jerome Williams, an OCR investigation, traveled to Roscoe, Texas to investigate Plaintiffs' complaint. Upon his return to Washington, Mr. Williams, on information and belief, informed Defendants that Plaintiffs had been discriminated against with regard to their 2002 application.

21. On or about July 6, 2002, Plaintiffs and at least 40 other black farmers traveled to

Washington, D. C. at the invitation of Defendant Veneman to meet with her to discuss resolution of their discrimination complaints. Previous to such invitation being extended, several hundred black farmers had staged a sit-in and takeover of a USDA office in Tennessee. During such visit to D.C., Defendants settled an administrative case filed by Richard Grant, a black farmer, for substantial compensatory damages, but later intimated that the case should not have been settled. On information and belief, Defendant Veneman later admitted that the Richard Grand settlement was reached to appease the protesting black farmers.

22. While in D.C. in July 2002, Plaintiffs spoke directly with Defendants Veneman, Thompson and Isler regarding their case and were assured that their case would be settled. After the meeting in D.C., Defendants Isler and Thompson expressed an interest in traveling to Texas to interview Plaintiffs and obtain more information regarding their 2002 complaint. In good faith, Plaintiffs' attorney gave Defendants permission to meet with Plaintiffs outside his presence to gather more information regarding their complaint. Defendants Isler and Thompson traveled to Texas and met with Plaintiffs in the presence of their adult daughter, Gwen Williams. The meeting was by no means an interview. Instead, Defendants took advantage of the opportunity to talk to Plaintiffs outside of the presence of their attorney to try to pressure them into settlement of their claims.

23. During the meeting in Texas, Defendants coerced Plaintiffs to terminate Attorney Myart because their case would not settle at all if Myart continued to represent them. At the prompting and instigation of Defendants Isler and Thompson, Plaintiffs sent a termination letter to Attorney Myart so that they could settle their claims against Defendants. Defendants Isler and

Thompson than pressured Plaintiffs into agreeing to the 2002 Resolution Agreement. *See* Exhibit A, 2002 Resolution Agreement between Plaintiffs and the USDA attached hereto and incorporated herein. The 2002 Resolution Agreement provided for compensatory damages totaling $25,000. *Id.* It did not, however, reflect that Defendants Isler and Thompson told Plaintiffs that the $25,000.00 was for payment of Plaintiffs' tractor and not for compensatory damages. *Id.* The 2002 Resolution Agreement was valued far less than the value of Plaintiffs' claim, did not make Plaintiffs' whole under the law and, in fact, left them in a worse financial and emotionally debilitating position then they were in prior to the 2002 Resolution Agreement. Defendants' acts in obtaining the 2002 Resolution Agreement were clearly discriminatory and demonstrate a continued pattern of discrimination by Defendants when reviewing the history of their dealings with Plaintiffs.

24. Additionally, Defendants ignored a prior resolution agreement. The 1997 Resolution Agreement between Plaintiffs and the USDA provided that "any loan application for a farm operating loan submitted by Mr. and Mrs. Williams within 6 years after this settlement agreement has been signed by all parties will be <u>viewed in a light most favorable to Mr. and Mrs. Williams</u>." *See* Exhibit B, 1997 Resolution Agreement between Plaintiffs and the USDA attached hereto and incorporated herein. Defendants did not abide by the provisions or the intent of the 1997 Resolution Agreement when Plaintiffs' 1999 loan application was mishandled or when Plaintiffs' 2003 loan application was denied.

25. Moreover, Defendants' actions, including those committed by the local FSA county officials, with regard to Plaintiffs' loan applications since execution of the 1997 Resolution

Agreement cannot in any way be construed as being viewed most favorably. In considering Plaintiffs' 2002 application, Defendants conducted numerous property lien searches to find some basis for stalling or denying Plaintiffs' application when only search was required by USDA guidelines. In fact, when considering the applications from white farmers, only one search is conducted.

26. The national office of the FSA violated its legal responsibilities and duties because its Office of Civil Rights was supposed to "monitor all assistance provided..." as outlined in the 1997 Resolution Agreement. *See* Exhibit B. Additionally, the 1997 Resolution Agreement provided that the FSA would ensure that Plaintiffs will not have to deal with the current Agriculture Credit Manager in the Nolan County office. *Id.* Plaintiffs, however, were not told that in order to avoid dealing with the Credit Manager in the Nolan County office, they would be required to travel outside of Nolan County to receive FSA services, unlike white farmers in the same locale.

