FILED

NOV - 7 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICHARD GRANT, an Individual, and as Next Friend To HEATH R. GRANT, A Minor, RICHARD GRANT, JR., an an Individual, ADRIENNE G. TAYLOR, an Individual, each an HEIR TO THE ESTATE OF MATTHEW GRANT, deceased, THE ESTATE OF MATTHEW GRANT
and
JAMES W. MYART, JR., an Individual

306 Preston Ave E
San Antonio, TX
78210
(210) 533-9461

306 Preston Ave. S.A. TX
78210
210-533-9461

Plaintiffs

v.

ANN VENEMAN, SECRETARY, DEPARTMENT OF AGRICULTURE UNITED STATES OF AMERICA

Civil Action No.__________
DUE PROCESS AND EQUAL PROTECTION OF THE LAW
Fourteenth Amendmend
42 U.S.C. § 2000d, TITLE VI
42 U.S.C. § 1981
15 U.S.C. § 1691e, ECOA
PENDENT STATE CLAIMS
North Carolina Constitutional Tort
BREACH OF CONTRACT

CASE NUMBER 1:03CV02308
JUDGE: Colleen Kollar-Kotelly
DECK TYPE: Civil Rights (non-employment)
DATE STAMP: 11/07/2003

JURY ACTION

**COMPLAINT**

RICHARD GRANT, Individually and as Next Friend to HEATH R. GRANT, A minor, RICHARD GRANT, JR., ADRIENNE G. TAYLOR, each an HEIR TO THE ESTATE OF MATTHEW GRANT, deceased, the ESTATE OF MATTHEW GRANT and JAMES W. MYART, JR. ("Plaintiffs") complain of ANN VENEMAN, Secretary, Department of Agriculture ("Defendant") and allege as follows:

**JURISDICTION AND VENUE**

1. This action is brought to remedy discrimination on the basis of race, black, pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution, Title VI, the Civil Rights Act of 1964, as amended, ________, North Carolina Constitution, federal and state statutes regarding Breach of Contract, and the Equal Credit Opportunity Act of 1972, as amended (ECOA).

2. Injunctive and declaratory relief, damages and other appropriate legal and equitable reliefs are sought pursuant to 42 U.S.C. § 2000d ; 42 U.S.C. § 1981 AND 15 U.S.C. § 1691e.

3. Jurisdiction and venue lie in this judicial district, pursuant to 28 U.S.C. § 1391(e) because Defendant Ann Veneman is located in and the actions complained of occurred in the judicial district of the District of Columbia.

**PARTIES**

4. Plaintiffs Richard Grant, Heath R. Grant, Richard Grant, Jr. and Adrienne Grant Taylor are residents of Tillery, North Carolina. Plaintiff James W. Myart, Jr. is a resident of San Antonio, Bexar County, Texas.

Plaintiffs Richard Grant, Individually and As Next Friend to Heath R. Grant, A Minor, Richard Grant, Jr., Adrienne Grant Taylor, Individuals, each an Heir to the Estate of Matthew Grant, deceased, and the Estate of Matthew Grant , by and through Plaintiffs Richard Grant, Individually and As Next Friend To Heath R. Grant, A Minor, Richard Grant, Jr. and Adrienne Grant, as heirs of and beneficiaries to the Estate of Matthew Grant, have standing to bring this suit.

5. Defendant Ann Veneman is the United States Secretary of Agriculture. She may be served with process by Certified Mail Return Receipt Requested, at 1400 Independence Avenue, SW. Washington, D.C. 20250, and/or through her agent for service as provided by law, by serving the United States Attorney for the District of Columbia at Judiciary Center Building, 555 4th Street N.W. Room 5806, Washington, D.C. 20001.

## INTRODUCTION

6. This is yet another horrid story chronicling the years, of pain and suffering of an African- American farm family (in their area of the world - Tillery, North Carolina)[1] attempting only to pursue the American dream - life, liberty, property and the pursuit of happiness - as do White American farm families all over this country. Despite several lawsuits and claims, ostensibly settled[2], against the Secretary of Agriculture for discrimination, retaliation and reprisal, on the basis of their race, black, in violation of this country's well-established Civil Rights laws, the Grants, and thousands similarly situated, are still beset by the ingrained, institutional racism that emotionally, physically and financially destroy, forever, America's black farmers and their families. This hideous, concerted government ploy has all but caused the extinction of black farm families, including that of the Grants. The saga continues.

