# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **MICHAEL W. STOVALL** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 05-400C** |
| | ) | **(Judge Allegra)** |
| | ) | |
| **THE UNITED STATES OF AMERICA** | ) | |
| | ) | |

## AFFIDAVIT OF MICHAEL STOVALL

Before me was MICHAEL STOVALL who was deposed and said the following:

"My name is MICHAEL STOVALL. I am over 18 years old and I am capable of making this affidavit. I have personal knowledge of the facts stated herein and they are stated to the best of my recollection and ability. I make this affidavit under the penalty and understanding of perjury.

After many years of horrible discrimination and degrading treatment against me by the Farm Service Agency Loan Officials in Alabama and Washington D.C., I settled my discrimination administrative claim against the United States Department of Agriculture in 1998. I attach to this affidavit the settlement agreement and incorporate it as if fully stated verbatim.

The attorney who negotiated the 1998 settlement on my behalf was and is now Mr. James W. Myart, Jr. Mr. Lloyd Wright, former Director, Office of USDA Civil Rights negotiated and signed the settlement on behalf of the USDA.

I am expressly aware and have knowledge that that other similarly situated black farmers also settled their administrative discrimination claims about the same time, within days of each other, as I settled mine. I am aware of this because Dexter Davis, Richard Grant, Matthew Grant and Howard Coats have settlement agreements similar, almost exactly the same but for facts specific to each of them, to my settlement agreement. I have this knowledge because I was in Washington DC at the same time as Richard Grant, Gary Grant, and Dexter Davis. I am aware that Mr. Richard Grant and Mr. Gary Grant were representing their father, Mr. Matthew Grant, in Mr. Mathew Grant's administrative discrimination claims.

I am expressly aware that Mr. Wright settled a Robert and Laverne Williams's administrative discrimination claim and that the settlement agreement is similar to my settlement agreement.

I am aware of these facts because all of us black farmers talked and still talk on a regular basis and we share our personal stories on how USDA and the FSA discriminated against us and how despite the settlement in our cases and the over $800,000,000 settlement in *the* ***Pigford v. Veneman*** and the ***Brewington v. Veneman*** Class Black Farmer Class Action Lawsuits, the USDA and FSA officials in the state and national offices were continuing to discriminate against black farmers. We all joined the National Black Farmers Association and the Black Farmers and Agriculturalists Association. We all verbally shared and compared our settlements with each other and the black farmers in these groups.

At the time I was of settlement satisfied with the programmatic relief provisions because it was my understanding from Mr. Wright when I signed the agreement that the programmatic relief provisions were intended to put me back in the same or similar position I was as a farmer before the loan discrimination started. That is precisely the reason that I agreed to and signed the settlement.

The FSA Officials who discriminated against me were not disciplined by the USDA and they were the same officials placed in charge of executing the programmatic relief provisions outlined in the settlement agreement. The discrimination never stopped as I tried, in accordance with the programmatic relief provisions, to put my farming operation and my life back together.

My chicken houses were never completed because the intentional delaying of the construction and operating loans to put the chicken operation in production and the FSA'S controlling of the loan proceeds after they were finally disbursed caused an inability to complete construction because the material and labor prices skyrocketed. This even put my contractor, Mr. Carl Pride, Pride Construction Company out of business. It was a financial disaster. Mr. Pride was even sued by the material supplier. Mr. Pride had to file bankruptcy. The USDA and I are fully responsible for this destruction to a minority contractor who only tried to help me.

When it became obvious to me that neither the FSA officials in Alabama and Washington, D.C. were concerned about my farming operation and that they were willfully and maliciously violating the agreement, I began calling and calling and calling the USDA officials, i.e., FSA Deputy Administrator Carolyn Cooksie, the new USDA Office of Civil Rights Director and Mr. Clyde Thompson, the new Deputy Assistant Secretary for Administration Mr. Clyde Thompson and the new Assistant Director for the USDA Office of Civil Rights Deputy Director, Mr. Frederick Isler. I even called the new Secretary of Agriculture, Ms. Ann Veneman. I was desperate as I was looking at my farming operation going down the toilet, again, for the very same discriminatory reasons.

I felt that these officials were retaliating against me because I accused them of discrimination in the first place and because I was successful in settling my claims through the resolution agreement. It was horrible and I was emotionally and financially ruined even with a settlement agreement intended by the parties to put me back in the

same or similar position I was as a farmer, who happened to be black, before the loan discrimination started.

I was very persistent in making the literally dozens of phone calls to these people, including numerous phone calls to directly to Mr. Clyde Thompson, month after month after month.

Mr. Clyde Thompson answered several of my phone calls and spoke directly with me about the settlement agreement. I told him specifically and directly that the FSA officials were in breach of the settlement agreement.

