**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MICHAEL W. STOVALL, | ) | |
| | ) | Electronic Filing |
| Plaintiff, | ) | |
| | ) | No. 05-400C |
| v. | ) | |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE**
**TO PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY AND APPENDIX**

Defendant, the United States, respectfully submits this response to the plaintiff's "Motion To Re-Open Discovery As To Clyde Thompson, Frederick Isler, Sam Snyder, Carolyn Cooksie And Dr. John Swiger And Request For Expedited Ruling" (the "motion to reopen"). In the motion to reopen, plaintiff, Mr. Michael Stovall, seeks an order re-opening discovery in this case for the limited purpose of permitting the depositions of Clyde Thompson, Frederick Isler, and Sam Snyder, and the reopening of the deposition of Carolyn Cooksie. He also seeks an order requiring the Government to depose plaintiff's expert, Dr. John Swiger, on or before December 30, 2007.

As we demonstrate below, the motion to reopen is without merit and should be denied.

I. BACKGROUND

A. Status Of Discovery

Discovery, which was extended twice at the joint request of both parties, closed on August 31, 2007. On August 22, 2007, immediately prior to the close of discovery, plaintiff filed a motion to compel the depositions of Mr. Clyde Thompson (the Deputy Administrator for Operations and Management of Rural Development, an agency of the United States Department of Agriculture ("USDA")), and Mr. Clarence "Sam" Snyder (the FSA Senior Loan Officer who

was responsible for overseeing the implementation of Mr. Stovall's settlement agreement). The plaintiff's motion also sought to compel the production of certain documents and additional responses to certain interrogatories. The Government filed its response on August 24, 2007, the Court held a telephonic hearing on August 27, 2007, and issued its order on August 28, 2007.

The result of those proceeding was that the Court closed discovery[1] in this case pending its ultimate resolution of the plaintiff's motion to compel, which depended upon the ability of plaintiff's counsel, Mr. James Myart, to file two documents with the Court:

> 1. On or before September 14, 2007, plaintiff's counsel shall file a brief memorandum, not to exceed five (5) pages, directing the court to any breach of contract cases wherein the defendant's "pattern and practice" of breaching other, similar agreements was considered relevant to breach of the contract at issue;
>
> 2. On or before September 14, 2007, plaintiff's counsel shall file a declaration or affidavit setting forth his personal knowledge regarding Mr. Clyde Thompson's involvement, categorically or specifically, in the drafting, negotiation, or alleged breach of the Stovall settlement agreement.

See A 1(August 28, 2007 order). During the telephonic hearing, the Court indicated that it would consider the plaintiff's submissions without responses from the Government, but it reserved its right to request responses should it desire them. The Court further indicated that, after it had fully considered Mr. Myart's submissions, it would enter another scheduling order that would either set this case for motion practice and/or trial, or reopen discovery for the limited purpose of allowing Mr. Myart to obtain the documents, interrogatory responses and depositions

[1] Despite the close of discovery, the Court permitted the defendant to depose plaintiff's expert, Dr. John Swiger, at a date to be agreed upon by the parties, because plaintiff's counsel had not yet made Mr. Swiger available for his deposition. Since August 28, 2007, counsel for the defendant has requested Dr. Swiger's availability upon multiple occasions, but plaintiff's counsel still has not yet provided any dates.

he requested in the motion.

Mr. Myart did not file his brief and affidavit by September 14, 2007. Instead, he requested an enlargement of time to file the required brief and affidavit on September 15, 2007, they day after they were due. The Court denied Mr. Myart's request on September 24, 2007, because Mr. Myart had failed to follow the instructions in the Special Procedures Order for this case regarding out-of-time requests for enlargements of time. On September 27, 2007, Mr. Myart filed a motion to stay this case because of the onset of a serious medical condition he suffered as a result of an altercation between him and various employees at his local Wal-Mart the week before. The Court granted plaintiff's counsel's motion on September 28, 2007, stayed this case for 45 days, and permitted Mr. Myart additional time, through November 12, 2007, to file his brief and affidavit.

Although Mr. Myart filed second requests to stay his other cases because of his continuing serious medical condition,[2] he did not seek a second stay in this case and filed the required brief and affidavit on November 10, 2007. As of today, the Court has neither requested a response from the Government nor has it ultimately ruled upon the plaintiff's August 22, 2007 motion to compel.

B. Plaintiff's Prior Request To Re-Open The Deposition Of Carolyn Cooksie

On September 12, 2007, plaintiff's counsel sent several e-mail messages to various high-level officials at the USDA concerning the August 21, 2007 letter from Congressman Towns to the Secretary of Agriculture (which he asserts as the basis for reopening Ms. Carolyn Cooksie's

---

[2] See, e.g., A 2 (October 30, 2007 order from Williams v. Johanns, et al., D.D.C. No. 03-2245, denying Mr. Myart's request for a second stay due to his serious medical condition); A 12 (second doctor's note).

August 23, 2007 deposition in these proceedings). See A 17, A 21, A 23 (copies of the e-mails). Plaintiff's counsel also sent a similar e-mail to defendant's counsel, in which he requested the re-opening of Carolyn Cooksie's deposition so that he could inquire about her knowledge of the e-mail message that is the subject of Congressman Town's August 21 correspondence. See A 13. Defendant's counsel responded on September 14, 2007, stating the Government's position that neither Congressman Towns' letter nor the attached e-mail message provided a proper basis for reopening Ms. Cooksie's deposition, because they are neither relevant to Mr. Stovall's breach of contract claim, nor are they "new" evidence. See A 26. Plaintiff's counsel never responded or reasserted his desire to re-depose Ms. Cooksie until November 6, 2007. See Exhibit 3 to Motion To Reopen.

C. Plaintiff's Failure To Request The Deposition Of Mr. Frederick Isler

Prior to November 6, 2007, the Mr. Myart had not requested the deposition of Mr. Frederick Isler. Mr. Myart did, however, disclose Mr. Isler as an individual likely to possess discoverable information about this case upon the plaintiff's October 2, 2006 Rule 26(a)(1) initial disclosures. See A 29.

II. ARGUMENT

In his motion, Mr. Myart seeks to amend the schedule in this case so that he may (1) depose Messrs. Thompson and Snyder, even though the plaintiff's right to depose these two individuals is the subject of the still-pending August 22, 2007 motion to compel; (2) depose Mr. Frederick Isler, an individual whom the plaintiff listed as a potential witness in this case in October 2006, but neglected to seek his deposition until more than two months after the close of discovery; and (3) re-depose Ms. Carolyn Cooksie, upon the misrepresented basis he has

"recently discovered" "new" evidence that is connected to Ms. Cooksie and allegedly relevant to this case -- an undated e-mail message that was publicly available prior to Ms. Cooksie's deposition in this case, which Mr. Myart brought to the attention of defense counsel three months before filing the present motion. As explained in more detail below, there is no basis upon which to grant plaintiff's motion.

A. The Court Should Not Permit The (Re)Deposition Of Clarence Snyder

As we explained in our briefing and during the hearing upon the plaintiff's August 22, 2007 motion to compel, the parties had agreed that Mr. Myart would depose Mr. Snyder on August 22, 2007, and Mr. Myart failed to appear at that deposition. Mr. Myart's failure was not due to inadvertent error or circumstances beyond his control. He had traveled to Washington, D.C. from San Antonio, Texas, the day before. He confirmed the deposition date, time, and place with defendant's counsel the day before. Then, the morning of the deposition, while everyone else was waiting for Mr. Myart to arrive, he telephoned defense counsel and stated that he had changed his mind. Mr. Myart would not depose Mr. Snyder that day; instead, he would be drafting what eventually became the plaintiff's August 22, 2007 motion to compel. By intentionally failing to appear for Mr. Snyder's deposition, Mr. Myart waived his client's right to take that deposition.

We understand that the Court has indicated that one possible outcome of the August 22, 2007 motion to compel would be the reopening of Mr. Snyder's deposition. Should that be the Court's order, we will abide by it. However, defendant's counsel, agency counsel, Mr. Snyder and other Government employees spent a significant amount of time preparing for Mr. Snyder's original deposition on August 22, 2007. Mr. Myart's intentional failure to appear at that

deposition was outrageous, and we urge the Court not to condone such conduct by allowing Mr. Myart a second chance to depose Mr. Snyder.

B. The Court Should Not Permit The Deposition Of Clyde Thompson

Mr. Myart's ability to depose Mr. Thompson is also the subject of the plaintiff's still-pending motion to compel. To obtain the right to depose Mr. Thompson, Mr. Myart had to file an affidavit "setting forth his personal knowledge regarding Mr. Clyde Thompson's involvement, categorically or specifically, in the drafting, negotiation, or alleged breach of the Stovall settlement agreement." We have reviewed the affidavits[3] submitted by Mr. Myart, and we do not see anything in them that would warrant changing our position and consenting to the deposition of Mr. Thompson in this case. The affidavits contain statements that Mr. Myart and his clients made attempts to inform Mr. Thompson of the alleged breach of Mr. Stovall's (and other Myart clients') agreements after those alleged breaches occurred, but there is no indication that Mr. Thompson drafted, negotiated, or had anything to do with the actions that constitute the alleged breach of Mr. Stovall's settlement agreement. Therefore, aside from Mr. Myart's repeated request for Mr. Thompson's deposition, we have no basis upon which to change our position.

As with the deposition of Mr. Snyder, we are aware that the Court has indicated that one possible outcome of the August 22, 2007 motion to compel would be the deposition of Mr. Thompson. Should that be the Court's order, we will abide by it.

