# In The United States Court of Federal Claims

No. 05-400C

(Filed: February 20, 2009)
_____

| | | |
|---|---|---|
| MICHAEL W. STOVALL, | * | Motion to compel production; Scope of |
| | * | discovery – RCFC 26(b)(1); Attorney-client |
| Plaintiff, | * | privilege – defined; Applicability of |
| | * | privilege to advice received from counsel; |
| v. | * | Waiver – implied waiver where the party |
| | * | opposing production may rely on parol |
| THE UNITED STATES, | * | evidence in interpreting a contract and where |
| | * | that parol evidence may derive from the |
| Defendant. | * | attorneys who negotiated and drafted the |
| | * | agreement; Bare-bones requests for |
| | * | representation not protected by attorney- |
| | * | client privilege; Documents ordered |
| | * | produced. |

_____

**ORDER**
_____

*Howell R. Riggs,* Dick Riggs Miller LLP, Huntsville, AL, for plaintiff.

*Devin A. Wolak*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General *Michael F. Hertz*, for defendant.

**ALLEGRA, Judge:**

Pending before the court, in this contract case, is plaintiff's motion to compel the production of documents responsive to one of its requests for production. Defendant claims, *inter alia*, that the subject documents are privileged. Following an *en camera* review of the documents in question, and for the reasons that follow, the court **GRANTS**, in part, and **DENIES**, in part, plaintiff's motion.

**I.**

A brief recitation of the underlying facts sets the context for this decision.

On February 27, 1998, Michael Stovall (plaintiff), an African-American farmer in Alabama, and the Office of Civil Rights of the United States Department of Agriculture (USDA) settled a discrimination claim against the agency by entering into a "Resolution Agreement."

Under the agreement, Mr. Stovall waived any rights against USDA and its employees arising from his discrimination claim in exchange for the USDA's promise to pay him $145,000 in compensatory damages, discharge his debts to the Farm Service Agency of the USDA, offer him priority consideration on future loan applications, provide reasonable attorney's fees and costs, and other relief. The Office of General Counsel (OGC) of the USDA participated in the negotiation and drafting of this agreement. Plaintiff asserts that the USDA later breached this agreement when it failed to extend him additional credit and refused to restructure his existing loans.

In January of 2004, plaintiff brought suit in the United States District Court for the District of Columbia, asserting this breach of contract as part of a broader complaint. The breach claim was transferred by the district court to this court and, on April 21, 2005, plaintiff filed an amended complaint in this court. On June 16, 2005, defendant filed a motion to dismiss the complaint under RCFC 12(b)(1), claiming that the agreement in question was entered into by the government in its sovereign capacity and that this court, therefore, lacked jurisdiction to resolve any allegations that the agreement was breached. On July 5, 2006, the court denied this motion, holding that it had jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to resolve the claim that the USDA had breached the settlement agreement. *See Stovall v. United States*, 71 Fed. Cl. 696 (2006).

On August 25, 2006, the court established a discovery schedule for this case, which most recently was extended on September 16, 2008. That same day, plaintiff filed a motion to compel defendant "to produce the March 30, 1998 memorandum prepared by the Office of General Counsel for the United States Department of Agriculture, pertaining to the plaintiff's claims" (hereinafter, the "OGC Memorandum"). In its October 17, 2008, response to this motion, defendant claimed that the OGC Memorandum was protected by the attorney-client privilege. On October 31, 2008, plaintiff filed his reply brief in support of his motion, therein broadening the motion to cover an additional twenty-five documents.[1] On November 13, 2008, the court ordered defendant to submit, for *en camera* review, a copy of each of the twenty-six documents at issue. Defendant complied with this order on December 4, 2008.