27. After lodging formal complaints regarding the 2002 Resolution Agreement and the manner in which it was obtained, Defendant Veneman represented to Plaintiffs that a thorough investigation would be conducted of the claims of misrepresentation, coercion, collusion, interference with contract and fraud. She also assured Plaintiffs that if their claims were affirmed, immediate relief would be provided. In spite of clear evidence of official misconduct in procurement of the 2002 Resolution Agreement, Defendant Veneman has not conducted the promised investigations, nor has she provided any form of relief. In fact, Defendant Veneman has never responded to Plaintiffs' formal complaints.

28. Plaintiffs applied to the FSA for a farm operation loan in 2003. After completing the application, Plaintiffs submitted it to Roger Colina, the loan officer for Fisher County, Texas. Some time thereafter, Plaintiffs inquired as to the status of their loan application. Mr. Colina advised them that they had to apply to two private sources for loans and upon denial by the private sources, reapply to the FSA. Plaintiffs reapplied and provided proof of denials from two private sources. Thereafter, Mr. Colina advised that that their application had been denied as it was fraudulent because Plaintiffs had failed to list their tractor as an asset. Rather than being permitted to amend this error, Plaintiffs' loan application was denied.

29. On or about June 15, 2003, Plaintiffs filed an administrative complaint which is now pending in OCR. Plaintiffs' 2003 complaint related to the handling of their 2003 farm operation loan application. Plaintiffs' 2003 complaint, currently in the possession of the USDA, details their allegations regarding the handling of their 2003 loan application. Plaintiffs allege that Defendants denied their application for farm operation loans on the basis of their race, a violation of the ECOA. Plaintiffs have received little to no communications regarding their 2003 complaint from Defendants.

## C. <u>Plaintiffs' Injuries and Damages</u>

30. Plaintiffs suffered and continue to suffer injuries and damages as a result of Defendants' illegal actions, including, but not limited to, injury to their business relations, their credit reputation as well as their standing in the local farm community. Due to the stress related to

Defendants' repeated acts of discrimination, Plaintiff LaVerne Williams has suffered several heart attacks and, on one occasion, had to be airlifted to a hospital in Lubbock, Texas. Moreover, Plaintiffs Robert and Laverne Williams have been under psychiatric care for depression, anxiety and marital dysfunction. Plaintiffs have suffered almost incalculable pecuniary and non-pecuniary damages, and will in all probability, continue to suffer damages in the future unless and until this Court intercedes.

31. Plaintiffs are entitled to recover their reasonable attorneys' fees, including paralegals' fees, and expenses associated with the litigation of their claims. Plaintiffs are entitled to recover a sum from Defendants to compensate Plaintiffs for a reasonable fee for their attorneys' fees, including paralegals' fees, in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

## IV. CAUSES OF ACTION

### A. VIOLATIONS OF THE FIFTH AMENDMENT

32. As and for their first cause of action against Defendants, Plaintiffs restate and reallege paragraphs 1-31, above, as if fully stated herein and would further show the Court as follows:

33. Defendants have willfully and intentionally violated and continue to violate the rights of Plaintiffs by depriving Plaintiffs, on the basis of their race, of life, liberty, property and the pursuit of happiness without due process of law and denying Plaintiffs the equal protection of the laws of the United States of America as guaranteed by the Fifth Amendment.

34. Plaintiffs have suffered and continue to suffer from Defendants' intentional

deprivation of life, liberty and property without due process of law and the equal protection of the law. Plaintiffs request injunctive relief from the Court to prevent further violations by Defendants of their Fifth Amendment rights. Plaintiffs seek to enjoin Defendants, during the pendency of this action, from denying any loan applications submitted by Plaintiffs to the FSA. If the Court does not grant the requested injunctive relief, Defendants will continue their discriminatory activities against Plaintiffs. If Plaintiffs' 2003 loan applications are denied, Plaintiffs will suffer irreparable injury because they will be without the necessary funding to continue their farming activities and would be in danger of losing their farm and livelihood. Defendants will not suffer undue hardship or loss because of the issuance of this injunctive relief, and such relief will prevent irreparable injury to Plaintiffs.

35. Plaintiffs request that the Court set their request for preliminary injunction for hearing at the earliest possible time.

**B. <u>VIOLATIONS OF THE EQUAL CREDIT AND OPPORTUNITY ACT</u>**

36. As and for their second cause of action against Defendants, Plaintiffs restate and reallege paragraphs 1-35, above, as if fully stated herein and would further show the Court as follows:

37. Plaintiffs are members of a protected class as defined in the Civil Rights Act of 1964 and the Equal Credit Opportunity Act of 1972.