---

[1]**The Grants are one of only a few African American farm families remaining in the FDR Farm Resettlement Program.**

[2]**Matthew Grant, Richard Grant's father, now deceased, settled his administrative complaints on March 4, 1998. The Defendant refused and continues to refuse to perform the 1998 Resolution Agreement.**

**Richard Grant settled his administrative complaints on March, 1998 and finally on July 8, 2002.**

To insure their constitutionally guaranteed rights, the surviving Grants, with dogged, rugged determinism, have weathered this **"hate storm"** through three (3) Presidents, several Congresses, five (5) Secretaries of Agriculture, a plethora of Presidential Appointees and countless USDA Farm Service Agency officials and Office of Civil Rights directors and investigators. The racial hatred and animus perpetrated by the USDA, dubbed, **"The Last Plantation,"** persist like a plague that cannot be medically or surgically eradicated, let alone legislated or presidentially executed into history.

7. What is more - Secretary Ann Veneman, through passivity, inaction and benign neglect, has knowingly allowed top government administrators and lawyers to local federal Farm Service Agency officials across this land to trample on the rights of the Grants and others similarly situated, all such rights guaranteed them by the U. S. Constitution. From numerous government reports, successful lawsuits and black farmers' personal pleas directly to her, the Secretary knows or should know and should have known that these blatant violations of law run rampant throughout every single agency in the mammoth USDA, **"The Last Plantation."**

8. The USDA's Office of General Counsel and Office of Civil Rights, the supposed civil rights enforcement arms for the Secretary, are not only impotent, but also act, collusively, to deny black and minority farmers, including the Grants, their rights[3] under the law, while the unsuspecting black farmers rely, to their detriment, on an

---

3

***It is well established that the Bill of Rights constitute two types of individual protections - civil rights and civil*** **liberties. *Civil Rights* are those rights that the government is obligated to protect between parties. *Civil Liberties*** ***are those same exact rights but the government is prohibited from infringing upon.*** **(Citation omitted) The USDA fails, intentionally and with malice, at both.**

ineffectual and non-responsive administrative process. Much has been written and declared, including official government reports, decrying the manner in which the USDA has performed and performs its legal duties pursuant to law.[4] In fact, on August 3, 2003 Mr. Lou Gallegos, former Presidentially- appointed USDA Assistant Secretary of Administration[5] was quoted in an article entitled, ***"Virginia Bias Case Triggers Debate"*** as follows:

> **'There's nothing more demeaning to humanity than discrimination especially when it is done by your own government . . . ' Gallegos said the Department's Office of General Counsel pushed him to order a detailed review of the (Warren) decision - in effect, an appeal. He said that the lawyers *tried to offer evidence that had not been a part of the court record . . .* 'I *thought that* was unseemly . . . ' The payout ($6.6 million) 'was the cost of not acting when they (USDA) should have in a meaningful way'"**
>
> ***"Richmond Times Dispatch,*** April 3, 2003

9. Senator Chuck Grassley, in a July 3, 2003 press release entitled, ***"Grassley Concerned About Civil Rights at Department of Agriculture"*** states:

---

4

**See February 26, 2003 EEOC/Hayden, Annual Evaluation of Civil Rights at USDA; USDA Civil Rights Action Team Report, 1997; USDA Civil Rights Action Implementation Team Report; United States Civil Rights *Commission Evaluation and Follow Up Reports, 1964, 2003;USDA Office of Inspector General Report to the* Secretary, "Evaluation of the Office of Civil Rights Efforts to Implement Civil Rights Complaints, March 1999, "Evaluation of the Office of Civil Rights Efforts to Reduce the Backlog of Program Complaints, September 1997, "Office of Inspector General Report to the Secretary on Minority Participation in Farm Service Agency's Farm Loan Program," September 1997, numerous US Senate and House Agriculture Committee Hearings, Confirmation Hearing of Vernon Parker as Assistant Secretary for *Civil Rights*, letter from Mr. Lloyd Wright, former Director of Office of Civil Rights, stating that OGC will do anything to destroy civil rights at the USDA, Affidavit of Rosalind Gray, former Director of Office of Civil Rights, etc.**

5

**The Assistant Secretary for Administration was responsible for the USDA Civil Rights program prior to the April 3, 2003 US Senate confirmation of Mr. Vernon Parker as the new Assistant Secretary for Civil Rights. Mr. Gallegos recently retired. In the civil rights community, it is opined that Mr. Gallegos retired under pressure for overriding the Office of General Counsel in its opposition to the $6.6 million dollar award to a black farmer for the exact same circumstance, discrimination in the USDA farm loan program.**