I even filed yet another administrative discrimination complaint with the USDA Office of Civil Rights claiming that the USDA was violating the programmatic relief provisions of the settlement agreement and that my 1998 and beyond loan process was filled with more discrimination in further violation of the Equal Credit Opportunity Act by the same Alabama FSA officials.

The final farm loan approvals, construction and operating, were delayed and delayed for months and months. The national FSA Office official, Mr. Sam Snyder falsified my farm and home plan. The delayed loan process was one of the major discrimination claims made in my original pre-settlement administrative complaint which resulted in the 1998 settlement, including the programmatic relief provisions.

I even hired another lawyer, Mitchell Hays, Mitchell Hays, Attorney at Law, to do an investigative report and to try to settle the cases, both my breach of contract claim and my new administrative discrimination complaint. He completed his report and called me on his cell phone. Mr. Hays informed me that he had received a phone call from Mr. Frederick Isler and that Mr. Isler offered to settle my breach of contract claim and my new administrative discrimination complaint for $800,000 and debt write off, debt arising from the failed effort to build the chicken houses and to land mortgage. Mr. Hays further informed me that he told Mr. Isler that I had a new attorney on the breach of contract claim and my new administrative discrimination complaint matter at that that attorney was Mr. Myart of Texas.

I told Mr. Hays that I did not understand why Mr. Isler and the USDA were contacting him, Mr. Hays, that they should be contacting Mr. Myart.

I then called Mr. Thompson and Mr. Isler. The only person I was able to get to on those calls was Mr. Isler. Mr. Isler informed me that the only way I could settle my case was that I would have to fire Mr. Myart. Mr. Isler then hung up in my face. I then call Mr. Myart and informed him of my conversation with Mr. Isler. I instructed Mr. Myart to call and to write Mr. Thompson. Mr. Myart informed me that I was not the only black farmer that Mr. Thompson and Mr. Isler instructed to fire Mr. Myart.

I have spoken directly with Mr. Clyde Thompson on several occasions and I specifically informed him of the settlement agreement, how the settlement agreement had been

breached and how the FSA national and state officials were continuing to discriminate against me. I informed him of how Mr. Sam Snyder falsified the farm and Home Plan.

I recall calling speaking with Mr. Thompson on the phone about five or six times. These conversations took place in 2002 before and after the Black Farmers shut down in protest the FSA Office in Brownsville, Tennessee. That occurred on or about July 2, 2002. I have attached a copy of news coverage of that protest and it is incorporated here as if full set forth verbatim.

In my five or six conversations with Mr. Thompson, Mr. Thompson informed me that he realized that looking at my cases, my breach of contract claim and my new administrative discrimination complaint, he realized that I was not treated fairly and that he was going to do what he could do in his power to get my cases resolved. He said he would be getting back with me shortly. Mr. Thompson called me back and he was working on my cases and he would continue working on my cases in trying to get my cases settled.

Mr. Thompson was always very nice and he made me feel as though he had my best interest at heart. Once he realized that Mr. Myart was my lawyer again, he stopped responding to my calls and he would not speak to me. My breach of contract claim and my new administrative discrimination complaint was no longer addressed by Mr. Thompson.

Very shortly after the Tennessee protest, the black farmers, as I understand it, were invited to meet in Washington DC to with Secretary Ann Veneman, Clyde Thompson, the USDA Civil Rights Director and Mr. Fred Isler and Ms. Arlene Leland, USDA Deputy General Counsel for Civil Rights. I went to those meetings in Washington DC and I took the settlement agreement and falsified farm and home plan with me. The meetings were held at the La' Efant Plaza Hotel and in the USDA Conference Room in the USDA'S Whitten Office Building.

During the meeting at the La' Efant Plaza Hotel, I presented my settlement agreement to the entire panel and I discussed my new administrative discrimination complaint. I did so only after Mr. Myart gave me permission to discuss my cases in the open panel meeting. The panel included, to the best of my recollection, Clyde Thompson, the USDA Civil Rights Director, Mr. Fred Isler and Ms. Arlene Leland. After I discussed the cases, I was asked questions about the settlement agreement, the programmatic relief provisions, falsified farm and home plan and the continued malicious, retaliatory conduct of the USDA officials at the state and national levels.

In fact, all the framers in attendance at the meeting including Gary Grant, Richard Grant, Dexter Davis, Robert Williams and Laverne Williams and I discussed in detail during the panel meetings at the La' Efant Plaza Hotel our settlement agreements and the continued discrimination by the USDA. Mr. Thompson heard every one of those stories from these black farmers.

Mr. Thompson's assertion that he was not involved, if he made such an assertion to his lawyer or the Court, is simply not true.

AFFIANT SAYETH FURTHER NOT.

Michael Stovall

**SUBSCRIBED AND SWORN before me on this 7th day of November, 2007.**

**CARL PRIDE'S AFFIDAVIT CONSISTS OF FOUR (4) FULL PAGES.**

Notary Public