[3] In addition to his own affidavit, Mr. Myart submitted affidavits from Lloyd Wright (former director of the USDA Civil Rights office), Mr. Stovall, and Dexter Davis and Laverne Williams (two other clients of Mr. Myart's who allegedly have cases similar to Mr. Stovall's). We are mindful that the Court has not requested a response to Mr. Myart's November 10, 2006 submissions, and our comments upon the sufficiency of these affidavits are therefore limited.

C. The Court Should Not Permit The Deposition Of Frederick Isler

Mr. Myart knew, as early as October 2006, that Mr. Isler's testimony was potentially relevant to this case,[4] as evidenced by the appearance of Mr. Isler on the plaintiff's list of potential witnesses included in his Rule 26(a)(1) initial disclosures. See A 29. Nevertheless, Mr. Myart never requested Mr. Isler's deposition prior to the close of discovery on August 31, 2007, and he did not request Mr. Isler's deposition in the plaintiff's August 22, 2007 motion to compel.

Mr. Myart offers no explanation for requesting Mr. Isler's deposition at this late date. It appears that the request comes at this time simply because now is when Mr. Myart finally decided he wanted to depose Mr. Isler. An epiphany by plaintiff's counsel after the close of discovery upon a subject he should have been thinking about before the close of discovery (and, indeed, did think about, as evidenced by the plaintiff's 26(a)(1) disclosures), does not constitute "good cause" that would permit an out-of-time amendment to the schedule under Rule 16(b). The Court should deny Mr. Myart's request to depose Mr. Isler.

D. The Court Should Reopen The Deposition Of Carolyn Cooksie

Mr. Myart seeks to reopen the deposition of Carolyn Cooksie based upon allegedly new and material evidence that was not available to him prior to her deposition on August 23, 2007. This new evidence is an e-mail message that is the subject of an August 21, 2007 letter from Congressman Edolphus Towns to the Secretary of Agriculture. This e-mail message does not provide a basis for reopening Ms. Cooksie's deposition.

---

[4] By making this statement, the defendant does not admit that Mr. Isler possesses any relevant knowledge about this case.

First, contrary to Mr. Myart's assertion that Ms. Cooksie is the author of the e-mail message, the e-mail message does not indicate the identity of its author. Congressman Towns' letter (although describing the e-mail as stating that Ms. Cookie already started lobbying the Senate), does not assert that Ms. Cooksie wrote or sent the e-mail. There is absolutely no basis upon which to conclude that Ms. Cooksie authored this e-mail message.

Second, the contents of the e-mail message are irrelevant to Mr. Stovall's case. As Congressman Towns explains, the message appears to be a statutorily prohibited exercise of political activity by a Federal employee. Specifically, the e-mail appears to be a message encouraging other Farm Service Administration employees to lobby their Congresspersons in order to defeat a bill that includes a provision to reopen the Pigford consent decree (the resolution of litigation against the USDA alleging that the USDA discriminated against African-American farmers in violation of the Equal Credit Opportunity Act ("ECOA")). This has nothing to do with Mr. Stovall's breach of contract action. Indeed, Mr. Stovall attempted to bring an ECOA claim when this case was initially filed in the United States District Court for the District of Columbia; that claim was dismissed as untimely.

Mr. Myart asserts, based upon the incorrect assumption that Ms. Cooskie authored the e-mail message, that this is evidence of a discriminatory animus that led to the alleged breach in this case. Motion at 2. The allegedly breaching party's intent is not relevant to a breach of contract claim. The contract was either breached or it was not, and that is the end of the inquiry. Moreover, even if the breaching party's intent was somehow relevant, this instance of allegedly discriminatory animus occurred at some point within the year 2007, which is nearly eight years after the 1999 breach alleged by Mr. Stovall in this case. This e-mail is not relevant to Mr.

Stovall's claim.

Finally, this is not "new" evidence that was unavailable prior to the filing of the motion to reopen (or even prior to early November 2007, when Mr. Myart corresponded with defense counsel about this issue for the second time). This e-mail message was garnering public attention at least two days before Ms. Cooksie's August 23, 2007 deposition in this case, as evidenced by the fact that Congressman Towns' letter is dated August 21, 2007. Additionally, Senator Obama wrote a letter similar to Congressman Towns' on August 8, 2007, two weeks earlier. See http://obama.senate.gov/press/070808-usda_improper_lobbying/. Assuming that Mr. Myart's claim that Ms. Cooksie authored the critical e-mail message are true, Mr. Myart had more than enough time to prepare his questions so they could have been asked during Ms. Cooksie's deposition on August 23, 2007.

Additionally, Mr. Myart raised this issue with defendant's counsel on September 12, 2007. See A 13. Defendant's counsel responded to Mr. Myart's request to reopen Ms. Cooksie's deposition on September 14, 2007, and Mr. Myart had a two weeks to file a motion to compel prior to the onset of his serious medical condition that caused him to request a stay of this case on August 27, 2007. There was no need to wait until December to bring this issue to the Court's attention.

Mr. Myart's request to re-depose Ms. Cooksie is based upon a plainly false assertion that she was somehow involved in distributing an e-mail message that allegedly violates the Hatch Act. Even if Mr. Myart's assertion was true, this is information that he could have and should have known prior to Ms. Cooksie's August 23, 2007 deposition, and he waived his right to depose her upon that subject by not asking her any questions about it at that time. Mr. Myart's

assertion, however, is not true, and this Court should reject his request to re-open Ms. Cooksie's deposition.

**CONCLUSION**

For the foregoing reasons, we respectfully request that the Court deny the plaintiff's motion to reopen discovery.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tel. (202) 616-0170
Fax (202) 514-8624

December 21, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on December 21, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY AND APPENDIX" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin A. Wolak
DEVIN A. WOLAK

# Stovall v. United States

Fed. Cl. No. 05-400C

## APPENDIX FOR RESPONSE TO MOTION TO REOPEN DISCOVERY

August 28, 2007 Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 1

October 30, 2007 Order in Williams v. Johanns, et al., D.D.C. No. 03-2245
re James Myart's second request to stay case and serious medical condition . . . . . . . . A 2

Second doctor's note for James Myart (dated October 22, 2007) . . . . . . . . . . . . . . . . . . . . . . A 12

September 12, 2007 e-mail from Plaintiff to Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 13
Discovery -- request to re-depose Carolyn Cooksie
Sent 7:31 a.m.
Attachment: 8/21/2007 correspondence from House Comm. on Oversight & Government Reform re USDA internal lobbying efforts re Pigford legislation

September 12, 2007 e-mail from plaintiff's counsel to USDA . . . . . . . . . . . . . . . . . . . . . . . . A 17
re: "Cooksie Antics"
Sent 7:48 a.m.
Attachment: 8/21/2007 correspondence from House Comm. on Oversight & Government Reform re USDA internal lobbying efforts re Pigford legislation

September 12, 2007 e-mail from plaintiff's counsel to USDA . . . . . . . . . . . . . . . . . . . . . . . . A 21
sent at 10:30 a.m.

September 12, 2007 e-mail from plaintiff's counsel to Defendant and USDA . . . . . . . . . . . . A 23
further commentary upon Cooksie allegations from the other emails of the day
sent at 2:09 p.m.

September 14, 2007 from Defendant to Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 26
Response to plaintiff's request to re-open deposition of Carolyn Cooskie

Plaintiff's October 2, 2006 Rule 26(a)(1) disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A 28

# In The United States Court of Federal Claims

No. 05-400C

(Filed: August 28, 2007)

---

MICHAEL W. STOVALL,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**ORDER**

---

On August 27, 2007, the court held a telephonic status conference. Participating in the conference were Mr. James W. Myart, Jr., on behalf of plaintiff, and Mr. Devin Wolack on behalf of defendant. Pursuant to discussions that occurred during this status conference:

1. On or before September 14, 2007, plaintiff's counsel shall file a brief memorandum, not to exceed five (5) pages, directing the court to any breach of contract cases wherein the defendant's "pattern and practice" of breaching other, similar agreements was considered relevant to breach of the contract at issue;

2. On or before September 14, 2007, plaintiff's counsel shall file a declaration or affidavit setting forth his personal knowledge regarding Mr. Clyde Thompson's involvement, categorically or specifically, in the drafting, negotiation, or alleged breach of the Stovall settlement agreement.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT WILLIAMS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE JOHANNS, *et al.*,<br><br>Defendants. | Civil Action No. 03-2245 (CKK) |

**MEMORANDUM OPINION**
(October 30, 2007)

Presently before the Court are two Motions filed by Plaintiff's counsel, Mr. James Myart, requesting a stay or a continuance of all proceedings in this case. Defendants strenuously oppose both Motions. After considering the Parties' submissions, the history of the case, and all publicly available information, the Court shall GRANT Plaintiff's [159] Motion for a 45-day stay and DENY Plaintiff's [169] Motion for a stay until December 20, 2007, for the reasons that follow.

I. BACKGROUND

This case has a long and tortured history that the Court shall not repeat in full. For present purposes, a description of the two Orders issued by Magistrate Judge John M. Facciola immediately preceding the filing of the instant motions provides the necessary context.[1]

The first Order was issued by Magistrate Judge Facciola on July 26, 2007. *See* [140] Order and [141] Memorandum Opinion dated July 26 (the "July 26 Order"). This Order denied Mr. Myart's request for reconsideration of sanctions that Magistrate Judge Facciola had imposed as a result of Mr. Myart's "openly and repeatedly violat[ing] specific directives of this Court."

[1] A more comprehensive history of this case is set forth in Magistrate Judge John M. Facciola's [141] Memorandum Opinion & Appendix dated July 26, 2007.