On January 26, 2009, the court ordered defendant to file a memorandum indicating whether, in litigating this case, it intended to rely upon any extrinsic (parol) evidence to bolster its interpretation of the Resolution Agreement, and, if so, whether any of that evidence would

---

[1] In his reply brief, plaintiff indicated that he had excluded from his original motion a request for an order seeking the production of twenty-three other documents in defendant's privilege log because defendant had represented that those documents would be produced. Plaintiff claimed that despite those representations, the documents were not produced. Defendant has not addressed this assertion. Plaintiff broadened the scope of his motion to compel to include these twenty-three documents, plus two additional copies of the OGC Memorandum – bringing the total number of documents sought to twenty-six (*i.e.*, the OGC Memorandum originally requested plus twenty-five other documents).

relate to communications involving members of the OGC. On February 2, 2009, defendant filed its memorandum indicating that it could not foreclose the possibility that it would rely upon such parol evidence, noting that such evidence might derive from the OGC attorneys who helped negotiate and draft the Resolution Agreement.

## II.

Pursuant to RCFC 37, plaintiff seeks an order compelling defendant to turn over a range of documents that assertedly relate to the issues in this matter. Defendant asseverates that all or portions of these documents are protected by the attorney-client privilege.

The Federal Circuit has instructed that "[q]uestions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). In deciding either to compel or quash discovery, this court must balance potentially conflicting goals. On the one hand, it "'must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.'" *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1) advisory comm. notes (1983)); *see also Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (per curiam). As the Supreme Court once famously indicated, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). On the other hand, the Court in *Hickman* cautioned that "discovery, like all matters of procedure, has ultimate and necessary boundaries . . . [L]imitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id.* at 507-08; *see also Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122, 126 (2007); *Vons Cos., Inc. v. United States*, 51 Fed. Cl. 1, 5 (2001). Encapsulating these considerations, RCFC 26(b)(1), like its Federal Rules counterpart, provides that a party may obtain discovery of any matter that: (i) is "non-privileged," and (ii) "is relevant to any party's claim or defense." *See also In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006), *cert. denied*, 549 U.S. 1096 (2006); *Evergreen Trading*, 80 Fed. Cl. at 126; *Vons,* 51 Fed. Cl. at 5.

Defendant argues that the materials requested, or at least critical portions thereof, are subject to the attorney-client privilege. That privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997); *see also EchoStar*, 448 F.3d at 1299; *Am. Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987). The privilege encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and the

administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).[2]  The classic Wigmorean definition of the privilege asserts that–

> [w]here legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived.

8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (McNaughton rev. 1961). "Breaking this definition into its component parts," this court recently observed, reveals that "'in order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship.'" *Evergreen Trading*, 80 Fed. Cl. at 128 (quoting *United States v. BDO Seidman LLP*, 492 F.3d 806, 815 (7th Cir. 2007), *cert. denied*, 128 S. Ct. 1471 (2008)); *see also United States v. Bisanti*, 414 F.3d 168, 171 (1st Cir. 2005); *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984); *Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 90 (2007).[3]  "'[A]n agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege.'" *Rein v. United States Patent*

---

[2]  *See also Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (the privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure"); *Evergreen Trading*, 80 Fed. Cl. at 128.

[3]  Although it ultimately was not adopted, the rule describing the attorney-client privilege promulgated by the Supreme Court in 1972 as part of the Proposed Federal Rules of Evidence has been recognized "as a source of general guidance regarding federal common law principles." *In re Grand Jury Investigation*, 399 F.3d 527, 532 (2d Cir. 2005); *see also* 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.02 (Joseph M. McLaughlin, ed., 2d ed. 2006).  Proposed Rule 503 was particularly instructive in summarizing the types of communications that may be subject to the privilege –

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

Proposed Fed. R. Evid. 503(b), 56 F.R.D. 183, 236 (1972); *see also BDO Seidman*, 492 F.3d at 814-15 (relying on this proposed rule).

*and Trademark Office*, 553 F.3d 353, 376 (4th Cir. 2009) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)); *see also Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).