38. Plaintiffs have:

a. shown themselves eligible for participation in USDA federal programs including Farm Ownership loans, Farm Operating Loans, Equipment Loans and Emergency loans, etc;

b. have availed themselves of the USDA loan programs as socially disadvantaged persons; and

c. have applied for each and every loan and grant available under the federal programs; and

d. have been denied participation in such programs even though white persons have been allowed to participate in said programs and receive such loans and grants.

39. Defendants' violations of the ECOA include, but are not limited to, the following:

a. Their handling of Plaintiffs' 2003 loan application;

b. Their denial of Plaintiffs' 2003 loan application;

c. The manner in which they obtained Plaintiffs' consent to the 2002 Settlement Agreement; and

c. The manner in which they convinced Plaintiffs to terminate their legal representation in order to coerce Plaintiffs into agreeing to the 2002 Settlement Agreement.

40. The ECOA prohibits racial discrimination in any aspect of a credit transaction. *See* 15 USCA § 1691(a)(1). The handling of 2002 Resolution Agreement directly related to Plaintiffs' repeated attempted credit transactions with the FSA, and can be considered a credit transaction in itself given that it addressed loans currently outstanding. Defendants should not be permitted to avoid Plaintiffs' claims for discrimination and violations of the ECOA relating to the 2002 Resolution Agreement given that Defendants drafted the contract, Defendants deliberately misled Plaintiffs when obtaining their agreement to it and Defendants induced Plaintiffs to agree to it without advice of counsel. Plaintiffs' claims relating to the 2002 Resolution Agreement are factually interdependent with their claims arising upon the date that Agreement was made and subsequently. Obviously, a material issue exists as to whether Plaintiffs intended to release claims

against Defendants for Defendants' acts of discrimination in procuring the 2002 Resolution Agreement.

41. The violations of the ECOA had a detrimental effect on Plaintiffs' ability to earn a living and pursue the right to life, liberty and happiness as is afforded white citizens. Plaintiffs have suffered and continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the ECOA, as described in paragraphs 30 and 31 above. Plaintiffs request the Court grant them compensatory damages as well as their reasonable attorneys fees and expenses incurred in conjunction with their claims against Defendant as permitted under 15 USCA § 1691e. Plaintiffs also request the following equitable and declaratory relief from the Court:

a. Enjoin Defendants from continuing unlawful discriminatory practices against Plaintiffs including, but not limited to, those detailed herein;

b. Appoint a Court-Appointed Administrator to conduct the affairs of the OCR; and

c. Enjoin the OGC of the USDA from continuing to violate federal law by its illegal intrusion into the province of the OCR.

## V.
## REQUEST FOR A TRIAL BY JURY

42. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury in this action.

## PRAYER

WHEREFORE, Plaintiffs Robert Williams and LaVerne Williams request that Defendants be required to appear and answer herein, and that the Court:

A. Set Plaintiff's Application for Temporary Injunction against Defendants for hearing;

B. Issue a temporary injunction, after notice to Defendants and an evidentiary hearing, enjoining:

(1) Defendants from denying any loan applications submitted by Plaintiffs to the FSA;

(2) Defendants from continuing unlawful discriminatory practices including, but not limited to, appointing a court appointed administrator to conduct the affairs of the USDA Office of Civil Rights; and

(3) the USDA Office of General Counsel from violating federal law in its illegal intrusion into the province of Office of Civil Rights.

C. Issue a declaration that the USDA has violated the provisions of the ECOA as well as Plaintiffs' Fifth Amendment rights continually in its dealings with Plaintiffs;

D. Grant Plaintiffs Robert Williams and LaVerne Williams judgment against Defendants for:

(1) Compensatory damages;

(2) Reasonable attorney's fees and expenses;

(3) Costs of suit; and

(4) such other and further relief as appears just and equitable.

Respectfully submitted,

James W. Myart, Jr. P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4815

By:____________________________
James W. Myart, Jr.

Federal Bar No.TX0021
myart@sbcglobal.net

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served under Rule 5 of the Federal Rules of Civil Procedure this ______ day of April, 2004 to the following:

Michael Sitcov
Joshua Z. Rabinovitz
United States Department of Justice
Civil Division, Room 7340
20 Massachusetts Avenue, NW
Washington, D.C. 20530

______________________________
James W. Myart, Jr.