**"The Department of Agriculture must give the Office of Civil Rights the necessary tools in order to overcome many of the problems that have plagued the department throughout the years . . . We can't have any more roadblocks, we need progress."**

In his letter to Secretary Veneman, Senator Grassley queries the Secretary as follows: **"I would also like to know what is being done to allow the Office of Civil Rights greater autonomy from the Office of General Counsel? Autonomy is another source of criticism from independent third party analysis, namely the EEOC and the Commission on Civil Rights (whose criticism made the news in a GovExec.com column, June 24.)"**

10. Still, the Secretary has done nothing to improve civil rights at the USDA or to enforce protection of the Grants or those similarly situated as prescribed by law. Thus, the Secretary has insured that the Grants and other similarly situated minority and black farmers and their farms cease to exist.

11. It is only the federal judiciary, particularly the DC Circuit, that has historically and recently[6] righted the wrongs perpetrated by racist individuals, institutions and government officials in the USDA.

12. A three-judge panel of the D. C. Appeals Court has spoken on this issue: **(The black farmers have been the victims of double betrayal - first by the USDA and then by their own lawyers) (paraphrased)** ***Pigford v. Veneman*** (Citation omitted)

13. But for the intervention of this court, the Grants will lose their farming operations as will others similarly situated. But for the intervention of this court, the Secretary will

[6] *Pigford, et. al. v. Veneman, Brewington, et. al. v. Veneman, Grants v. Veneman, Long v. Veneman, Powell v. Veneman, Bowie v. Veneman, Bowie v. Veneman, Keepseegal v. Veneman,* etc. (Citations omitted)

be allowed to continue to make a mockery of this country's civil rights laws and painstaking efforts to eradicate discrimination and the effects thereof from our society. But for the intervention of this court, this black farm family will cease to exist - a travesty- like so many before them.

## FACTUAL BACKGROUND

14. **July 30, 2001, Florenza Moore Grant, 80 - DEAD.**

15. **December 29, 2001, Matthew Grant, 83 - DEAD.**

16. **March 2, 1998** - Matthew Grant, a second generation black farmer, executes, with USDA, a Resolution Agreement, settlement of his administrative complaints of discrimination, **on the basis of race, BLACK,** which destroyed his family farm operation.

17. **March 4, 1998** - Richard Grant, Matthew's son and third generation black farmer, executes, with USDA, a Resolution Agreement, settlement of his administrative complaints of discrimination, **on the basis of race, BLACK,** which destroyed his family farm operation.

18. **March 5, 1998 - CELEBRATION! JUBILATION** in Grant country, the family farm home - twenty-five (25) years of USDA'S hideous, blatant, overt discrimination, which caused the Grant family twenty-five (25) years pain, suffering, humiliation, **OVER, FINALLY. BUT, WAS IT REALLY?**

19. **1947** - Matthew and Florenza Grant, with six children, moved to Tillery, Halifax, County, North Carolina, and started a small family farm. Matthew and Florenza Grant were early participants in President F. D. Roosevelt's Farm Resettlement Program, a government sponsored ***"40 acres and a mule"*** program intended to give black families an opportunity to reclaim the land. That is how Matthew Grant purchased the farm land. Eventually, the Grants established a casket wholesale and retail company to serve Hallifax County's small black community and to help supplement their meager income from the farming operation.

20. **1972** - Matthew became a participant, like thousands of white farmers had already been, in the FmHA (now, the Farm Service Agency, FSA) loan programs. Matthew's painstaking first, and subsequent, communications with FSA loan officials wreaked of disgusting, filthy, ignorant and dehumanizing discrimination and was followed by Matthew's intentional exclusion loan program exclusion by those very government officials simply because he was black. Matthew did get financing from the FSA, but it was too little money, too late; and, each time, for no other reason than, simply, he was black.

21. **1972 - 1975** - and beyond, Matthew's nightmare continues until FSA forecloses on the land. The government never took physical possession of the land because Matthew and his son, Richard, swore to fight the government to their deaths for their homes and farms. The Grant's filed and continued to file complaints at USDA in Washington not knowing that President Ronald Reagan shut down the Office of Civil Rights while their complaints, like thousands of other black farmer complaints, collected dust in the dungeons of USDA's South and Whitten Buildings.