*Id.* at 8. The Order also denied Mr. Myart's leave to file witness lists. *Id.* This Court directed the parties to file any objections to the July 28 Order no later than August 14, 2007. *See* [144] Order dated August 6, 2007. Mr. Myart filed a motion for a 30-day extension on August 11, 2007, and again on August 12, 2007. *See* [147] Motion for Extension of Time to File objections dated August 11, 2007; [148] Amended Motion for Extension of Time to File objections dated August 12, 2007. Mr. Myart argued, in part, that he had insufficient time to obtain transcripts of certain hearings held before Magistrate Judge Facciola. *See* Amended Motion ¶ 19 ("Plaintiffs do not have all the transcripts for all the hearings in this matter. They must order the transcripts and will do so on the next business day from the filing hereof"). On August 15, 2007, Mr. Myart filed a notice with the Court indicating that he had ordered transcripts to seven hearings held before Magistrate Judge Facciola. *See* [149] Notice to the Court dated August 15, 2007 ¶ 1, 2 ("Counsel has ordered the transcripts of [seven hearings held] before the Honorable John Facciola" from the "Office Manager, Pro-Typist"). The notice further indicated that "Plaintiff's Counsel was informed that it would take 'thirty (30) days from the date that Pro-Typist received the CD before the transcripts would be delivered to counsel's office in San Antonio, Texas.'" *Id.* ¶ 3.

On August 16, 2007, this Court issued an Order granting Mr. Myart an extension. *See* [151] Order dated August 16, 2007. Although Mr. Myart had only requested a 30-day extension, the Court found that Mr. Myart's statement concerning a 30-day delivery time for the ordered transcripts implied that Mr. Myart's proposed order would not give him sufficient time to add any details from the ordered transcripts prior to the date his objections were due. *Id.* at 5. The Court also noted that Mr. Myart apparently waited until August 15, 2007, to order the transcripts

he deemed necessary to file objections when he knew the objections were to be filed by August 14, 2007. *Id.* Based on this timetable and Mr. Myart's statement that "'[t]his is the first and last request for time enlargement on the issues before the Court,'" *see* [148] Amended Motion for Extension of Time ¶ 27, the Court granted Mr. Myart an even longer extension than he requested, ordering objections to be filed by September 28, 2007. *Id.* at 6. The Court advised Mr. Myart that it would "not grant any further extensions of time to Plaintiffs to file their Objections or any motion to seal, particularly in light of this generous extension." *Id.* at 7.

The second Order relevant to the instant Motions was issued by Magistrate Judge Facciola on September 4, 2007. *See* [155] Order and [156] Memorandum Opinion dated September 4, 2007 (the "September 4 Order"). This Order granted in part and denied in part Plaintiffs' Motion to compel answers to interrogatories and for sanctions and denied Plaintiffs' request to extend the deadline for discovery. *See* [156] Memo. Op. at 10. Mr. Myart filed a motion to extend the time to file objections to the September 4 Order on the day objections were due, September 14, 2007. *See* [157] Motion for Enlargement of Time dated September 14, 2007. The basis for Mr. Myart's request was his busy trial calendar. *Id.* ¶¶ 4-6 (Plaintiffs are in need of additional time to file said brief due to Counsel's trial schedule"). Mr. Myart also indicated that he was preparing pleadings for the objections to the July 26 Order, but "has not yet received the requested trial transcripts to prepare such pleadings." *Id.* ¶ 7. Notwithstanding the continued delays, this Court granted Mr. Myart's Motion and allowed him to file objections to the September 4 Order by October 14, 2007. *See* Minute Order dated September 17, 2007.

The circumstances surrounding the July 26 Order and September 4 Order provide the context for Mr. Myart's subsequent filings. On September 27, 2007, the day before Mr. Myart's

objections to the July 26 Order were due to be filed, Mr. Myart filed the instant [159] Motion for Continuance or in the Alternative Stay Pending Counsel's Release from Medical Care and Request for Expedited Ruling on September 27, 2007. In this Motion, Mr. Myart reports that he has suffered a "major medical crisis," Pls.' Mot. ¶ 1, and attaches a note from his physician, Dr. Leo K. Edwards, Jr., ordering Mr. Myart "not to work at all for at least the next thirty (30) days." *Id.* Ex. A. In support of his Motion, Mr. Myart references the now-longstanding issue of his failure to receive transcripts necessary for filing his objections. *Id.* ¶ 14 ("[Counsel] has not yet received one single transcript of the Court's hearings in which to prepare his recusal motion or objections to the magistrate's orders . . ."). Based on these circumstances, Mr. Myart requests a "continuance of all matters pending before the Court for at least the (*sic*) forty (*sic*) (45) days or until Counsel notices the Court of his release from medical care." Pls.' Mot. at 6. Defendants filed an [161] Opposition to Mr. Myart's Motion on September 28, 2007. Defendants argue that Mr. Myart has a history of "untruthfulness and deceit" and, in the absence of additional information concerning the status of his health, "circumstances clearly undermine any presumption of good faith that might otherwise attach to counsel's motion for continuance or stay." Defs.' Opp'n to Pls.' Mot. at 4.

Before the Court issued a ruling on that Motion, Mr. Myart filed a [169] Second Motion for Continuance or in the Alternative Stay Pending Counsel's Release from Medical Care and Request for Expedited Ruling on October 24, 2007. This Motion is based on Mr. Myart's physician having extended his "strict medical leave through November 30, 2007." Pls.' Mot. ¶ 2. Mr. Myart requests until December 20, 2007, to file his objections. *Id.* ¶ 3. Defendants filed an [170] Opposition to Mr. Myart's second Motion on October 24, 2007, arguing that counsel "is

not so injured or ill as to be unable to litigate these cases."[2] Defs.' Opp'n to Pls.' Mot. at 2.

## II. DISCUSSION

### *A. Availability of Transcripts*

Mr. Myart's instant Motions, like his previous requests for extensions, indicate that he has not received transcripts of proceedings he claims are necessary to any filing of objections to the Magistrate Judge's Orders. Mr. Myart reported to the Court on August 15, 2006, that he had ordered these transcripts. *See* [149] Pls.' Notice ¶ 1, 2 ("transcripts have been ordered this day from . . . [the] Office Manager, Pro-Typist"). As of September 27, 2007, the date of the instant Motion, Mr. Myart indicated that "he has not yet received one single transcript of the Court's hearings in which to prepare his recusal motion or objections to the magistrate's orders herein. Counsel will attempt, even ill, to ascertain why this is the case." Pls.' [159] Mot. ¶ 14.

In light of the delays that have continued to plague the availability of the transcripts, the Court spoke with the Office Manager to ascertain why Mr. Myart had not been sent the transcripts he requested. The Office Manager informed the Court that Mr. Myart never ordered any transcripts. While it appears that Mr. Myart called to inquire about ordering transcripts, he said he would call back another day to place an order. He apparently never called back. The Office Manager also informed the Court that transcripts are never prepared without first having obtained an order from a customer backed by a credit card or check. There is no record of Mr.

[2] The Parties have supplemented these Motions with a series of related filings. *See* [162] Plaintiffs' Notice of Filing dated October 1, 2007; [164] Plaintiffs' Notice of Intent to File Motions to Strike and for Sanctions dated October 2, 2007; [165] Plaintiffs' Notice of Filing dated October 2, 2007; [166] Defendants' Second Notice of Intent to File Motions to Strike and for Sanctions dated October 3, 2007; and [167] Plaintiffs' Response to Defendant's Second Notice to File Motions to Strike and for Sanctions dated October 4, 2007. The Court has considered these additional submissions.

Myart ever having given a credit card number or other form of payment to Pro-Typist to obtain transcripts in the instant proceedings.

Mr. Myart's August 15, 2007 Notice also stated that he had "attempted to order the transcripts of hearings held before the Honorable District Judge [Kollar-Kotelly]." [149] Pls.' Notice ¶ 4. While Mr. Myart called Judge Kollar-Kotelly's Deputy Courtroom Clerk, he received her voice mail that "indicated she was out of the office. Counsel, therefore, was unable to order the transcripts of hearings before Honorable District Judge [Kollar-Kotelly]."). *Id.* Based on the information the Court received from Pro-Typist, the Court also inquired of its Deputy Courtroom Clerk regarding Mr. Myart's request for transcripts. The Deputy Courtroom Clerks' telephone log reflects that Mr. Myart left a message on August 15, 2007, leaving his name and a case number. He did not leave a phone number for a return call, and there is no record of any further contact initiated by Mr. Myart.