The twenty-six documents plaintiff seeks fall into six categories: (i) various copies of the OGC Memorandum, which analyzes a draft of what would become the Resolution Agreement; (ii) documents drafted by other USDA personnel, including notes to the file, that refer to the OGC Memorandum; (iii) documents drafted by other USDA personnel, including notes to the file, that refer to other communications with or from OGC lawyers; (iv) requests for legal representation made by various USDA personnel; (v) electronic mail messages between USDA personnel, including representatives from the OGC, discussing the handling of the administrative complaint that predated the filing of the instant lawsuit; and (vi) electronic mail messages between USDA personnel, including representatives from the OGC, discussing the handling of this case. (The particulars of these documents are summarized in the accompanying Appendix A.) The court will consider these groups *seriatim*, keeping in mind, of course, that the defendant bears the burden of demonstrating that the privilege applies to each of the documents in question. *See Evergreen Trading*, 80 Fed. Cl. at 127 (citing cases).

### III.

### A.

We begin with the document that remains the focal point here – the OGC Memorandum. Plaintiff argues that this document should be produced because the attorney-client privilege is essentially a one-way street – that is, it applies only to communications from a client to an attorney and not the reverse. While this view finds support in the privilege's "ancient moorings," courts, over time, have come to realize that excluding all attorney communications from the privilege's aegis could erode the incentive for individuals to seek advice and thereby undercut the reason for having the privilege in the first place.[4]

The Federal Circuit is among these courts. It has held that the privilege may "protect[] the legal advice given or other communications from the attorney to the client depend[ing] on the circumstance." *Amer. Std.*, 828 F.2d at 745; *see also Mead Data*, 566 F.2d at 253. In particular, the privilege ought to apply, the Federal Circuit has stated, to "lawyer-to-client communications that reveal, directly or indirectly, the substance of a confidential communication by the client." *Amer. Std.*, 828 F.2d at 745; *see also In re Sealed Case*, 737 F.2d at 99; *Deuterium Corp. v. United States*, 19 Cl. Ct. 697, 700 (1990).[5] A slightly broader take on this point was offered by

---

[4] Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5491 (1986); Wigmore, *supra*, at § 2320.

[5] To be sure, *American Standard* is a patent case in which the Federal Circuit applied the law of the regional circuit, in that case the Seventh Circuit. *See In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1193 (1997). Nonetheless, the opinion suggests that the court would adhere to this view even in a non-patent case.

the D.C. Circuit in its *In re Sealed Case*, where Judge (now Justice) Ginsburg, writing on behalf of the majority, stated:

> In practice, however, advice does not spring from lawyers' heads as Athena did from the brow of Zeus. Inevitably, attorneys' opinions reflect an accumulation of education and experience in the law and the large society law serves. In a given case, advice prompted by the client's disclosures may be further and inseparably informed by other knowledge and encounters. We have therefore stated that the privilege cloaks a communication from attorney to client "'based, ***in part at least***, upon a confidential communication [to the lawyer] from [the client].'" *Brinton* [*v. Dept. of State*], 636 F.2d [600,] 604 [(D.C. Cir. 1980)](emphasis added) (footnote omitted) (quoting *8 in 1 Pet Products, Inc. v. Swift & Co.*, 218 F. Supp. 253, 253 (S.D.N.Y.1963)).

*In re Sealed Case*, 737 F.2d at 99; *see also State of Maine v. United States Dep't of Interior*, 298 F.3d 60, 71 (1st Cir. 2002); *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983). Farther along the extreme, three circuits have gone so far as to hold that all advice provided by counsel to client is privileged. *See In re Grand Jury Subpoena*, 341 F.3d 331, 335-36 (4th Cir. 2003), *cert. denied*, 541 U.S. 982 (2004); *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370-71 (10th Cir. 1997).[6]