22. **July 30, 2001, Florenza Moore Grant, 80 - DEAD.** In spite of the government's settlement of the case, she never received what USDA promised by signing the Resolution Agreement - **JUSTICE.** The joy of having won dissipated at the government's refusal to keep its word and because of its betrayal. Florenza's hope of finality with USDA died when she died.

23. **December 29, 2001, Matthew Grant, 83 - DEAD.** In spite of the government's settlement of the case, Matthew Grant never received what USDA promised by signing the Resolution Agreement - **JUSTICE.** The joy of having won dissipated at the government's refusal to keep its word and because of its betrayal. The hope of finality with USDA died when Matthew died.

24. In her **LAST WILL and TESTAMENT**, Florenza left her possessions to Matthew.

25. From his legitimate USDA claim, settlement and Estate, Matthew provided, in his **LAST WILL and TESTAMENT**, for his children and grandchildren, including RICHARD GRANT, JR., HEATH R. GRANT AND ADRIENNE G. TAYLOR,

plaintiffs herein. But, the USDA, still and stubbornly refuses to follow its agreement - a tragedy and government-sponsored terror.

26. The Grant family has endured and continues to endure the tragedy. **See** ***"Heartache in the Family Fields,"*** ***The Boston Globe,*** February 8, 1998. Article attached hereto, marked Exhibit "A" ; same being incorporated herein as if fully stated verbatim. The Grants opted out of Pigford.

## THE USDA FARM SERVICE PROGRAM AND THE OFFICE OF CIVIL RIGHTS USDA FARM LOAN PROGRAMS AN OVERVIEW

27. The former FmHA was a credit agency for USDA. It was authorized, as FSA now is, to make various types of loans to farmers who, generally, are unable to obtain credit from commercial sources. ***Hicks v. United States,*** 23 Cl. Ct. 647,650 (1991); *see* Consolidated Farm and Rural Development Act, 7 U.S.C.§ 1922, 1941. FSA is authorized to make loans to qualified borrowers directly, or to guarantee loans made to such persons by commercial lenders. The terms and conditions of such loans vary with the particular circumstances of the borrower, and the loans are made upon the borrower's full personal liability and, typically, are secured by chattels, crops, and/or real estate. *See generally* 7 C.F.R. 1941, *et seq.*

## FSA/ASCS Crop Subsidy and Price Support Programs

28. FSA also administers the crop subsidy and price support programs of the former ASCS. Because these programs, many of which no longer exist, were wide-ranging and complex during the time period at issue, only a brief explanation of two such programs is offered here.

Disaster payments were made during the late 1980's and early 1990's for the benefit of qualified farmers who experienced certain natural disasters that caused specified levels of area-wide crop losses. To qualify for such assistance, an applicant's gross revenue must have been at or below a specific level. The amount of any disaster payment depended upon various factors including crop type, historic levels of planted acreage and yield, market price, and the individual loss experienced by the farmer-applicant. Such payments did not involve the extension of credit, and there was no repayment required. *See generally* 7 C.F.R. part 1477 (1996) and progeny.

ASCS also administered deficiency payment programs. *See,* e.g. 7. C.F.R. part 713 (1987). These programs typically required a farmer to participate in an acreage reduction program, under which a farmer voluntarily reduced his acreage in a crop by some established percentage and devoted the non-planted acreage to a conservation use. The level of reduction depended upon a determined acreage level, which was based on a farm's historic acreage and yields. Participating farmers were then eligible for deficiency payments when the market price for a crop fell below a target price.

**USDA NON DISCRIMINATION REGULATIONS**
**(7 C.F.R. §§ 2.28, 15.51 AND 15.52, AS AMENDED)**

As early as 1966, which was eight years prior to ECOA's enactment, USDA promulgated internal management guidelines proscribing discrimination based on "race, color, religion, sex, age, disability, or national original" in the administration of any of its direct programs and activities. *See* **(7 C.F.R. §§ 15.51 and 15.52)**. *See also* 31 Fed. Reg. 8175, 8175 (June 10, 1966)/ These guidelines have remained in effect

continuous since then and include a voluntary administrative mechanism by which USDA receives complaints of discrimination involving *any* USDA program, including the farm credit and ASCS subsidy programs at issue in this case. *See* 7 C.F.R. §15.52. Under § 15.52(a), a person who believes he or she has been the victim of discrimination in programs conducted directly by USDA may file a complaint with USDA's Office of Civil Rights ("OCR")" within 180 days from the date the person knew or should have known of the alleged discrimination." OCR then investigates the complaint and determines the corrective actions, if any, required to resolve it. 7 C.F.R. §15.52(b). The regulation sets no deadline by which OCR must act on a complaint, it does not establish requirements for how an investigation should be conducted or a claim reviewed, and it does not require that USDA advise a complainant regarding the determination of, or corrective action taken in response to, his/her complaint.