This Court considers it a serious matter that Mr. Myart, as an officer of the Court, has made misrepresentations concerning the status of the transcripts he apparently needs to file objections to the July 28 Order and September 4 Order.[3] These misrepresentations are both

---

[3] The Court also notes that this is not the first time Mr. Myart's candor has been questioned, as he is currently under indictment for perjury and has been subject to numerous other judicial inquiries. *See* [161] Defs.' Opp'n to Pls.' Mot. Ex. 4 at 1-3 (indictment of James Myart on three counts of perjury, Crim. A. No. 07-5832) (Jun. 28, 2007); Defs.' Opp'n to Pls.' Mot. Ex. 2 at 1 (Texas State Bar issuing a 48-month partially probated suspension of James Myart for, among other reasons, "conduct that was deceitful and fraudulent") (effective March 4, 1999); Defs.' Opp'n to Pls.' Mot. Ex. 3 (Order, *Oden v. Young*, Civ. A. No. 06-1353, denying James Myart's petition to practice *pro hac vice* for, among other reasons, disclosures to the court that were "incomplete, misleading and, in some instances, dishonest") (D. Nev. May 8, 2007). Mr. Myart's indictment and related legal matters may raise a question as to whether he should be permitted to continue practicing as a member of this Court. This question is not one that is answered by this Judge, but rather is addressed by the District Court's Grievance Committee responsible for reviewing such matters. This Memorandum Opinion and related Order should not be read to express an opinion one way or the other on this question.

highly inappropriate and equally unnecessary. As Mr. Myart is aware, these transcripts have been available for public viewing during the entire time he has sought these extensions. Transcripts are created and placed in the Clerk's Office for public viewing between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday. Once a transcript becomes available, a notification is placed on the appropriate docket. For example, the docket in this case reflects the continuing availability of the transcripts that Mr. Myart apparently needs to file objections to the Magistrate Judge's Orders. *See* dkt. entries [49], [90], [105], [108], [138], [139], and [142]. Mr. Myart was even notified that these transcripts were available by Magistrate Judge Facciola in a [150] Memorandum dated August 15, 2007 at 1-2 (explaining that the transcripts were available in the Clerk's Office and stating that "Counsel need not pay the cost and wait the time necessary to produce new transcripts from CDs when the transcripts have already been produced an indicated by the docket . . ."), <u>and</u> by this Court in a [152] Memorandum Opinion dated August 16, 2007 at 5-6 ("All transcripts cited in the [July 26 Order] have already been created . .. . said transcripts are and have been available for Plaintiffs' Counsel to review in the Clerk's Office"). Rather than avail himself of the transcripts that were already created, Mr. Myart instead represented to the Court that he ordered new transcripts to be created when, in fact, he had not. Because Mr. Myart's failure to procure these transcripts is the result of his own lack of diligence, the Court finds that Mr. Myart's Motions for a stay or continuance are not justified by the lack of transcripts in his possession.

*B. Medical Condition*

Mr. Myart filed the instant Motions seeking a continuance or stay based on his having "experienced a major medical crisis on Friday, September 21, 2007." *See* [159] Pls.' Mot. ¶ 1;

[169] Pls.' Mot. ¶ 1. Mr. Myart reports that his physician "has ordered Mr. Myart not to work at all for at least the next thirty (30) days."[4] [159] Pls.' Mot. ¶ 1. Despite Mr. Myart's representations that he is medically incapable of working for 30 days due to his health, a review of publically available information suggests otherwise:

- Between September 28, 2007, and October 3, 2007, Mr. Myart makes numerous phone calls and sends numerous emails to attorneys working for the Department of Justice.[5] *See* [166] Defs.' Resp. to Pls.' Second Notice Ex. 3. By way of example, Mr. Myart contacted Department of Justice attorneys on October 2, 2007, at the following times: 5:32 A.M. (email), 5:43 A.M. (email), 6:53 A.M. (email), 9:00 A.M. (phone), 10:50 A.M. (phone), 12:00 P.M. (email), and 12:25 P.M. (email). *Id.* His communications are argumentative, accusatory, and laced with invective. *Id.*

- On September 29, 2007, Mr. Myart provides a statement to the Dallas Morning News criticizing a federal City Hall corruption probe involving his client. *See* [162] Defendant's Notice of Filing dated October 1, 2007, Ex. 1. He also grants a related television interview from his home. *See* [166] Pls.' Second Notice of Intent ¶ 7.

---

[4] This is not the first request for a stay or continuance based on Mr. Myart's health. On October 30, 2005, Mr. Myart requested a 90-day stay for health-related reasons and indicated that his physician ordered Mr. Myart "not to return to work on a full-time basis for [90-120 days] and then only by a doctor's release." *See* [47] Pls.' Mot. to Enlarge Time dated October 30, 2005 ¶¶ 1-2. The Court granted the stay. *See* Minute Order dated November 7, 2007. The day after entry of the stay, Mr. Myart filed a notice with the Court that he was traveling to Washington, D.C. for a hearing before another judge of this Court. *See* [50] Notice of Counsel's Travel dated November 8, 2007.

[5] Mr. Myart also sent emails and letters to other recipients. Some of these communications have been submitted to the Court for review, *see, e.g.*, [166] Defs.' Resp. to Pls.' Second Notice Ex. 3 (Email from James Myart to United States Department of Agriculture Officials (Oct. 3, 2007, 4:36 A.M)), whereas other communications are referenced but have not been submitted. *See, e.g.*, Email from James Myart to Department of Justice attorneys (Oct. 3, 2007, 5:43 A.M.) (referring to emails sent by Mr. Myart to federal judges, Chairpersons of the Senate and House Judiciary Committees, and Attorney General-Designate); Email from Paul Dean, Department of Justice attorney, to James Myart (Oct. 3, 2007, 9:59 A.M.) (memorializing a phone conversation with Mr. Myart wherein Mr. Myart claimed to have sent letters to the media and Supreme Court).

- On October 1, 2007, Mr. Myart files a Complaint in the United States District Court for the Western District of Texas. *See Paschal Evans, et al. v. Sculley, et al.*, Civ. A. No. 07-747 (W.D. Tex. Oct. 1, 2007).

- On October 9, 2007, Mr. Myart is arrested after disrupting a San Antonio city council meeting. *See* [170] Defs.' Opp'n to Pls.' Motion, Ex. 1.

These activities are simply inconsistent with the actions of a person whose medical condition prevents him from performing his obligations to this Court and to his clients. If Mr. Myart can make public appearances, engage in civil protest, provide statements to the media, file papers in other cases, and engage in daily and even hourly contact with opposing counsel via phone and email, he clearly has enough energy and wherewithal to perform his obligations in the instant proceedings. For these reasons, Mr. Myart's motion for a stay or continuance is not justified by his medical condition.

*C. Filing of Objections*

Having rejected the arguments advanced in Mr. Myart's Motions, the Court is aware that Mr. Myart's failure to timely file objections to the Magistrate's Orders continues to prejudice his clients. For this reason, and this reason alone, the Court shall grant Mr. Myart's Motion to stay the case for a period of 45 days from the date of his initial [159] Motion, expiring November 12, 2007. The Court is putting Mr. Myart and his clients on notice that, upon expiration of the stay, the Court shall not grant Mr. Myart any further extensions, stays, or continuances in this matter. Accordingly, Mr. Myart and his clients should use the pendency of the stay to decide how they will proceed if Mr. Myart is unable to represent his clients for medical reasons, or represent his clients effectively for any other reason. Mr. Myart and his clients may also want to consider whether this case should proceed in a different forum that is closer to where his clients are located, and where a larger pool of attorneys could potentially be available to represent the

Plaintiffs in the event that Mr. Myart is unable to continue with his representation for medical reasons or otherwise.

III. CONCLUSION

For the reasons set forth above, the Court shall GRANT Plaintiff's [159] Motion for a 45-day stay and DENY Plaintiff's [169] Motion for a stay until December 20, 2007. The stay shall expire on November 12, 2007. If Mr. Myart and his clients decide that Mr. Myart cannot continue to represent them for medical reasons or any other reason, or if they decide that it would be advantageous to pursue this matter in a forum closer to where they are located, appropriate motions for the same shall be filed no later than November 13, 2007. If Mr. Myart and his clients decide to continue with the current representation in the current forum, Mr. Myart's objections to the July 26 Order and September 4 Order shall be filed no later than November 13, 2007.

The Court Clerk shall issue a copy of this Memorandum Opinion and accompanying Order directly to Plaintiffs Mr. and Mrs. Williams.

An Order accompanies this Memorandum Opinion.

Date: October 30, 2007

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

Dr. Leo K. Edwards Jr. M.D.
2011 E. Houston Suite 104C
San Antonio, Texas 78202
210-225-5047
210-225-5040 (Fax)

October 22, 2007

To Whom It May Concern:

Mr. James Myart, a patient of mine, unfortunately has been through a great amount of stress over the past few months. The stress has caused him to have an elevation of his blood pressure and blood sugar, as well as causing some chest discomfort, thought process and slurred and stuttering of his speech.

He was recently hospitalized at the Baptist Memorial Hospital, due to chest pains. The conclusion was his current stress level caused him to lose ground that caused him to have an elevation of his blood pressure and blood sugar. These signs of stress have resulted in his increase in his weight, increase and excessive smoking.

He was informed to have a "normal Life" he would need to make some major changes in his diet, decreases his smoking habits and to work harder in getting his diabetes and hypertension under better control. He was also informed that he need to take some take some time off work and all of his legal responsibilities and assignments, until the end of November. This will allow him some time to rest and get his medical conditions under control and follow up with specialists and do further testing if necessary.

Since he is off work until November, he should not do any full or part time work whatsoever.

Any questions concerning this matter, please contact me at 210-225-5047.

Sincerely,

Dr. Leo K. Edwards Jr. M.D.

**Wolak, Devin (CIV)**

**From:** James W Myart Jr [jwmyartlaw@satx.rr.com]
**Sent:** Wednesday, September 12, 2007 7:31 AM
**To:** Wolak, Devin (CIV)
**Cc:** DWM@usda.gov; johnboyd2000@yahoo.com; LawrLCL@aol.com
**Subject:** STOVALL SUBPLEMENT TO PRODUCTION: CAROLN COOKSIE APPEARS TO BE UNDER CONGRESSIONAL INVESTIGATION FOR LOBBYING EFFORTS AGAINST BLACK FARMERS: REQUEST THAT COOKSIE SUBMIT TO SECOND DEPOSTION ON ATTACHED DOCUMENT
**Importance:** High
**Attachments:** USDA%20Civil%20Rights%20Blackfarmers1.pdf

Mr. Wolak, please know that this attachment is being sent to you as a supplement to Mr. Stovall's production in response to the USA'S Request for Production.