      The question whether attorney communications are protected under the attorney-client privilege thus has produced a spectrum of decisions – all of which, however, reject plaintiff's claim that the privilege does not attach to any attorney communications. The differences among these cases can be traced to the solicitude they associate with the chance that revealing an attorney's communications might betray a client's confidence or otherwise undercut the purposes of the privilege. The more risk averse a court is in this regard, the broader its application of the privilege and, concomitantly, the less likely it is to release a communication. That said, under the facts here, the court need not probe the outer reaches of this jurisprudence for, whatever the standard applied, the OGC Memorandum appears to reflect the substance of communications received by the OGC from the USDA personnel who had requested legal advice. It thus is protected by the privilege. But, that finding does not end our inquiry; rather, it merely begs another question, *to wit*, whether the privilege has been implicitly waived here. More specifically, the court must ask whether defendant's willingness to rely on parol evidence in construing the Resolution Agreement, including evidence from OGC sources, prevents it from

---

[6] The broader views of when the privilege attaches to attorney communications find support in *Upjohn Co.*, 449 U.S. at 390, where the Supreme Court stated that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Of course, in some instances, documents prepared by attorneys will be protected by the work product doctrine. *See* RCFC 26(b)(3); *Evergreen Trading*, 80 Fed. Cl. at 131-33. Defendant, however, has expressly disavowed any reliance upon that privilege here.

invoking the privilege to shield from discovery evidence regarding the same office's participation in the negotiating and drafting processes.

Generally, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982) (citations omitted), *cert. denied*, 459 U.S. 1017 (1982); *see also In re County of Erie*, 546 F.3d 222, 228 (2nd Cir. 2008). The rationale for this rule was recently laid out by the Federal Circuit in its *Seagate Technology* decision –

> "The widely applied standard for determining the scope of a waiver . . . is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). This broad scope is grounded in principles of fairness and serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones. *EchoStar*, 448 F.3d at 1301; *Fort James*, 412 F.3d at 1349. Ultimately, however, "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James*, 412 F.3d at 1349-50.

*In re Seagate Technology, LLC,* 497 F.3d 1360, 1372 (Fed. Cir. 2007), *cert. denied*, 128 S.Ct. 1445 (2008); *see also Evergreen Trading*, 80 Fed. Cl. at 129. Indeed, a veritable Niagara of opinions have concluded that where a party affirmatively reserves the right to use parol evidence to bolster its interpretation of a contract, it may not, via the attorney-client privilege, withhold from discovery attorney-client communications that also form the extrinsic context for the agreement, particularly those that occurred in negotiating or interpreting the agreement.[7] In such

---

[7] *See, e.g.*, *Union County IA v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217, 221-23 (S.D. Iowa 2008) (privilege waived in breach of contract action where party has placed the parol evidence at issue); *IMC Chems., Inc. v. Niro, Inc.*, 2000 WL 1466495, at *23 (D. Kan. July 19, 2000) ("When a party already has disclosed some privileged information relating to its intent with regard to a contract and such party intends to rely upon extrinsic evidence to support its interpretation of the contract, it has waived the attorney-client privilege attached to intent and interpretation thereof."); *Commodity Futures Trading v. Richards*, 1996 WL 308286, at *5 (N.D. Ill. June 6, 1996) (where there is an indication that a party's attorney may contribute evidence as to her intention in negotiating a settlement agreement, it would be "improper and unjust to assert the attorney-client privilege to bar discovery of [the] attorneys' intent in negotiating the agreement"); *Medtronic v. Intermedics, Inc.*, 162 F.R.D. 133, 134-35 (D. Minn. 1995) (if a party refuses to forego the possibility of offering parol evidence to support its interpretation of settlement agreement, it waives the privilege); *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447-

circumstances, a waiver of the privilege as to the latter communications is implied. And fairness particularly compels this result when the party seeking to support its interpretation of an agreement with parol evidence indicates that it might rely on evidence taken from its own attorneys.