USDA's decision to promulgate section 15.51 and 15.52 was a voluntary and unilateral one, *see* 54 Fed. Reg. 31,163, 31,163(July 27, 1989); 50 Fed. Reg. 25,687, 25,687(June 21,1985), and the filing of an administrative complaint under section 15.52 is not a prerequisite to filing suit against USDA under ECOA or any other statute. Instead, section 15.52 was designed to enable USDA to police itself internally and correct any discriminatory conduct that might arise in programs USDA administers directly. *See* 54 Fed. Reg. 31,163, 31,163-164(July 27, 1989) (citing 5 U.S.C. §301) *See also* 7 U.S.C. §15.50. The USDA Office of Civil Rights has failed at its own regulations and intentionally violates all authorizing federal statutes.

29. In an effort to give the USDA Civil Rights program more authority, the Congress

authorized the creation of a new presidential appointee, Assistant Secretary for Civil Rights. President Bush nominated and the US Senate confirmed Mr. Vernon Parker as Assistant Secretary for Civil Rights on April 3, 2003. The Assistant Secretary has been intentionally hampered from performing his statutory and regulatory duties by the Defendants Veneman, Thompson, Isler and the USDA General Counsel Nancy Bryson, Deputy General Counsel J. Michael Kelly, Associate General Counsel for Civil Rights Arlean Leland and her staff attorneys all in violation of the above-cited federal statutes and Code of Federal Regulations and to the detriment of the Plaintiffs and others similarly situated.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

30. In 1972[7], continuing to the death of Matthew Grant, the Defendant, by and through her local county supervisors, repeatedly rebuffed the efforts of Matthew Grant to receive the benefits of the FSA farm loan programs. The loans received were time-delayed to the extent that the crop yields at harvest were lower than anticipated. If the loans had been timely, yields would have fulfilled projection. The loan amounts were inadequate to sustain Matthew's farm acreage. There were no equipment loans, even though application was made. The loans received were too little, too late all because Matthew was black. See the Discrimination Complaint of Matthew Grant attached hereto marked, Exhibit "B". The Affidavit is incorporated herein for all purposes, expressly including its content as allegations common to all causes of action below delineated,

**[7]Congress enacted and the President signed into law the Equal Credit Opportunity Act of 1972, the very law that prohibits discrimination in the extension of credit to any qualified protected class member/applicant.**

as if set forth fully verbatim.

31. Matthew Grant (as was his son, Richard), a socially disadvantaged black farmer, was qualified for credit, attempted to and did apply for credit and FSA assistance up to his death, was actually and constructively denied the credit and/or adequate credit while white farmers received ample credit for farm purchases, equipment, operating, emergency and disaster loans. The Defendant's denials were on the basis of Matthew's race, black, in violation of the ECOA of 1972, as amended, and all other previously cited statutes.

32. On information and belief, the Defendant in June 1997, two years after Matthews last complaint filing, employed an independent company, D. J. Miller & Associates, Inc., to conduct a discrimination investigation to determine whether Matthew and Richard had been discriminate against by Defendant. The Grants, with their attorney, James W. Myart, Jr., were interviewed by and gave the Miller investigators documents proving the illegal discrimination on August 20 - 22, 1997.

33. On information and belief, the Miller Report to the Defendant affirmed Matthew's allegations of discrimination and recommended to Defendant that the Matthew Grant case be settled. [8]

34. On information and belief, the Defendant, by and through Mr. Lloyd Wright, then Director of OCR, found, pursuant to OCR's enabling regulations, that Matthew and Richard had been the victims of discrimination. In an effort to protect Defendant from substantial exposure, OCR never formally entered a Final Agency Decision as required

---

[8] **The Miller Report made the same findings and recommendations in the Richard Grant Case.**

by regulation. 7CFR §15.52, et seq.

35. Rather than issue the Final Agency Decision in Matthew or Richard's cases, in March 1998, eight (8) months after the Defendant became aware of her illegal actions, OCR commenced settlement negotiations with Matthew and Richard, by and through their attorney.