I consider this document and its attachment (e-mail) relevant to Mr. Stovall's claim of pattern and practice of discrimination underlying the USDA'S anticipated and executed breach of the Resolution Agreement.

Mr. Wolak, I request that Ms. Cooksie submit to deposition questioning regarding this document and the e-mail.

Further, as you may recall during Ms. Cooksie's deposition, she said (paraphrased) the FSA and Mr. Stovall are probably at fault for the failure of Mr. Stovall's farming operation and the settlement agreement. In my view, Ms. Cooksie's statement operates as an admission against interest and an admission of liability on the part of the USA/USDA. And such statement does not operate as an admission by Mr. Stovall since he never made such a statement and because he has maintained all along that the breach was under-girded by the FSA'S continued discrimination against him perpetrated from the top by Ms. Cooksie and her subordinates.

Please indicate in writing your response to this request.

James W. Myart, Attorney-At Law

"THE PRESTON HOUSE"

1104 Denver Blvd., Suite 300

San Antonio, Texas 78210

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution other than to the addressee(s), copying or taking of any action because of this information is strictly prohibited.

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.485 / Virus Database: 269.13.14/1001 - Release Date: 9/11/2007 1:37 PM

HENRY A. WAXMAN, CALIFORNIA,
CHAIRMAN

TOM LANTOS, CALIFORNIA
EDOLPHUS TOWNS, NEW YORK
PAUL E. KANJORSKI, PENNSYLVANIA
CAROLYN B. MALONEY, NEW YORK
ELIJAH E. CUMMINGS, MARYLAND
DENNIS J. KUCINICH, OHIO
DANNY K. DAVIS, ILLINOIS
JOHN F. TIERNEY, MASSACHUSETTS
WM. LACY CLAY, MISSOURI
DIANE E. WATSON, CALIFORNIA
STEPHEN F. LYNCH, MASSACHUSETTS
BRIAN HIGGINS, NEW YORK
JOHN A. YARMUTH, KENTUCKY
BRUCE L. BRALEY, IOWA
ELEANOR HOLMES NORTON,
DISTRICT OF COLUMBIA
BETTY McCOLLUM, MINNESOTA
JIM COOPER, TENNESSEE
CHRIS VAN HOLLEN, MARYLAND
PAUL W. HODES, NEW HAMPSHIRE
CHRISTOPHER S. MURPHY, CONNECTICUT
JOHN P. SARBANES, MARYLAND
PETER WELCH, VERMONT

ONE HUNDRED TENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

TOM DAVIS, VIRGINIA,
RANKING MINORITY MEMBER

DAN BURTON, INDIANA
CHRISTOPHER SHAYS, CONNECTICUT
JOHN M. McHUGH, NEW YORK
JOHN L. MICA, FLORIDA
MARK E. SOUDER, INDIANA
TODD RUSSELL PLATTS, PENNSYLVANIA
CHRIS CANNON, UTAH
JOHN J. DUNCAN, JR., TENNESSEE
MICHAEL R. TURNER, OHIO
DARRELL E. ISSA, CALIFORNIA
KENNY MARCHANT, TEXAS
LYNN A. WESTMORELAND, GEORGIA
PATRICK T. McHENRY, NORTH CAROLINA
VIRGINIA FOXX, NORTH CAROLINA
BRIAN P. BILBRAY, CALIFORNIA
BILL SALI, IDAHO
— —

http://oversight.house.gov

August 21, 2007

The Honorable Mike Johanns
Secretary of Agriculture
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250

Dear Secretary Johanns:

The Subcommittee on Government Management, Organization, and Procurement has been conducting oversight of the USDA's management of civil rights enforcement and monitoring, including delays in its processing of discrimination complaints. As you know, Congress enacted legislation several years ago to address USDA's longstanding history of discrimination against black farmers, and the House of Representatives recently passed a bill including a provision to reopen a landmark civil rights case against USDA for discrimination in providing farm loans to black farmers.

An e-mail recently circulated among USDA employees appears to denigrate the efforts to remedy USDA's history of discrimination against black farmers, and raises serious questions about USDA's commitment in this area. Moreover, the e-mail message appears to violate federal law prohibiting executive branch employees from using official resources to lobby Members of Congress.

The e-mail, which appears to have circulated among employees of Farm Service Agency (FSA), criticized the bill passed by the House and urged employees to lobby against the bill in the Senate. The e-mail includes a factually questionable argument that "ample time and opportunity was given during the initial suit to file and this late filing would bury the agency and cost taxpayers billions of dollars if the 73,000 later filers are accepted." The e-mail indicated that Carolyn Cooksie, deputy administrator for farm loan programs, has already started working the Senate but needs help. It concludes with a call to action and a reminder that USDA computers and phones should not be used in the lobbying campaign. A copy of the e-mail is attached.



created using
BCL easyPDF
Printer Driver
Click here to purchase a license to remove this image

The e-mail circulated by USDA employees raises serious concerns for several reasons. According to federal law and USDA policies, the use of federal resources for lobbying members of Congress is strictly prohibited. It is even more troubling that the USDA employees lobbying against due process for black farmers work for the very agency black farmers sued in the 1990s for discrimination in the administration of its farm loan programs.

Pursuant to the Subcommittee's investigation of management of USDA civil rights programs, please provide the following information by September 1, 2007:

1) A list of all recipients of the attached e-mail;

2) Copies of all replies and other e-mails sent to or received from USDA e-mail accounts that quote or reference the attached e-mail;

3) A statement of the steps that have been taken to prevent further violations of anti-lobbying laws and policies within USDA;

4) A statement of whether the contents of the attached e-mail reflect USDA policy.

5) A statement of whether USDA is conducting an internal or external investigation of improper conduct relating to the attached e-mail.

In a separate letter, I am asking the USDA Inspector General to conduct an independent investigation of the issues discussed above.

For additional information, please contact Velvet Johnson, Subcommittee counsel, at

Sincerely,

Edolphus Towns
Chairman
Subcommittee on Government Management,
Organization, and Procurement

Enclosure
cc: Reps. Bilbray, Waxman, Tom Davis



created using BCL easyPDF Printer Driver
Click here to purchase a license to remove this image

NACS, NASE, and other FSA employees need to contact their Senators and work hard to get it stopped. The contacts need to me made before the debate starts in the Senate.

PLEASE CONTACT YOUR SENATOR TODAY CONCERNING THE FOLLOWING:

- REMOVE THE TERM LIMITS ON FSA LOANS IN THE NEXT FARM BILL

- DO NOT ALLOW LATE FILERS ON THE PIGFORD LAWSUIT.
AMPLE TIME AND OPPORTUNITY WAS GIVEN DURING THE INITIAL SUIT TO FILE AND THIS LATE FILING WOULD BURY THE AGENCY AND COST TAXPAYERS BILLIONS
OF DOLLARS
IF THE 73,000 LATE FILERS ARE ACCEPTED

Members, please step up and make your voice heard in this Farm Bill debate.

I am willing to tell my Senators that I will not cast my vote for anyone who will not stand up and do what's right instead of worrying about being politically correct.

They should be fiscally responsible
and at the same time listen to their constituients!

WE CAN STOP THIS IF
WE RISE UP TOGETHER AND MAKE OUR VOICE HEARD! KEEP CONTACTING THEM UNTIL THEY HEAR YOU! MAKE SURE THEY RECEIVE YOUR MESSAGE, FAX, E-MAIL,
ETC.

Remember, don't make contacts using the office telephone or computer. Send your contacts from home or from another location other than the office, but send them! It would also be great to have others contact them as well. Tell you friends, CED's, and farmers what's going on in this Farm Bill debate and they may wish to make contacts as well. Especially those that have influence with their Senators!



created using
BCL easyPDF
Printer Driver
Click here to purchase a license to remove this image

**Wolak, Devin (CIV)**

**From:** James W Myart Jr [jwmyartlaw@satx.rr.com]
**Sent:** Wednesday, September 12, 2007 7:48 AM
**To:** DWM@usda.gov
**Cc:** Wolak, Devin (CIV); johnboyd2000@yahoo.com; LawrLCL@aol.com; caroyln.cooksi@usda.gov; arlean.leland@usda.gov; Dean, Paul (CIV)
**Subject:** COOKSIE ANTICS
**Importance:** High
**Attachments:** USDA%20Civil%20Rights%20Blackfarmers1.pdf

Dale, I must say to you that I am not at all shocked that Carolyn Cooksie has gotten the Secretary, you and the USDA in a bit of a bind by sending, via e-mail, internal lobbying instructions on how to defeat black farmers. I question whether this e-mail was condoned by the Secretary?

At any rate, this is evidence in the Stovall, Davis, Bradshaw and Hildebrandt matters.

Dale, despite the fact that you and I have developed a mutually respectful and friendly relationship, I remain ever so disappointed that Secretary Johanns has chosen to ignore the plight of black farmers, especially in the Williams, Matthew Grant, Dexter Davis, George Hildebrandt, Bradshaw, Rutherford and Stovall matters. The USDA and Secretary Johanns have, instead, chosen to put up the OGC Attorneys are in charge defense for his complacency on these matters.

Frankly, Dale, it's repulsive. That is the reason I have been so quiet. It does no good to meet, meet and meet to look into smiling faces when nothing, absolutely nothing is being done by the Secretary on these continuing discriminatory matters. It is like Secretary Johanns is oblivious to the truth.