Such is the case here. On January 26, 2009, this court ordered defendant to state whether it intended to use parol evidence, including evidence derived from OGC representatives, to bolster its interpretation of the Resolution Agreement. On February 2, 2009, defendant responded, indicating that it could not "foreclose the possibility" that it would rely on extrinsic evidence to support its interpretation of the agreement. It further indicated that if such evidence were offered, it "would relate to the contracting parties' intention at the time of contract formation" and that two of the individuals "possessing knowledge of the parties' intent during negotiations" were the "attorneys with the USDA Office of General Counsel who participated in the negotiation and drafting of the agreement." Accordingly, when asked, defendant indicated that it might rely upon evidence taken from the OGC attorneys, thereby, in the court's view, opening the door for plaintiff to conduct discovery regarding the views held by the OGC attorneys during the drafting and negotiation of the Resolution Agreement. As such, while the attorney-client privilege appears to cover the OGC Memorandum, it has been impliedly waived here. To rule otherwise would be to allow defendant to use the privilege as a sword and shield – to rely potentially upon parol evidence from its attorneys to influence the interpretation of the contract, while denying plaintiff access to privileged material that might be used to rebut that evidence. Fairness does not permit such a result.[8]

---

48 (S.D. Fla. 1980) (waiver where plaintiff placed at issue the intent of the parties regarding certain provisions of the contract); *see also Synalloy Corp. v. Gray*, 142 F.R.D. 266, 269 (D. Del. 1992) ("[B]y claiming 'rescission' of the Agreement due to 'no meeting of the minds,' [a party] waived its right to prevent disclosure of communications which might show the parties intent in entering the Agreements."); *Fed. Deposit Ins. Corp. v. Entabank Corp.*, 1991 U.S. Dist. LEXIS 15120, *2 (W.D. Mo. Oct. 15, 1991) (same result where parol evidence of intent in entering into settlement agreement was placed at issue); Wright & Graham, *supra* at § 5506 (citing other cases).

[8] One might assert – although defendant has not – that the court should await further proceedings in this case to see whether extrinsic evidence involving the OGC actually comes into play. That wait-and-see approach, however, risks having to reopen discovery at an inopportune time – perhaps, in the midst of dealing with subsequent dispositive motions or even a trial. As the court has given defendant the opportunity to disavow any use of extrinsic evidence taken from its attorneys and it has not, the court sees no choice but to allow discovery regarding matters involving the negotiation and drafting of the agreement to proceed. *See In re Buspirone Antitrust Litigation*, 208 F.R.D. 516, 521-22 (S.D.N.Y. 2002) ("It would be unfair for a party who has asserted a factual matter that places attorney-client communications at issue to deprive the opposing party of the means to test that factual matter through discovery of those communications."); *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 127 (D.D.C. 1983); *see also* 8

For similar reasons, the court finds that defendant has impliedly waived the attorney-client privilege as to documents drafted by other USDA personnel that refer to the OGC Memorandum (the second category described above). Those documents likewise must be produced sans redaction. The same is true of several documents within the third category outlined above – those generated by USDA personnel that refer to communications to or from OGC lawyers regarding the implementation of the Resolution Agreement. Again, these documents constitute a subset of the broader category of parol evidence that may bear upon the interpretation of the agreement and thus fall within the subject matter waiver described above.

**B.**

One of the documents generated by USDA personnel – an April 15, 1997, memorandum drafted by the USDA State Executive Director for Alabama – refers to a communication received from the OGC, but does not deal with the drafting, negotiation, interpretation or implementation of the Resolution Agreement. Instead, it focuses on the settlement of a 1996 district court lawsuit brought by plaintiff against the USDA. Nonetheless, that document reflects neither any client communications made to the OGC for the purpose of obtaining legal advice nor any legal advice or assistance provided by the latter organization. Rather, it merely describes instructions that were received from the OGC – instructions that were more of a general administrative or ministerial nature, as might well have come from another arm of the USDA. As such, the document appears to be divorced from any legal representation or attorney-client relationship and is, therefore, not covered by the attorney-client privilege.[9] The same is essentially true of two