36. On March 2, 1998, settlement was reached and executed between Matthew and Defendant. During the negotiations, Defendant, by and through her attorneys, insisted that a clause requiring Department of Justice approval be included in the Resolution Agreement. Matthew and Richard, by and through their attorney, Myart, vehemently objected and disagreed, and so stated in writing, that DOJ had the authority to invade the administrative province of the Defendant. The objection was made because, as suspected, and later confirmed, Defendant's OGC attorneys were clandestinely communicating with DOJ attorneys to stop OCR and Mr. Wright from settling black farmer cases including but not limited to the Grant cases. Mr. Wright, angered at the antics of OGC, wrote a letter to Mr. James Gilliland, OGC, (with a copy to Defendant) decrying OGC's deceit, stating specifically:

> **This is a reply to your memorandum addressed to "File and for Interested Parties" dated July 7, 1997, concerning the Carpenter case. This memorandum is clear documentation showing how you, in a very malicious way, are misinterpreting the facts. Also other memorandums *(sic)* that have been written by J. Michael Kelly and others from the Office of General Counsel(OGC) have been designed to distance the OGC from decisions that were made that you or your office fully participated in the development of and approved prior to**

**implementing. Further, it is very clear to me that I cannot trust or depend on OGC for any assistance in dealing with civil rights issues at USDA. Also, it is very clear to me that OCG will do everything it can to discred me personally and professionally and to obstruct any effort to improve civil rights at USDA.**

**cc: Dan Glickman, Secretary, Richard Rominger, Deputy Secretary, Pearlile Reed, Acting Assistant Secretary for Administration; File And other interested parties.**

See the Lloyd Wright letter, attached hereto, marked Exhibit "C "; same being incorporated herein as if set for fully verbatim.

37. The 1998 Resolution Agreement specifically provided , in part, as follows:

Paragraph 1: To pay Mr. Grant the sum of 312,000 in compensatory damages. A check in the amount payable to Mr. Grand and James W. Myart, Jr. of 306 Preston Avenue, San Antonio, Texas 78210, will be issued as soon as practicable but no later than 30 calender days after this agreement has been signed <u>by all parties, reviewed by the Department of Justice (DOJ), and , if DOJ approval is required, approved by DOJ.</u> (Emphasis added)

Paragraph 9. That this settlement is only a settlement of Mr. Grant's claims for relief for the years 1994 through 1998 that were raised in Mr. Grant's December 6, 1995 discrimination complaint. The parties further agree that this agreement does not waive Mr. Grant's right to file an action for compensatory damages USDA as to events between the years 1972

through 1993 that were the subject of his December 6, 1995, discrimination complaint. Accordingly, USDA agrees that it will not use this agreement to defend such an action by Mr. Grant against USDA concerning the events between the years 1972 through 1993 that were the subject of his December 6, 1995 discrimination complaint, however, USDA reserves the right to raise any and all other affirmative defenses available to it in such a court action against USDA, the United States of America, any other agency of the United States, or any officer, employee, or agent of USDA or of the United States of America, in either his or her official or individual capacity. Mr. Grant agrees that he cannot recover any damages resulting from events between the years 1994 through 1998 that were the subject of his December 6, 1995 discrimination complaint. This paragraph is intended only to reserve Mr. Grant's right to file an action for compensatory damages against USDA for events between the years 1972 and 1993 that were the subject of his December 6, 1995, discrimination complaint. Nothing in this paragraph may be construed to reserve Mr. Grant's right to file an action for compensatory damages against any officer, employee or agent of USDA or of the United States of American, in either his or her official or individual capacity.

The March 2, 1998 executed Resolution Agreement is attached hereto, marked Exhibit "D", same being incorporated herein as if fully set forth verbatim.

38. Not only did the Defendant not perform the executed Resolution Agreement, but also refused, pursuant to paragraph #9, to compensate Matthew Grant or his estate the damages due in accordance with the Congress' extension of the limitations period of the ECOA.

39. Defendant's actions constitute the intentional furtherance and continuation of the discrimination suffered by Matthew and Florenza Grant since 1972, thereby, increasing the damages up to and beyond the death of Matthew and Florenza Grant and extending to their heirs, Plaintiffs herein.