I apologize in advance if you, my friend, get angry about this e-mail. But the truth hurts.

I hope we can remain friends after you read by outrage and anger at you and Secretary Johanns. I'll get over being angry.

Yet, I do not expect this e-mail to change any minds there at USDA, including yours or Secretary Johanns.

James W. Myart, Attorney-At Law

"THE PRESTON HOUSE"

1104 Denver Blvd., Suite 300

San Antonio, Texas 78210

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution other than to the addressee(s), copying or taking of any action because of this information is strictly prohibited.

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.485 / Virus Database: 269.13.14/1001 - Release Date: 9/11/2007 1:37 PM

HENRY A. WAXMAN, CALIFORNIA,
CHAIRMAN

TOM LANTOS, CALIFORNIA
EDOLPHUS TOWNS, NEW YORK
PAUL E. KANJORSKI, PENNSYLVANIA
CAROLYN B. MALONEY, NEW YORK
ELIJAH E. CUMMINGS, MARYLAND
DENNIS J. KUCINICH, OHIO
DANNY K. DAVIS, ILLINOIS
JOHN F. TIERNEY, MASSACHUSETTS
WM. LACY CLAY, MISSOURI
DIANE E. WATSON, CALIFORNIA
STEPHEN F. LYNCH, MASSACHUSETTS
BRIAN HIGGINS, NEW YORK
JOHN A. YARMUTH, KENTUCKY
BRUCE L. BRALEY, IOWA
ELEANOR HOLMES NORTON,
DISTRICT OF COLUMBIA
BETTY McCOLLUM, MINNESOTA
JIM COOPER, TENNESSEE
CHRIS VAN HOLLEN, MARYLAND
PAUL W. HODES, NEW HAMPSHIRE
CHRISTOPHER S. MURPHY, CONNECTICUT
JOHN P. SARBANES, MARYLAND
PETER WELCH, VERMONT

ONE HUNDRED TENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

TOM DAVIS, VIRGINIA,
RANKING MINORITY MEMBER

DAN BURTON, INDIANA
CHRISTOPHER SHAYS, CONNECTICUT
JOHN M. McHUGH, NEW YORK
JOHN L. MICA, FLORIDA
MARK E. SOUDER, INDIANA
TODD RUSSELL PLATTS, PENNSYLVANIA
CHRIS CANNON, UTAH
JOHN J. DUNCAN, JR., TENNESSEE
MICHAEL R. TURNER, OHIO
DARRELL E. ISSA, CALIFORNIA
KENNY MARCHANT, TEXAS
LYNN A. WESTMORELAND, GEORGIA
PATRICK T. McHENRY, NORTH CAROLINA
VIRGINIA FOXX, NORTH CAROLINA
BRIAN P. BILBRAY, CALIFORNIA
BILL SALI, IDAHO
— —

http://oversight.house.gov

August 21, 2007

The Honorable Mike Johanns
Secretary of Agriculture
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250

Dear Secretary Johanns:

The Subcommittee on Government Management, Organization, and Procurement has been conducting oversight of the USDA's management of civil rights enforcement and monitoring, including delays in its processing of discrimination complaints. As you know, Congress enacted legislation several years ago to address USDA's longstanding history of discrimination against black farmers, and the House of Representatives recently passed a bill including a provision to reopen a landmark civil rights case against USDA for discrimination in providing farm loans to black farmers.

An e-mail recently circulated among USDA employees appears to denigrate the efforts to remedy USDA's history of discrimination against black farmers, and raises serious questions about USDA's commitment in this area. Moreover, the e-mail message appears to violate federal law prohibiting executive branch employees from using official resources to lobby Members of Congress.

The e-mail, which appears to have circulated among employees of Farm Service Agency (FSA), criticized the bill passed by the House and urged employees to lobby against the bill in the Senate. The e-mail includes a factually questionable argument that "ample time and opportunity was given during the initial suit to file and this late filing would bury the agency and cost taxpayers billions of dollars if the 73,000 later filers are accepted." The e-mail indicated that Carolyn Cooksie, deputy administrator for farm loan programs, has already started working the Senate but needs help. It concludes with a call to action and a reminder that USDA computers and phones should not be used in the lobbying campaign. A copy of the e-mail is attached.



created using
BCL easyPDF
Printer Driver
Click here to purchase a license to remove this image

The e-mail circulated by USDA employees raises serious concerns for several reasons. According to federal law and USDA policies, the use of federal resources for lobbying members of Congress is strictly prohibited. It is even more troubling that the USDA employees lobbying against due process for black farmers work for the very agency black farmers sued in the 1990s for discrimination in the administration of its farm loan programs.

Pursuant to the Subcommittee's investigation of management of USDA civil rights programs, please provide the following information by September 1, 2007:

1) A list of all recipients of the attached e-mail;

2) Copies of all replies and other e-mails sent to or received from USDA e-mail accounts that quote or reference the attached e-mail;

3) A statement of the steps that have been taken to prevent further violations of anti-lobbying laws and policies within USDA;

4) A statement of whether the contents of the attached e-mail reflect USDA policy.

5) A statement of whether USDA is conducting an internal or external investigation of improper conduct relating to the attached e-mail.

In a separate letter, I am asking the USDA Inspector General to conduct an independent investigation of the issues discussed above.

For additional information, please contact Velvet Johnson, Subcommittee counsel, at

Sincerely,

Edolphus Towns
Chairman
Subcommittee on Government Management,
Organization, and Procurement

Enclosure
cc: Reps. Bilbray, Waxman, Tom Davis



created using
BCL easyPDF
Printer Driver
Click here to purchase a license to remove this image

NACS, NASE, and other FSA employees need to contact their Senators and work hard to get it stopped. The contacts need to me made before the debate starts in the Senate.

PLEASE CONTACT YOUR SENATOR TODAY CONCERNING THE FOLLOWING:

- REMOVE THE TERM LIMITS ON FSA LOANS IN THE NEXT FARM BILL

- DO NOT ALLOW LATE FILERS ON THE PIGFORD LAWSUIT.
  AMPLE TIME AND OPPORTUNITY WAS GIVEN DURING THE INITIAL SUIT TO FILE AND THIS LATE FILING WOULD BURY THE AGENCY AND COST TAXPAYERS BILLIONS
OF DOLLARS
IF THE 73,000 LATE FILERS ARE ACCEPTED

Members, please step up and make your voice heard in this Farm Bill debate.

I am willing to tell my Senators that I will not cast my vote for anyone who will not stand up and do what's right instead of worrying about being politically correct.

They should be fiscally responsible and at the same time listen to their constituients!

WE CAN STOP THIS IF
WE RISE UP TOGETHER AND MAKE OUR VOICE HEARD! KEEP CONTACTING THEM UNTIL THEY HEAR YOU! MAKE SURE THEY RECEIVE YOUR MESSAGE, FAX, E-MAIL,
ETC.

Remember, don't make contacts using the office telephone or computer. Send your contacts from home or from another location other than the office, but send them! It would also be great to have others contact them as well. Tell you friends, CED's, and farmers what's going on in this Farm Bill debate and they may wish to make contacts as well. Especially those that have influence with their Senators!



created using
BCL easyPDF
Printer Driver
Click here to purchase a license to remove this image

**Wolak, Devin (CIV)**

**From:** James W Myart Jr. [jwmyartlaw@satx.rr.com]
**Sent:** Wednesday, September 12, 2007 10:30 AM
**To:** DWM@usda.gov
**Cc:** Wolak, Devin (CIV); Dean, Paul (CIV)
**Subject:** RE: COOKSIE ANTICS: IMPLICATIONS IN DAVIS, WILLIAMS, HILDEBRANDT, BRADSHAW AND STOVALL

Mr. Moore:

I have not spoken with John Boyd in at least a year.

Dale, as you may recall, my relationship with John Boyd is strained to say the least.

As I may have related to you before or as you may have observed, I am quite sincere about my efforts as a lawyer for black farmers. I question deeply Mr. Boyd's motives. I suppose, however, it takes all kinds of people to make up a country.

Dale, this Cooksie matter, letter from a member of Congress and her e-mail, has now been introduced officially in the Stovall matter. I took Ms.
Cooksie's deposition in the case. I believe she admitted the breach of USDA/STOVALL Resolution Agreement (contract) in her testimony. I do not expect that the USDA/OGC lawyers have brief you or the Secretary on the deposition or the case. That's the way the Secretary prefers it, I suppose.

Further, I have ask the USA'S Counsel, Mr. Devin Wolak, to re-produce Ms.
Cooksie in order that I may depose her on the inappropriate "e-mail," which I believe is some evidence of the USDA'S continued discrimination against black farmers and which, in my opinion, formed and forms the basis of the intentional breach of the USDA/Stovall Resolution Agreement.

Incidentally, Dale, it has been now about a year since I was promised a meeting with the new General Counsel. I never heard a word since the promise was made. I truly try to keep my promises.

It would be refreshing if Secretary Johanns could put these matters on his "radar screen." Based on the past, I have little faith that will occur. I stand to be shocked in error at this.