---

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2016.2 (2008) ("discovery is permissible of privileged matter to the extent that it is contemplated that the privilege will be waived at trial"); *Reynolds Metals Co. v. Yturbide*, 258 F.2d 323, 335 (9th Cir.) (Chambers, J., concurring and dissenting), *cert. denied*, 358 U.S. 840 (1958) (arguing that allowing the privilege issue to linger until trial would encourage a "game of ducks and drakes"). Indeed, other discovery regarding the negotiation and drafting process has apparently occurred in this case, with defendant having released documents that also seemingly reflect the views of the OGC. The latter fact alone could be viewed as effectuating a waiver of the privilege as to all communications involving the same subject matter. *See, e.g., In re Seagate Technology*, 497 F.3d at 1372 (quoting *Fort James*, 412 F.3d at 1349) ("The widely applied standard for determining the scope of a waiver . . . is that the waiver applies to all other communications relating to the same subject matter."); *Evergreen Trading*, 80 Fed. Cl. at 129.

[9] *See Henson By and Through Mawyer v. Wyeth Labs., Inc.*, 118 F.R.D. 584, 587-88 (W.D. Va. 1987); *see also United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968), *cert. denied*, 393 U.S. 1027 (1969) ("[The] mere fact that a person is an attorney does not render as privileged everything he does for and with a client."). In particular, the courts have recognized that in-house counsel often serve a multiplicity of roles, some of which do not require legal skills. The same courts have been hesitant to shield every communication to or from such individuals, fearful that organizations will funnel documents and decisions through them in an

other documents – an annotated notice of the dismissal of a state case filed by plaintiff, dated April 7, 1997, and a memorandum dated July 23, 2001. Likewise outside the ambit of the privilege are documents in which USDA personnel request that the Department of Justice represent them in a pending lawsuit filed in the United States District Court for the Northern District of Alabama. Various cases confirm that such bare-bone requests for representation, like other documents that merely reveal the existence of an attorney-client relationship, are not protected by the attorney-client privilege.[10]

Finally, we confront two categories of documents involving electronic mail. The first involves a series of messages in which various USDA personnel discuss the handling of the administrative complaint filed by plaintiff with the Office of Civil Rights at the USDA. While this discourse refers to advice that the OGC provided on an issue, it also indicates that the sum and substance of that advice was communicated either to Mr. Stovall or his representative. That disclosure, of course, precludes defendant from relying now on the attorney-client privilege. *See Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990); *Evergreen Trading*, 80 Fed. Cl. at 128. The second set of electronic mail messages involves communications among various USDA personnel, including members of the OGC, discussing the handling of this case. Nothing in those messages appears to be the least bit relevant to the merits of this case and, accordingly, the court concludes that, even under the liberal discovery relevancy standard, they need not be produced. *See* RCFC 26(b)(1).[11]

## IV.

This court need go no further. Based on the foregoing, and as reflected in the attached Appendix A, the court orders as follows:

---

effort to shield them from discovery. *See Paul R. Rice*, Attorney-Client Privilege in the United States, § 7:2 (2d. ed. 1999). Analogous concerns, of course, are raised by the prospect of shielding every decision or instruction made or recommended by a member of an agency general counsel's office.

[10] *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999), *cert. denied*, 528 U.S. 891 (1999); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985); *see also Edna Selan Epstein*, The Attorney-Client Privilege and the Work-Product Doctrine 88-93 (5th ed. 2007) (noting that "[t]he cases so holding are legion and arise in a multiplicity of contexts").

[11] The court also declines to order the production of certain documents that appear to be exact duplicates of documents that will otherwise be produced. It will order defendant to produce multiple copies of the same documents (*e.g.*, the OGC Memorandum), where the copies contain slightly different information regarding the recipients.