40. Plaintiff James Myart, Jr. was employed by Matthew, Richard and Gary Grant, another son, each individually, to represent them in their administrative discrimination and reprisal complaints against the Defendant and to negotiate settlements on their behalf or adjudicate the issues in a federal court if settlements were not had. Myart was contracted as the Grant's legal representative, except Gary, on a forty percent (40%) contingency fee basis. The forty percent (40%) contingency fee was subsequently reduced by Myart to thirty-three and one-third percent (33 1/3 %) plus attorneys fees, costs and expenses paid by the Defendant pursuant to the ECOA and other applicable law.

41. Pursuant to the Resolution Agreement and the Matthew Grant attorney/client contract, Myart was and is an owner in interest to the claim and any settlement resulting therefrom; and, therefore, has standing to bring suit against Defendant. The Grant-Myart attorney/client contract is attached hereto marked Exhibit "E", same being incorporated herein as if fully set forth verbatim.

42. Due to Defendants's illegal conduct, refusal to perform the Resolution Agreement and breach of contract, Myart and all other plaintiffs have suffered almost incalculable damages and will, in all probability, continue to suffer said damages up to and until this court intervenes.

43. Defendants willfully violated and continue to violate the Plaintiffs rights to due process and equal protection under the law as guaranteed by the Fourteenth Amendment.

44. Defendants willfully violated and continue to violate the right to due process of and equal protection of the laws as guaranteed by the North Carolina Constitution, Article I §19.

45. Plaintiffs were forced to hire the undersigned attorneys to bring this law suit, and, thus seek payment of reasonable attorneys and expenses pursuant to ECOA.

**FIRST CAUSE OF ACTION**

46. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein.

47. Defendant has discriminated against Plaintiffs in the terms and conditions of their right not to be discriminated against on the basis of their race, Black, in violation of Title VI, while other non-black citizens are given preferential treatment in federally conducted farm and loan programs. Plaintiffs Grants have shown themselves eligible for participation in USDA federal programs, have availed themselves as socially disadvantaged persons, have applied to participate in the federal programs, have been denied participation in such programs, while non-black persons have been allowed, unfettered, to participate in said programs, all in detriment to their ability to earn a

living and pursue the right to life, liberty and happiness as afforded white citizens. 42 U.S.C. 2000d.

48. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until the Court grants relief.

**SECOND CAUSE OF ACTION**

49. Defendants have willfully and intentionally violated and continue to violate the rights of the Plaintiffs by depriving the Plaintiffs, on the basis of race, black, of life, liberty, property and the pursuit of happiness without due process of law and denying Plaintiffs within the jurisdiction, District of Columbia and State of North Carolina, the equal protection of the laws of the United States of America. Fourteenth Amendment, United States Constitution.

**THIRD CAUSE OF ACTION**

50. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein

51. Defendant has intentionally discriminated against Plaintiffs in the terms and conditions of participation in constitutionally protected federal programs on the basis of their race, Black, in violation of 42 U.S.C. §1981. Non-Black American citizens are being afforded preferential treatment in acquiring Farm and Home loans and grants pursuant to the federal-funded farm and loan programs administered by the Secretary. Plaintiffs have shown themselves eligible for participation in USDA federal programs, have availed themselves as socially disadvantaged person, have applied to participate in the

federal programs, have been denied participation in such programs while non-black persons have been allowed, unfettered, to participate in said programs all in detriment to their ability to earn a living and pursue the right to life, liberty and happiness as is afforded white citizens.

52. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until the Court grants relief.

**FORTH CAUSE OF ACTION**

53. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein.

**FIFTH CAUSE OF ACTION**

54. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein. Plaintiffs are members of a protected class as that phrase is defined in the Civil Rights Act of 1964, as amended, and the Equal Credit Opportunity Act of 1972, as amended. The Grants have shown themselves eligible for participation in USDA federal programs, to wit: Farm Ownership, Farm Loans, Operating Loans, Equipment loans, emergency loans, etc. have availed themselves as socially disadvantaged person, have applied for each and every such loan and grant to participate in the federal programs, have been denied participation in such programs and have been denied all such loans while white and non-black persons have been allowed, unfettered, to participate in said programs and receive such loans and grants, all in detriment to Richard Grant, an Individual, Richard

Grant, Jr., and Individual, Adrienne Grant Taylor, an Individual, each an Heir to the Estate of Matthew Grant, deceased, and the Estate of Matthew Grant, and their ability to earn a living and pursue the right to life, liberty and happiness as is afforded white citizens and in violation of 15 U.S.C. 1691e. Plaintiffs are within the statute of limitations proscribed by 15 U.S.C. 1691e.

55. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until the Court grants relief.

**SIXTH CAUSE OF ACTION**

56. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-45 of this Complaint with the same force and effect as if set forth herein.

57. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1- 60 of this Complaint with the same force and effect as if set forth herein.

58. **North Carolina Constitutional Tort.** At all time material and relevant herein, Defendants intentionally violated the Plaintiffs' rights to equality under the law on account of their respective race, black, and national origin, African-American, all to the Plaintiffs' damages. N.C. Const. Art. I § 19.

59. Plaintiffs are now suffering and will, in all probability, continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the Plaintiffs' state constitutional rights.

60. Pursuant to Rule 38(b) of the *Federal Rules of Civil Procedure*, Plaintiffs demand a trial by jury in this action.

**WHEREFORE, PLAINTIFFS REQUEST THAT:**

1. The Court enjoin, by any legal means necessary, Defendant's continuing, demeaning Unconstitutional and unlawful discriminatory and retaliatory practices;

2. The Court grant Plaintiffs Richard Grant, an Individual, Richard Grant, Jr., an Individual, Adrienne Grant. Taylor, an Individual, each an Heir to the Estate of Matthew Grant, deceased, and the Estate of Matthew Grant, a judgment against Defendant in the amount of $50,000,000.00 as damages, in addition, if allowable, to pre-judgment and post-judgment interest as provided by law together with such other relief as the court deems appropriate,

3. The Court award Plaintiff James W. Myart, Jr, $3,000,000 as damages, in addition to pre-judgment and post-judgment interest as provided by law together, with such other relief as the court deems appropriate,

4. The Court award equitable relief as legally appropriate,

5. The Court award reasonable attorney's fees and expenses in accordance with law; and

6. The court award the Plaintiffs costs and such other and further relief as appears just and equitable under the circumstances.

Respectfully submitted,

James W. Myart, Jr. P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4815

By:______________________
James W. Myart, Jr.
FBN:______________________
Jwmyart@aol.com
ATTORNEY FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD GRANT, an Individual<br>RICHARD GRANT, JR., an Individual<br>ADRIENNE G. TAYLOR, an Individual,<br>each an HEIR TO THE ESTATE OF<br>MATTHEW GRANT, deceased<br>THE ESTATE OF MATTHEW GRANT<br>and<br>JAMES W. MYART, JR., an Individual<br><br>Plaintiffs<br>v.<br><br><br><br>ANN VENEMAN, SECRETARY,<br>DEPARTMENT OF AGRICULTURE<br>UNITED STATES OF AMERICA<br><br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br><br><br><br><br>Civil Action No.__________<br>42 U.S.C. § 2000d, TITLE VI<br>42 U.S.C. § 1981<br>15 U.S.C. § 1691e, ECOA<br>BREACH OF CONTRACT |

PRO SE DESIGNATION

`NOW COMES JAMES W. MYART, JR. (PLAINTIFFS), herein and state that they have read the foregoing COMPLAINT, have personal knowledge of the facts contained therein and state they each will represent themselves in this action.

Respectfully submitted,

James W. Myart, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD GRANT, an Individual
RICHARD GRANT, JR., an Individual
ADRIENNE G. TAYLOR, an Individual,
each an HEIR TO THE ESTATE OF
MATTHEW GRANT, deceased
THE ESTATE OF MATTHEW GRANT
and
JAMES W. MYART, JR., an Individual

Plaintiffs

v.

ANN VENEMAN, SECRETARY,
DEPARTMENT OF AGRICULTURE
UNITED STATES OF AMERICA

Defendant

Civil Action No._
42 U.S.C. § 2000d, TITLE VI
42 U.S.C. § 1981
15 U.S.C. § 1691c, ECOA
BREACH OF CONTRACT

**PRO SE DESIGNATION PENDING SWEARING IN OF JAMES W. MYART, JR.**

The undersigned have read the foregoing complaint, have personal knowledge of the facts contained therein and agree with all allegations and claims stated.

By: *Richard Grant*
Richard Grant

By: *Richard Grant father for Heath Grant*
Richard Grant as Next Friend to Heath A. Grant, a minor

By: *[signature]*
Richard Grant, Jr.

By: *Adrienne Grant Taylor*
Adrricnne Grant Taylor

By: *Richard Grant*
Richard Grant for and on behalf of the Estate of Matthew Grant