James Myart

-----Original Message-----
From: DWM@usda.gov [mailto:DWM@usda.gov]
Sent: Wednesday, September 12, 2007 7:08 AM
To: 'jwmyartlaw@satx.rr.com%inter2'
Cc: 'caroyln.cooksi@usda.gov'; ARLEAN.LELAND@OGC.USDA.GOV; 'Devin.Wolak@usdoj.gov%inter2'; 'johnboyd2000@yahoo.com%inter2'; 'LawrLCL@aol.com%inter2'; 'Paul.Dean@usdoj.gov%inter2'
Subject: RE: COOKSIE ANTICS

Mr. Myart: So good to hear from you. To answer your question, no, the email was not condoned by the Secretary. And I suspect you know that since Mr. Boyd, who visited with the Secretary regarding this email and related matters, has most likely shared this with you. As this matter is under investigation, I will not comment further. I'll spare you the smiling face and simply say that I will keep you posted as is appropriate re the investigation. Sincerely, Dale W. Moore, COS, USDA

-----Original Message-----
From: jwmyartlaw@satx.rr.com%inter2 [mailto:jwmyartlaw@satx.rr.com]
Sent: Wednesday, September 12, 2007 7:48 AM
To: DWM

Cc: caroyln.cooksi@usda.gov; LELAND, ARLEAN -OGC; Devin.Wolak@usdoj.gov%inter2; johnboyd2000@yahoo.com%inter2; LawrLCL@aol.com%inter2; Paul.Dean@usdoj.gov%inter2
Subject: COOKSIE ANTICS
Importance: High

Dale, I must say to you that I am not at all shocked that Carolyn Cooksie has gotten the Secretary, you and the USDA in a bit of a bind by sending, via e-mail, internal lobbying instructions on how to defeat black farmers. I question whether this e-mail was condoned by the Secretary?

At any rate, this is evidence in the Stovall, Davis, Bradshaw and Hildebrandt matters.

Dale, despite the fact that you and I have developed a mutually respectful and friendly relationship, I remain ever so disappointed that Secretary Johanns has chosen to ignore the plight of black farmers, especially in the Williams, Matthew Grant, Dexter Davis, George Hildebrandt, Bradshaw, Rutherford and Stovall matters. The USDA and Secretary Johanns have, instead, chosen to put up the OGC Attorneys are in charge defense for his complacency on these matters.

Frankly, Dale, it?s repulsive. That is the reason I have been so quiet. It does no good to meet, meet and meet to look into smiling faces when nothing, absolutely nothing is being done by the Secretary on these continuing discriminatory matters. It is like Secretary Johanns is oblivious to the truth.

I apologize in advance if you, my friend, get angry about this e-mail. But the truth hurts.

I hope we can remain friends after you read by outrage and anger at you and Secretary Johanns. I?ll get over being angry.

Yet, I do not expect this e-mail to change any minds there at USDA, including yours or Secretary Johanns.

James W. Myart, Attorney-At Law

"THE PRESTON HOUSE"

1104 Denver Blvd., Suite 300

San Antonio, Texas 78210

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution other than to the addressee(s), copying or taking of any action because of this information is strictly prohibited.

**Wolak, Devin (CIV)**

**From:** James W Myart Jr [jwmyartlaw@satx.rr.com]

**Sent:** Wednesday, September 12, 2007 2:09 PM

**To:** Wolak, Devin (CIV); Dean, Paul (CIV)

**Cc:** DWM@usda.gov; johnwboyd2000@yahoo.com; LawrLCL@aol.com; apwashington@ap.org; aptexas@ap.org; apdc@ap.org

**Subject:** CAROLYN COOKSIE AND USDA GOVERNMENT-SPONSORED EFFORTS TO DEFEAT BLACK FARMERS; it's institutionalized!

Dale, Secretary Johanns must address this in a positive way. Now, you really do know where the woodpile is and why Black Farmers have complained and continue to complain so vociferously for so long and so hard. And, it is continued in OGC by digging heels in on the few pending cases, not informing the Secretary of what's really going on in these cases.

SEE THIS. DEEP, DEEP CONCERN ON IMPACT OF CONTINUED DISCRIMINATION AND ADMINSTRATIVE LOBBYING AGAINST BLACK FARMER LEGISLATION AND BLACK FARMERS. CAROLYN COOKSIE SHOULD BE FIRED BY JOHANNS AND THE FEW PENDING CASES SHOULD BE SETTLED.

James Myart

**USDA agency launches inquiry into lobbying e-mail**

By Anika Gupta *agupta@govexec.com* August 8, 2007

The head of an Agriculture Department agency said Wednesday that she was prepared to take "appropriate action" against any employee who is found to have used government equipment to lobby against pending legislation.
"Obviously, we take this very seriously," said Teresa Lasseter, administrator of the Farm Service Agency, in reference to an e-mail circulated last Thursday within the agency urging recipients to contact their senators to express their opposition to a provision in the House version of the Farm Bill that would reopen thousands of discrimination claims by black farmers. Those found to have been involved with the e-mail could face severe civil and criminal penalties.
Lasseter said she has appointed an independent investigator to the case. "I have a lot of confidence in [him]," she said. "He was trained by the inspector general, and he's not close to the employees."
Lasseter's claim addresses the concerns of critics, some of whom have called for a third party investigation. Among the critics is John Boyd, president of the National Black Farmers Association, who has been working on legislation to reopen the cases for six years.
More than 23,000 black farmers applied for restitution in 1999 after a Clinton administration official decided the USDA had discriminated against the farmers for decades. More than 73,000 farmers who would have qualified for compensation didn't file claims because, they say, they didn't hear about the decision in time. The new legislation, already passed by the House, would reopen consideration for those farmers, and award up to $100 million in additional compensation.
Boyd said the e-mail "makes the USDA look really bad," and indicates a "lack of

sensitivity on the part of higher level officials" toward black farmers, many of whom went into debt as a result of USDA discrimination.

"What we need," Boyd said, "is accountability. These people were on the taxpayer's time, and instead of doing the right thing and making sure that small farmers and black farmers get loans, they were circulating e-mails through all of their staff about how to block legislation."

The e-mail first came to Lasseter's attention on Monday. She responded the next day with a message to all FSA employees that included a memo on employee political activity. "I want to emphasize the importance and seriousness of following the legal advice in this memo," she wrote.

In the memo, USDA General Counsel Marc Kesselman said that employees are free to exercise their First Amendment rights on their own time, but are "prohibited from lobbying activities during duty hours and from using government equipment in any such endeavor."

Using government equipment for lobbying activities carries a penalty under the federal Hatch Act but also under criminal statutes, said Ken Cook, president of the Environmental Working Group, an independent organization that focuses on agricultural issues.

If found to have broken the law, employees could face suspension, fines and up to a year's imprisonment. They also could lose their jobs.

As of now, authorship of the e-mail is unclear. The original message called on employees to contact their senators and express opposition for the farm bill. Reopening the cases, the e-mail said, would "bury" agency employees in work:

"The agency will be required to submit a boatload of information within 60 days of anyone filing which will bury us! Not to mention, most of this information we don't have. Carolyn [Cooksie, FSA deputy administrator for farm loan programs] is doing a lot of legwork in the Senate trying to stop it but FSA employees need to contact their Senators and work hard to get it stopped. The contacts need to [be] made before the debate starts in the Senate."

Lasseter said that Cooksie, who has 32 years of government service, has answered lawmakers' questions about the bill, as FSA senior employees often are called upon to do. "To my knowledge Carolyn has not been lobbying the Hill," Lasseter said. "I have no reason to believe that Carolyn was the author of this e-mail."

Boyd said that he's still confident the provision can pass the Senate, noting the controversy over the FSA e-mail might even help his cause. "Here you have the very agency responsible for making loans to black farmers saying they don't even know if they're going to support [the bill]," he said. "It shows that if the [senators] were sincere about resolving the problem, they would go ahead and back the legislation."

VIEW ALL COMMENTS POST COMMENT

**COMMENTS**

Just lets suppose that all the e-mails came from "outside" (what we call "Off Base" in the military). If this turns out to be the case, the IG, IT people and management can investigate and whine all the want, but that is all they can do. Now, if some poor schlub made the mistake of forwarding it on his "Gummint" computer, he or she will find out how the mouse feels after that last nibble on the peanut butter...

Jerome from Layton Posted August 15, 2007 10:22 PM

The USDA should be ashamed of themselves!! Every article I have read about this issue shows the government does not give a lick about the black farmers. I can see

y they have lost their land. I read an article on EWG.org in reference to the lack of subsidies to black farmers the average subsidy to a black farmer is 260.00 and the top ten percent (white farmer) receive over a million a head. Oh lets not forget the billions even DEAD white farmers receive. But none for the Black Farmers. Mrs Cooksie should be at home right now with no job, instead of being fair to the black farmers she was on capital hill lobbying agaisnt the black farmers at the tax payer expense, clear violation of the hatch act (is farm service agency the same agency that has discriminated against the black farmers in the first place?. At some point the black farmers need, deserve and will get justice. One person the government continues to under estimate is John Boyd President of the Black Farmers, I remember this guy he rode his mule and wagon to washington to protest the department sometime ago. John Boyd hang in there!! The black farmers day of JUSTICE is coming. You will be the person God called to deliver freedom to the black farmers. Wayne Posted August 12, 2007 10:07 PM

Why is this "taken very seriously" compared to "Lurita Doan" and the GSA Hatch Act Report? Is there a difference between High Level Hatch Act breaches(wink wink) and working stiffs "wasting taxpayer dollars?" Confused Posted August 9, 2007 4:54 PM

---

James W. Myart, Attorney-At Law

"THE PRESTON HOUSE"

1104 Denver Blvd., Suite 300

San Antonio, Texas 78210

CONFIDENTIALITY NOTICE: The information contained in this ELECTRONIC MAIL transmission is confidential. It may also be subject to the attorney-client privilege or be privileged work product or proprietary information. This information is intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution other than to the addressee(s), copying or taking of any action because of this information is strictly prohibited.