1.  On or before March 6, 2009, the following documents shall be produced by defendant to plaintiff: **1**, **2**, **3**, **4**, **5**, **6**, **7**, **14**, **15, 16**, **22**, **23, 24, 25** and **26;**

2.  The following documents shall not be produced: **8**, **9**, **10, 11, 12**, **13, 17**, **18**, **19**, **20**, and **21;**

3.  Because neither party has fully prevailed herein, the court will not order the payment of reasonable expenses, *see* RCFC 37(a)(5); and

4.  On or before March 13, 2009, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

# Appendix A

| Tab | Date | Document Type | Subject Matter | Ruling |
|---|---|---|---|---|
| 1 | 04/24/98 | Note to File | USDA personnel notes describing communications between OGC and USDA personnel implementing Resolution Agreement | Produce, III.A. |
| 2 | 04/24/98 | Notes | USDA personnel notes on implementation of Resolution Agreement and referencing communications with OGC attorneys | Produce, III.A. |
| 3 | 03/30/98 | Memorandum | OGC analysis of draft Resolution Agreement | Produce, III.A. |
| 4 | 04/23/98 | Note to File | USDA personnel notes containing a description of a conversation between USDA personnel discussing OGC memorandum | Produce, III.A. |
| 5 | 04/15/97 | Letter | USDA personnel correspondence regarding plaintiff's state civil litigation and referencing ministerial guidance from OGC | Produce, III.B. |
| 6 | 04/07/97 | Notice | Printout of dismissal notice in plaintiff's state civil litigation with handwritten notes referencing communications with OGC attorneys | Produce, III.B. |
| 7 | Undated | Letter | Request for legal representation by USDA personnel | Produce, III.B. |
| 8 | 04/24/98 | Note to File | *Duplicate of Tab 1* | Protect, III.B. |
| 9 | 04/24/98 | Notes | *Duplicate of Tab 2* | Protect, III.B. |
| 10 | 03/30/98 | Memorandum | *Duplicate of Tab 3* | Protect, III.B. |
| 11 | 04/23/98 | Note to File | *Duplicate of Tab 4* | Protect, III.B. |
| 12 | 04/15/97 | Letter | *Duplicate of Tab 5* | Protect, III.B. |
| 13 | Undated | Letter | *Duplicate of Tab 7* | Protect, III.B. |

| Tab | Date | Document Type | Subject Matter | Ruling |
|---|---|---|---|---|
| 14 | 11/14/01 | Email | USDA personnel correspondence with status update of interactions with plaintiff and referencing OGC advice | Produce, III.B. |
| 15 | 11/14/01 | Email | *Near Duplicate of Tab 14*; USDA personnel correspondence with status update of interactions with plaintiff and referencing OGC advice | Produce, III.B. |
| 16 | 07/23/01 | Memorandum | USDA personnel correspondence regarding the servicing of plaintiff's application | Produce, III.B. |
| 17 | 06/03/04 | Email | USDA personnel correspondence regarding the status of plaintiff's federal litigation | Protect, III.B. |
| 18 | 09/29/04 | Email | USDA personnel correspondence regarding the status of plaintiff's federal litigation | Protect, III.B. |
| 19 | 06/12/06 04/19/06 | Email | USDA personnel correspondence regarding the status of plaintiff's federal litigation | Protect, III.B. |
| 20 | 01/26/06 | Email | USDA personnel correspondence regarding the status of plaintiff's federal litigation | Protect, III.B. |
| 21 | 01/24/06 | Email | USDA personnel correspondence regarding the status of plaintiff's federal litigation | Protect, III.B. |
| 22 | 02/28/01 | Email | Correspondence memorializing conversation with plaintiff's representative regarding the status of plaintiff's federal litigation | Produce, III.B. |
| 23 | 05/12/98 | Notes | USDA personnel notes on implementation of Resolution Agreement and referencing communications with OGC attorneys | Produce, III.A. |
| 24 | 05/12/98 | Notes | USDA personnel notes on implementation of Resolution Agreement and referencing communications with OGC attorneys | Produce, III.A. |

| Tab | Date | Document Type | Subject Matter | Ruling |
|---|---|---|---|---|
| 25 | 03/30/98 | Memorandum | *Near Duplicate of Tab 3*; OGC analysis of draft Resolution Agreement | Produce, III.A. |
| 26 | 04/24/98 | Note to File | *Near Duplicate of Tab 1*; USDA personnel notes describing communications between OGC and USDA personnel implementing Resolution Agreement | Produce, III.A. |