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.485 / Virus Database: 269.13.15/1003 - Release Date: 9/12/2007 10:56 AM

**U.S. Department of Justice**

Civil Division

Telephone: (202) 616-0170
Facsimile: (202) 514-8624

JED:DAB:DAWolak
154-05-400

***Washington, DC 20530***

September 14, 2007

VIA ELECTRONIC MAIL AND FEDERAL EXPRESS

Mr. James W. Myart, Jr.
James W. Myart, Jr., P.C.
The Preston House
1104 Denver Boulevard
Suite 300
San Antonio, Texas 78210

Re: *Michael W. Stovall v. United States*, CFC No. 05-400
Plaintiff's 9/12/2007 Request to Reopen Deposition of Carolyn Cooksie

Dear Mr. Myart:

I am in receipt of your email dated September 12, 2007, in which you requested that Carolyn Cooskie's deposition be reopened so that you may take her testimony concerning an email which addressed a bill currently pending before the Senate that would affect the Pigford settlements. You attached to your September 12 email (a) the email in question, and (b) a copy of the August 21, 2007 letter from Congressman Edolphus Towns to USDA Secretary Michael Johanns concerning the email in question. Finally, you stated that the email in question and Ms. Cooksie's further testimony is "relevant to Mr. Stovall's claim of pattern and practice of discrimination underlying the USDA's anticipated and executed breach of the Resolution Agreement."

We will not agree to reopen Ms. Cooksie's deposition for this reason. The discovery you seek is not relevant to this case, nor is it reasonably calculated to lead to the discovery of relevant information. Mr. Stovall does not have a "claim of pattern and practice of discrimination" pending in this case. Mr. Stovall claims that the Government breached the 1998 Resolution Agreement. Evidence of discrimination, or a discriminatory animus, on the part of the USDA is completely irrelevant to the issues of breach or damages in this case.

Furthermore, you have already sought to compel other discovery upon the same "pattern or practice of discrimination" basis, and you have not yet been allowed to take such discovery.

Indeed, whether you may take such discovery is contingent upon your ability to file a memorandum elucidating the legal basis for allowing such discovery in a contract action, and that memorandum is due tomorrow, September 14, 2007. Until the Court rules that discovery is allowable upon this basis, we will stand by our objections.

Finally, regardless of the Court's decision upon your motion to compel, the subject email was a matter of public knowledge more than two weeks before Ms. Cooksie's deposition on August 23, 2007. See http://obama.senate.gov/press/070808-usda_improper _lobbying/ (Website of Sen. Barack Obama, with a copy of an August 8, 2007, letter he sent to Secretary Johanns concerning the subject email). This is not newly discovered evidence that would warrant the reopening of a deposition. Your failure to raise this issue during Ms. Cooksie's deposition has waived your right to depose her upon this subject now.

Sincerely,

DAWolak

Devin A. Wolak
Trial Attorney
Commercial Litigation Branch

**IN THE UNITED COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MICHAEL W. STOVALL** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 05-400C** |
| | ) | **(Judge Allegra)** |
| | ) | |
| **THE UNITED STATES OF AMERICA** | ) | |

**PLAINTIFFS INITIAL DISCLOSURES**

Michael Stovall ("PLAINTIFF") files this his initial disclosures pursuant to Rule 26(a):

A) The name, address, and telephone number of each individual you believe has discernable information in support of Plaintiff's claims and subject of information:

| | | |
|---|---|---|
| 1. | Michael W. Stovall<br>c/o James W. Myart<br>1104 Denver Blvd<br>San Antonio, TX 78210<br>(210)533-9461 | PLAINTIFF with knowledge of all elements of claim and damages |
| 2. | Suzanne Beavers<br>Lawrence County FSA Supervisor<br>13075 AL Hwy 157, Ste 3<br>Moulton, AL 35650<br>(256) 974-1174 | Conduct of FSA in breach of settlement agreement |
| 3. | Richard Knouff<br>Lawrence County FSA<br>13075 AL Hwy 157, Ste 3<br>Moulton, AL 35650<br>(256) 974-1174 | Conduct of FSA in breach of settlement agreement |
| 4. | Carolyn Cooksie<br>USDA<br>1400 Independence SW<br>Washington, D.C. 20250 | Authorized breach of contract |

| | | |
|---|---|---|
| 5. | Frederick D. Isler<br>USDA<br>1400 Independence SW<br>Washington, D.C. 20250 | Supported breach of contract |
| 6. | Henry Ramsey<br>Advisor to USDA<br>Secretary of Agriculture<br>San Francisco, CA | Knowledge of 1998 settlement agreement |
| 7. | Lloyd Wright<br>Former USDA Director of<br><br>Civil Rights<br>11307 Baritone Court<br>,Ma 20901 | Signatory to original settlement, and explanation of how terms were breached; gave declaration (See attached) |
| 8. | Sam Snyder<br>USDA<br>1400 Independence<br>Washington, D.C. 20250 | Failed to Provide Compliance |
| 9. | Vernon Parker<br>USDA<br>1400 Independence<br>Washington, D.C. 20250 | Knowledge of Complaint of breach of contract and failure to act |
| 10. | Calvin Gibson<br>USDA<br>1400 Independence<br>Washington, D.C. 20250 | Knowledge of repeated breach of contracts by the USDA |
| 11. | Dana Hester<br>Farm Loan Manager<br>USDA, FSA<br>13075 AK Hwy 175<br>Moulton, AL 35650 | Disaster set aside actions of local USDA office after 1998 settlement |
| 12. | Dexter Davis<br>Sondheimer, LA | Offer testimony as to USDA conduct to similarly situated black farmers |
| 13. | Custodian of Records<br>USDA FSA<br>13075 AL Hwy 175<br>Moulton, AL 35650 | Records of all applications and correspondence with Plaintiff and internal documents |

| | | |
|---|---|---|
| 14. | Danny Crawford<br>AL State FSA office<br>P.O. Box 235013<br>Montgomery, AL 36123<br>Fax (334)275-3550 | Policy of USDA toward black farmers |
| 15. | Mitchell D. Hays<br>PO Box 386<br>Tuscumbia, AL35674<br>(256)383-9444 | Attorney who resolved first outcry |
| 16. | Robert Springer<br>Executive Director<br>Of State Operations (Retired) | Has Knowledge of Plaintiff's Loan Application |
| 17. | James Radintz<br>Director, FSA Loan Making Division | Has Knowledge of Plaintiff's loan application and the Implementation of the Settlement Agreement |
| 18. | Frank Rodgers<br>Farm loan chief<br>Tennessee office | Has knowledge of Plaintiff's 1998 Loan application in |
| 19. | Lawrence Mashburn<br>Farm loan officer<br>Tennessee Office | Has knowledge of Plaintiff's 1998 Loan application |
| 20. | Phyllis Holt<br>Farm loan officer<br>Tennessee Office | Has knowledge of Plaintiff's 1998 Loan application |
| 21. | William Sewell<br>Farm Loan Chief<br>Alabama office | Has knowledge of Plaintiff's loan applications |
| 22. | Jason Thomas<br>Farm loan officer (retired) | Has knowledge of loan applications in Alabama office |
| 23. | Johnny Raby<br>Supervisory Agricultural<br>District Director | Has knowledge of Plaintiff's loan application in Alabama office |

| | | |
|---|---|---|
| 24. | Kendall Foust<br>Farm loan officer | Has knowledge of Plaintiff's loan application in Alabama office |

B) Documents and other tangible things the Plaintiff intends to support his claims:

1. Settlement of Claim dated February 27, 1998
2. Loan Application 8-6-98; Family and Home Plan 8-6-98
3. Application for two chicken house loans 11-2-98
4. Letter to State Executive Director 3-4-98
5. Notification of FO/OL Loan 3-4-98
6. Application for loan assistance 3-16-98
7. 1998 letter verifying pledge of all assets 4-28-98
8. Letter from Lawrence County Office Committee granting eligibility 6-26-06
9. Letter granting eligibility for loan servicing 7-14-98
10. Availability of funds letter 8-6-98
11. Loan Closing Letter 9-11-98
12. Letter on Loan Closing 11-5-98
13. 9 Credit reports Feb. 23, 1998-July 26, 1998
14. Letter to certify credit report 3-10-98
15. All files, correspondence and pleadings in possession of Defendant
16. Affidavit of Lloyd Wright 7-24-05

C) Calculation of Economic damages:

Loss of two chicken houses (20,000 chickens each) and contract with Con Agr.

These losses due to breach of loan commitment to build two chicken houses

show the following damages in loss of chickens:

2 Chicken houses=40,000 baby chicks x $.15 per chick x 6 shipments + $9,000.00=$45,000 annually x 7 years=**$315,000.00**

Cattle- heard reduced from 65 to 17 due to failure to provide loans per settlement.

Lost cattle revenue=45 calves( 600 lbs. per calf) at 76.91 per 100 lbs. x 7 years=**$145,359.90**

Attorney's Fees= To be proved up by counsel as expert testimony.

D) No insurance agreements are known to the Plaintiff that relate to this matter.

Respectfully submitted,

James W. Myart, Jr., P.C.
306 Preston Avenue
San Antonio, Texas 78210
Phone: (210) 533-9561
Fax: (210) 533-4815

By:______________________
James W. Myart, Jr.
D. C. Bar No. TX 0021
Attorney for Plaintiff

DATE:__________________

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument was served upon Mr. Devin Wolak via facsimile transmission and/or e-mail and/or first class mail on this 2nd day of October, 2006.

___________________________

James W. Myart, Jr.